IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In re CREDITRUST CORPORATION      *   Civil Action No. MJG-00-2174
SECURITIES LITIGATION                 (CONSOLIDATED WITH MJG-00-2297,
                                  *    00-2343, 00-2346, 00-2347 & 00-2539)

*       *       *       *       *       *       *       *
*

MEMORANDUM AND ORDER

The Court has before it Plaintiffs' Motion for Class Certification and the materials submitted by the parties in relation thereto.  The Court has held a hearing and has had the benefit of the arguments of counsel.


I.   BACKGROUND

The instant lawsuit (filed July 14, 2000) and those consolidated herewith were brought as securities purchaser class action lawsuits asserting securities law violations claims against certain officers and directors of Creditrust Corporation[1] ("Defendants").

By Order of March 27, 2001, the Court appointed Terri Roop and Barry Kimmelman to be Lead Plaintiffs and Berger & Montague, P.C., as Lead Counsel.  On May 7, 2001. Plaintiffs

---

[1]    The corporation was originally also named as a defendant, but subsequently filed for bankruptcy and is no longer a party to the suit.

filed the Consolidated Amended Class Action Complaint ("Amended Complaint").

By Memorandum and Order issued August 2, 2002, the Court dismissed Plaintiff's claims against all Defendants except:

- Joseph K. Rensin ("Rensin"), Co-Founder, Former President, and Chief Executive Officer of Creditrust, and

- Richard J. Palmer ("Palmer"), Chief Financial Officer of Creditrust.

The Amended Complaint states: "[t]his is a class action," and alleges violations of Sections 11 and 15 of the Securities Act ("the 1933 Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act ("the Exchange Act"), 15 U.S.C. §77 et seq. It continues: "[l]ead plaintiffs assert their claims on behalf of all persons, other than defendants and their affiliates, who purchased Creditrust common stock during the period of July 29, 1998, through May 31, 2000, inclusive ("the Class Period") and who suffered damage as a result thereof."

Plaintiffs filed their Motion for Class Certification on September 18, 2002. In it, they seek certification of a class consisting of "all persons[2] who purchased Creditrust common stock during the period July 28, 1998 through May 31, 2000,

---

[2]     Subject to certain exceptions, for example, the Defendants and their families.

2

inclusive."  The representative Plaintiffs for the proposed class are Lead Plaintiffs Terri Roop and Michael Kimmelman and Representative Plaintiffs Michael Enderizzi, Jonathan K. Mack, and Beth C. Mack (together, "Plaintiffs").

Plaintiffs, by their instant motion, also seek the certification of two subclasses: a proposed "Securities Act Subclass," consisting of persons who purchased common stock pursuant to Creditrust's initial public offering ("IPO") between July 28, 1998 and March 18, 1999 and a proposed "Exchange Act Subclass," including persons who purchased common stock between July 28, 1999 and May 31, 2000.

Defendants oppose the certification of the class in this case on three grounds.  First, Defendants contend that the motion is untimely as the statute of limitations for the underlying causes of action has run as to all unnamed putative class members other than the named Plaintiffs.  Second, Defendants oppose class certification on the basis that the named Plaintiffs, Kimmelman, Mack, and Roop, fail to satisfy the requirements of "typicality" and "adequate representation" for the putative class as required by Federal Rules of Civil Procedure 23(a)(3)-(4).

3

## II.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a district court has broad discretion determining whether to certify a class.  See Roman v. ESB, Inc., 550 F.2d 1343 (4th Cir. 1976). The class certification inquiry is not an analysis of the substantive merits of the underlying litigation.  Instead, the role of the court in deciding whether to certify a Rule 23[3] class is to decide whether the requirements of the Federal Rules of Civil Procedure are met.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974).

There are two requirements with regard to the class members in general.  Rule 23(a)(1) requires that the class be numerous, and Rule 23(a)(2) requires that there be at least one question of law or fact common to all putative class members.  There are also two requirements concerning the relationship between the named plaintiffs and the rest of the class.  Rule 23(a)(3) requires that the claims and defenses of the named plaintiffs be "typical" of the claims and defenses of the class.  Rule 23(a)(4) requires that the named plaintiffs will "fairly and adequately protect" and represent the interests of the class, meaning that 1) the named plaintiff's interests coincide with and are not antagonistic

---

[3]    All references to "Rule" or "Rules" herein are to the Federal Rules of Civil Procedure.

to those of the class and 2) that the named plaintiff's attorneys are qualified to conduct the litigation and are likely to do so vigorously.  In re Kirschner Med. Corp. Securities Litigation, 139 F.R.D. 74, 79 (D. Md. 1991), citing Disabled in Action v. Bridwell, 593 F.Supp 1241, 1245 (D. Md. 1984).

Finally, a plaintiff seeking class certification must show that, pursuant to Rule 23(b)(3), "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3).


III.    DISCUSSION

The Court will discuss herein the following matters:

- Defendants' Threshold Contentions that the claims of the putative class members are time-barred;

- The Rule 23 Requirements:

    - Numerosity
    - Commonality of Questions
    - Typicality
    - Adequacy of Representation

A.    Timeliness of Class Certification Motion

Defendants contend that the claims of putative class members not previously named in the Complaint are untimely.

The 1933 Act and the Exchange Act, under which Plaintiffs' claims are brought, each provide a limitations period of one year from the time of discovery of the fraud or three years from the actual statements or omissions constituting the fraud. 15 U.S.C. §77m. The discovery date is deemed to be the date as of which Plaintiffs were on inquiry notice of the fraudulent conduct. See Brambaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir. 1993).

The parties agree, and this Court has ruled, that March 31, 2000, is the date on which Plaintiffs were on inquiry notice of the alleged fraud. The initial Complaint was filed on July 14, 2000, well within the one-year statute of limitations provided by the statutes. The Amended Complaint was filed on May 7, 2001, more than a year after the inquiry notice date. However, the Court has ruled that the claims in the Amended Complaint relate back to the original July 14, 2000 filing date for limitations purposes. See Memorandum and Order of August 1, 2002 at 22. Thus, the claims asserted in the Amended Complaint are not time-barred.

Defendants argue that even if the claims brought by the named Plaintiffs in the Amended Complaint by the named plaintiffs are not time-barred, the claims of unnamed class members are untimely.  Defendants contend that the action by the unnamed class members should not be considered to have "commenced" until the instant Motion for Class Certification was filed on September 19, 2002.  Therefore, Defendants argue, the added class members' claims are time-barred, as they were not asserted until after limitations had run.  Essentially, the parties present the question of whether the filing of a complaint containing class allegations is sufficient to toll the statute of limitations for unnamed class members.

Plaintiffs rely on <u>American Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538, 554 (1974), which states that "the filing of a timely class action complaint commences the action for all members of the class as subsequently determined," and that "[o]nce the statute of limitations has been tolled" by filing the timely complaint, "it remains tolled for all members of the putative class until class certification is denied."  Id. at 553-54.

The Supreme Court in <u>American Pipe</u> also stated that the treatment of "one seeking to join a class after the running of the statutory period [as asserting] a separate cause of action

which must meet timeliness requirements" is inconsistent with the purposes of Federal Rule of Civil Procedure 23. <u>Id.</u> at 550.

Defendants do not dispute this interpretation of the <u>general</u> holding of <u>American Pipe</u>. Instead, they contend that the <u>American Pipe</u> rule is a judicially-created equitable tolling doctrine that is inapplicable to securities fraud cases. In <u>American Pipe</u>, Defendants argue, the Supreme Court applied a tolling doctrine only after determining that it would be "consonant with the legislative scheme" that created the statute of limitations to be tolled. <u>Id.</u> at 559. Thus, the <u>American Pipe</u> rule is not required by Rule 23, but instead is an equitable doctrine whose application is limited to appropriate cases.

Further, Defendants contend that because the Supreme Court has stated that in certain contexts equitable tolling is inconsistent with the statutory scheme created by the securities laws, its application here would be inappropriate. <u>See</u> <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 363 (1991) (holding that equitable tolling based on time of discovery of fraud could not be applied to permit the filing of a case after expiration of the 3-year limitations period of 10(b)).

8

Nonetheless, even accepting the Defendant's analysis of American Pipe, applying the American Pipe rule in the instant case would be "consistent both with the procedures of Rule 23 and with the proper function of the limitations statute." American Pipe, 414 U.S. at 555.

In Lampf, cited by Defendants for the proposition that tolling should not apply in cases brought under the securities laws, the plaintiffs were requesting that tolling be applied to permit a suit that otherwise would have been time-barred in its entirety. See Lampf, 501 U.S. at 363-64. Moreover, the plaintiffs in Lampf sought to extend the three-year outside limitations period of 10(b) by the application of equitable tolling, on the basis that the plaintiffs had not discovered the fraud at issue until more than three years after it had been committed.

In Lampf, the court held that the type of equitable tolling sought by the plaintiffs was "unnecessary" with regard to the one-year limitations period because that period "by its terms begins after discovery of the facts constituting the violation." Id. at 363. The Court went on to find that extension of the outside three-year limitations period by equitable tolling was inconsistent with the statute: "[b]ecause the purpose of the 3-year limitation is clearly to

9

serve as a cutoff, we hold that tolling principles do not apply to <u>that period</u>." <u>Id.</u> (emphasis added).

In contrast, in the instant case the <u>case</u> itself was timely filed within the one-year limitations period. The only dispute is whether <u>additional parties</u>, that is class members, may join.

The Court finds that the application of the <u>American Pipe</u> rule to the facts of the instant case would not be inconsistent with the statutory framework of the securities laws.[4] As noted, Plaintiffs here do not seek to extend the limitations period beyond the three-year outside limit provided by the statute on the basis that the fraud was not discovered until that time. Indeed, Plaintiffs' position preserves the one-year limitations period for the claims presented in the case.

The effect of the application of <u>American Pipe</u> to the instant facts is only to permit the case, which was timely filed, to proceed as a class action, and thus to permit the addition of heretofore unnamed plaintiffs to the action. The Court finds that <u>Lampf</u> does not foreclose this perfectly sensible result.

---

[4]    That is, not any more than any tolling doctrine necessarily can be said to be "inconsistent" with a stated statute of limitations.

10

The Court notes that Plaintiffs further argue that
because further proceedings in the instant case were
automatically stayed pursuant to the requirements of the
Private Securities Litigation Reform Act ("PLSRA") when
Defendants filed their Motion to Dismiss, they were "expressly
prohibited" from filing their Motion for Class Certification
until the motion to dismiss was decided.  <u>See</u> 15 U.S.C. §78u-
4(b)(3)(B).

The Court need not reach the issue of whether the motion
was "prohibited",  but observes that any such motion filed
prior to the ruling on dismissal would have been a nullity.
Defendants would not have had to respond until after the
dismissal was ruled on, and, most likely, the certification
motion would have to be rewritten to conform to the ruling on
dismissal.  The Court sees no reason to require Plaintiffs to
file a perfectly useless motion to certify in order to avoid
the running of limitations as to class members when the PLSRA
provides for the filing of such a motion <u>after</u> the ruling on
dismissal.


B.   <u>Rule 23 Requirements</u>

1.   <u>Numerosity</u>

11

Defendants do not challenge Plaintiffs' assertion that the proposed class is numerous enough to render joinder impracticable, as required by Rule 23(a)(1).  Plaintiffs have referenced the public filings of Creditrust to show that the number of individuals who owned Creditrust shares during the class period are likely to number in the "hundreds" and are likely as well to be widely geographically dispersed.  Thus, the Court finds that Plaintiffs have satisfied the "numerosity" requirement in Rule 26(a)(1).

### 2.   Common Questions of Law and Fact

Defendants do not contest Plaintiffs' contention that the members of the proposed class satisfy Rule 23(a)(2)'s requirement that "there are questions of law or fact common to the class."

The basic substance of the case involves allegations of fraudulent conduct and misstatements that allegedly impacted the value of Creditrust's common stock and resulted in damages suffered by owners of that stock.  Plaintiffs assert that the members of the class will present common claims of falsification of earnings reports, misrepresentations and failures to disclose material facts regarding the financial condition of Creditrust.

The Court finds that the proposed class will present common questions of law and fact that satisfy Rule 23(a)(2).

### 3.  Typicality

Defendants oppose class certification on the basis that the representative Plaintiffs, Plaintiffs Kimmelman, Mack, and Roop, (collectively, the "Representative Plaintiffs"), are not "typical" of the class as required by Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Defendants argue that the Representative Plaintiffs are subject to "unique defenses" that will become a focus of Plaintiffs' "energies" in the suit.

Defendants contend that because Plaintiffs Kimmelman and Roop purchased their Creditrust stock after Creditrust had disclosed some portion of the fraud on which Plaintiffs' claims are premised, they are not entitled to rely on a "fraud on the market" theory.  Thus, according to Defendants, their claims are subject to a defense that is not present with regard to prior purchasers. In other words, Defendants contend that the claims of Kimmelman and Roop would not be entitled to the same presumption of reliance that accompanies a "fraud on

the market" claim as would others in the class they represent.

As an initial matter, the Court notes that the parties dispute the extent and nature of the disclosures that occurred before Kimmelman and Roop purchased their shares.  At a minimum, this is a question whether the disclosures that occurred before Kimmelman and Roop purchased revealed all of the fraudulent actions with which Defendants are charged in this action.  Whether the pre-purchase disclosure was sufficient to deny Kimmelman and Roop a presumption of reliance on a fraud-on-the-market theory is a determination that should not be delved into at the certification phase. See In re One Bankcorp Securities Litigation, 136 F.R.D. 526, 530-33 (D. Me. 1991); Kinney v. Metro Global Media, Inc., 2002 WL 31015604 (D. R.I. 2002).  However, even assuming arguendo that Kimmelman and Roop would not be entitled to a presumption of reliance because of their belated purchase date, that fact would not disqualify them from serving as class representatives in this case.

In a similar case, the District of Massachusetts held that the fact that the class representatives might not be entitled to rely on a "fraud on the market" theory would not render them inappropriate or atypical class representatives.

14

Randle v. Spectran, 129 F.R.D. 386, 390-91 (D. Mass. 1988)  In

fact, in Randle, the court held that in the absence of a

presumption of reliance, "plaintiffs would still have to

establish all the elements necessary to present the claims of

the absent plaintiffs and therefore are sufficiently typical

to adequately represent the class."  Id., see also Cooperman,

136 F.R.D. at 533.  This Court fully agrees.

The Court thus concludes that the fact that Kimmelman and

Roop may not, once the evidence is fully presented, turn out

to be entitled to a presumption of reliance based upon a

fraud-on-the-market theory would not render them "atypical"

under Rule 23(a)(3) for the purposes of class certification.[5]

### 4.    Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires a

showing that the "representative parties will fairly and

adequately represent the class."  This requirement has been

interpreted in this District as requiring that "1) the

interests of the plaintiff and the other members of his class

---

[5]    Defendants advance several related arguments that
several of the representative or lead Plaintiffs are atypical
because they, for various reasons, will not be entitled to a
presumption of reliance. The Court need not examine in detail
each argument made by Defendants as to why Plaintiffs are not
entitled to the presumption.  The Court finds that, even
assuming that a representative plaintiff is not entitled to
such a presumption, the representative plaintiff would not
lack typicality under Rule 23(a)(3).

must coincide and 2)... the plaintiff and his attorney will vigorously prosecute the action." <u>Kirschner Medical</u>, 139 F.R.D. at 79.  Defendants appear to concede, or at least do not challenge the assertion, that counsel for the Representative Plaintiffs is qualified and able to prosecute the case with the requisite vigor.

Defendants contend that the Representative Plaintiffs are not "adequate" to represent the class for several reasons. First, Defendants argue that the Representative Plaintiffs are inadequate because of their "lack of involvement" in the litigation.  Second, Defendants claim that the Representative Plaintiff's "delay" in moving for class certification shows that they are not adequately protecting the interests of the class as a whole.

Defendants argue that the PSLRA requires lead plaintiffs to follow certain procedural formalities[6] and that they be "investor[s] capable of understanding and controlling the litigation." <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475 (5th Cir. 2001).  Plaintiffs do not dispute this interpretation of the PSLRA but argue that they have adequately satisfied the requirements.

---

[6]    There is no allegation that Plaintiffs have not complied with the procedural requirements.

Defendants cite a number of cases in which lead plaintiffs were disqualified because of inadequate knowledge of the factual allegations of the lawsuit.  However, in all of those cases, the plaintiffs' knowledge of the case was severely deficient.  <u>See, e.g.</u> <u>Krim v. pcOrder.com</u>, 210 F.R.D. 581 (W.D. Tex. 2002) (plaintiffs did not know what was being alleged in the lawsuit, could not name a lead plaintiff, and did not know basic factual nature of case), <u>Elfros v. Nationwide Corp.</u>, 98 F.R.D. 703, 707 (S.D. Ohio 1983) (plaintiff did not know names of attorneys who had entered appearances on her behalf and had no knowledge of the fraudulent statements that formed the basis of the lawsuit), <u>Helfand v. Cenco</u>, 80 F.R.D. 1,7 (N.D. Ill. 1977) (plaintiff was unaware that he was a member of a class and was not familiar with allegations presented), etc.

Defendants point to no such deficiencies in Representative Plaintiffs' knowledge of the case.  Indeed, Plaintiffs' depositions and affidavits indicate that they are aware of the allegations that form the basis of the case and the nature of the claims brought against Defendants.

Defendants contend that because the Representative Plaintiffs were not aware of certain specific events in the course of the litigation such as a proposed settlement with

17

Defendant Davis, and that they testified in deposition that they could not recall having read the Amended Complaint, they fail to satisfy the adequacy standard.

The Court finds that an awareness of every development and a knowledge of every intricacy of a case is not necessary for a Representative Plaintiff to satisfy the "adequacy" requirement of Rule 23(a)(4).  <u>See, e.g.</u> <u>In re Data Access Systems Securities Litigation</u>, 103 F.R.D. 130, 141 (D. N.J. 1984) (stating that "it will always be possible to find some aspect of a case with which the plaintiffs are not familiar," and refusing to find lead plaintiffs inadequate on that basis), <u>In re Diasonics Securities Litigation</u>, 599 F.Supp. 447, 452-53 (N.D. Cal. 1984) (even though lead plaintiffs had demonstrated at deposition "that they did not understand all of the intricacies of the action;" they "demonstrated a familiarity with its outlines" and thus were adequate representatives); <u>see also</u> <u>County of Suffolk v. Long Island Lighting Co.</u>, 710 F.Supp. 1407, 1416 (E.D.N.Y. 1989). Plaintiffs here have demonstrated a familiarity with the factual basis of the lawsuit and the legal basis for their claims, and are represented by thoroughly able counsel.  Thus the Court does not find that any lack of familiarity on the

part of the Representative Plaintiffs with some details of the litigation renders them inadequate.

Defendants further argue that because Plaintiff Roop suffers from cancer, she is an inadequate class representative, and that further, her husband, Plaintiff Kimmelman, should also be disqualified because of his wife's illness. Plaintiff Roop has stated through counsel that she is willing and able to fulfil her duties as a representative plaintiff in this case, including traveling across the United States if necessary. Plaintiff Kimmelman has expressed his willingness to participate as well. This Court does not find that, contrary to their own statements, Plaintiff Roop's illness will prevent her or her husband from acting as adequate class representatives.

Finally, Defendants argue that the fact that the Representative Plaintiffs "delayed" filing their motion for certification renders them inadequate. Plaintiffs cite East Texas Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 405 (1977) where the Supreme Court, faced with Plaintiffs who had never moved to certify the class, stated: "failure to protect the interests of the class by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive." Other courts

have held that an undue delay in filing a motion for certification could be an "indicia" of inadequate representation.  <u>See, e.g.</u> <u>McKinnon v. Talladega County</u>, 745 F.2d 1360 (11th Cir. 1984); <u>Lyon v. Arizona</u>, 80 F.R.D. 665 (D. Ariz. 1978) (collecting cases).

Plaintiffs argue that there was no undue delay in this case because they were precluded from filing – or at least, the Court was precluded from proceeding with – the motion for class certification under the automatic stay provision of the PSLRA. <u>See</u> 15 U.S.C. §78u-4(b)(3)(B).  The Court finds that the Plaintiffs were perfectly justified in deferring the filing of the Certification Motion until after the resolution of the Defendants' dismissal motions.  Plaintiffs' "delay" is not indicative of an inability or unwillingness to adequately and fairly represent the class.

In sum, the nature of the case and the attributes of the Representative Plaintiffs satisfy the requirements of Rule 23(a).  Thus, the Court shall certify the class as requested by Plaintiffs.


VI.  <u>CONCLUSION</u>

For the foregoing reasons:

1.  Plaintiffs' Motion for Class Certification is GRANTED.

2.  The Court shall issue a separate Class Certification Order providing for a Class and two Subclasses of Plaintiffs:

    a.  The Class consists of all persons who purchased Creditrust common stock during the period July 28, 1998 through May 31, 2000, inclusive, and who suffered damage as a result of their purchase.

    b.  Two Subclasses are also hereby certified:

        i.  Subclass One, the "Securities Act Subclass" shall consist of all persons who purchased Creditrust common stock pursuant to the Registration Statement with respect to Creditrust's Initial Public Offering, between July 28, 1998 and March 18, 1999;

        ii. Subclass Two, the "Exchange Act Subclass" shall consist of all persons who purchased the common stock of Creditrust between July 28, 1999 and May 31, 2000.

        iii. Excluded from the subclasses are Defendants, immediate family of Defendants, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors or predecessors in interest, and assigns of any Defendant.

    c.  Lead Plaintiffs shall be Barry Kimmelman and Terri Roop, and Representative Plaintiffs shall be Jonathan K. Mack, Beth C. Mack, and Michael Endirizzi.

    d.  Plaintiffs shall provide a proposed Class Certification Order within ten days of the date of this Order.

3.    Within ten days of the date of this Order,
      Plaintiffs shall arrange a conference, which may be
      attended in person or by telephone, to address:

      a.    Class notification matters, and

      b.    The scheduling of further proceedings herein.

4.    Within fifteen days of the date of this Order,
      Plaintiffs shall renew their Motion for Final
      Approval of Settlement pursuant to the Order of
      March 12, 2003.


SO ORDERED, on Friday, 25 April, 2003.


                                    /s/
                         _____
                              Marvin J. Garbis
                         United States District Judge