UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| _____ | : | |
| IN RE CREDITRUST CORPORATION | : | Civil Action No. MJG 00 CV 2174 |
| SECURITIES LITIGATION | : | |
| _____ | : | |
|  | : | |
| This Document Relates to ALL ACTIONS | : | |
| _____ | : | |

**MEMORANDUM OF DEFENDANTS JOSEPH K. RENSIN AND RICHARD J. PALMER
IN OPPOSITION TO PLAINTIFFS' MOTION FOR RENEWAL OF THE MOTION
<u>FOR APPROVAL OF PARTIAL SETTLEMENT</u>**

During the conference call held with the Court on May 16, Defendants Joseph K. Rensin

and Richard J. Palmer reserved the right to request a stay of proceedings in view of their pending

appeals with the Fourth Circuit. Upon further consideration, Defendants respectfully submit

that, due to their pending appeal pursuant to 28 U.S.C. § 1291, this Court lacks jurisdiction to

address Plaintiffs' Motion for Renewal of the Motion for Approval of Partial Settlement (the

"Motion").

If and when the Court does address Plaintiffs' proposed partial settlement with Defendant

Davis, the Motion should be rejected because it makes even less sense now than when Plaintiffs

first proposed it. Plaintiffs' "partial settlement" continues to suffer from the fatal defects

identified in Defendants' prior submissions to the Court: 1) it would diminish, without reason,

non-settling defendants' contribution rights and it is void for lack of consideration to class

members – particularly now that Defendants' Motions to Dismiss have been denied and

Plaintiffs could take discovery from Defendant Davis using more conventional methods; 2) it is

an illegal inducement for testimony; and 3) it violates the Reform Act's ban on secret settlements.

I.    **DEFENDANTS' PENDING APPEAL PRECLUDES APPROVAL OF PLAINTIFFS' PROPOSED PARTIAL SETTLEMENT**

Defendants respectfully submit that, due to their pending appeal pursuant to 28 U.S.C. § 1291 of the Court's April 30, 2003, Memorandum and Order granting class certification (the "Memorandum and Order"), this Court lacks jurisdiction to conduct further proceedings with respect to the proposed Davis settlement.

The Memorandum and Order granted Plaintiffs' Motion for Class Certification and rejected Defendants' argument that class certification was precluded by the three-year period of repose and the one-year period of limitations contained in 15 U.S.C. § 77m and 15 U.S.C. § 78i(e).[1]  Because statutes of repose, unlike ordinary statutes of limitations, confer substantive rights not to endure the burdens of untimely litigation, this Court's ruling is an immediately appealable collateral order pursuant to 28 U.S.C. § 1291.  See Estate of Kennedy v. Bell Helicopter Textron, Inc., 283 F.3d 1107 (9th Cir. 2002) (district court's rejection of a statute of repose defense is subject to immediate appeal as of right pursuant to 28 U.S.C. § 1291 because a statute of repose confers a right not to stand trial); see also Powers v. Southland Corp., 4 F.3d

---

[1]    As discussed in Defendants' Opposition to class certification, with respect to most of the allegedly false statements at issue, Plaintiffs delayed filing their Motion for Class Certification **until after the expiration of the applicable three-year period of repose in these statutes** (and, consequently, the Court's certification order was issued even later).  The filing date of the Motion for Class Certification, September 18, 2002, was more than three years after all statements alleged in the Amended Complaint from July 1998 through and including August 1999. Circuit law is clear that the three-year statute of repose applies separately to each allegedly fraudulent statement or sale.  See Caviness v. Derand Res. Corp., 983 F.2d 1295, 1300-02 (4th Cir. 1993).  Therefore, claims based on

223, 232-33 & n.10 (3d Cir. 1993) (denial of statute of limitations defense is not a collateral

order, but whether denial of motion to dismiss based on statute of repose is immediately

appealable pursuant to the collateral order doctrine is a distinct question that the court declined

to resolve).[2]  Accordingly, on May 14, 2003, Defendants filed a Notice of Appeal with this Court

taking an appeal of the Memorandum and Order pursuant to 28 U.S.C. § 1291.[3]

It is "generally understood that a federal district court and a federal court of appeals

should not attempt to assert jurisdiction over a case simultaneously.  The filing of a notice of

appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals

and divests the district court of its control of those aspects of the case involved in the appeal."

Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982).  So

complete and automatic is the transfer of jurisdiction that a motion for a stay is unnecessary and

---

statements made from July 1998 through August 1999 are barred by the statute of repose "even if … closely related
to another [statement] which is not … barred."  Id. at 1301.

[2]      Defendants believe that appellate review should extend beyond the Court's ruling with respect to the three-
year period of repose to include the ruling with respect to the one-year limitations period and to other limitations
and class certification questions.  See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172, 94 S. Ct. 2140, 2150
(1974) (where, as here, there is an appealable collateral order, review properly extends beyond the separable matter
that justified the appeal).

[3]      On the same day, Defendants also filed a petition for review pursuant to Fed. R. Civ. P. 23(f) with the
Fourth Circuit.  Unlike 28 U.S.C. § 1292(b), Fed. R. Civ. P. 23(f) does not contemplate district court certification.
Defendants believe, however, that their appeal satisfies the criteria for an appeal pursuant to Section 1292(b),
including that there be a substantial ground for difference of opinion concerning the question appealed.  As noted in
Defendants' opposition, there is a split of authority concerning whether the American Pipe rule is consistent with a
statute of repose.  Compare Cacha v. Montaco, Inc., 554 S.E.2d 388, 392-93 (N.C. App. 2001), cert. denied, 560
S.E. 797 (N.C. 2002) (concluding, consistent with Defendants' position, that statute of repose trumps American
Pipe tolling rule), with Joseph v. Wiles, 223 F.3d 1155, 1166-68 (10th Cir. 2000).  In addition, some courts that have
rejected Defendants' position have acknowledged that the issue is a close one.  See Prieto v. Jon Hancock Mut. Life
Ins. Co., 132 F. Supp.2d 506, 519 (N.D. Tex. 2001), aff'd 35 Fed. Appx. 390 (5th Cir. 2002) (recognizing that the
availability of class action tolling for Rule l0b-5 claims "might be questionable given the [Supreme Court's] holding
in Lampf that the three-year period of repose [is] 'fundamentally inconsistent' with equitable tolling").  Moreover,
the Fourth Circuit has rejected the reasoning employed in the decisions that have ruled contrary to Defendants'
position.  Compare Prieto, 132 F. Supp. 2d at 519 (describing Joseph as holding that "class action tolling is legal
rather than equitable in nature") (internal quotation marks omitted) with Wade v. Danek Med., Inc., 182 F.3d 281,
286 (4th Cir. 1999) (characterizing American Pipe doctrine as "equitable tolling").

any orders of the district court touching upon the substance of the matter on appeal are considered null and void if entered subsequent to the timely filing of the notice of appeal.  See, e.g., Sagone v. Florence County Det. Ctr, CA-92-1807-4-2-JI, 1995 WL 354871 (4th Cir. June 14, 1995) (due to lack of jurisdiction, magistrate judge's order entered following docketing of appeal in the Fourth Circuit was "of no effect"); Princz v. F.R.G., 998 F.2d 1 (D.C. Cir. 1993) (motion for stay unnecessary because the filing of a notice of appeal divests the district court of jurisdiction).

Therefore, where as here, Defendants take a timely Section 1291 appeal based on an explicit right to avoid the burdens of litigation (in this case, a statute of repose that protects against untimely class claims), the district court is ousted of jurisdiction and district court proceedings relating to the class claims must cease while the appeal is pending.  As the Seventh Circuit explained in the context of an appeal of the denial of a qualified immunity defense (to which the Ninth Circuit found a statute of repose analogous, see Estate of Kennedy, 283 F.3d at 1110):

> The question on an appeal … is whether the defendant may be subjected to trial. The justification for the interlocutory appeal is that the trial destroys rights created by the immunity.  It makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one….  It follows that a proper [appeal from the denial of a qualified immunity defense] divests the district court of jurisdiction (that is, authority) to require the appealing defendants to appear for trial.  Cf. Harlow [v. Fitzgerald], 457 U.S. at 818, 102 S. Ct. at 2738 ("Until this threshold immunity question is resolved, discovery should not be allowed.").

Apostol v. Gallion, 870 F.2d 1335, 1338 (7th Cir. 1989) (citations omitted).  See also Stewart v. Donges, 915 F.2d 572, 576 (10th Cir. 1990) (a collateral order appeal from an order refusing to dismiss on double jeopardy or qualified immunity grounds "relates to the entire action and,

therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant").[4]  Here, similarly, holding proceedings concerning the Davis settlement and other facets of the class claims while appeal is pending would destroy Defendants' rights created by the statute of repose and the collateral order doctrine.

For these reasons, Defendants respectfully submit that any action concerning the proposed Davis settlement must await resolution of their appeal.

## II.    PLAINTIFFS' PROPOSAL FOR APPROVAL OF A PARTIAL SETTLEMENT WITH DEFENDANT DAVIS IS WITHOUT MERIT.

Plaintiffs' proposed partial settlement with Defendant Davis should be rejected on the merits if and when the Court addresses it.

### A.    Plaintiffs' Proposal Would Unjustifiably Diminish Non-Settling Defendants' Contribution Rights and is Void for Lack of Consideration to Class Members

Plaintiffs' "settlement proposal" -- releasing their claims against Defendant Davis for little more than the proverbial peppercorn (i.e., Davis' cooperation plus $100) -- is both unfair to the absent class members and (if the Court were to grant the sweeping bar order Plaintiffs propose) to non-settling defendants.[5]

---

[4]    Assuming arguendo that the class representatives remain entitled to proceed with their individual claims, this would not affect the conclusion that defendants are entitled to take an appeal with respect to the class claims and that such an appeal forecloses further proceedings involving those claims.  See, e.g., Behrens v. Pelletier, 516 U.S. 299, 311-12, 116 S. Ct. 834, 841-42 (1996) (rejecting argument that an official-immunity appeal cannot be taken as to some claims when the defendant remains exposed as to other claims); Young v. Lynch, 846 F.2d 960, 961-63 (4th Cir. 1988).

[5]    Plaintiffs assert that "Non-Settling Defendants have absolutely no standing to object to any part of this Settlement" because "the contribution bar order incorporated in the Proposed Orders . . . is statutorily mandated [by Section 21D(f)] and because the Exchange Act mandates that any judgment against Non-Settling Defendants be reduced by the portion of fault a jury ultimately attributes to Davis."  Plaintiffs' Memorandum of Law in Support of Their Motion for Final Approval of Partial Settlement (hereinafter "Pl. Br.") at 5 n.5.  To the contrary, "[t]here is a consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example, or to invalidate its contract

The only meaningful explanation provided by Plaintiffs for their contention that their proposed "settlement" is in the interests of the class is that it would provide the factual specificity for a complaint that would enable Plaintiffs to survive a motion to dismiss pursuant to the Reform Act and Fed. R. Civ. P. 9(b). See, e.g., Pl. Br. at 17 ("If, for instance, this Court grants any of the Non-Settling Defendants' motions to dismiss, Plaintiffs believe the information they received from Davis will enable them to re-plead their allegations with greater specificity."); id. at 21 (information from Davis "will enable [Plaintiffs] better to establish their claims").

However, now that Plaintiffs have survived Defendants' motions to dismiss without the Davis testimony and now that they are not precluded by the automatic stay provision from taking discovery, the Plaintiff class receives nothing of value in the proposed settlement. Indeed, by agreeing to release Davis in return for nothing more than his partial cooperation,[6] Plaintiffs are

rights." In re Rite Aid Corp. Sec. Litig., 146 F. Supp.2d 706, 716 n.12 (E.D. Pa. 2001)(citation and internal quotation marks omitted). And Plaintiffs neglect to mention that under Exchange Act Section 21D(f)(7)(B), 15 U.S.C. § 78u-4(f)(7)(B), any eventual verdict must be reduced by **the greater of** (1) an amount corresponding to Mr. Davis' responsibility, or (2) the amount paid by Mr. Davis (i.e., a *pro tanto* reduction, see In re Jiffy Lube Sec. Litig., 927 F.2d 155, 160 n.3 (1990)). The Fourth Circuit has stated that a *pro tanto* offset "exposes the non-settling defendant to liability for any deficiency in the judgment, so a hearing on fairness of the settlement to the non-settling defendant is required for approval." Id. While Jiffy Lube was decided prior to the Reform Act and therefore did not address whether the Reform Act's provision for an alternative proportional fault setoff alters this conclusion, Defendants submit that the Reform Act was intended to provide a meaningful *pro tanto* setoff and does not contemplate that a plaintiff would settle a class action for nominal compensation. Accordingly, it is unfair to force Defendants to accept a forfeiture of any meaningful *pro tanto* reduction (and to be left to the vagaries of a proportionate fault determination) without a fairness hearing.

In any event, "[r]egardless of whether Defendants formally have standing (in which case this Court is obligated to consider their arguments), nothing in the Reform Act prevents this Court from considering the arguments raised and authorities cited by Defendants. This is especially appropriate here where the [absence of class members] … prevents any adversarial presentation of this issue." In re First Union, 157 F. Supp.2d 638, 641 (W.D.N.C. 2000) (citation omitted).

6        Although Plaintiffs frequently refer to their agreement with Davis as providing for "full cooperation," the information that Davis has promised to provide is limited as follows: "Plaintiffs are aware that Davis has knowledge of various allegations of the Complaint that he is currently unable to discuss." Stipulation at ¶ C-5. See also

gratuitously foregoing their broad discovery rights under the Federal Rules of Civil Procedure to engage in document requests, interrogatories, and depositions, in order to elicit whatever "partial" information Davis possesses. Moreover, any testimony Davis provides pursuant to discovery may be less susceptible to impeachment and therefore more valuable than the information provided pursuant to the proposed settlement because such information would not be given in exchange for valuable consideration.

Plaintiffs, apparently mindful of the extraordinary nature of the free pass they propose to bestow upon Davis, struggle to discount Davis' ability to contribute to any potential judgment. Plaintiffs contend "Davis is in no position to satisfy any judgment ultimately won against him in anything but the most nominal way." Pl. Br. at 23. But Section 803 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 523(a), provides that debts incurred in violation of federal or state securities laws in federal and state judicial and administrative proceedings are non-dischargeable in bankruptcy. The relevant inquiry therefore is not how much of a judgment Davis can satisfy today, but how large a judgment he can pay over the course of his lifetime.

Plaintiffs recognize that Davis is potentially covered by Creditrust's D&O policy, Pl. Br. at 23, but claim coverage "would likely have [been denied] . . . if Plaintiffs had proved intentional conduct on the part of Davis." Id. Plaintiffs' equivocation on this issue should not be countenanced. Either Plaintiffs believe they can "prove[] intentional conduct on the part of Davis" (in which case, other than the uncorroborated word of an intentional wrongdoer, Plaintiffs have no basis to exclude the possibility that it was solely Davis who committed any

---

Goldberg Decl. (attached as Exhibit 2 to Plaintiffs' "Motion for Final Approval of Partial Settlement") ¶ 13 ("Davis told Plaintiffs' Lead Counsel that he was disabled from discussing certain issues relating to the allegations of the Complaint. He also said that he was unable to disclose why he is so disabled.").

wrongdoing that occurred) or Davis may be entitled to coverage and Plaintiffs may be denying the class a valuable claim.

**B.    The Proposed Partial Settlement is an Illegal Gratuity and is Void Against Public Policy.**

Plaintiffs' proposed partial settlement also should be rejected because it is nothing more than an inducement to testify in clear contravention of law and public policy.  Defendant Davis unquestionably received the offer of a valuable settlement in exchange for his testimony. Plaintiffs have admitted that the settlement with Davis was concluded only after Davis:

> previewed for [Plaintiffs] the information he possessed that tended to support Plaintiffs' claims against Non-Settling Defendants.  Thereafter, on November 7, 2001, Plaintiffs entered into a Memorandum of Understanding ("MOU") memorializing the basic outline of the settlement.  Pursuant to the MOU, Davis . . . sat for a day long interview, under oath.

(Goldberg Decl. ¶¶ 9, 10.)

Accordingly, Plaintiffs' proposed settlement is contrary to 18 U.S.C. § 201(c)(2), which imposes criminal penalties on "[w]hoever . . . directly or indirectly gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a . . . proceeding, before any court."  See United States v. Singleton, 165 F.3d 1297, 1299 (10th Cir. 1999) (en banc) (government's promise of lenient treatment in exchange for testimony likely would constitute a violation of Section 201(c)(2) but for the fact that the term "whoever" specifically excludes the government); United States v. Richardson, 195 F.3d 192, 196-97 (4th Cir. 1999) (same).  The Singleton panel decision provides the most cogent explanation of why 18 U.S.C. § 201(c)(2) applies to the present case. See United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998).  That decision has been vacated

and criticized by the Fourth Circuit and other courts on the ground that the statute is inapplicable to the government.  See, e.g., Singleton, 165 F.3d at 1299; Richardson, 195 F.3d at 196-97. Significantly, the Fourth Circuit and most other Courts have not taken issue with the Singleton panel's underlying premise that promises of leniency in exchange for testimony by persons other than the government (such as Plaintiffs) violate the plain terms of the statute.  And the fact that Plaintiffs' proposal is inconsistent with the plain terms of the statutory text is dispositive.  Courts must apply the "unqualified language of a statute" and "may not create their own limitations on legislation, no matter how alluring the policy argument for doing so."  Brogan v. United States, 522 U.S. 398, 406-08, 118 S. Ct. 805, 811-12 (1998) (invalidating long-standing "exculpatory no" doctrine under 18 U.S.C. § 1001 "[b]ecause the plain language of [the statute] admits of no exception" for the doctrine).

Wholly apart from Section § 201(c)(2), courts as a matter of common law have condemned compensation of fact witnesses in excess of ordinary witness fees.  See, e.g., Alexander v. Watson, 128 F.2d 627, 630 (4th Cir. 1942) ("we know of no authority which would justify an allowance to witnesses in excess of ordinary witness fees, however valuable their testimony may have been to the parties calling them to testify").  ***This condemnation applies as much to protection from liability in exchange for a witnesses' cooperation as it does to other forms of inducement***.  In the words of one court:

> ***The payment of a sum of money to a witness to "tell the truth" is as clearly subversive of the administration of justice as to pay him to testify to what is not true. . . . [Such payments] are absolutely indefensible and . . . are really included in the general definition of subornation of perjury.***  . . .  [T]he court finds nothing improper in the reimbursement of expenses incurred by Mr. Beu. . . . But ***in providing Mr. Beu with protection from liability in the Dover litigation,***

9

> *and in this action, as a means of obtaining his cooperation as a fact witness,*
> *ICC and Solvent went too far.*

State of N.Y. v. Solvent Chem. Co., 166 F.R.D. 284, 289-90 (W.D.N.Y. 1996) (citations and

internal quotation marks omitted) (emphasis added).  See also Dyll v. Adams, 1997 WL 222918

at *1, *3 (M.D. Tex. Apr. 29, 1997) (condemning as inappropriate an offer of a favorable

settlement in exchange for "information that will be useful in the trial against [a defendant]" plus

"[a] monetary payment to [the plaintiff] in an amount to be discussed and negotiated;" the court

concluded that the settlement offer was effectively equivalent to cash).[7]

In light of these authorities, Plaintiffs' proposal to release Davis from a potentially large

judgment in exchange for his favorable testimony should be rejected.

### C.    Plaintiffs' Proposed Partial Settlement is Contrary to the Reform Act

Finally, Plaintiffs' proposal is inconsistent with the Reform Act's ban on secret

settlements.  Exchange Act Section 21D(a)(5) provides:

> RESTRICTIONS ON SETTLEMENTS UNDER SEAL – The terms and
> provisions of any settlement agreement of a class action shall not be filed under
> seal, except that on motion of any party to the settlement, the court may order
> filing under seal for those portions of a settlement agreement as to which good
> cause is shown for such filing under seal.  For purposes of this paragraph, good

---

[7]    In various submissions, Plaintiffs have contended that cooperation as a form of consideration has been approved by courts.  Unlike in the present case (where a settlement was offered to Davis only after Plaintiffs "previewed" his testimony), there is no indication in these cases that the settlement was contingent in any way on whether the settling defendant would provide favorable testimony.  Moreover, the cooperation provided in the cases Plaintiffs cite was ancillary to a substantial monetary settlement.  Consequently, the release of claims against plaintiffs in these cases is appropriately regarded as having been given in exchange for a cash settlement rather than for testimony.  The cooperation provisions in these agreements essentially did no more than preserve the discovery rights that plaintiffs would otherwise have had against defendants had the litigation continued.  In any event, because there is no indication that the litigants in the cases cited by Plaintiffs raised the public policy issues adduced by Defendants here, the cases illustrate at most that "unexamined assumptions … [may] becom[e], by force of usage, unsound law."  McCormick v. United States, 500 U.S. 257, 280, 111 S. Ct. 1807, 1820 (1991) (Scalia, J. concurring).

cause shall exist only if publication of a term or provision of a settlement agreement would case direct and substantial harm to any party.

The purpose of this provision is to enable absent class members to assess the merits of the settlement and (if they believe it is inadequate) to object to the settlement prior to court approval.  Plaintiffs' filing of crucial settlement-related documents not only under seal but *in camera* and *ex parte* thus is completely at odds with the Reform Act.  Plaintiffs' motion should be denied for this reason alone.

III.    CONCLUSION

Consideration of Plaintiffs' proposed "partial settlement" should be deferred pending resolution of Defendants' appeal in the Fourth Circuit.  Thereafter, if further proceedings are still warranted, Plaintiffs' proposal should be rejected.

Date: May 29, 2003

Respectfully submitted,


_____/s/_____
KIRKPATRICK & LOCKHART LLP
Charles Lee Eisen (Bar No. 02538)
Jeffrey B. Maletta (Bar No. 11852)
Nicholas G. Terris (Bar No. 015124)
Jon A. Stanley
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036-1800
Tel : 202.778.9077
Fax : 202.778.9100
Counsel for Defendant Joseph K. Rensin


_____/s/_____
FULBRIGHT & JAWORSKI L.L.P.
Matthew H. Kirtland (Bar No. 26089)
(signed by Nicholas G. Terris with permission of
Matthew H. Kirtland)
Stephen M. McNabb
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
Tel: (202) 662-0200
Fax: (202) 662-4643
Counsel for Defendant Richard J. Palmer