**IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN RE CREDITRUST CORPORATION SECURITIES LITIGATION** | **Civil Action No. MJG 00-CV-2174** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR  FINAL APPROVAL OF THE SETTLEMENT AND
<u>PLAN OF ALLOCATION</u>**

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re A.H. Robins, Co.,
    880 F.2d 709 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

American Canoe Ass'n. v. United States EPA,
    54 F. Supp. 2d 621 (E.D. Va. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Austrian & German Bank Holocaust Litig.,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Baldwin-United Corp.,
    607 F. Supp. 1312 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Carson v. American Brands, Inc.,
    450 U.S. 79 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Central Wesleyan College v. W.R. Grace & Co.,
    6 F.3d 177 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cotton v. Hinton,
    559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Evans v. Jeff D.,
    475 U.S. 717 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Flinn v. FMC Corp.,
    528 F.2d 1169 (4th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 15

Florida Trailer & Equip. Co. v. Deal,
    284 F.2d 567 (5th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re GNC Shareholder Litig.,
    668 F. Supp. 450 (W.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hill v. Art Rice Realty Co.,
    66 F.R.D. 449 (N.D. Ala. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Horton v. Merrill Lynch, Pierce, Fenner & Smith,

855 F. Supp. 825 (E.D.N.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 15

In re Jiffy Lube Sec. Litig.,
    927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 15

Marshall v. Holiday Magic, Inc.,
    550 F.2d 1173 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Montgomery County Real Estate Antitrust Litig.,
    83 F.R.D. 305 (D. Md. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Reilly v. Tucson Elec. Power Co.,
    512 U.S. 1220 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Robbins v. Koger Properties,
    116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

South Carolina Nat'l Bank v. Stone,
    139 F.R.D. 335 (D.S.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13, 15, 16

Strang v. JHM Mortgage Sec. L.P.,
    890 F. Supp. 499 (E.D. Va. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12, 15

Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States Fidelity & Guar. Co. v. Patriot's Point Dev. Auth.,
    772 F. Supp. 1565 (D.S.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re United States Oil & Gas Litig.,
    967 F.2d 489 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. North Carolina,
    180 F.3d 574 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Vaughns v. Board of Educ.,
    18 F. Supp. 2d 569 (D. Md. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 12

Zimmerman v. Bell,
    800 F.2d 386 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# FEDERAL STATUTES

28 U.S.C.A. §1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 8

Fed. R. Civ. P. 23(e)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 23(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. 78u-4(a)(3) . . . . . . . . . . . . . . 3

## <u>MISCELLANEOUS</u>

<u>Manual For Complex Litigation, Third Ed.</u> § 30.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plaintiffs, on behalf of themselves and the Class, as those terms are defined herein, hereby request final approval, pursuant to F.R.Civ. P. Rule 23(e), of the proposed settlement with defendants Joseph Rensin ("Rensin") and Richard Palmer ("Palmer") (collectively, the "Settling Defendants") (the "Settlement").[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs submit that the Settlement of this class action (the "Action" or the "Litigation") for $7.5 million in cash plus interest represents an excellent result for the Class, particularly in light of the substantial risks Plaintiffs faced. These included the risk of proving both liability and damages against the Settling Defendants; the risk of maintaining class certification, particularly in view of Settling Defendants' F.R. Civ. P. 23(f) appeal of this Court's class certification Order pending before the United States Court of Appeals for the Fourth Circuit at the time the Settlement was reached; and the risk of collecting on any judgment.

This Settlement is the result of both vigorous advocacy by Lead Counsel as well as hard fought negotiations between counsel experienced in class action securities litigation. The Settlement was not reached until the Court denied Settling Defendants' motions to dismiss and granted other defendants' motions to dismiss; Plaintiffs conducted exhaustive investigation; this Court granted Plaintiffs' Motion for Class Certification after extensive class discovery; the Fourth Circuit granted Settling Defendants' Rule 23(f) petition; and after full briefing on the 23(f) appeal, the parties were a single day away from oral argument before the Fourth Circuit. Thus, at the time the Settlement was reached, both sides had a full understanding of the strengths and weaknesses of

---

[1]    The complete terms of the Settlement are set forth in the Stipulation of Settlement, filed with the Court on January 24, 2005.

plaintiffs' claims and the Settling Defendants' defenses.  It is Lead Counsel's considered opinion that the Settlement is fair, reasonable and adequate, and should be approved by the Court.

The fairness of the Settlement is also confirmed by the favorable reaction of the members of the Class.  Pursuant to an Order of this Court entered January 28, 2005, over 4, 600 copies of the Notice of Settlement of Class Action (the "Notice") have been sent to individual members of the Class and nominees for Class members, such as brokerage firms.[2]  In addition, a summary notice was published in the national edition of <u>The Wall Street Journal</u> on February 25, 2005.  The deadline for objecting to the Settlement was April 1, 2005.  As of April 15th, not a single Class member has objected to the Settlement, nor have any requests for exclusion been received.  This response to the Notice program evidences the Class' support for the Settlement.

II.     **INTRODUCTION**[3]

Creditrust Corporation ("Creditrust" or the "Company") was in the business of purchasing charged off credit card debt.  Creditrust's business plan called for collecting more on the debt it purchased than the combined purchase price and cost of collections.  To determine whether to purchase a pool of such debt, Creditrust claimed that it had a state of the art, proprietary portfolio analysis tool ("PAT") that enabled it to predict, with remarkable precision, what it would collect on the debt it purchased.  Because Creditrust accounted for collections using the interest method,

---

[2]     The Affidavit of Edward Sincavage describing the Notice program ("Sincavage Affidavit") is being filed concurrently as Exhibit A to the Declaration of Todd Collins in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Attorneys' Expenses and Reimbursement of Lead Plaintiffs' Expenses (the "Collins Declaration").

[3]     A more detailed account of the facts and the course of proceedings in this Action is contained in the Collins Declaration, which is submitted herewith, and incorporated herein.

these predictions of collections formed the basis of Creditrust's reported results. That is, the Company used the PAT predictions directly to determine what revenue and earnings it reported to the public. Thus, the accuracy of the PAT predictions was a matter of utmost significance to investors.

Plaintiffs allege that defendants directly and purposefully manipulated the PAT program, infecting virtually all PAT predictions throughout the Class Period, leading Creditrust to falsify the financial results it reported to the public. Plaintiffs allege that Creditrust and defendants attempted to conceal this manipulation from the public. Plaintiffs also allege that the historical collections of Creditrust were falsified, all to present a positive picture to investors.

This action was commenced on July 14, 2000, when plaintiff Ronald Conlon filed a complaint (the "Conlon Complaint"), alleging that various former officers of Creditrust, including Settling Defendants, violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. The Conlon Complaint defined the Class Period as July 29, 1998 through and including March 31, 2000, and asserted that Settling Defendants Joseph Rensin, former Chief Executive Officer of the Company ("Rensin"), and Richard Palmer, former Creditrust Chief Financial Officer ("Palmer"), along with former Chief Operating Officer Barry Dumser, and former Vice President John Davis (collectively, the "Management Defendants") caused Creditrust to inflate estimates of what it would collect on receivables, thereby causing the Company to inflate its revenues by $4.9 million in pre-tax earnings for 1999. After the Conlon Complaint was filed, five other complaints were filed, alleging substantially similar allegations.

On September 12, 2000, three separate motions for appointment of lead plaintiff and approval of lead counsel were filed pursuant to the Private Securities Litigation Reform Act

("PSLRA"), 15 U.S.C. 78u-4(a)(3).  On January 23, 2001, the Court ordered that the six actions be consolidated for all pretrial purposes.  On March 21, 2001, the Court appointed Class members Barry Kimmelman and Terri Roop as Lead Plaintiffs.  On May 7, 2001, Lead Plaintiffs filed the Consolidated Amended Complaint ("Amended Complaint").

The Amended Complaint added defendants, including: Jefferson  Moore, a Creditrust Vice President; (2) four directors of Creditrust (the "Director Defendants"); and (3) two underwriters (the "Underwriter Defendants")  In addition, the Amended Complaint added, against defendants Rensin and Palmer, the Director Defendants and the Underwriter Defendants, claims for violations of Section 11 of the Securities Act of 1933 (the "Securities Act"), and, against defendants Rensin and Palmer and the Director Defendants, claims for violation of Section 15 of the Securities Act.

After several extensions of time, Defendants Rensin and Palmer moved to dismiss the Amended Complaint on statute of limitations and other grounds on September 21, 2001, and September 24, 2001 respectively.   Each of the Director Defendants and the Underwriter Defendants moved to dismiss as well.

At approximately the same time, plaintiffs negotiated a proposed settlement of the action with defendant John Davis, which was memorialized in a Memorandum of Understanding on November 2, 2001 and a January 11, 2002 Stipulation of Settlement.  Mr. Davis sat for an examination under oath on November 29, 2001 as part of that negotiated settlement.  This Court preliminarily approved that settlement on June 4, 2002[4].

_____

[4]       Subsequently, the Court, following extensive briefing by the parties, denied, without prejudice, the motion to approve the Davis Settlement.  Davis, with whom Plaintiffs sought to settle primarily for purposes of having access to material information with respect to Rensin and Palmer, will be released in connection with the proposed Settlement with Settling Defendants.

On August 1, 2002, this Court denied Rensin's and Palmer's motions to dismiss, finding that the Amended Complaint was not time barred because it related back to the timely filed initial complaints, pursuant to Rule 15(c)(2).  The Court granted the remaining defendants' motions to dismiss.  On August 29, 2002, Rensin and Palmer filed a motion for leave to file an interlocutory appeal under 28 U.S.C.A. §1292(b), based on their relation back/statute of limitations argument. Although this Court certified that appeal on September 24, 2002, the Fourth Circuit denied permission for Rensin and Palmer to appeal on October 25, 2002.

Plaintiffs filed their Motion for Class Certification on September 18, 2002.  Defendants engaged in an extensive effort to defeat class certification, deposing lead plaintiff Kimmelman on December 10, 2002 and representative plaintiffs Mack and Endrizzi on December 12 and December 16, respectively.  On April 30, 2003 this Court certified the action as a class action.  In doing so, the Court rejected Settling Defendants' arguments that Plaintiffs' class certification motion was untimely filed as the statutes of limitation and repose for the Action had allegedly run as to all unnamed putative class members, and that Lead and Representative plaintiffs were not typical or adequate under Fed. R. Civ. P. 23.   On May 14, 2003, Rensin and Palmer filed their Rule 23(f) Petition, seeking the Fourth Circuit's review of the  Court's class certification Order. Plaintiffs pressed on with discovery until August 1, 2003, when Rensin and Palmer filed a motion with this Court  to stay all proceedings pending their appeal of the class certification decision to the Fourth Circuit.

Settling defendants filed their Fourth Circuit brief on October 14, 2003.  Settling Defendants contended that the class Certification Order should be overturned because Plaintiffs' Motion for Class Certification was filed beyond the Action's statute of limitations and statute of repose and was thus untimely; Plaintiffs' original Complaint was insufficiently pled, and could not

5

provide a basis for the "relation back" of the Amended Complaint; and Lead Plaintiffs were neither typical nor adequate. Plaintiffs filed their brief in response on November 17, 2003. The parties, recognizing the significant risks to each side posed by the pending appeal involving issues of first impression, engaged in settlement discussions shortly after the filing of their respective briefs. On-going negotiations led to an agreement just one day prior to scheduled Fourth Circuit oral argument on February 24, 2004. Oral argument was cancelled, and the case was remanded to this Court for consideration of the proposed Settlement.

    After further extended negotiation, the parties agreed on a Memorandum of Understanding and Preliminary Escrow Agreement on May 24, 2004. Thorny issues remained, and Plaintiffs ultimately submitted the Stipulation and Agreement of Settlement to this Court with their Motion for Preliminary Approval of the Settlement on January 24, 2005. This Court granted preliminary approval of the proposed settlement and plan of allocation on January 28, 2005.

    The proposed Settlement meets all of the standards for settlement approval under Fed. R. Civ. P. 23(e) and the PSLRA. The Class's positive reaction to the settlement is further evidence that the Settlement is fair, reasonable, and adequate. Some 4,600 Notices have been sent to Class members, and yet to date not a single objection to the Settlement has been filed.

    In light of the complexities presented by the prosecution of this Action, Plaintiffs' and Counsel's diligence in their prosecution of the Action in order to obtain the best result possible for the Class, and the considerable risk that the Class faced in further litigation, Plaintiffs respectfully submit that the Settlement should be granted final approval as fair, reasonable, and adequate, and in the best interests of Class members.

### III.    TERMS OF THE SETTLEMENT

6

The Settlement results in the creation of an all-cash settlement fund of $7.5 million (the "Gross Settlement Fund"). The Gross Settlement Fund, with interest, less all taxes, approved costs, fee and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants"). The Gross Settlement Fund was deposited on June 3, 2004 and it is earning interest. The current value is $7,573,597.25.

### 1. Plan of Allocation

The Net Settlement Fund will be allocated among all Authorized Claimants in proportion to the recognized losses of the Authorized Claimants. Lead Counsel have consulted with their damage experts and have developed a Plan of Allocation that reflects an assessment of the damages that Lead Counsel believe could have been recovered if plaintiffs had been entirely successful in establishing liability and all recoverable damages against Settling Defendants. The Plan of Allocation is set forth in the Notice.

The Plan of Allocation is crafted to pay a larger share of the Settlement proceeds to Class members who purchased before and sold after, or else both purchased and sold after, a key event on December 13, 1999. On this day, as Plaintiffs allege in the Amended Complaint, "Creditrust began to disclose the fraud in which it had engaged", when the Company announced that a management employee had misdirected approximately $500,000 in Company funds. Amended Complaint, paragraph 139. The Plan of Allocation pays a smaller share of the Settlement proceeds to Class members who both purchased and sold before December 13, 1999, since any losses such persons suffered were unrelated to the market's reaction to disclosure with respect to the misrepresentations and omissions that Plaintiffs allege.

Accordingly, for shares sold on or before December 12, 1999, the amount of loss recognized for Settlement administration purposes ("Recognized Loss") is capped at ten cents per share.

For shares purchased during the Class Period and held through the end of the Class Period on May 31, 2000, Recognized Loss equals the purchase price less 46 cents per share (which was the closing price of Creditrust stock the next day, June 1, 2000). For shares purchased during the Class Period and sold between December 13, 1999 (the partial disclosure date discussed above) and the end of the Class Period on May 31, 2000, Recognized Loss per share is the difference between purchase price and sale price.

In the interest of economy, no payment will be made to any Class member who submits a valid claim if his share of the Settlement proceeds, if paid, would be less than $7.50 in total.

## IV.    THE SETTLEMENT SHOULD BE APPROVED UNDER FED. R. CIV. P. 23(e)

### A.    The Approval Process and Standards Governing Class Action Settlements under Fed. R. Civ. P. 23

The Federal Rules of Civil Procedure provide that "[t]he Court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class. . ." Fed. R. Civ. P. 23(e)(1)(A). The role of a court "in reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e), is to assure that the procedures followed meet the requirements of the rule and comport with due process and to examine the settlement for fairness and adequacy." Vaughns v. Board of Educ., 18 F. Supp. 2d 569, 578 (D. Md. 1998).[5]

---

[5]    Federal courts strongly favor settlement of class actions on terms negotiated by the parties. Carson v. American Brands, Inc., 450 U.S. 79, 87-88 (1981) (allowing interlocutory appeal of district court order refusing to enter consent decree settling class action); Evans v. Jeff D., 475 U.S.

(continued...)

Generally, approval of a class action settlement is a two-step process.  Horton v. Merrill Lynch, Pierce, Fenner & Smith, 855 F. Supp. 825, 827 (E.D.N.C. 1994).  See also Manual For Complex Litigation, Third Ed. § 30.41, at 236 (West/Fed. Jud. Cntr. 1995) (hereafter, "Manual").  In the first step, the court preliminarily approves the settlement and directs that notice under Rule 23(e) be given to the class members.  Manual § 30.41, at 237.  This step has already  been completed in this Action.  There is no question that the Notice given to the Class easily satisfied the requirements of due process, being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-74 (1974). see Sincavage Affidavit at ¶¶3-12.

In the second step, the court conducts a "fairness" hearing at which all interested persons may be heard before the court finally approves the proposed settlement.  Horton,  855 F. Supp. at 827.  See also Manual § 30.41, at 237.  The court then must analyze various factors to determine if the proposed settlement is "fair" and "adequate."  In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158

---

<sup>5</sup>      (...continued)
717, 732-36 (1986) (explaining benefits of class action settlements for plaintiffs, defendants and the courts).  As the Fourth Circuit has stated, "[c]ourts should foster settlement [of class actions] in order to advantage the parties and promote 'great saving in judicial time and services.'"  Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993) (quoting In re A.H. Robins, Co., 880 F.2d 709, 740 (4th Cir. 1989)).  See also Zimmerman v. Bell, 800 F.2d 386, 392 (4th Cir. 1986) (noting that by approving settlement "disputes are resolved" and "the resources of litigants and courts are saved"); United States Fidelity & Guar. Co. v. Patriot's Point Dev. Auth., 772 F. Supp. 1565, 1572 (D.S.C. 1991) (noting three policies at work in a Rule 10b-5 case: punishing wrongdoers, limiting liability to relative culpability, and encouraging settlements); In re United States Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[I]n class action suits, there is an overriding public interest in favor of settlement.").

(4th Cir. 1991); <u>Strang v. JHM Mortgage Sec. L.P.</u>, 890 F. Supp. 499 (E.D. Va. 1995); <u>Horton</u>, 855 F. Supp. at 828-34.  In assessing the fairness and adequacy of a proposed settlement, moreover, "there is a strong initial presumption that the compromise is fair and reasonable." <u>South Carolina Nat'1 Bank v. Stone</u>, 139 F.R.D. 335, 339 (D.S.C. 1991) (internal quotation marks omitted).  <u>See</u> <u>also Vaughns</u>, 18 F. Supp. 2d at 578 (strong public policy favors settlement agreements, and courts should approach them with a presumption in the agreement's favor).

Ultimately, approval of a class action settlement is committed to "the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of all the relevant circumstances."  <u>Evans</u>, 475 U.S. at 742; <u>accord</u> <u>In re Jiffy Lube</u>, 927 F.2d at 158; <u>Strang</u>, 890 F. Supp. at 501.[6]  The relevant circumstances and factors identified by the Fourth Circuit in <u>Jiffy Lube</u>, as discussed below, all strongly support the fairness and adequacy of the proposed Settlement here.

### B.    <u>The Proposed Settlement Is Fair</u>

In order to conclude that the Settlement is "fair," the Court must determine that the Settlement was reached as a result of good-faith bargaining at arm's-length and without collusion by looking at the following four factors:  (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding

---

[6]    In exercising its discretion, the court should limit the fairness hearing to what is necessary to make "an informed, just and reasoned decision."  <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1173 (4th Cir. 1975).  The Court should not turn the fairness hearing into a trial on the merits, or attempt to resolve unsettled legal issues.  <u>Id.</u> at 1172-73.  Indeed, "[t]he trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." <u>Cotton</u>, 559 F.2d at 1330 (internal quotation marks omitted).

the negotiations; and (4) the experience of counsel in the area of class action securities litigation. Jiffy Lube, 927 F.2d at 159; Strang, 890 F. Supp. at 501; South Carolina Nat'l Bank, 139 F.R.D. at 339; In re Montgomery County Real Estate Antitrust Litig., 83 F.R.D. 305, 315 (D. Md. 1979).

### 1.    The Posture of the Case at the Time of the Settlement

The Settlement was agreed upon just one day prior to oral argument before the Fourth Circuit on Rensin and Palmer's interlocutory appeal from this Court's Order granting class certification.  As such, the Action had proceeded significantly to a point where Lead Counsel understood the strengths and weaknesses of both Plaintiffs' and Settling Defendants' cases. Indeed, Lead Counsel had not only fully researched the facts and law in connection with their case, they had: (1) filed an Amended Complaint, (2) defeated motions to dismiss; (3) obtained class certification; (4) conducted voluminous discovery including the review of  thousands of documents; (5) consulted extensively with experts; and (6) negotiated  partial settlements with other defendants.  Accordingly, Lead Counsel had a good indication of their chances of prevailing through the pending appeal, summary judgment, and through trial and subsequent appeals  if they had pursued trial on the merits against the Settling Defendants.

The stage of the litigation at which the Settlement was reached supports a finding of fairness.  See, e.g., South Carolina Nat'l Bank, 139 F.R.D. at 339 (first Jiffy Lube factor has been found to be satisfied where "[a]ll defendants had answered the complaint and all motions to dismiss had been ruled upon at the time of these settlements"); Strang, 890 F. Supp. at 501 (finding settlement was "fair" even where there was no formal discovery, but plaintiffs conducted sufficient informal discovery and investigation to fairly evaluate merits of defendants' positions during settlement negotiations).

11

### 2.    <u>The Extent of Discovery Conducted</u>

Assessing the extent of discovery ensures that counsel are fully informed of the evidence to support the parties' positions. <u>Vaughns</u>, 18 F. Supp. 2d at 579. Plaintiffs had completed substantial discovery on the merits prior to reaching the Settlement. Indeed, Lead Counsel had reviewed thousands of pages of documents and worked extensively with forensic accounting experts throughout the litigation to closely analyze Creditrust's public financial statements and accounting practices during the Class Period. This discovery substantiated Lead Counsel's belief that the Settlement is in the best interests of the Class, and provided an ample basis to support Lead Counsel's decision to recommend the Settlement. <u>See Horton</u>, 855 F. Supp. at 830 (overruling objectors to settlement where "the discovery conducted by class counsel . . . was sufficient to allow counsel and the court to evaluate the limited class claims"); <u>South Carolina Nat'l Bank</u>, 139 F.R.D. at 339 (settlement reached in good faith and without collusion where, among other things, all defendants had answered complaint, all motions to dismiss ruled on, and discovery largely completed). Moreover, although far from the situation here, it is worth noting that courts have approved settlements even where there has been no formal discovery. <u>See</u>, <u>e.g.</u>, <u>Strang</u>, 890 F. Supp. at 501; <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), <u>aff'd sub nom.</u>, <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78 (2d Cir. 2001).

### 3.    <u>The Circumstances Surrounding the Negotiations</u>

Courts also examine whether the settlement is the result of "arm's-length negotiations" between counsel possessed of "'experience and ability . . . necessary to effective representation of the class's interests.'" <u>In re Austrian & German Bank</u>, 80 F. Supp. 2d at 173

12

(citation omitted). As the Court stated in <u>South Carolina Nat'l Bank</u>, absent collusion, a court

should give significant weight to the judgment of counsel:

> The negotiations in this case were conducted by able counsel who
> have a substantial amount of litigation experience in this sort of
> complex securities action. Finding no indication of any collusion, it
> is therefore appropriate for the court to give significant weight to the
> judgment of class counsel that the proposed settlement is in the
> interest of their clients and the class as a whole.

139 F.R.D. at 339.  <u>See</u> <u>also</u> <u>American Canoe Ass'n. v. United States EPA</u>, 54 F. Supp. 2d 621,

625 (E.D. Va. 1999). The circumstances of the negotiations here demonstrate that the parties

negotiated at arm's-length.  The negotiations were extended, they frequently reached impasse, and

the parties achieved a settlement in principle only on the eve of oral argument on a crucial

interlocutory appeal.  Throughout the litigation, as evidenced by the hard-fought motions to

dismiss, discovery issues, motion for class certification, two separate appeals to the Fourth

Circuit, and protracted settlement negotiations,  the parties engaged in aggressive representation of

their respective clients in order to achieve the best result possible.

### 4.    The Experience of Counsel in Class Action Securities Litigation

In appraising the fairness of a proposed settlement, the opinion of experienced counsel is

entitled to considerable weight.  <u>Flinn</u>, 528 F.2d at 1173.  With the initial presumption of fairness,

and absent any evidence of fraud or overreaching, the court "should be hesitant to substitute its

own judgment for that of counsel."  <u>Cotton</u>, 559 F.2d at 1330.[7]

---

[7]    <u>See</u> <u>also</u> <u>Flinn</u>, 528 F.2d at 1173 ("While the opinion and recommendation of
experienced counsel is not to be blindly followed by the trial court, such opinion should be given
weight in evaluating the proposed settlement.") (footnotes omitted); <u>United States v. North Carolina</u>,
180 F.3d 574, 581 (4th Cir. 1999) (holding same); <u>South Carolina Nat'l Bank</u>, 139 F.R.D. at 339
("Finding no indication of any collusion, it is therefore appropriate for the court to give significant
weight to the judgment of class counsel that the proposed settlement is in the interest of their clients
(continued...)

Counsel on both sides have extensive experience in complex litigation. Berger & Montague, P.C., the firm approved by the Court to act as Lead Counsel for the plaintiffs, has extensive experience in class action litigation in general and securities litigation in particular. Plaintiffs' Liaison Counsel, Tydings & Rosenberg LLP, are also experienced class action lawyers and they are held in high regard in this District. Such collective, extensive experience supports the presumption that the negotiated Settlement was based on an informed and realistic consideration of the costs and risks incident to a trial on the merits. Settling Defendants were also represented by experienced counsel including Kirkpatrick & Lockhart LLP and Fulbright & Jaworski, prominent and nationally-recognized firms with expertise in the field of federal securities law. Unquestionably, counsel on both sides have the experience, skill, and knowledge to assess the merits of the Action and to make an informed recommendation regarding the wisdom and fairness of the Settlement. Based on their extensive experience in securities class action litigation, it is Lead Counsel's opinion that the Settlement is fair, reasonable, and adequate and, therefore, should be approved by the Court.

In sum, based upon an analysis of the foregoing factors, the Court should conclude that the Settlement is fair.

### C.    The Proposed Settlement Is Adequate

In assessing the "adequacy" of a proposed settlement, courts weigh the likelihood of recovery based on the merits of the litigation against the benefits of the settlement. The following factors should be weighed in this assessment: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to

---

[7]    (...continued)
and the class as a whole.")

encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.  In re Jiffy Lube, 927 F.2d at 159; Strang, 890 F. Supp. at 501; South Carolina Nat'l Bank, 139 F.R.D. at 338-39; In re Montgomery County, 83 F.R.D. at 316.

When reviewing the adequacy of a proposed settlement, a court is not to decide the merits of the case or to attempt to resolve unsettled factual or legal questions.  South Carolina Nat'l Bank, 139 F.R.D. at 339 (citing Carson, 450 U.S. at 88 n.14). Nonetheless, the Court must assess the relative strengths and weaknesses of the settling parties' positions in order to evaluate the fairness and adequacy of a settlement.  South Carolina Nat'l Bank, 139 F.R.D. at 339.  See Flinn, 528 F.2d at 1172.

### 1. The Strength of Plaintiffs' Case Relative to the Clear Difficulties of Proof and Strong Defenses Strongly Favors Approval of the Settlement

Among the most important factors in evaluating the adequacy of a class action settlement are the relative strengths of the plaintiffs' case and the existence of any defenses or difficulties of proof. Horton, 855 F. Supp. at 831.  Recognizing the uncertainty of litigation, courts have held that to justify a proposed settlement, a plaintiff must establish only that, all things considered, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." Florida Trailer & Equip. Co. v. Deal, 284 F.2d 567, 573 (5th Cir. 1960).

The pleadings and other papers filed with the Court in this case indicate that the strengths of the claims and defenses thereto would have continued to be the subject of substantial dispute

15

during the course of the litigation.  The court in <u>South Carolina Nat'l Bank</u>, 139 F.R.D. at 340, noted that the risk to plaintiffs with regard to the legal and factual issues raised militates in favor of settlement.

Lead Counsel were acutely aware of the considerable risk posed by Rensin and Palmer's Appeal of this Court's class certification Order.  Settling Defendants' appellate arguments had substantial merit, and though expecting to prevail, Plaintiffs faced a substantial risk.  First, the Fourth Circuit's granting of Rensin and Palmer's Rule 23(f) petition posed a risk, indicating that at least some judges on the Fourth Circuit might have been inclined to reverse.  Second, the appeal presented issues of first impression, which created uncertainty as to the approach the Fourth Circuit would take.  Reversal of this Court's Order might have led to the effective end of the Action.

Plaintiffs also faced significant risks in proving both liability and damages.  With regard to establishing liability, this case, like many cases arising under the federal securities laws, involved complex issues of fact and law.  Here, for example, to succeed on their Section 10(b) claims, plaintiffs would have the burden of proving that the Settling Defendants had information that is alleged to have been omitted or misstated, that the disclosures made were misleading, that the information omitted or misrepresented would have been material to an investor in determining whether to invest in Creditrust, that the Settling Defendants withheld information from the investing public either with an actual intent to deceive, manipulate, or defraud, or in reckless disregard of facts known to the Settling Defendants, and that the Class suffered damages as a result of the artificial inflation in the stock price that resulted from the misrepresentations and omissions.  In attempting to prove each of these elements necessary to establish the Settling Defendants' liability

16

under Section 10(b), plaintiffs would be held to the more stringent standards established by the PSLRA.

With regard to scienter, the Settling Defendants would likely argue that their conduct did not give rise to the necessary intent required under the securities laws.

Plaintiffs' claims against the Settling Defendants under both the 1933 Act as well as the 1934 Act would ultimately turn on complicated considerations of GAAP. Although GAAP is a comprehensively articulated enunciation of the rules of accounting, the principles themselves are open to interpretation in determining the liability of the Defendants.

While Plaintiffs believe that they would have been successful in establishing liability, they were well aware of the risks involved in this undertaking. These risks as to liability strongly militate in favor of the Settlement.

In addition to defenses on liability, the Settling Defendants would have asserted substantial defenses regarding damages. In this action, the amount of damages which plaintiffs could prove, after the Settling Defendants presented a negative causation defense (i.e., attributing market losses to factors other than the alleged fraud), was a matter of dispute.

The Settling Defendants would have had their own expert with a competing loss model. Expert testimony about damages would rest on many subjective assumptions, any one of which could be rejected by a jury as speculative or unreliable. There is always inherent risk when a jury is faced with a "battle of experts." A jury could well find that only a fraction of the losses, if any, were attributable to misrepresentations made by or under the control of the Settling Defendants during the Class Period.

17

Consequently, while plaintiffs believe that their claims for damages were meritorious, the fairness and reasonableness of the proposed Settlement in light of the risks, burdens and uncertainties of assessing liability and damages in this litigation is manifest.

### 2. Additional Litigation Would be Protracted and Extremely Costly

The Court must also consider the complexity, expense and duration of additional litigation. The resolution of the Fourth Circuit appeal would likely have commenced a significant new phase of litigation, either as a class or for individual plaintiffs, including substantial additional discovery, summary judgment motions, and possible trial. While the costs to the Class to continue litigating the Action would have been formidable, for virtually all individual plaintiffs in a decertified class they would have been preclusive. Summary judgment briefing would no doubt have been complex and voluminous, and a trial of this Action would have taken weeks, which would have resulted in additional costs and risk. Moreover, even if a jury had returned a plaintiffs' verdict, post-trial motions, appeals, and collection efforts would likely have extended the duration of the case. See, e.g., In re Baldwin-United Corp., 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985). Clearly, even a winning verdict for a class or individual plaintiff does not provide absolute assurance of recovery, where post-trial motions and appeals are likely to ensue. See, e.g., Robbins v. Koger Properties, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict against accountants, obtained by certain of plaintiffs' counsel in the instant case, on appeal and dismissing action with prejudice).

Given the uncertain prospects of plaintiffs' success before the Fourth Circuit, at trial, and any post-trial proceedings, the Settlement at this time is clearly beneficial to the Class.

### 3.    Likelihood of Recovery on a Litigation Judgment

Although plaintiffs may have been able to collect a larger judgment had they succeeded at trial, the Settlement eliminates any risk of having a verdict become uncollectible. Since Creditrust filed for bankruptcy, it has been removed as a source of recovery. The primary source of recovery, therefore, is the Settling Defendants themselves and insurance proceeds[8]. Here, the proceeds have likely been reduced by several million dollars. Had trial proceeded, the payment of defense costs would have further reduced the insurance proceeds.

Moreover, a finding that Rensin and Palmer acted intentionally might have led the insurer to deny coverage. That would have left only Rensin and Palmer's individual assets as potential sources of payment. As this Court is aware, there was substantial question as to whether Plaintiffs would have been able to gain access to any such personal assets.

In sum, had this case proceeded through judgment, it is likely that the available insurance proceeds would have been significantly reduced by the payment of defense costs. Under those circumstances, the Settlement is fair, reasonable and adequate.

### 4.    The Reaction of the Class Supports the Settlement

Finally, the response of the Class to the Notice strongly favors a finding that the Settlement is fair, reasonable and adequate. Notices were mailed to every person listed on the transfer records as purchasers of Creditrust common stock during the Class Period and to nominees for Class members, such as brokerage houses. In all, over 4,600 copies of the Notice were distributed, and notice was also published in the national edition of The Wall Street Journal. The deadline for filing requests for exclusion and objections was April 1, 2005. As of April 15, 2005,

---

[8]    Lead Plaintiffs' attempts to ameliorate the risk of uncollectability included the filing of a related action, which was dismissed by this Court.

19

no requests for exclusion have been received, and not a single Class member has objected to the Settlement. This absence of objections strongly supports a finding of its adequacy and militates in favor of approval of the Settlement. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1378 (9th Cir. 1993) (affirming approval of settlement and observing that after notice was given to 113,000 class members, only 20 objections were submitted), cert. denied sub nom., Reilly v. Tucson Elec. Power Co., 512 U.S. 1220 (1994); In re GNC Shareholder Litig., 668 F. Supp. 450, 451 (W.D. Pa. 1987) (in class action context, silence of a substantial portion of the class as to notification of the settlement may be construed as assent). See Hill v. Art Rice Realty Co., 66 F.R.D. 449, 456 (N.D. Ala. 1974) (only one objection is compelling evidence that the majority of the class supports the settlement), aff'd, 511 F.2d 1400 (5th Cir. 1975); see Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977) (affirming approval of settlement where small number of class members indicating their disapproval of the settlement indicates its acceptability).

20

**VII.   CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate.

Dated: April 18, 2005

Respectfully submitted,

**BERGER & MONTAGUE, P.C.**


By: _____/s/_____
        Todd Collins, Esq.
        Elizabeth Fox, Esq.
        Neil Mara, Esq.
        1622 Locust Street
        Philadelphia, Pennsylvania 19103
        Telephone: (215) 875-3000
        Facsimile:(215) 875-4604

        **Lead Counsel for Plaintiffs and the Class**


**TYDINGS & ROSENBERG, LLP**

Lawrence Quinn, Esq.
100 East Pratt Street
26th Floor
Baltimore, Maryland 21202
Telephone: (410) 752-9700
Facsimile: (410) 727-5460

**Liaison Counsel for Plaintiffs and the Class**

C:\Documents and Settings\nmara.ZEUS1\Desktop\neil.wpd

21