### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | : | |
| **IN RE CREDITRUST CORPORATION** | : | **Civil Action No. MJG 00 CV 2174** |
| **SECURITIES LITIGATION** | : | |

### DECLARATION OF TODD S. COLLINS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT OF PLAINTIFFS' EXPENSES

Todd S. Collins declares:

1.       I am a Shareholder of the law firm of Berger & Montague, P.C., (the "Berger Firm") Plaintiffs' Lead Counsel in this litigation (the "Action"). I have personal knowledge of the matters set forth herein based upon my personal direction of all material aspects of the prosecution of the Action.

2.       I submit this Declaration in support of Plaintiffs' motions, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for approval of the proposed settlement (the "Settlement") with Defendants Joseph Rensin ("Rensin") and Richard Palmer ("Palmer")(collectively, the "Settling Defendants"); for approval of the Plan of Allocation of the Settlement  proceeds to Class members; for approval of the request for an award of attorneys' fees and reimbursement of expenses; and for approval of the request for reimbursement of Plaintiffs' expenses.

3.       The Stipulation of Settlement, dated January 19, 2005, provides for payment of $7.5 million in cash. This sum has been deposited, and it is earning interest for the benefit of the Class.

I.    **PRELIMINARY STATEMENT**

4.    For almost five years, Plaintiffs have vigorously litigated the Action. Plaintiffs succeeded in defeating Rensin and Palmer's Motions to Dismiss; obtained class certification; analyzed thousands of documents produced by Defendants and third parties; conducted extensive investigation, which included not only analysis of public documents but also interviews with "deep throat" witnesses; negotiated a proposed settlement with another defendant, John Davis; and successfully amended their complaint as they gleaned additional facts. Plaintiffs achieved the Settlement only after the parties finished extensive briefing and were one day away from oral argument on Rensin and Palmer's appeal, under Fed. R. Civ. P. 23(f), of this Court's class certification Order. By the time they reached the Settlement, Plaintiffs had gained a full understanding of the strengths and weaknesses of their case.

5.    Just prior to the commencement of the Action, on June 22, 2000, Creditrust Corporation ("Creditrust" or "the Company") filed for bankruptcy in the United States Bankruptcy Court for the District of Maryland. Plaintiffs were barred from prosecuting claims against Creditrust pursuant to the automatic stay provisions of the federal bankruptcy laws. Accordingly, Creditrust's bankruptcy filing complicated the Action by taking a major Defendant out of the case and by frustrating Plaintiffs' access to key witnesses and documents.

6.    The Settlement is the fruit of protracted, hard-fought litigation, and it occurred only through dogged negotiations, which seemed to reach impasse on several occasions. The negotiations, like the Action, were prosecuted by seasoned securities lawyers on both Plaintiffs' and Settling Defendants' sides.

2

7.     The Settlement confers an immediate and substantial benefit on the Class and eliminates the risk of continued litigation against Settling Defendants, the outcome of which could not be assured. It is respectfully submitted that the Settlement should be approved as fair, reasonable and adequate; the Plan of Allocation should be approved; Plaintiffs' counsel should be awarded the requested attorneys' fees and reimbursement of expenses; and Plaintiffs should be awarded their expenses.

## II.     THE LITIGATION

### A.     Overview of Plaintiffs' Claims

8.     Rensin, among others, founded Creditrust in 1991 to acquire, manage, and collect accounts of delinquent consumer debt. Creditrust was in the business of collecting more on the debt it purchased than the combined purchase price and cost of collections. To determine whether to purchase a pool of such debt, Creditrust claimed that it had a state of the art, proprietary portfolio analysis tool ("PAT") that enabled it to predict, with remarkable precision, what it would collect on the debt it purchased. Because Creditrust accounted for collections using the interest method, these predictions of collections were used to determine the amount of revenue and earnings reported to the public. Needless to say, the accuracy of the PAT predictions was a matter of utmost significance to investors.

9.     Plaintiffs allege that, commencing with the issuance of 2,500,000 shares of Creditrust's common stock to the public in its initial public offering (the "IPO") on July 29, 1998, Creditrust, including Settling Defendants, directly and purposefully manipulated the PAT program. According to Plaintiffs, by manipulating virtually all PAT predictions

3

between July 29, 1998 and May 31, 2000 (the "Class Period") defendants caused Creditrust to overstate materially its revenues and earnings. Plaintiffs also allege that the historical collections of Creditrust were falsified. Moreover, Creditrust and its senior management engaged in an attempt to cover-up this wrongdoing. The result of this fraudulent scheme was to mislead investors about Creditrust and its ability to earn and grow. The scheme artificially inflated Creditrust's stock price throughout the Class Period.

10.   Plaintiffs' Consolidated Amended Complaint (the "Amended Complaint") alleges that Defendants issued, signed or were otherwise responsible for the IPO Registration Statement and Prospectus, which contained false and misleading statements and failed to disclose material risks that Creditrust faced. The Complaint charges violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Section 10(b), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act.").

11.   Specifically, the Amended Complaint alleges that the Registration Statement and Prospectus, in addition to Creditrust's public statements throughout the Class Period, materially misrepresented the strength of Creditrust's business by overstating net income. Defendants misrepresented and failed to disclose: (1) that they were systematically and purposefully manipulating PAT to boost anticipated collections from, and the estimated value of, the receivables Creditrust purchased; and (2) that PAT provided no reasonable or accurate prediction of future cash flows from the receivables Creditrust purchased; (3) that a reported $6.1 million gain on sale was bogus; and (4) that Creditrust was unable to service significantly larger volumes of receivables.

4

## B.    Procedural History

12.    On July 14, 2000, plaintiff Ronald Conlon filed a complaint alleging that various officers of Creditrust violated sections 10(b), 20(a) and Rule 10b-5 and of the Exchange Act.  Rensin, who served as Chief Executive Officer, and Palmer, who served as Chief Financial Officer, were named as defendants along with President and Chief Operating Officer Barry Dumser, and Vice President John Davis.  The Conlon Complaint asserted that defendants caused Creditrust to inflate estimates of what it would collect on receivables, thereby directly causing the Company to inflate its reported revenues for 1999. After Conlon filed his Complaint, five other complaints were filed alleging substantially similar allegations.

### i.    Appointment of Lead Plaintiffs, the Amended Complaint, and Motions to Dismiss

13.    On September 12, 2000, two separate motions for appointment of lead plaintiff and approval of lead counsel were filed pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. 78u-4(a)(3).

14.    On January 25, 2001, the Court consolidated the cases.

15.    On March 28, 2001, pursuant to the PSLRA, the Court appointed as Lead Plaintiffs Barry Kimmelman ("Kimmelman") and Terri Roop ("Roop").  The Court also appointed the Berger Firm as Lead Counsel, and Tydings & Rosenberg LLP as Liaison Counsel.  Kimmelman and Roop  continued to serve as Lead Plaintiffs at all times.

16.    On May 7, 2001, Lead Plaintiffs filed their Amended Complaint.  The Amended Complaint added as defendants: (1) Creditrust Vice President Jefferson Moore ("Moore"); (2) four directors of Creditrust- -William Glassberg, John Moran, Michael Witlin,

and Henry Pappas (the "Director Defendants"); and (3) Ferris, Baker, Watts and Boenning & Scattergood (the "Underwriter Defendants"). Plaintiffs alleged Section 11 and 15 claims against the Director Defendants and Section 11 claims against the Underwriters. The Amended Complaint also added claims against Rensin and Palmer for violations of Sections 11 and 15. Moore was accused of violating Sections 10(b) and 20(a).

17. On September 21, 2001, each of the Defendants except Moore moved to dismiss the Amended Complaint. Defendants generally argued that: they were entitled to dismissal under the statute of limitations because the Amended Complaint was untimely and did not 'relate back' to Plaintiffs' initial complaint; Plaintiffs lacked standing under Gustafson v. Alloyd Co. Inc., 513 US 561 (1995); Plaintiffs had pled insufficient facts; and that, as to the Director Defendants, Plaintiffs had inadequately pled control person liability.

18. On December 26, 2001, Plaintiffs filed their opposition to Defendants' motions to dismiss. Plaintiffs argued that the Amended Complaint was timely filed and met the PSLRA and Fed. R. Civ. P. 9(b) particularity requirements, setting forth in great detail Creditrust's wrongdoing and each defendants' role in it, and that Plaintiffs had standing.

19. On February 8, 2002, Palmer and other defendants filed their reply memoranda. Rensin's reply memorandum was filed on February 14, 2002.

20. On May 3, 2002, defendant Jefferson Moore filed his Motion to Dismiss, making allegations against the Amended Complaint similar to those raised by his co-defendants in their Motions to Dismiss.

21. On June 17, 2002, Plaintiffs filed their reply memorandum in opposition to Moore's Motion to Dismiss.

22.     On June 21, 2002, this Court entertained extended oral argument on defendants' Motions to Dismiss.

23.     On August 2, 2002, this Court denied Rensin and Palmer's  Motions to Dismiss, holding that Plaintiffs' allegations under the Securities Act "related back" to the original complaint, and that Plaintiffs had pled their allegations with sufficient particularity. In the same order, this Court granted the Motions to Dismiss of all other defendants based on the statute of limitations, and, as to the Director Defendants, a failure by Lead Plaintiffs to allege control person liability.

24.     On August 21, 2002, Rensin moved, pursuant to 28 U.S.C. 1292 (b), to file an interlocutory appeal of this Court's denial of his Motion to Dismiss on statute of limitations grounds.  Palmer filed a similar motion on August 27, 2002.

25.     On August 30, 2002, Plaintiffs filed a Notice of Appeal with respect to this Court's August 2, 2002 Order granting Moore's Motion to Dismiss.  Plaintiffs also moved for entry of final judgment as to Moore pursuant to Federal R.Civ.P. 54(b) so as to immediately appeal this Court's motion to dismiss ruling.

26.     On September 6, 2002, Plaintiffs filed their opposition to Rensin and Palmer's Motions for Leave to Appeal.

27.     On September 12, 2002, Plaintiffs withdrew their motion for final judgment pursuant to Fed. R. Civ. P. 54(b).

28.     On September 17, 2002, Rensin and Palmer replied to Plaintiffs' opposition to their respective motions for leave to appeal.

29.     On September 18, 2002, Plaintiffs' appeal to the Fourth Circuit was dismissed under Fed.R.App.P. 42(b).

30.    On September 24, 2002, this Court granted Rensin and Palmer's  Motions for Leave to Appeal, recognizing that Defendant's appeal of the Court's statute of limitations ruling involved a "controlling question of law" that had not been addressed by the Circuit Court.

31.    On October 25, 2002, the Fourth Circuit denied permission to Rensin and Palmer to appeal the motion to dismiss Order.

### ii.    Class Certification Proceedings in this Court

32.    On September 18, 2002, Plaintiffs filed a motion, pursuant to Fed.R.Civ.P. 23 (a) and (b) (3), seeking class certification.  Plaintiffs produced documents in response to Rensin and Palmer's requests, and Plaintiffs' Counsel prepared them for their depositions.

33.    Lead plaintiff Barry Kimmelman gave his deposition on December 10, 2002.  Plaintiffs Mack and Endrizzi were deposed on December 12, 2002, and December 16, 2002, respectively.

34.    On December 30, 2002, Rensin and Palmer filed their opposition to class certification.  Defendants argued that Plaintiffs' motion for class certification was untimely, as it was filed after the expiration of the statutes of limitation and repose. Defendants also argued that Plaintiffs were neither typical nor adequate under Fed. R. Civ. P. 23.

35.    On January 21, 2003, Plaintiffs filed their reply memorandum.

36.    On April 29, 2003, this Court issued its Memorandum and Order granting Plaintiffs' motion.  This Court certified a class of all persons who purchased Creditrust common stock during the period July 28, 1998 through May 31, 2000, inclusive.  The

Court also certified two subclasses: (a) the "Securities Act" subclass, which consisted of all persons who purchased Creditrust common stock pursuant to the Registration Statement with respect to Creditrust's Initial Public Offering between July 28, 1998 and March 18, 1999; and (2) the "Exchange Act Subclass", which consisted of all persons who purchased the common stock of Creditrust between July 28, 1999 and May 31, 2000.

### iii.    **Defendants' Appeal of this Court's Class Certification Order**

37.    On May 14, 2003, Rensin and Palmer filed a Joint Petition under Fed. R. Civ. P. 23(f) for permission to appeal this Court's class certification Order to the Fourth Circuit. In support of their Petition, Settling Defendants argued that permission to appeal should be granted because the this Court's class certification decision "turned on an important and unsettled legal question"– whether "the federal securities law claims of absent class members are time barred where, although a complaint containing class action allegations is timely filed, the named plaintiffs fail to file a motion for class certification until after the expiration of both the one year periods of limitations... and , with respect to most of the allegedly false statements at issue, the three year period of repose in 15 U.S.C. §77m and 15 U.S.C. §78i(e)?"

38.    Also on May 14, 2003, Rensin and Palmer filed a notice of appeal under 28 U.S.C. 1291.  This notice of appeal involved the same issues as addressed in the 23(f) petition.  Rensin and Palmer asserted  that this appeal was "insurance" in the event their appeal under Rule 23(f) was declined by the Fourth Circuit.

39.    On May 23, 2003, Plaintiffs responded to Rensin and Palmer's Petition for Permission to Appeal under Rule 23(f).

9

40.     On June 11, 2003, the Fourth Circuit granted both of Settling Defendants'
Petitions to appeal this Court's class certification Order.  The Fourth Circuit inquired of
the parties whether these related appeals should be consolidated, or if one of the
appeals should be held in abeyance while the other proceeded.

41.  On June 23, 2003, after receiving the parties' responses to the procedural
question posed by the Court, the Fourth Circuit invited Plaintiffs to file a Motion to
Dismiss or Hold in Abeyance one of the appeals.

42.     On July 3, 2003, Lead Plaintiffs moved to Dismiss or Hold in Abeyance
Settling Defendants' §1291 Appeal in favor of the appeal under Fed.R.Civ.P. 23(f),
arguing that the Rule 23(f) appeal afforded Rensin and Palmer the opportunity to
appeal all pertinent issues, and that consolidating, rather than dismissing, the §1291
appeal would be judicially inefficient and redundant.

43.     On July 10, 2003, Settling Defendants Replied to Lead Plaintiffs' Motion to
Dismiss the §1291 Appeal.

44.     On August 11, 2003, Rensin filed a motion to stay all proceedings in this
Court during the pendency of defendants' appeal of the certification Order.
Rensin argued that the Fourth Circuit assumed jurisdiction of the Action when it granted
him permission to appeal under Rule 23(f), and because of that, proceedings in this
Court should be stayed.

45.     On August 18, 2003, Plaintiffs filed their Response in Opposition to
Defendants' Motion to Stay, arguing that there was no basis for a stay under Rule 23(f)
or the collateral order doctrine and that Plaintiffs would be prejudiced by a stay.  On
September 2, 2003, Rensin and Palmer replied.

46.    On September 8, 2003, the Fourth Circuit, granting Plaintiffs' motion, dismissed Rensin and Palmer's §1291 Appeal.

47.    On October 14, 2003, Rensin and Palmer filed their brief on the appeal. Defendants argued that this Court's class certification Order should be overturned because, *inter alia* : (1) the motion for class certification was filed after the expiration of the statute of limitations and the statute of repose and was thus untimely; (2) Plaintiffs' original Complaint was insufficiently pled, and could not provide a basis for the "relation back" of the Amended Complaint; and (3) Plaintiffs were neither typical nor adequate.

48.    On November 17, 2003, Plaintiffs filed their brief in opposition to the Rule 23(f) appeal.

49.    On December 4, 2003, Rensin and Palmer filed their reply brief.

50.    On February 23, 2004, after complete preparation for oral argument and after settlement negotiations with Lead Plaintiffs' counsel, counsel for Rensin filed an Emergency Joint Motion to Cancel Oral Argument and to Remand Case for Consideration of Settlement.  The Fourth Circuit granted the motion on the same day.

51.    On March 1, 2004, the Fourth Circuit remanded the case to this Court for settlement proceedings.

52.    On March 11, 2004, this Court granted Defendants' Motion to Stay all Proceedings During the Pendency of Defendants' Appeals to the Fourth Circuit.

53.    Pursuant to the Remand Order of the Fourth Circuit, the parties filed monthly reports on the status of settlement from May 31, 2004 through April 3, 2005.

11

iv.    **The Proposed Davis Settlement**

54.    After filing their Amended Complaint on May 7, 2001, Plaintiffs and defendant John Davis ("Davis") initiated settlement discussions.

55.    After protracted negotiation, Plaintiffs reached a proposed settlement of the claims against Davis, which was memorialized in a Memorandum of Understanding on November 2, 2001.

56.    On November 29, 2001, Davis sat for an examination under oath by Plaintiffs' Counsel.

57.    On January 11, 2002, Davis and Plaintiffs' Counsel signed a Stipulation of Settlement. In exchange for a release of all claims, the settlement called for Davis, who lacked resources to make a large payment in settlement, to pay a nominal amount and to provide on-going cooperation.

58.    On March 26, 2002, Plaintiffs moved for approval of the Davis settlement.

59.    On April 8, 2002, various defendants, including Rensin, opposed the Motion, characterizing it as an effort by plaintiffs to "poison the well" with this Court while their motions to dismiss were pending. Defendants also argued that the settlement's cooperation provisions were improper, amounting in effect to payment for Davis' testimony. Plaintiffs replied on April 22, 2002.

60.    On June 7, 2002, Plaintiffs filed their pre-hearing submission with respect to their motion for final approval of the Davis Settlement. Plaintiffs argued that Defendants lacked standing to object to the proposed Davis settlement, and that the settlement was fair, reasonable, and adequate.

61.    On June 11, 2002, this Court conducted a hearing on Plaintiffs' motion for final approval of the Davis settlement.

62.    On June 18, 2002, Lead Plaintiffs filed a memorandum of law in support of the proposed notice informing the Class of the Davis settlement.  Plaintiffs argued for publication notice only, as costs associated with mailed Notice would be prohibitive, and Plaintiffs did not have records of all class members.  Rensin filed his opposition to this Memorandum on July 3, 2002.

63.    On March 12, 2003, this Court denied, without prejudice, Plaintiffs' motion for approval of the Davis Settlement. The Court reasoned that the Davis settlement "should be considered in light of the ruling on the pending class certification motion" and invited Plaintiffs to renew the motion within fifteen days of the ruling on the pending class certification motion.

64.    On May 12, 2003, soon after this Court's Order granting class certification, Plaintiffs renewed their motion for approval of the Davis settlement.

65.    On May 29, 2003, Rensin opposed this renewed motion.

66.    On March 11, 2004, this Court denied the renewed motion, again without prejudice.

67.    On January 24, 2005, as described below, Plaintiffs filed the Stipulation of Settlement (the "Stipulation") with respect to the proposed settlement with Rensin and Palmer.  Pursuant to the Stipulation, Davis is included as a "Released Party", effectively bringing the Action to a close as to him and all other parties.

13

v.    **Efforts to Secure Sources of Payment**

68.    As this Court is aware, Plaintiffs undertook extraordinary efforts, including the prosecution of a separate lawsuit, in order to attempt to ensure that, if Plaintiffs were successful in securing a judgment, there would be funds available for the purpose of collecting for the benefit of the Class.

C.    **Investigation and Discovery**

69.    Investigation and discovery were extensive, putting Plaintiffs in an excellent position to assess accurately the strengths and weaknesses of their claims and defendants' defenses.

70.    Plaintiffs' wide-ranging investigation included analysis of pleadings from other litigation, including litigation brought by the Asset Gauranty Insurance Corporation ("AGIC") and Creditrust's bankruptcy proceedings.

71.    On November 15, 2002, Plaintiffs served their first set of Requests for Production of Documents and first set of Interrogatories directed to Rensin and Palmer. On December 18, 2002, Rensin responded.  Palmer responded on December 19, 2002.

72.    On November 21, 2002, Plaintiffs served third party subpoenae on: (1) NCO Group, Inc., the post-bankruptcy successor to Creditrust, (2) NCO Portfolio Management and (3) AGIC.

73.    On April 8, 2003, Plaintiffs' Counsel traveled to Baltimore to review documents produced by NCO. Plaintiffs' Counsel then continued their review of  the NCO documents in Philadelphia for several weeks thereafter.

14

74.    On December 17, 2002, Plaintiffs served their second set of interrogatories directed to Rensin.  Rensin responded on January 21, 2003.

75.    On February 10, 2003, Plaintiffs subpoenaed non-party Grant Thornton, LLP.

76.    On June 9, 2003, Plaintiffs' Counsel traveled to Vienna, Virginia to review documents produced by Grant Thornton, and subsequently reviewed these Grant Thornton documents more thoroughly in Philadelphia.

77.    On August 1, 2003,  Rensin moved to stay all proceedings during the pendency of defendants' appeals to the Fourth Circuit.  On the same day, Lead Plaintiffs moved for leave to conduct in excess of ten fact depositions.  Rensin opposed Plaintiffs' motion on August 18, 2003, arguing that the Court should first rule on his motion to stay before considering Plaintiffs' motion.

78.    On August 6, 2003, Plaintiffs served a subpoena for the production of documents upon non-party Ernst & Young, LLP.

79.    On August 18, 2003, Plaintiffs filed their opposition to Rensin's motion to stay.  Rensin replied on September 2, 2003.

80.    On March 11, 2004, this Court granted Rensin's motion to stay, and denied, without prejudice, Lead Plaintiffs' motion to allow more than ten fact depositions.

### D.    Expert Reports and Expert Discovery

81.    Plaintiffs consulted with experts at length and regarding a range of issues. Alan Miller of Philadelphia Investment Banking Company provided an Affidavit with respect to Plaintiffs' class certification motion, attesting to the efficiency of the market in

which Creditrust stock traded. Miller also provided substantial assistance in the

calculation of damages. Harris Devor, CPA, of the accounting firm of Schechtman,

Marks, Devor & Etskovitz, provided expert assistance on accounting issues.

### III.    SETTLEMENT OF THE ACTION

#### A.    Settlement Negotiations

82.    Beginning with the Court's denial of Rensin and Palmer's motions to

dismiss, there were sporadic settlement negotiations. The negotiations grew more

intense after Rensin and Palmer's appeal of this Court's class certification Order -- an

appeal involving matters of first impression that likely would have dealt a serious blow

to the non-prevailing party.

83.    Numerous issues complicated the negotiations. These included not only

the amount of any settlement, but also the percentage of any such settlement to be

contributed by one or both of the Settling Defendants personally. It was critical to

Plaintiffs that Settling Defendants contribute materially.

84.    Having reached a settlement in principle in February, 2004, the parties

continued vigorous and protracted settlement negotiations over the next two months,

culminating in a Memorandum of Understanding and a Preliminary Escrow Agreement

on May 24, 2004.

85.    Following even more negotiation, Lead Plaintiffs filed the Stipulation and

Agreement of Settlement with this Court on January 19, 2005.

16

**B.    Mailing and Publication Notice**

86.    On January 24, 2005, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and Plan of Allocation.

87.    On February 1, 2005, this Court granted preliminary approval of the Settlement and directed that Notice of the Settlement be provided to the class.

88.    I attach at Tab A the Declaration of Edward J. Sincavage, CPA (the "Sincavage Declaration").   Mr. Sincavage is a partner with the firm of Heffler, Radetich, & Saitta (the "Heffler Firm"), the Claims Administrator.  The Sincavage Declaration attests that a total of 4,654 Notices have been mailed to potential Class members or their nominees in connection with the Settlement.  Notice was mailed to all identified potential Class members beginning on February 15, 2005, and was published in summary form in The Wall Street Journal on February 24, 2005.  The mailed Notice explained the background and terms of the Settlement and stated that the final hearing with respect to the Settlement will take place on May 2, 2005.

89.    Pursuant to this notice program, Class members are informed that they may object, on or before April 1, 2005, to the Settlement, the Plan of Allocation, and the application for attorneys' fees and expenses.  Class members are further informed that they may exclude themselves from the Class on or before April 1, 2005.

90.    The notice program has been tailored to reach all Class members.  Class members receive a full and explicit explanation of the Settlement, the Plan of Allocation, the anticipated fee and expense requests and the rights and options of Class members. This program complies with the requirements of the Federal Rules, the PSLRA, and due process, and it is similar to the procedures approved in other cases.

17

91.    As of April 15, 2005, no objections to the Settlement, the Plan of
Allocation, or the requests for fees and expenses have been received, and no requests
for exclusion have been filed.

## IV.    RISKS ASSOCIATED WITH THE LITIGATION

92.    The outcome of any litigation is never a certainty.  There are significant
risks in any lawsuit.  Defendants have insisted throughout the Action, as defendants
insist in most cases, that they were truthful, omitted nothing, and acted in good faith.

### A.    The Risks posed by the Fourth Circuit Appeal

93.    In this Action, a significant risk was posed by Rensin and Palmer's appeal
of this Court's class certification Order to the Fourth Circuit.  Involving issues of first
impression, the appeal raised the danger that, if Rensin and Palmer succeeded in
decertifying the Class, Plaintiffs would be effectively precluded from continuing to
pursue this costly, complicated litigation on an individual basis.

94.    Of course, the Fourth Circuit's consideration of Rensin and Palmer's
interlocutory appeal was discretionary.  This in itself heightened the risk to Plaintiffs
since the Fourth Circuit's allowance of the appeal suggested that at least some of the
appellate judges might see merit in the appeal.  Reversal could have a broad impact
not only on this case, but on many PSLRA cases in this Circuit.

### B.    The Risks of establishing Scienter and Other Elements

95.    Plaintiffs also faced significant risks in proving liability and scienter.  With
regard to establishing liability, this case, like many cases arising under the federal
securities laws, involved complex issues of fact and law.  Here, for example, to succeed

18

on their Section 10(b) claims, plaintiffs would have the burden of proving that the

Settling Defendants had information that is alleged to have been omitted or misstated,

that the disclosures made were misleading, that the information omitted or

misrepresented would have been material to an investor in determining whether to

invest in Creditrust, that the Settling Defendants withheld information from the investing

public either with an actual intent to deceive, manipulate, or defraud, or in reckless

disregard of facts known to the Settling Defendants, and that the Class suffered

damages as a result of the artificial inflation in the stock price that resulted from the

misrepresentations and omissions. In attempting to prove each of these elements

necessary to establish the Settling Defendants' liability under Section 10(b), plaintiffs

would be held to the more stringent standards established by the PSLRA.

96.    With regard to scienter, the Settling Defendants would likely argue that

their conduct did not give rise to the necessary intent required under the securities laws.

97.    Plaintiffs' claims against the Settling Defendants under both the 1933 Act

as well as the 1934 Act would ultimately turn on complicated considerations of GAAP.

Although GAAP is a comprehensively articulated enunciation of the rules of accounting,

the principles themselves are open to interpretation in determining the liability of the

Defendants.

## C.    The Risks of Establishing Damages

98.    Even if Plaintiffs were to succeed in establishing liability, substantial risks

exist in proving damages. The damage assessments of Plaintiffs' and defendants'

experts would result in a "battle of the experts." As Judge Keenan has observed:

19

> Undoubtedly, expert testimony would be needed to fix not
> only the amount, but the existence, of actual damages. . . .
> In this "battle of experts," it is virtually impossible to predict
> with any certainty which testimony would be credited, and
> ultimately, which damages would be found to have been
> caused by actionable, rather than the myriad nonactionable
> factors such as general market conditions.

In re Warner Communications Sec. Litig., 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985),

aff'd, 798 F.2d 35 (2d Cir. 1986) (citations omitted).

### D.    The Risks of Collecting on Any Judgment

99.    Another significant risk was the collectability of any judgment.   Since

Creditrust filed in bankruptcy, its assets were not available as a source of recovery --

leaving insurance proceeds and the Settling Defendants' personal resources as the

sole potential sources of recovery.  Here, the $10 million in insurance proceeds were

being substantially diminished by defense costs incurred in the ongoing litigation.

Moreover, Plaintiffs faced the risk that, if the jury concluded that Rensin and Palmer

acted intentionally, the insurer would deny coverage, leaving no insurance proceeds

available for distribution to the Class.

100.    Substantial questions existed as to the availability of personal funds

provided by Rensin and Palmer as a source of payment, in the event Plaintiffs secured

a substantial judgment against them.

### E.    The Range of Reasonableness of the Settlement In Light of
### the Best Possible Recovery and the Attendant Risks of Litigation

101.    The range of possible recovery must be juxtaposed against the probability

of recovery, and the determination of a reasonable settlement is not susceptible to a

mathematical equation yielding a particularized sum.  Instead, "in any case, there is a

20

range of reasonableness with respect to a settlement." Newman v. Stein, 464 F.2d

689, 693 (2d Cir. 1972).

102.    In this case, Plaintiffs believe that there is evidence from which a jury

could find that Defendants committed the alleged violations of law, and that damages

range from a minimum of $59.7 million to a maximum of $78.2 million, assuming

Plaintiffs were successful in proving all of the alleged misrepresentations and omissions

of material fact.  However, Plaintiffs also recognize that Defendants possessed

defenses, both factual and legal, with respect to both liability and damages.  Thus, Lead

Plaintiffs believe that the $7.5 million Settlement falls within the range of

reasonableness.

103.    Although Lead Plaintiffs remain confident that they could present reliable

expert testimony to sustain their burden on liability and damages, Plaintiffs could not

predict what the jury's decision would have been when faced with competing experts.

Settlement of this Action eliminates the substantial risk posed by this complex and

highly technical "battle of the experts."

104.    Even if Plaintiffs were victorious at trial on both liability and damages,

there would be a serious risk of loss on appeal, as well as a certainty of delay.  In

recent years, appellate courts have not hesitated to overturn jury verdicts in securities

fraud class actions on bases that could not have been anticipated by Lead Plaintiffs.

See, e.g., Robbins v. Koger Properties, 129 F.3d 617, (11th Cir. 1997) (reversal of jury

verdict, in plaintiffs' favor, on loss causation grounds).

105.    Settlement at this time avoids further, costly litigation and provides Class

members with the opportunity to receive an immediate, substantial recovery without the

risks and uncertainties of further litigation. It is, therefore, the opinion of Plaintiffs' Counsel that the risks involved, balanced against the certainty of the substantial benefits obtained by the current Settlement, more than justify approval of the Settlement.

106.    As set forth above, Counsel have conducted extensive investigation and discovery, as well as briefed Motions to Dismiss and class certification issues, including Rensin and Palmer's appeal to the Fourth Circuit. They have retained experts in connection with their claims and Defendants' defenses and the damages incurred by the Class. Plaintiffs' Counsel have analyzed the evidence adduced during discovery and, knowing the legal arguments with respect to the claims and the defenses, have concluded that, in light of the risks of continued litigation, the Settlement is fair, reasonable and adequate and in the best interests of Lead Plaintiffs and the Class.

## V.    **PLAN OF ALLOCATION**

107.    The Settlement provides that, after deduction of Court awarded fees and expenses, the net amount remaining in the Settlement Fund (the "Net Settlement Fund") will be allocated among the Class members who file qualified proofs of claim as defined in the Settlement Agreement. Each such Class member will receive his proportionate share of the Settlement Fund.

108.    The Plan of Allocation is crafted to pay a larger share of the Settlement proceeds to Class members who purchased before and sold after, or else both purchased and sold after, a key event on December 13, 1999. On this day, as Plaintiffs allege in the Amended Complaint, "Creditrust began to disclose the fraud in which it engaged", when the Company announced that a management employee had

22

misdirected approximately $500,000 in Company funds.  Amended Complaint, ¶139. The Plan of Allocation pays a smaller share of the Settlement proceeds to Class members who both purchased and sold before December 13, 1999, since any losses such persons suffered were caused by ordinary market forces and, coming before the December 13, 1999 partial disclosure, were unrelated to the market's reaction to disclosure with respect to the misrepresentations and omissions that Plaintiffs allege.

Accordingly, for shares sold on or before December 12, 1999, the amount of loss recognized for Settlement administration purposes ("Recognized Loss") is capped at ten cents per share.

109.    For shares purchased during the Class Period and held through the end of the Class Period on May 31, 2000, Recognized Loss equals the purchase price less 46 cents per share (which was the closing price of Creditrust stock the next day, June 1, 2000).  For shares purchased during the Class Period and sold between December 13, 1999 (the partial disclosure date discussed above) and the end of the Class Period on May 31, 2000, Recognized Loss per share is the difference between purchase price and sale price.  In the interest of economy, no payment will be made to any Class member who submits a valid claim if his share of the Settlement proceeds, if paid, would be less than $7.50 total.

## VI.    THE FEE PETITION

### A.    Introduction

110.    The Settlement, for $7.5 million cash, plus interest, represents an outstanding and efficient resolution of a complex class action.

111.    As detailed above, Plaintiffs' Counsel undertook substantial efforts to achieve this result.  These efforts included: (1) thoroughly investigating the facts underlying the case, including extensive interviews with "whistle blower" witnesses; (2) researching, drafting, and filing detailed, comprehensive complaints; (3) reviewing thousands of documents produced by Defendants and third parties; (4) reviewing Creditrust's public filings and annual reports and other public statements; (5) researching the applicable law, including bankruptcy law, issues under the PSLRA with respect to the claims and potential defenses, and the relative strengths and weaknesses of the parties' positions; (6) defending against motions to dismiss filed by each of the Management, Underwriter, and Director Defendants; (7) obtaining class certification; (8) fully briefing and preparing oral argument in opposition to Rensin and Palmer's appeal of this Court's class certification Order; and (9) successfully negotiating the Settlements with Rensin and Palmer.

112.    Plaintiffs' Counsel's efforts to date have been without compensation of any kind for almost five years.  Plaintiffs' Counsel's work has been wholly contingent upon the results achieved.  As compensation for these efforts, Plaintiffs' counsel request this Court to award them attorneys' fees in the amount of 30% of the Settlement Fund, plus expenses in the amount of $246,881.11, (exclusive of Notice and

Administration costs), plus interest at the same rate as interest has been earned on the Settlement Fund. Plaintiffs' Counsel's fee request is in line with numerous decisions within the Fourth Circuit and is the just and proper in light of the efforts expended and the results achieved for the Class.

113.    For the reasons set forth herein and in the Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Attorneys' Expenses, and Reimbursement of Plaintiffs' Expenses, filed contemporaneously herewith (the "Fee Petition"), and in the exhibits accompanying the Fee Petition, we submit that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards, and in light of the risks incurred, the result achieved and the effort expended.

**B.    Summary of Relevant Factors**

114.    Unlike defense counsel, who were compensated on a current basis throughout this action, Plaintiffs' counsel have received no compensation for almost five years and have incurred significant expenses in litigating for the benefit of the Class. The work and expenses devoted to the Action by Plaintiffs' Counsel have always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion.

115.    The requested fees are in line with awards in numerous other similar cases and fees in the private marketplace. In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients. These percentages are the prevailing market rates throughout the United States for contingent representation. In class action common fund cases such as this, class counsel's

25

attorneys' fees can only be determined by the Court in the exercise of its discretion.

Here, Plaintiffs request an award of 30% of the Settlement Fund, consistent with similar

cases and numerous recent authorities from district courts within this Circuit. See In re

Manugistics Group, Inc., Sec. Litig. Civ. Action No. 98-CV-1881 (FNS) Slip op. at 6, (D.

Md. Oct. 13, 2000)(30% of $2 million settlement fund, plus expenses); Asch, et al. v.

MNL Financial Inc., et al. C.A. No. JFM-91-1208-90-3151; 91-684, slip op. At 8 (D. Md.

Sept. 25, 1992) 30% of the $8.8 million settlement fund, plus expenses) ; In re

Medimmune Inc. Sec. Litig., Civil Action No. PJM 93-3980, Slip Op. at 3 (D.Md. May 6,

1996) (30% of $4.25 million settlement fund, plus expenses).

116.    The Settlement of $7.5 million cash, plus interest, is an excellent result for

the Class, and has been obtained solely by the efforts of Plaintiffs' Counsel without the

assistance of any regulatory agency, or the necessity of a trial and the subsequent

appeals that would inevitably follow.

117.    The Settlement, which concludes this complex and potentially protracted

litigation, benefits the judicial system and the public interest. Plaintiffs need not remind

the Court of the overcrowded condition of its docket. Therefore, pretrial resolution of

complex cases is much to be desired and has been repeatedly encouraged by the

courts. It avoids having the Court adjudicate all the issues a protracted, complex case

can create, and frees its resources so that other matters can be processed more

expeditiously.

**C.    The Requested Fees Are Fair and Reasonable As
A Percentage of the Benefits Obtained**

118.    Compensating counsel in common fund cases on a percentage basis
makes good sense.  First, it is consistent with the practice in the private marketplace,
where contingent fee attorneys are customarily compensated on a percentage of the
recovery method.  Second, it provides Plaintiffs' Counsel with a strong incentive to
effectuate the maximum possible recovery in the shortest amount of time necessary
under the circumstances, which is precisely what occurred here.  Third, use of the
percentage method decreases the burden imposed upon the Court by the "lodestar"
method and assures that Class members do not experience undue delay in receiving
their share of the settlement.

119.    Plaintiffs' counsel is applying for a fee award of 30% of the Settlement.
Measured as a percentage of the benefits obtained, the requested fee and expense
award is consistent with awards made in similar cases throughout the country.  In their
Memorandum in Support of Motion for  Award of Attorneys' Fees, Reimbursement of
Attorneys' Expenses, and Reimbursement of Plaintiffs' Expenses, Plaintiffs cite a list of
cases in which such a percent was awarded as fees in common fund cases.

120.    It is also significant that, in response to the notice mailed to 4,654
potential Class members and their nominees, and a summary notice published in the
national edition of The Wall Street Journal, to date no objections to this fee request
have been received.

27

**D.    Public Policy Considerations Mandate the Award Of Adequate Fees in Class Actions So That Competent and Experienced Lawyers Will Undertake Such Representations**

121.    The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits are to be encouraged.  That those goals have been achieved here is beyond question.  Despite the risks, Plaintiffs and their counsel have achieved a sizeable recovery for shareholders harmed by the alleged wrongdoing of defendants.  Despite the risks, a significant service has been provided to all investors in public companies -- a demonstration that the protection provided by the federal securities laws is real and can provide significant benefits through the class action device.  In light of these substantial risks, the excellent result obtained on behalf of the Class, and the other factors discussed herein, Plaintiffs respectfully request the Court to award the fees and expenses requested.

**E.    Standing And Caliber of Plaintiffs' Counsel**

122.    The expertise and experience of counsel is another important factor in setting a fair fee.  The expertise of the Berger Firm and Tydings & Rosenberg, LLP is substantial.  Plaintiffs' Lead Counsel are experienced and skilled practitioners in the securities litigation field, responsible for numerous significant settlements as well as legal decisions that enable litigation such as this is to be successfully prosecuted. See Firm Resumes, submitted concurrently as exhibits to Plaintiffs' Motion for  Award of Attorneys' Fees, Reimbursement of Attorneys' Expenses, and Reimbursement of Plaintiffs' Expenses .

**F.    Standing And Caliber Of Opposition Counsel**

123.    The quality of the work performed by counsel for the Plaintiffs in attaining

the Settlement may also be evaluated, in part, in light of the quality of the opposition.

Indeed, "the quality and vigor of opposing counsel is relevant in evaluating the quality of

plaintiffs' counsel." In re Linerboard Antitrust Litig., 2004 WL 122135, at *8 (E.D. Pa

June 2, 2004)(approving $60 million in attorneys' fees for $202 million settlement).

Here, Settling Defendants were represented by some of the country's elite securities

litigators, all of whom showed skill and experience in defending the Action. Senior

litigation partners headed teams from each of the Defendant law firms.

**G.    The Requested Attorney Expenses Are Reasonable**

124.    The Action was expensive to litigate for many reasons. First, it was

document intensive. Second, each phase of the litigation was vigorously litigated. For

example, over the almost five year course of this litigation, three separate petitions or

appeals were filed with the Fourth Circuit. Third, due to the complex nature of the

issues, Plaintiffs' Counsel relied heavily on experts.

**H.    The Requested Plaintiffs' Expenses are Reasonable**

125.    Lead Plaintiff Kimmelman and Plaintiffs Endrizzi and Mack provided

invaluable service to the Class, overseeing the prosecution of the Action; consulting

with Counsel; and offering advice and direction at critical junctures, including the

settlement phase. Each expended considerable time and effort on behalf of the Class,

and each provided lengthy deposition testimony. See Declarations of Kimmelman,

Mack, and Endrizzi, filed concurrently as exhibits to Plaintiffs' Motion for  Award of

29

Attorneys' Fees, Reimbursement of Attorneys' Expenses, and Reimbursement of Plaintiffs' Expenses.

## VII.    **CONCLUSION**

126.    The Settlement represents an excellent result for the Class. The Settlement is the culmination of the determined, skilled and fruitful work of Plaintiffs' Counsel. For their extensive efforts, Plaintiffs' counsel request that the Court award them fees in the amount of thirty percent (30%) of the Settlement Fund, or $2,250,000, and reimburse their expenses in the amount of $246,881.11, plus interest earned on both the fee and expense amount at the same rate as earned on the Settlement Fund until paid. In addition, it is requested that the Court reimburse Plaintiffs, who provided critical service on behalf of the Class, for their expenses in the aggregate amount of $10,570.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of April, 2005.

TODD S. COLLINS

# EXHIBIT

# A

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

```
————————————————————————————————X
                                           :
IN RE:   CREDITRUST CORPORATION            :    Civil Action No. MJG 00-CV-2174
         SECURITIES LITIGATION             :
                                           :
————————————————————————————————X
```

## AFFIDAVIT OF EDWARD J. SINCAVAGE, CPA
## REGARDING DISSEMINATION OF NOTICE TO THE CLASS

I, Edward J. Sincavage, CPA, being first duly sworn according to law, depose and say as follows:

1.     I am a partner in the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P. ("HR&S"), the main offices of which are at Suite 1700, 1515 Market Street, Philadelphia, Pennsylvania 19102. I have personal knowledge of the matters set forth in this affidavit and, if called upon as a witness, I could and would competently testify to these matters under penalty of perjury.

2.     HR&S performed the services listed herein under my supervision relating to dissemination of the "Notice of Hearing on Proposed Class Action Settlement, Notice of Motion For Award of Attorneys' Fees and Expenses, and Notice of Right to Share in Settlement Fund", dated February 15, 2005, along with the "Proof of Claim and Release" form attached thereto (herein referred to collectively as the "Notice") to the Class under the direction of Plaintiffs' Counsel. A copy of the Notice is annexed hereto as Exhibit A.

3.     HR&S received: (a) a diskette from Creditrust Corp.'s ("Creditrust") transfer agent containing 115 names and addresses of shareholders of Creditrust that had stock issued to them as a result of the IPO in July, 1998 and also those that had stock issued to them during the period between July 28, 1998 and May 31, 2000 (the "Class Period"); and (b) labels containing 91 names and addresses of additional shareholders that were issued stock during the Class Period.

4.      HR&S compiled these 206 name and address records into one database and removed one entity with an incomplete address. (However, this one entity also appears in our Nominee file.) We then had the remaining 205 names and addresses printed onto a Notice (or an envelope containing a Notice), and had them mailed via postage pre-paid, first-class mail on February 15, 2005.

5.      Also on February 15, 2005, HR&S sent a cover letter along with a Notice to each of the 221 brokerage firms and other nominees ("Nominees") in HR&S's Nominee contact file (the "Nominee File") via postage pre-paid, first-class mail. The cover letter requested each Nominee to research its files to identify potential Class Members, to inform HR&S of the results of its research, to provide HR&S with the names and addresses of potential Class Members to whom HR&S would mail a Notice, to advise HR&S of the number of Notices it requires for mailing, and/or to confirm that its research yielded no Class Members. The Nominee File is a compilation of firms that are typically sent a notice in securities class actions administered by HR&S, and from which we expect a response.

6.      Also, on February 15, 2005, HR&S mailed a Notice to each of the 119 banks and other institutions ("Institutions") on HR&S's Institution mailing file via postage pre-paid, first-class mail. This file is a compilation of Institutions that are typically sent a notice in securities class actions administered by HR&S merely to ensure that notice of this settlement has been disseminated widely. We do not necessarily expect a response from these Institutions.

7.      Thus, on February 15, 2005 HR&S mailed a total of 545 Notices via postage pre-paid, first-class mail to members and possible members of the Class.

8.      Subsequent to February 15, 2005 HR&S has mailed additional Notices via postage pre-paid, first-class mail (or via UPS for bulk shipments), as follows:

|   |   | Number of Notices Mailed |
|---|---|---|
| a. | To entities identified by Nominees | 3,410 |
| b. | To Nominees that requested Notices in bulk | 624 |
|   | TOTAL | 4,034 |

9.      On April 2, 2004, at our request, NCO Portfolio (successor to Creditrust Corporation ("Creditrust") following Creditrust's bankruptcy proceedings), sent a letter to The Depository Trust Company ("CEDE"), requesting participant positions listing for stock held by CEDE on behalf of any entity during a date(s) in the Class Period. Many brokers and nominees deliver stock certificates on behalf of their customers to CEDE, which means that CEDE is listed as the registered owner for such stock.

10.     When CEDE failed to respond to the April 2, 2004 letter, HR&S followed up, contacting CEDE directly to verify receipt of the April 2, 2004 letter. After repeated attempts by both HR&S and NCO Portfolio to secure the participant positions listing, HR&S finally received the participant positions listing reports on April 6, 2005 from CEDE. In reviewing the reports, HR&S then identified 75 nominee firms that were either not in our Nominee file (see paragraph 5 above), were located at a different address than our Nominee file indicated, or were listed in our Nominee file but did not respond to us as of April 11, 2005 (most of the 75 Nominee firms had previously been mailed copies of the Notice). On April 12, 2005, we then mailed a Notice and a cover letter similar to the cover letter explained in paragraph 5 to each of these 75 firms at the addresses provided.

11.     Thus, through April 14, 2005 HR&S has mailed a total of 4,654 Notices via postage prepaid, first-class mail (or via UPS for bulk shipments) as described in paragraphs 3 through 10 above.

12.     Additionally, HR&S caused the publication of the "Summary Notice" in the national edition of *The Wall Street Journal* on February 24, 2005. An Affidavit obtained from the Advertising Clerk of the Publisher of *The Wall Street Journal* is annexed hereto as Exhibit B.

13.     Paragraph 12 of the Notice informed Class Members that written requests for exclusion from the Class were to be addressed to the Claims Administrator, Creditrust Corporation Securities Litigation, Heffler, Radetich & Saitta L.L.P., P.O. Box 1520, Philadelphia, PA 19105-1520 and mailed, postmarked no later than April 1, 2005. HR&S has monitored all mail that has been delivered to that Post Office Box. As of April 14, 2005, HR&S has not received any requests for exclusion from the Class.

14.    HR&S has maintained an 800 number for receiving calls from class members in this action.

Through April 14, 2005, we have received and processed 19 telephone calls.

*Edward J. Sincavage, CPA*

EDWARD J. SINCAVAGE, CPA

Sworn to and subscribed before me
this 15th day of April 2005

*Kristine J. Blakla*

NOTARIAL SEAL
KRISTINE J. BLAKLA, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 14, 2007

4

# EXHIBIT

# A

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

——————————————————————— X
                                                        :
IN RE:  CREDITRUST CORPORATION          :      Civil Action No. MJG 00-CV-2174
          SECURITIES LITIGATION                    :
——————————————————————— X

### NOTICE OF HEARING ON PROPOSED CLASS ACTION SETTLEMENT, NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND NOTICE OF RIGHT TO SHARE IN SETTLEMENT FUND

# If you bought Creditrust Corporation ("Creditrust") Common Stock between July 28, 1998 and May 31, 2000 (inclusive), you could get a payment from a class action Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The Settlement will provide $7.5 million in cash plus interest to pay claims from investors who bought CREDITRUST CORP. common stock between July 28, 1998 and May 31, 2000 (inclusive), and who suffered damage as a result. This represents an average of $1.51 per share (for the estimated 4.95 million outstanding shares available for public purchase), before deduction of expenses. See Question 8 below.

- Attorneys for Plaintiffs intend to ask the Judge (referred to in this document as "the Court") to award them fees of up to 30% of the Settlement and up to $325,000 for reimbursement of litigation expenses and Plaintiffs' reasonable expenses, or an average of $0.52 per share. If approved by the Court, these amounts will be paid from the Settlement Fund. The costs of notice, settlement administration and taxes will also be paid from the Settlement Fund. See Questions 8 and 16 below.

- The Settlement would resolve a lawsuit alleging that certain persons, including two of Creditrust's principal officers, Joseph K. Rensin and Richard J. Palmer (the "Settling Defendants"), misled investors about Creditrust's financial results in its initial public offering and other filings with the SEC as well as other public statements. The Settling Defendants strongly deny the allegations in the lawsuit. The parties disagree on liability and damage issues. See Question 4 below.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get a payment. |
| **EXCLUDE YOURSELF** | You will get no payment. This is the only option that allows you to attempt to pursue your own lawsuit about the legal claims in this case. |
| **OBJECT** | You may write to the Court about why you don't like the Settlement, the legal fees and expenses or the Plan of Allocation. |
| **GO TO A HEARING** | You may ask to speak in Court about the fairness of the Settlement, the legal fees and expenses or the Plan of Allocation. |
| **DO NOTHING** | You will get no payment. You will give up your rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved and claims are processed. Please be patient.

- Further information regarding this Settlement may be obtained by contacting: Plaintiffs' Counsel: Todd Collins, Berger & Montague, P.C., 1622 Locust Street, Phila., PA 19103-6365, Telephone: 215-875-3000.

## WHAT THIS NOTICE CONTAINS

PAGE

**BASIC INFORMATION** ..................................................... PAGE 2
1. Why did I get this Notice package?
2. What is this lawsuit about?
3. What is a class action?
4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ............................................. PAGE 4
5. How do I know if I am part of the Settlement?
6. Are there exceptions to being included?
7. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ............................. PAGE 4
8. What does the Settlement provide?
   a. What is the Settlement Fund?
   b. What can I expect to receive under the proposed Settlement?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ................... PAGE 5
9. How can I get a payment?
10. When would I get my payment?
11. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ........................... PAGE 6
12. How do I exclude myself from the Settlement?
13. If I don't exclude myself, can I sue for the same thing later?
14. If I exclude myself, can I get money from this Settlement?

**THE LAWYERS REPRESENTING YOU** ....................................... PAGE 6
15. Do I have a lawyer in the case?
16. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ........................................ PAGE 7
17. How do I object to the Settlement?
18. What's the difference between objecting and being excluded?

**THE COURT'S SETTLEMENT HEARING** ..................................... PAGE 7
19. When and where will the Court decide whether to approve the Settlement?
20. Do I have to come to the hearing?
21. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................... PAGE 8
22. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ........................................... PAGE 8
23. How do I get more information about the Settlement?

**UNDERSTANDING YOUR PAYMENT—THE PLAN OF ALLOCATION** ............... PAGE 8

**SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES** ......... PAGE 9

**INQUIRIES** .......................................................... PAGE 10

## BASIC INFORMATION

### 1. Why did I get this Notice package?

You or someone in your family may have purchased Creditrust common stock between July 28, 1998 and May 31, 2000 (inclusive) (the "Class Period").

The court in charge of the case is the United States District Court for the District of Maryland and the case is known as *In re Creditrust Corporation Securities Litigation,* Civil Action No. MJG 00-CV-2174. The people who sued are called Plaintiffs, and two of the individuals they sued—Joseph Rensin and Richard Palmer—are called the Settling Defendants. Creditrust Corporation is not a defendant because it was in bankruptcy. Other defendants were dismissed by the Court at an earlier stage in this case. Another defendant, John Davis, is being released in this Settlement along with the Settling Defendants.

The Court sent you this notice because you have a right to know about a proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and resolves any objections or appeals, then an administrator will process the claims received and distribute the payments that the Settlement permits. You can track the progress of the Settlement by visiting: www.hrsclaimsadministration.com.

This package explains the lawsuit, the Settlement, your legal rights, the benefits that are available, who is eligible for them, and how to obtain them.

## 2. What is this lawsuit about?

The lawsuit alleges that Settling Defendants misled investors by misrepresenting Creditrust's financial results in its filings with the SEC at the time of Creditrust's initial public offering and in its later filings and public statements. The lawsuit alleges that Creditrust and the Settling Defendants made false claims about its success and alleges that the price of Creditrust's stock was artificially inflated. The lawsuit alleges that investors who paid for the stock at inflated prices were damaged when the truth came out, and the stock price went down. Settling Defendants strongly deny they did anything wrong.

## 3. What is a class action?

In a class action, one or more persons and/or entities called Class Representatives (in this case the Plaintiffs) sue on behalf of all people and/or entities who have similar claims. All of these people and/or entities are referred to as a Class or, individually, as Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. In this case, the Court's decision that the case could proceed as a Class Action was on appeal at the time of Settlement.

## 4. Why is there a Settlement?

The giving of this notice is not meant to imply that there has been any violation of the law, or that a recovery after a trial could be had if the action is not settled. The Settling Defendants have strongly denied, and continue to deny, any liability or any wrongdoing whatsoever in connection with the claims in this action and have asserted various defenses. The Court has not yet passed on the merits of Plaintiffs' claims or any of the Settling Defendants' defenses.

Plaintiffs have agreed to settle the lawsuit based on the facts they have discovered during the litigation, and the risks they would have faced if they had continued the lawsuit. Plaintiffs also agreed to settle based on their conclusion that the proposed Settlement is fair, reasonable and adequate, and that the Settlement serves the best interests of the Class Members. Plaintiffs' Counsel represent the interests of the Class Members. Plaintiffs' Counsel have determined that by settling, they avoid the costs and risks of further litigation, while at the same time providing compensation to the Class Members. Plaintiffs and Plaintiffs' Counsel believe that the Settlement is best for all Class Members.

Plaintiffs and Settling Defendants do not agree on the average amount of damages per share that would be recoverable if Plaintiffs were to prevail on each claim asserted. The issues on which the parties disagree include but are not limited to: (1) whether Settling Defendants made any false or misleading statements; (2) whether any statements made were false, material or otherwise actionable under the federal securities laws; (3) whether Settling Defendants intended to mislead when they made any statements; (4) the extent to which external factors, such as general market conditions, influenced the trading price of Creditrust common stock during the Class Period; (5) and whether or not any alleged misstatements or omissions affected the trading price of Creditrust common stock.

While Settling Defendants have strongly denied, and continue to strongly deny, all charges of wrongdoing and do not concede liability, they desire to settle the action on the basis proposed in order to put to rest all further controversy, and to avoid the substantial expense and inconvenience and distraction of burdensome and protracted litigation.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first have to decide if you are a Class Member.

### 5. How do I know if I am part of the Settlement?

The Court decided that persons who fit the following description are Class Members:

> *All persons who purchased the common stock of Creditrust between July 28, 1998 through May 31, 2000 (inclusive), and who suffered damage as a result of their purchase.*

### 6. Are there exceptions to being included?

You are not a Class Member if you are or were a Defendant. The Class also excludes immediate family members of Defendants, Defendants' legal representatives, heirs, predecessors, successors and assigns and any entity in which any Defendant has or had a controlling interest, or is controlled by any Defendant.

If one of your mutual funds owns Creditrust common stock, that alone does not make you a Class Member. You are a Class Member only if you personally purchased Creditrust common stock during the Class Period. Contact your broker to see if you hold or have held Creditrust common stock that you bought between July 28, 1998 and May 31, 2000 (inclusive).

If you sold Creditrust common stock during the Class Period, that does not make you a Class Member. You are a Class Member only if you bought Creditrust common stock during the Class Period.

If you exclude yourself from the Class, you are not a part of the Class.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included in the Class, you can ask for free help. You can call 1-800-528-7199 for more information. Or you can fill out and return the claim form attached to this Notice to see if you qualify.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 8. What does the Settlement provide?

On May 24, 2004, the Plaintiffs and Settling Defendants arrived at a proposed Settlement of the lawsuit. The proposed Settlement requires the Court's approval. The terms of the proposed Settlement are summarized below. The full Settlement terms are contained in a Stipulation and Agreement of Settlement ("Stipulation"). You can get a copy of the Stipulation by writing to Plaintiffs' Counsel: Todd Collins, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103 or by visiting www.hrsclaimsadministration.com.

**a.   What is the Settlement Fund?**

The proposed Settlement calls for Settling Defendants to create a settlement fund in the amount of $7.5 million in cash, plus whatever interest accrues after the fund's creation ("Gross Settlement Fund"). It is estimated that approximately 4.95 million shares of Creditrust common stock were issued to the public during the Class Period. Thus, the $7.5 million recovery represents an average of $1.51 for each publicly available share. This per share recovery is only an estimate and can vary as explained below. (Note that, to the extent that particular Creditrust shares were purchased more than once during the Class Period, this average recovery would be divided among the various purchasers who sold at a loss or held at the end of the Class Period.)

Subject to the Court's approval, a portion of the Gross Settlement Fund also will be used to pay Plaintiffs' attorneys' fees, and reasonable litigation expenses. See Question 16 below. A portion of the Gross Settlement Fund also will be used to pay taxes due on interest earned by the Gross Settlement Fund and notice or claims administration expenses permitted by the Court. After these deductions from the Gross Settlement Fund have been made, the amount remaining (the "Net Settlement Fund") will be distributed to Class Members who submit valid claims.

**b.   What can I expect to receive under the proposed Settlement?**

Your share of the Net Settlement Fund will depend on: (1) the number of claims filed; (2) the price of the shares you bought; (3) whether you sold your shares during the Class Period, or held your shares past the end of the Class Period; (4) the amount of administrative costs, including the costs of notice and settlement administration; and (5) the amount awarded by the Court for attorneys' fees and expenses.

By following the Plan of Allocation at the end of this notice, you will be able to calculate your "Recognized Claim." Your Recognized Claim may not be the amount you will receive in the Settlement. The Claims Administrator will distribute the Net Settlement Fund, according to the Plan of Allocation after the deadline for submission of Proof of Claim and Release forms has passed, and all claims have been processed.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

### 9. How can I get a payment?

To qualify for payment, you must send in a Proof of Claim and Release Form. This claim form is attached to this Notice. You may also obtain a claim form on the Internet at www.hrsclaimsadministration.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than June 1, 2005 to:

Claims Administrator
Creditrust Corporation Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 1520
Philadelphia, PA 19105-1520

The Claims Administrator will process your claim and advise you if you are an "Authorized Claimant"—meaning that your claim satisfies the requirements approved by the Court.

### 10. When would I get my payment?

The Court will hold a hearing on May 2, 2005, to decide whether to approve the Settlement. Even if the Court approves the Settlement, there may be appeals that would delay the implementation of the Settlement. It's always uncertain when such appeals can be resolved, perhaps taking more than a year. After the approval of the Settlement, and the resolution of any appeals, the Claims Administrator must process all of the claim forms. Everyone who sends in a claim form will be informed of the approval or disapproval of their claim. Please be patient. You can also track the progress of the Settlement by visiting: www.hrsclaimsadministration.com.

### 11. What am I giving up to get a payment or to stay in the Class?

If you are a Class Member, unless you exclude yourself, you will remain in the Class. That means that if the Settlement is approved, you and all Class Members will release (can't sue, continue to sue, or be part of any other lawsuit) all "Settled Claims," against the Settling Defendants and the "Released Parties" about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. Please see the definitions below of all of the terms that are in quotations. If you sign the claim form, you will agree to the "Release" on the claim form, which describes exactly the legal claims that you give up if you get Settlement benefits.

### DEFINITIONS

"Settling Defendants" means Joseph K. Rensin and Richard J. Palmer.

"Released Parties" means Settling Defendants, all other Defendants, the Insurer, and their respective parents, subsidiaries, affiliates, stockholders, attorneys, predecessors, agents, heirs, executors, successors, assigns, and corporations, partnerships, trusts, limited liability companies, and any other entities in which a Released Party has a legal or beneficial ownership or interest.

"Settled Claims" means any and all claims, debts, suits, demands, liabilities, rights and causes of action, however denominated and of every nature and description whatsoever without limitation (including, without limitation, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, foreign, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, derivative, or individual in nature, including both known claims and Unknown Claims (as defined below): (i) that have been asserted in this Action against any of the Released Parties, including without limitation any claim arising out of or relating to any of the acts, omissions, misrepresentations, facts, events, matters, transactions or occurrences referred to in the Action or otherwise alleged, asserted or contended in the Action; or (ii) that arise out of, are based upon or relate in any way to an investment in Creditrust. Without limiting the generality of the foregoing, Settled Claims also include any and all claims, rights, demands, causes of action, or suits arising out of, relating to, or in connection with the Settlement or the defense or resolution of the Action against the Released Parties (including Unknown Claims), except claims to enforce the Settlement or any of its terms.

"Unknown Claims" means (i) any and all Settled Claims that any Plaintiff or Class Member does not know or suspect to exist in his, her or its favor as of the Effective Date, including, without limitation, claims that if known by him, her or it might have affected his, her or its decision(s) to settle with and release the Released Parties or not to object to the Settlement, and (ii) any and all Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his favor, including, without limitation, claims that if known by him might have affected his decision with respect to the Settlement.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this Settlement, but you want to keep the right to attempt to sue or continue to sue Settling Defendants on your own about the legal issues in this case, then you must take steps to exclude yourself from the Settlement. This is sometimes referred to as opting out of the Class. Settling Defendants have asserted that the claims of the Class Members are time barred (filed too late) and the Court of Appeals agreed to consider this issue. If you exclude yourself from the Settlement and attempt to assert your own claim, there thus is a risk that a court could dismiss your case on grounds that it is time barred.

### 12. How do I exclude myself from the Settlement?

To exclude yourself from the Settlement, you must send a letter by mail saying that you want to be excluded from the Settlement. Be sure to include your name, address, telephone number, and your signature, along with your transaction information showing your membership in the Class. You must mail your exclusion request postmarked no later than April 1, 2005 to:

Claims Administrator
Creditrust Corporation Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 1520
Philadelphia, PA 19105-1520

You cannot exclude yourself on the phone or by e-mail.

If you send a letter asking to be excluded, you do not submit a Proof of Claim and Release Form, you will not receive a Settlement payment, you cannot object to the Settlement, and you cannot participate in the Court's Settlement Hearing. You will not be legally bound by anything that happens in this lawsuit.

### 13. If I don't exclude myself, can I sue for the same thing later?

No.

### 14. If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may be able to start a different lawsuit against Settling Defendants, though there is a risk that a court could dismiss your lawsuit on grounds that it was filed too late.

## THE LAWYERS REPRESENTING YOU

### 15. Do I have a lawyer in this case?

The Court approved the law firm of Berger & Montague, P.C. to represent you and the other Class Members. These lawyers are called Plaintiffs' Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense, but it is not necessary to have your own lawyer.

### 16. How will the lawyers be paid?

Plaintiffs' Counsel have expended considerable time and expense litigating this action on a contingent fee basis, and have paid in advance the expenses of litigation with their own money with the expectation that, if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation. Therefore, Plaintiffs' Counsel will file a motion asking the Court at the Settlement Hearing (see Question 19 below) to make an award of attorneys' fees in an amount not to exceed 30% of the Gross Settlement Fund and to pay up to $325,000 for reimbursement of litigation expenses and Plaintiffs' reasonable expenses. The requested fees and expenses are estimated to be an average of $0.52 per share (based on the approximately 4.95 million shares of Creditrust common stock that were avail-

able for public purchase in May 2000). The Court may award less than these amounts. Any amounts awarded by the Court will come out of the Gross Settlement Fund. The costs of notice, settlement administration and taxes will also be paid from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, AND/OR THE REQUEST FOR ATTORNEY'S FEES AND EXPENSES

You can tell the Court that you don't agree with the Settlement or some part of it, the Plan of Allocation, and/or Plaintiffs' Counsel's request for payment of attorney's fees and reimbursement of expenses. (This request includes a request for expenses of Plaintiffs, as well as expenses of Plaintiffs' Counsel.)

### 17. How do I object to the Settlement?

If you are a Class Member, you can object. You can state why you think the Court should not approve the Settlement. The Court will consider your views. To object, you must send a letter saying that you object to the Settlement, the Plan of Allocation, and/or the request for attorney's fees and expenses. This letter should be titled "Notice of Objection to Settlement in *In re Creditrust Corp. Securities Litigation*, Civil Action No. MJG 00-CV-2174." Be sure to include your name, address, telephone number, your signature, all the reasons for your objection, and the documents showing your transactions in Creditrust stock that make you a Class Member. Be sure to mail the objection to the four different places stated below, postmarked no later than April 1, 2005.

| COURT | PLAINTIFFS' COUNSEL | COUNSEL FOR DEFENDANT RENSIN | COUNSEL FOR DEFENDANT PALMER |
|---|---|---|---|
| Clerk of the Court United States District Court District of Maryland 101 West Lombard Street Baltimore, MD 21201 | Todd Collins Berger & Montague, P.C. 1622 Locust Street Philadelphia, PA 19103 | Charles Eisen Kirkpatrick & Lockhart, LLP 1800 Massachusetts Avenue Washington, DC 20036 | Stephen McNabb Fulbright & Jaworski L.L.P. 801 Pennsylvania Ave., N.W. Washington, DC 20004 |

### 18. What's the difference between objecting and being excluded?

Objecting is simply telling the Court that you don't like something about the Settlement, the Plan of Allocation, and/or the request for attorney's fees and expenses. You can object only if you stay in the Class. Even if you object you will still receive part of the Settlement if you are in the Class and an Authorized Claimant. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you, and you will not receive any part of the Settlement.

## THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak.

### 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Settlement Hearing at 10:00 a.m. on May 2, 2005, at the United States District Court for the District of Maryland Garmatz Courthouse, 101 W. Lombard Street, Courtroom 5C, Baltimore, MD 21201. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will also consider the Plan of Allocation, and the request for attorney's fees and expenses. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Plaintiffs' Counsel for attorneys' fees and expenses. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 20. Do I have to come to the hearing?

No. Plaintiffs' Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 21. May I speak at the hearing?

You may ask the Court for permission to speak at the Settlement Hearing if you have sent written objections to the four persons listed in Question 17. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re Creditrust Corporation Securities Litigation*, Civil Action No. MJG 00-CV-2174." Be sure to include

your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be post-marked no later than April 1, 2005, and be sent separately to the Clerk of the Court, Plaintiffs' Counsel, Counsel for Defendant Rensin, and Counsel for Defendant Palmer at the addresses listed in Question 17. You may include your Notice of Intention to Appear with your written objection. If you intend to present evidence at the hearing you must identify any witness you may call and documents you intend to present at the hearing. You cannot speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

### 22. What happens if I do nothing at all?

If you do nothing, you will get no money from the Settlement. But, unless you exclude yourself, you will not be able to start a lawsuit or be part of any other lawsuit against Settling Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

### 23. How do I get more information about the Settlement?

You can call 1-800-528-7199 toll free; write to Claims Administrator, Creditrust Corporation Securities Litigation, Heffler, Radetich & Saitta L.L.P., P.O. Box 1520, Philadelphia, PA 19105-1520, or visit the website at www.hrsclaims-administration.com, where you will find answers to common questions about the Settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

## UNDERSTANDING YOUR PAYMENT—THE PLAN OF ALLOCATION

- The Net Settlement Fund will be allocated among the Authorized Claimants (defined in response to Question 9 above) in accordance with this "Plan of Allocation." The amount allocated to each Authorized Claimant is referred to as the Authorized Claimant's "Payable Claim."

- The Payable Claim will be calculated in the following manner:

Each Authorized Claimant will receive, on a pro rata basis, that share of the Net Settlement Fund that the Authorized Claimant's Recognized Loss (as defined below) bears to the total Recognized Losses of all Authorized Claimants, subject to the further provisions of this Plan of Allocation set forth below.

An Authorized Claimant's Recognized Loss will be determined as follows:

(a) For shares of Creditrust stock purchased between July 28, 1998 and December 10, 1999, inclusive, and sold on or before December 12, 1999, Recognized Losses will be capped at a maximum of ten cents ($0.10) per share, and any profits will be offset against any Recognized Losses on other transactions in Creditrust stock purchased during the Class Period.

(b) For shares of Creditrust stock purchased between July 28, 1998 and May 31, 2000, inclusive, and held after the close of business on May 31, 2000, Recognized Losses will be computed as the purchase price of the Creditrust stock (exclusive of commissions and fees) less 46 cents ($0.46) for each retained share—representing the closing price of Creditrust shares on June 1, 2000. Any profits will be offset against any Recognized Losses on other transactions in Creditrust stock purchased during the Class Period.

(c) For shares of Creditrust stock purchased between July 28, 1998 and May 31, 2000, inclusive, and sold between December 13, 1999 through May 31, 2000, inclusive, Recognized Losses will be computed as the difference between the purchase price and the sales price of the Creditrust stock (both exclusive of commissions and fees), provided that if this difference is a negative number (meaning that Authorized Claimant made a profit on the sale) then the Recognized Loss for these shares will be zero, and any profits will be offset against any Recognized Losses on other transactions in Creditrust stock purchased during the Class Period.

(d) For purposes of determining which shares of Creditrust stock purchased during the Class Period were: (i) sold at a profit at any time during the Class Period, (ii) sold at a loss at any time during the Class Period, or (iii) were retained past May 31, 2000, all sales of Creditrust stock shall be matched on a "first-in, first-out" ("FIFO") basis, by matching the first shares sold against the first shares bought, and then on a FIFO basis against any additional shares of Creditrust stock bought during the Class Period on the basis of the assumption that the first shares of Creditrust stock bought were the first shares of Creditrust stock sold. This matching under FIFO shall be done irrespective of the different accounts in which the shares of Creditrust stock were purchased and sold unless the title or ownership of the accounts differed.

(e) The date of purchase or sale is the "contract" or "trade" date as distinguished from the "Settlement date."

(f) Short sales of shares of Creditrust stock will not be recognized for any amount of loss on the cover, purchase or closing transaction, and no Recognized Loss will be computed for any such covering purchase or closing transaction.

(g) For market makers that purchased Creditrust stock during the Class Period, Recognized Losses will be capped at a maximum of ten cents ($0.10) per share, and any profits will be offset against any Recognized Losses on other transactions in Creditrust stock purchased during the Class Period.

(h) Shares "transferred into" "delivered into" or "received into" the claimant's account, will NOT be considered as purchased shares unless the claimant submits documents showing or supporting that the original purchase of the shares occurred during the Class Period. Also, shares purchased and subsequently "transferred out" or "delivered out" of claimant's account will NOT be considered part of claimant's claim, since the right to file for those shares belongs to the person or party receiving the shares.

(i) The recipient of a grant or a gift of shares of Creditrust stock during the Class Period will not be considered to be a purchaser of shares of Creditrust stock during the Class Period. However, such a recipient will be eligible to file a Proof of Claim and Release form and participate in the Settlement to the extent the particular donor or decedent was the actual purchaser of shares of Creditrust stock within the Class Period; however, the recipient and the donor or his estate may not both claim with regard to the same shares of Creditrust stock. If both the recipient and the donor or estate make such a claim, only the claim filed by the recipient will be honored.

(j) In the interest of economy, no payment will be made to any Authorized Claimant whose Payable Claim would be less than $7.50 based on the initial allocation of the Net Settlement Fund to Authorized Claimants.

- Nothing in this Plan of Allocation represents an admission by either of the Settling Defendants that he is liable to any Class Member for anything, that any Class Member has been damaged, or that the dollar amounts set forth in this Plan of Allocation reflect actual or potential damages to the Class.

- Payment in the manner set forth above will be considered conclusive compliance with the Stipulation against all Authorized Claimants. All Class Members who fail to submit valid and timely Proofs of Claim will not be allowed to participate in the distribution of the Net Settlement Fund but otherwise will be bound by all of the terms of the Stipulation, including the terms of any final orders or judgments entered and the releases given.

- No Authorized Claimant will have any claim against Plaintiffs, Plaintiffs' Counsel or the Claims Administrator, or any other agent designated by Plaintiffs' Counsel based on the distributions made substantially in accordance with the Stipulation, the Plan of Allocation, and further orders of Court. In addition, Plaintiffs' Counsel will have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed in the interest of achieving substantial justice.

### SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased Creditrust Common Stock during the Class Period as nominee for a beneficial owner, then within ten days after you receive this Notice, you must either: (a) send a copy of this Notice and the accompanying Proof of Claim and Release form by first-class mail to all such beneficial owners; or (b) provide a list, electronically if possible, of the names and addresses of such beneficial owners to the Claims Administrator:

Claims Administrator
Creditrust Corporation Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 1520
Philadelphia, PA 19105-1520

If you chose option (a) above, you may request enough forms from the Claims Administrator (at no charge) to complete your mailing. You may seek reimbursement of your reasonable expenses actually incurred in complying with these directives, subject to approval of Plaintiffs' Counsel or the Court. All communications concerning this matter should be addressed to the Claims Administrator.

## INQUIRIES

All inquiries concerning this Notice, the Proof of Claim form, or any other issues (except those explained in Questions 17 and 21) should be directed to:

**Claims Administrator**
**Creditrust Corporation Securities Litigation**
**Heffler, Radetich & Saitta L.L.P.**
**P.O. Box 1520**
**Philadelphia, PA 19105-1520**
**1-800-528-7199**
**www.hrsclaimsadministration.com**

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE**

**DATED: February 15, 2005**                    **BY ORDER OF THE DISTRICT COURT:**

                                HONORABLE MARVIN J. GARBIS
                                UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

```
————————————————————————— X
IN RE:  CREDITRUST CORPORATION        :      Civil Action No. MJG 00-CV-2174
        SECURITIES LITIGATION          :
————————————————————————— X
```

### PROOF OF CLAIM AND RELEASE

IF YOU PURCHASED SHARES OF CREDITRUST CORPORATION ("CREDITRUST")
COMMON STOCK DURING THE PERIOD FROM JULY 28, 1998 THROUGH MAY 31, 2000,
INCLUSIVE (THE "CLASS PERIOD"), AND WERE DAMAGED THEREBY, YOU MAY WISH
TO FILE A PROOF OF CLAIM FOR A POTENTIAL RECOVERY.

### GENERAL INSTRUCTIONS

1.  In order to receive any payments to which you may be entitled as a Member of the Class in the action enti-
tled, *In re Creditrust Corporation Securities Litigation,* Civil Action No. MJG 00-CV-2174 ("the Action"), you must com-
plete and sign this Proof of Claim and Release (the "Proof of Claim"). If you fail to submit a properly addressed Proof
of Claim (as set forth in Paragraph 3 below), your claim may be rejected and you may be precluded from any recov-
ery from the Settlement Fund created in connection with the proposed settlement of the Action.

2.  Submission of this Proof of Claim, however, does not automatically mean that you will share in the proceeds
of the settlement in the Action. You also need to qualify as an Authorized Claimant, as described in the attached
Notice

3.  YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM TO THE CLAIMS ADMINISTRATOR BY
FIRST CLASS MAIL POSTMARKED ON OR BEFORE JUNE 1, 2005, ADDRESSED AS FOLLOWS:

Claims Administrator
Creditrust Corporation Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 1520
Philadelphia, PA 19105-1520

4.  If you are a Member of the Class and you do not timely request exclusion in connection with the proposed
settlement, you are bound by the terms of any judgment entered in the Action, WHETHER OR NOT YOU SUBMIT A
PROOF OF CLAIM.

5.  If you are NOT a Member of the Class (as defined in the attached Notice Question 5, DO NOT submit a Proof
of Claim.

### CLAIM FORM

1.  If you purchased Creditrust stock and held the certificate(s) in your name, you are the beneficial purchaser
as well as the record purchaser. If, however, you purchased Creditrust stock and the certificate(s) were registered in
the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party
is the record purchaser.

2.  Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser and, if different,
each record purchaser of Creditrust stock which forms the basis of this claim. THIS CLAIM MUST BE FILED BY THE
ACTUAL BENEFICIAL PURCHASER OR PURCHASERS, OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER OR
PURCHASERS, OF THE CREDITRUST STOCK UPON WHICH THIS CLAIM IS BASED.

3.  All joint purchasers must sign this claim. Executors, administrators, guardians, conservators, and trustees
must complete and sign this form on behalf of persons represented by them and documentation establishing their
current authority must accompany this claim and their titles and capacities must be stated. The Administrator may
use the Social Security (or employer identification) number and telephone number of the beneficial owner in verify-
ing the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection
of the claim.

4. Use Part II, Sections A and B of this form entitled "Schedule of Transactions in Creditrust Stock" to supply all required details of your transaction(s) in Creditrust stock. On the schedules, provide all of the requested information with respect to *all* of your purchases, and *all* of your sales of Creditrust stock which took place from July 28, 1998 though May 31, 2000 (inclusive), regardless of whether such transactions resulted in a profit or loss. Failure to report all purchases and sales may result in the rejection of your claim.

5. List each transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

6. In computing the "Total Purchase Price" and the "Total Sales Price," you must exclude brokerage commissions and transfer taxes paid by you in connection with each purchase and sale of Creditrust stock.

7. You must attach to your claim brokers' confirmation or other documentation of your transactions in Creditrust stock, including documentation of your retention of any shares of Creditrust stock at the close of trading on May 31, 2000. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

**UNITED STATES DISTRICT COURT—DISTRICT OF MARYLAND**

*In re Creditrust Corporation Securities Litigation, Civil Action No. MJG 00-CV-2174*

**PROOF OF CLAIM, RELEASE AND SUBSTITUTE FORM W-9**

*Must Be Postmarked No Later Than:*
June 1, 2005

**PART I: CLAIMANT IDENTIFICATION** *Please Type or Print*

Beneficial Owner's Name (First, Middle, Last)

Joint Beneficial Owner's Name (First, Middle, Last)

If you are a bank or other institution filing on behalf of a third-party, and an account number is needed to identify the claimant for your records, indicate account number: _____

Street Address:

Street Address:

City:      State:    Zip Code:

Foreign Province      Foreign Country

E-Mail Address

Social Security Number: _____ - ___ - ____   **or**   Employer Identification Number: ___ - _____

Area Code   Telephone No. (Day)      Area Code   Telephone No. (Evening)

Claimant is: ☐ Individual   ☐ Trust   ☐ Joint Tenants in Common   ☐ IRA   ☐ Corporation   ☐ Other (specify) _____

Record Owner's Name (if different from beneficial owner listed above)

**MARKET MAKERS**

[check one] I was _____ I was not _____ a Market Maker in Creditrust common stock during the Class Period.

**PART II: SCHEDULE OF TRANSACTIONS IN CREDITRUST STOCK**

A. PURCHASES OF CREDITRUST COMMON STOCK (From JULY 28, 1998 THROUGH MAY 31, 2000, inclusive) (must be documented):

| Trade Date(s) Month / Day / Year | Number of Shares Purchased | Price Per Share | Total Purchase Price (excluding commissions, transfer taxes, or other fees) |
|---|---|---|---|
| - - | | $ . | $ . |
| - - | | $ . | $ . |
| - - | | $ . | $ . |
| - - | | $ . | $ . |

TOTAL SHARES PURCHASED _____

13

B. SALES OF CREDITRUST COMMON STOCK (From JULY 28, 1998 THROUGH MAY 31, 2000, inclusive) (must be documented):

| Trade Date(s) Month / Day / Year | Number of Shares Sold | Price Per Share | Total Sale Price (excluding commissions, transfer taxes, or other fees) |
|---|---|---|---|
| ⬜⬜-⬜⬜-⬜⬜ | ⬜⬜⬜⬜⬜ | $⬜⬜⬜.⬜⬜ | $⬜⬜⬜⬜⬜.⬜⬜ |
| ⬜⬜-⬜⬜-⬜⬜ | ⬜⬜⬜⬜⬜ | $⬜⬜⬜.⬜⬜ | $⬜⬜⬜⬜⬜.⬜⬜ |
| ⬜⬜-⬜⬜-⬜⬜ | ⬜⬜⬜⬜⬜ | $⬜⬜⬜.⬜⬜ | $⬜⬜⬜⬜⬜.⬜⬜ |
| ⬜⬜-⬜⬜-⬜⬜ | ⬜⬜⬜⬜⬜ | $⬜⬜⬜.⬜⬜ | $⬜⬜⬜⬜⬜.⬜⬜ |

TOTAL SHARES SOLD _____

C. Number of shares held at the close of trading on May 31, 2000 (If none, write zero): _____ (must be documented). This number should be A - B.

If you require additional space, attach extra schedules in the same format as above. Sign and print your name and taxpayer identification number on each additional page and check this line : _____

## YOU MUST READ AND SIGN THE FOLLOWING:

## SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I submit this Proof of Claim and Release under the terms of the Stipulation of Settlement ("Stipulation") described in the Notice. I also submit to the jurisdiction of the United States District Court for the District of Maryland with respect to my claim as a Class Member and for purposes of enforcing the release set forth herein and any judgment that may be entered in the Action. I agree to furnish additional information to Plaintiffs' Counsel to support this claim if required to do so. I have not submitted any other claim covering the same purchases or sales of Creditrust stock during the Class Period and know of no other person having done so on my behalf.

## DEFINITIONS

"Settling Defendants" means Joseph K. Rensin and Richard J. Palmer.

"Released Parties" means Settling Defendants, all other Defendants, the Insurer, and their respective parents, subsidiaries, affiliates, stockholders, attorneys, predecessors, agents, heirs, executors, successors, assigns, and corporations, partnerships, trusts, limited liability companies, and any other entities in which a Released Party has a legal or beneficial ownership or interest.

"Settled Claims" means any and all claims, debts, suits, demands, liabilities, rights and causes of action, however denominated and of every nature and description whatsoever without limitation (including, without limitation, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, foreign, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, derivative, or individual in nature, including both known claims and Unknown Claims (as defined below): (i) that have been asserted in this Action against any of the Released Parties, including without limitation any claim arising out of or relating to any of the acts, omissions, misrepresentations, facts, events, matters, transactions or occurrences referred to in the Action or otherwise alleged, asserted or contended in the Action; or (ii) that arise out of, are based upon or relate in any way to an investment in Creditrust. Without limiting the generality of the foregoing, Settled Claims also include any and all claims, rights, demands, causes of action, or suits arising out of, relating to, or in connection with the Settlement or the defense or resolution of the Action against the Released Parties (including Unknown Claims), except claims to enforce the Settlement or any of its terms.

"Unknown Claims" means (i) any and all Settled Claims that any Plaintiff or Class Member does not know or suspect to exist in his, her or its favor as of the Effective Date, including, without limitation, claims that if known by him, her or it might have affected his, her or its decision(s) to settle with and release the Released Parties or not to object to the Settlement, and (ii) any and all Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his favor, including, without limitation, claims that if known by him might have affected his decision with respect to the Settlement.

14

## RELEASE

A. I hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge each and all "Released Parties" from and of any and all "Settled Claims."

B. With respect to any and all Settled Claims, I expressly waive (give up) any and all rights or benefits I may now have, or in the future may have, under any law relating to the releases of Unknown Claims, including, without limitation, Section 1542 of the California Civil Code, which provides:

> A general release does not extend to the claims which the creditor does not know or suspect exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

I expressly have waived any and all provisions, rights and benefits conferred by any law or any state or territory of the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance or intent to Section 1542 of the California Civil Code.

C. This Release shall be of no force and effect unless and until the Court approves the settlement and the settlement becomes effective as to all Defendants or any Released Persons as of the Effective Date (as defined in the Stipulation).

D. I hereby warrant and represent that I have not assigned, transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this Release.

E. I hereby warrant and represent that I have included information about all of my transactions in Creditrust common stock which occurred during the Class Period, as well as the number of shares of Creditrust held by me on the close of trading on May 31, 2000.

F. I certify that I am NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code.

Note:   If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the word "NOT" in the Certification above.

I hereby certify under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct and that this Proof of Claim form was executed this:

_____ day of _____,
                         (Month)

_____ in _____,
(Year)                (City)

_____, _____.
(State)                     (Country)

(The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding).

_____
(Signature of Claimant)

_____
(Type or print your name here)

_____
(Signature of Joint Claimant, if any)

_____
(Type or print your name here)

_____
(Capacity of persons signing, e.g., Beneficial Purchaser, Executor of Administrator)

15

In Re Creditrust Securities Litigation
c/o Claims Administrator
Heffler, Radetich & Saitta L.L.P.
P.O. Box 1520
Philadelphia, PA 19105-1520

# FIRST-CLASS MAIL

**PLEASE FORWARD—IMPORTANT LEGAL NOTICE**

**ACCURATE CLAIMS PROCESSING
TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE**

Reminder Checklist:

1. Please sign the Proof of Claim and Release.

2. Remember to attach copies of supporting documentation.

3. Do not send original or copies of stock certificates.

4. If you move, please send your new address to the address below.

5. Please keep a copy of your claim form for your records.

6. If you desire an acknowledgement of receipt of your Proof of Claim form, please send it via Certified Mail, Return Receipt Requested.

7. If you have any questions concerning this Proof of Claim, contact the Claims Administrator at:

Claims Administrator
Creditrust Corporation Securities Litigation
Heffler, Radetich & Saitta L.L.P.
P.O. Box 1520
Philadelphia, PA  19105-1520
1-800-528-7199

www.hrsclaimsadministration

# EXHIBIT

# B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE CREDITRUST CORPORATION SECURITIES LITIGATION | Civil Action No. MJG-00-CV-2174 |

## SUMMARY NOTICE

TO: ALL PERSONS WHO PURCHASED COMMON STOCK OF CREDITRUST CORPORATION ("CREDITRUST") DURING THE PERIOD JULY 28, 1998, THROUGH MAY 31, 2000, INCLUSIVE (THE "CLASS PERIOD"), AND WHO WERE DAMAGED THEREBY.

YOU ARE HEREBY NOTIFIED that the above-captioned consolidated action has been certified as a class action and that a settlement has been proposed with Defendants Joseph K. Rensin and Richard J. Palmer for a total of $7,500,000 cash. A hearing will be held before the Honorable Marvin J. Garbis in the United States District Court, District of Maryland, Garmatz Courthouse, 101 West Lombard Street, Baltimore, MD 21201 at 10:00 a.m., on May 2, 2005, in Courtroom 5C, to determine whether the proposed settlement should be approved by the Court as fair, reasonable, and adequate, to consider the proposed Plan of Allocation, and to consider the application of Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT. If you have not yet received the full printed Notice of Hearing on Proposed Class Action Settlement, Notice of Motion for Award of Attorneys' Fees and Expenses, and Notice of Right to Share In Settlement Fund (the "Notice") and a Proof of Claim form, you may obtain copies of these documents by contacting: Creditrust Corporation Securities Litigation, c/o Heffler, Radetich & Saitta, L.L.P., Claims Administrator, P.O. Box 1520, Philadelphia, PA 19105-1520, (215) 665-1124.

Inquiries, other than requests for the forms of the Notice and Proof of Claim, may be made to Plaintiffs' Counsel: Todd Collins, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103, (215) 875-3000.

To participate in the Settlement, you must submit a Proof of Claim no later than June 1, 2005. If you are a Class Member and do not now exclude yourself from the Class, you will be bound by the Order and Final Judgment of the Court. To exclude yourself from the Class, you must submit a request for exclusion postmarked no later than April 1, 2005. If you are a Class Member and do not submit a proper Proof of Claim, you will not share in the proceeds of the Settlement but you nevertheless will be bound by the Order and Final Judgment of the Court.

Further information may be obtained by directing your inquiry in writing to the Claims Administrator at the address above.

DATED: February 24, 2005

**BY ORDER OF THE DISTRICT COURT**
Honorable Marvin J. Garbis, United States District Court Judge

STATE OF TEXAS            )
                         )  ss:
CITY AND COUNTY OF DALLAS)

I, <u>Kelly Walker</u>, being duly sworn, depose and say that I am the Advertising Clerk of the

Publisher of <u>THE WALL STREET JOURNAL</u> , a daily national newspaper published

and of general circulation in the City and County of New York, New York, City of

Naperville, DuPage County, Illinois, and in the city and County of Dallas, Texas and that

the attached Notice has been regularly published in <u>THE WALL STREET JOURNAL</u> for

national distribution for <u>one</u> insertion(s) on the following date(s): <u>2/24/05</u> advertiser:

<u>Creditrust Corp</u> and that the foregoing statements are true and correct to the best of my

knowledge, information, and belief.

Sworn to before me this

2<u>4th</u> day of <u>February</u>, 20<u>05</u>

_____
Notary Public

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE CREDITRUST CORPORATION SECURITIES LITIGATION | Civil Action No. MJG-00-CV-2174 |

## SUMMARY NOTICE

TO: ALL PERSONS WHO PURCHASED COMMON STOCK OF CREDITRUST CORPORATION ("CREDITRUST") DURING THE PERIOD JULY 28, 1998, THROUGH MAY 31, 2000, INCLUSIVE (THE "CLASS PERIOD"), AND WHO WERE DAMAGED THEREBY.

YOU ARE HEREBY NOTIFIED that the above-captioned consolidated action has been certified as a class action and that a settlement has been proposed with Defendants Joseph K. Rensin and Richard J. Palmer for a total of $7,500,000 cash. A hearing will be held before the Honorable Marvin J. Garbis in the United States District Court, District of Maryland, Garmatz Courthouse, 101 West Lombard Street, Baltimore, MD 21201 at 10:00 a.m., on May 2, 2005, in Courtroom 5C, to determine whether the proposed settlement should be approved by the Court as fair, reasonable, and adequate, to consider the proposed Plan of Allocation, and to consider the application of Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT. If you have not yet received the full printed Notice of Hearing on Proposed Class Action Settlement, Notice of Motion for Award of Attorneys' Fees and Expenses, and Notice of Right to Share in Settlement Fund (the "Notice") and a Proof of Claim form, you may obtain copies of these documents by contacting: Creditrust Corporation Securities Litigation, c/o Heffler, Radetich & Saitta, L.L.P., Claims Administrator, P.O. Box 1520, Philadelphia, PA 19105-1520, (215) 665-1124.

Inquiries, other than requests for the forms of the Notice and Proof of Claim, may be made to Plaintiffs' Counsel: Todd Collins, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103, (215) 875-3000.

To participate in the Settlement, you must submit a Proof of Claim no later than June 1, 2005. If you are a Class Member and do not now exclude yourself from the Class, you will be bound by the Order and Final Judgment of the Court. To exclude yourself from the Class, you must submit a request for exclusion postmarked no later than April 1, 2005. If you are a Class Member and do not submit a proper Proof of Claim, you will not share in the proceeds of the Settlement but you nevertheless will be bound by the Order and Final Judgment of the Court.

Further information may be obtained by directing your inquiry in writing to the Claims Administrator at the address above.

DATED: February 24, 2005

**BY ORDER OF THE DISTRICT COURT**
Honorable Marvin J. Garbis, United States District Court Judge

THE WALL STREET JOURNAL.

LEGAL NOTICES

GLOBAL ◆ NATIONAL ◆ REGIONAL

THURSDAY, FEBRUARY 24, 2005

Visit Advertising.WSJ.com

B7