# IN THE UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | **:** | |
| **In re Creditrust Corporation** | **:** | **Civil Action No. MJG 00-CV-2174** |
| **Stockholders  Litigation** | **:** | |
| ―――――――――――――――― | **:** | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF ATTORNEYS' EXPENSES, AND REIMBURSEMENT OF PLAINTIFFS' EXPENSES

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

Advance Bus. Sys. & Supply Co. v. SCM Corp.,
      415 F.2d 55 (4th Cir. 1969)............................................................................ 14

Allen v. United States,
      606 F.2d 432 (4th Cir. 1979)......................................................................... 10

Almond v. Boyles,
      792 F.2d 451 (4th Cir. 1986)......................................................................... 14

Barber v. Kimbrell's,
      577 F.2d 216 (4th Cir. 1978)......................................................................... 10

Bateman Eichler, Hill Richards, Inc. v. Berner,
      472 U.S. 299 (1985)...................................................................................... 15

Behrens v. Wometco Enters., Inc.,
      118 F.R.D. 534 (S.D. Fla. 1988) .................................................................. 11

Blum v. Stenson,
      465 U.S. 886 (1984) ........................................................................ 5, 8, 11, 14

Boeing Co. v. Van Gemert,
      444 U.S. 472 (1980).......................................................................................... 4

Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green,

778 F.2d 890 (1st Cir. 1985) ........................................................................................ 10

Brown v. Phillips Petroleum Co.,
838 F.2d 451 (10th Cir. 1988)...................................................................................... 11

Bullock v. Adm'r of Estate of Kirchner,
84 F.R.D. 1 (D.N.J. 1979) ............................................................................................ 15

Burger v. CPC Int'l, Inc.,
76 F.R.D. 183 (S.D.N.Y. 1977)................................................................................... 14

Bussie v. Allamerica Fin. Corp.,
No. 97-40204-NMG, 1999 WL. 342042 (D. Mass. May 19, 1999) ............................. 17

C.R.A. Realty Corp. v. Crotty,
878 F.2d 562 (2d Cir. 1989)......................................................................................... 15

Camden I Condominium Ass'n v. Dunkle,
946 F.2d 768 (11th Cir. 1991)................................................................................. 5, 8, 9

Central R. & Banking Co. v. Pettus,
113 U.S. 116 (1885) ................................................................................................... 4, 5

In re  Continental Ill. Sec. Litig.,
962 F.2d 566 (7th Cir. 1992)........................................................................................ 5, 6

Cosgrove v. Sullivan,
759 F. Supp. 166 (S.D.N.Y. 1991) ............................................................................. 10

Court Awarded Attorney Fees,
108 F.R.D. 237 (3d Cir. 1985) ....................................................................................... 5

Daly v. Hill,
790 F.2d 1071 (4th Cir. 1986)...................................................................................... 16

Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974)......................................................................................... 12

Dolgow v. Anderson,
43 F.R.D. 472 (E.D.N.Y. 1968) ................................................................................... 15

Florin v. Nationsbank, N.A.,
34 F.3d 560 (7th Cir. 1994)............................................................................................ 8

In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
55 F.3d 768 (3d Cir. 1995) ............................................................................................ 8

Goldenberg v. Marriott PLP Corporation,
    33 F. Supp. 2d 434 (D. Md. 1998) ........................................................... 3, 5, 8

Gottlieb v. Barry,
    43 F.3d 474 (10th Cir. 1994) ...................................................................... 8

Hensley v. Eckerhart,
    461 U.S. 424 (1983) ........................................................................... 10, 11

Johnson v. Georgia Highway Express, Inc.,
    488 F.2d 714 (5th Cir. 1974) .................................................................... 10

Kirchoff v. Flynn,
    786 F.2d 320 (7th Cir. 1986) .................................................................. 6, 8

Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.,
    540 F.2d 102 (3d Cir. 1976) ............................................................... 12, 13

Meshel v. Nutri/System, Inc.,
    102 F.R.D. 135 (E.D. Pa. 1984) ............................................................... 15

In re Montgomery County Real Estate Antitrust Litig.,
    83 F.R.D. 305 (D. Md. 1979) .................................................................... 12

Paul, Johnson, Alston & Hunt v. Graulty,
    886 F.2d 268 (9th Cir. 1989) ...................................................................... 9

Phemister v. Harcourt Brace Jovanovich, Inc.,
    1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984) .................................. 8

Phillips v. Crown Cent. Petroleum Corp.,
    426 F. Supp. 1156 (D. Md. 1977) .............................................................. 12

In re Prudential-Bache Energy Income P'ships Sec. Litig.,
    1994 U.S. Dist. LEXIS 6621 (E.D. La. May 18, 1994) ..................................... 8

In re Prudential Ins. Co. of Am. Sales Practice Litig.,
    148 F.3d 283 (3d Cir. 1998) ....................................................................... 9

In re RJR Nabisco, [1992 Transfer Binder],
    Fed. Sec. L. Rep. (CCH) at 94 ................................................................. 10

Ramos v. Lamm,
    713 F.2d 546 (10th Cir. 1983) .................................................................. 11

Roberts v. Texaco, Inc.,
    979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................... 10

Rum Creek Coal Sales, Inc. v. Caperton,
    31 F.3d 169 (4th Cir. 1994) .............................................................................. 16

Spell v. McDaniel,
    824 F.2d 1380 (4th Cir. 1987) ........................................................................... 11

Sprague v. Ticonic Nat'l Bank,
    307 U.S. 161 (1939) ....................................................................................... 4, 5

Strang v. JHM Mortgage Sec. Ltd. P'ship,
    890 F. Supp. 499 (E.D. Va. 1995) .................................................................... 6, 9

Swedish Hosp. Corp. v. Shalala,
    1 F.3d 1261 (D.C. Cir. 1993) ........................................................................... 6, 8

In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.,
    56 F.3d 295 (1st Cir. 1995) ................................................................................ 8

In re Triangle Indus. Sec. Litig.,
    Fed. Sec. L. Rep. (CCH) ¶ 96,528 (Del. Ch. New Castle Co. Mar. 15, 1990) .............. 10

Trustees v. Greenough,
    105 U.S. 527 (1882) ....................................................................................... 4, 5

Unemployed Workers  Org. Comm. v. Batterton,
    477 F. Supp. 509 (D. Md. 1979) ....................................................................... 10

United States v. Tobias,
    935 F.2d 666 (4th Cir. 1991) ........................................................................... 4, 5

Vaughns v. Bd. of Educ.,
    598 F. Supp. 1262 (D. Md. 1984) ................................................................. 11, 12

Weiss v. Mercedes-Benz of N. Am.,
    899 F. Supp. 1297 (D. N.J.  1995) ...................................................................... 9

## DOCKETED CASES

Asch, et al. v. MNC Financial, Inc., et al.,
    C.A. No. JFM-91-1208 (D. Md. Sept. 25, 1992) ............................................................. 7

Gelfer  v. Pegasystems, Inc.,
    C.A. No. 98-CV-12527-JLT (D. Mass. Dec. 19, 2000) .................................................. 17

In re Laidlaw Stockholder Litigation,
    Civil Action No. 3:00-CV-855-17 (D.S.C. June 10, 2003)............................................... 7

Lemmer v. Golden Books Family Entm't, Inc.,
    No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999)............................................................. 7, 10

In re: Manugistics Group, Inc. Sec. Litig.,
    Civil Action No. 98-CV-1881 (FNS) (D. Md. Oct. 13, 2000) ......................................... 7

Novak v. Ann Taylor,
    Civ. No. 96 Civ. 3073 (S.D.N.Y. Dec. 14, 1999) ........................................................... 7

In re Policy Management Securities Litigation,
    Civil Action No. 00-CV-130 (D.S.C. March 13, 2002) ................................................... 7

In re Policy Mgmt. Sys. Corp. Sec. Litig.,
    Civil Action No. 3:93-0807-17 (D.S.C. May 26, 1995) .................................................. 7

In re Safety Kleen Stockholders Litigation,
    Civil Action No. 3:00-CV-736-17 (D.S.C. May 2, 2003)................................................ 7

In re Shiva Corp. Sec. Litig.,
    Master File No. 97-11159 (D. Mass. Oct. 27, 1999) ....................................................... 7

In re Sirrom Capital Corp. Sec. Litig.,
    C.A. No. 3-98-0643 (M.D. Tenn. Feb. 4, 2000) ............................................................. 7

In re Summit Tech. Sec. Litig.,
    C.A. No. 96-11589-JLT (D. Mass. Apr. 25, 2001) ....................................................... 17

In re Xcel Energy Inc. Securities Litigation,
    Civil 02-2677 (DSD/FLN), MDL No. 1511 (D. Minn. April 8, 2005)............................ 9

**FEDERAL STATUTES**

15 U.S.C. 78u-4 § 21D(a)(4) ................................................................................... 17

Private Securities Litigation Reform Act of 1995, 15 U.S.C.A. § 78u-4(6) ................................ 5

**MISCELLANEOUS**

1 Alba Conte, <u>Attorney Fee Awards</u> § 2.02, at 31-32 (2d ed. 1993) ........................................... 5

I.    **PRELIMINARY STATEMENT.**

This memorandum is submitted in support of the Motion for attorneys' fees and expenses on behalf of Lead Counsel and other Plaintiffs' counsel (collectively "Plaintiffs' Counsel" or "Counsel"), who assisted in the prosecution of this Action at the direction of Lead Counsel. It is also submitted in support of the Motion for reimbursement of Plaintiffs' expenses (collectively, the "Fee and Expense Application"). For the reasons set forth herein, respectfully, the Fee and Expense Application should be approved.

It has been almost five years since the commencement of this class action (the "Action"), which has sought to recover losses suffered by innocent investors who purchased shares of the common stock of Creditrust Corporation ("Creditrust") between July 29, 1998 and May 31, 2000. Plaintiffs and Counsel have aggressively prosecuted the Action notwithstanding the considerable risks they faced at the outset and throughout the litigation.

Plaintiffs' Counsel succeeded in defeating Defendants' motion to dismiss; defeated Defendants' opposition to class certification; analyzed thousands of documents produced by Defendants and third parties; conducted an extensive investigation, which included not only analysis of public documents but also interviews with "deep throat" witnesses; amended their

complaint as they gathered additional facts; and fully briefed and came within one day of arguing Defendants' Rule 23(f) appeal of this Court's class certification Order.

On June 22, 2000, just weeks prior to the commencement of the Action, Creditrust declared bankruptcy. Given Creditrust's bankruptcy, and this Court's subsequent dismissal of the case against all defendants except former Creditrust CEO Joseph Rensin ("Rensin") and former CFO Richard Palmer ("Palmer"), the only Defendants capable of satisfying a judgment in the Action were Rensin and Palmer (collectively, the "Settling Defendants").

The Settlement is the fruit of protracted, hard-fought litigation, and it occurred only through dogged negotiations, which seemed to reach impasse on several occasions. The negotiations, like the Action, were prosecuted by seasoned securities lawyers on both Plaintiffs' and Defendants' sides.

Plaintiffs' Counsel believe that their ability to negotiate the Settlement before the Court is a testament to their tenacity in prosecuting the entire Action in the face of significant risks. Plaintiffs' Counsel worked on a fully contingent basis at considerable expense. If Plaintiffs' Counsel had been unsuccessful at numerous junctures in this Action, they would have received nothing for their services.

Having achieved a significant benefit for the Class, Plaintiffs' Counsel respectfully submit that they are entitled to attorneys' fees of $2,250,000, representing 30 percent (30%) of the Settlement fund of $7.5 million, plus interest, representing a modest 1.09 multiple of Plaintiffs' Counsel's aggregate lodestar, and reimbursement of expenses in the amount of $246,811.11, plus interest. In the Notice of Hearing on Proposed Class Action Settlement, Notice of Motion for Award of Attorneys' Fees and Expenses, and Notice of Right to Share in Settlement Fund, which was mailed to Class members beginning on February 15, 2005 (the

"Notice"), Class members were advised that Plaintiffs' Counsel would seek a fee award not to exceed thirty percent (30%) of the Settlement Fund and an expense award not to exceed $325,000.

The Notice also advised Class Members of the May 2, 2005, Settlement Hearing and that any objections to the Fee and Expense Application were to be filed and served on or before April 1, 2005. Although 4,654 copies of the Notice were mailed to Class members or sent to their brokers or nominees for distribution to Class members,[1] no objections have been submitted to either the Settlement or the fee request.

While the Fourth Circuit has yet to decide whether percentage or lodestar calculation should be used to calculate attorneys' fees in common fund cases, *see* Goldenberg v. Marriott PLP Corporation, 33 F. Supp 2d. 434 (D.Md. 1998), the clear trend of courts in this Circuit is to award attorneys' fees on a percentage basis. Given the significant benefits conferred on the members of the Class by the proposed Settlement and the significant and unique risks encountered, the Fee and Expense Application is fair and reasonable and, as demonstrated below, comports with applicable precedent.

## II.    PLAINTIFFS' COUNSEL ARE ENTITLED TO THE REQUESTED ATTORNEYS' FEES.

Plaintiffs respectfully request that the Court award Plaintiffs' Counsel fees in the amount of $2,250,000, plus interest, or thirty percent of the Settlement Fund. The Settlement fund is in the amount of $7.5 million, plus accrued interest. This percentage is within the normal range of awards made in contingent fee matters of this type, particularly in view of the substantial risks

---

[1] See the Declaration of Edward J. Sincavage, CPA Regarding Dissemination of Notice to the Class (the "Sincavage Declaration"). Mr. Sincavage is a partner at the firm of Heffler, Radetich & Saitta (the "Heffler Firm"), the Claims Administrator. The Sincavage Affidavit is attached as Exhibit 1 to the Declaration of Todd S. Collins in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and Plaintiffs Motion for Award of Attorneys' Fees, Reimbursement of Attorneys' Expenses, and Reimbursement of

attendant in bringing and pursuing this Action, the stage of the proceedings, as well as the results

achieved.  Given the risks, effort, and results, the requested fee is appropriate.

> 1.    **Plaintiffs' Counsel are Entitled to a Fee From the Common Fund**
>       **They Created.**

The common fund doctrine is one of the earliest recognized exceptions to the "American

Rule" which generally requires that litigants bear their own costs and attorneys' fees.  The

common fund doctrine allows a person who maintains a suit that results in the creation of a fund,

in which others have a common interest, to be reimbursed from that fund for attorneys' fees and

litigation expenses.  See Central R. & Banking Co. v. Pettus, 113 U.S. 116 (1885); see also

Boeing Co. v. Van Gemert, 444 U.S. 472 (1980); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161

(1939).

The common fund doctrine, first established more than a century ago in Trustees v. Greenough,

105 U.S. 527 (1882), attorneys who obtain recovery for a class are entitled to be compensated

out of the benefits achieved as a result of their efforts.  The rationale for this doctrine was

explained in Boeing Co. v. Van Gemert, where the United States Supreme Court stated:

> [T]his Court has recognized consistently that a litigant or a lawyer
> who recovers a common fund for the benefit of persons other than
> himself or his client is entitled to a reasonable attorney's fee from
> the fund as a whole.

444 U.S. at 478.  The Fourth Circuit has followed the Supreme Court in recognizing that class

counsel who create a settlement fund for the benefit of a class are entitled to be compensated for

their services from that fund.  United States v. Tobias, 935 F.2d 666, 668 (4th Cir. 1991).  In

Tobias, the Court recognized that:

> [t]he common fund doctrine] is founded upon the principle that
> when one who, while establishing his own claim, also establishes

---

Plaintiffs' Expenses (the "Collins Declaration.")

> the means by which others may collect their claims, a chancellor in
> equity may award counsel fees to the trail blazer out of the
> property made available for the satisfaction of all claims.  The
> principle is applied so that the one who led in hewing the path to
> victory is not left saddled with extensive attorney's fees, which
> need not be incurred by his more timid fellows who held back until
> the fruits of the pioneer's success were laid before them.

935 F.2d at 668 (quoting Gibbs v. Blackwelder, 346 F.2d 943, 945 (4th Cir. 1965)).

### 2.    Fees in Common Fund Cases Should Be Based on a Percentage of the Recovery.

The Supreme Court has consistently held that a common fund fee award should be
determined on a percentage-of-the-fund basis.  See, e.g., Greenough, 105 U.S. at 532-33; Pettus,
113 U.S. at 127; Sprague, 307 U.S. at 166-67.  In fact, the Supreme Court has expressly
approved the use of the percentage-of-the-fund approach in common fund cases, stating that
"under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund
bestowed on the class."  Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984).  See also Camden I
Condominium Ass'n v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991) ("From the time of the Pettus
decision in 1885 until 1973, fee awards granted pursuant to the common fund exception were
computed as a percentage of the fund."); Report of the Third Circuit Task Force, Court Awarded
Attorney Fees, 108 F.R.D. 237, 242 (3d Cir. 1985) (hereinafter the "Task Force Report"); 1 Alba
Conte, Attorney Fee Awards § 2.02, at 31-32 (2d ed. 1993); Goldenberg v. Marriott PLP Corp.,
33 F. Supp. 2d at  438 (applying percentage-of-the-fund approach and stating that "the Supreme
Court has implicitly approved the percentage method.").

Moreover, the percentage-of-the-fund approach is endorsed in the Private Securities
Litigation Reform Act of 1995, 15 U.S.C.A. § 78u-4(6) (the "PSLRA") ("Total attorneys' fees
and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable
percentage of the amount of any damages and prejudgment interest actually paid to the class.")

(emphasis added).  The percentage concept makes sense, and it is fair.  It is intended to

approximate the market -- what private counsel ordinarily would charge in a contingent fee

contract.  See In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992) ("The class

counsel are entitled to the fee they would have received had they handled a similar suit on a

contingent fee basis, with a similar outcome, for a paying client.").

    The percentage method is consistent with, and indeed mirrors, the practice in the private

marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with

their clients.   As Judge Posner emphasized in Continental:

> [t]he object in awarding a reasonable attorney's fee . . . is to
> simulate the market . . . The class counsel are entitled to the fee
> they would have  received had they handled a similar suit on a
> contingent fee basis, with a  similar outcome, for a paying client.

962 F.2d at 572.  See also Kirchoff v. Flynn, 786 F.2d 320, 324 (7th Cir. 1986) ("When the

'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the

contingent fee is the 'market rate.'") (emphasis in original).[2]

    The percentage-of-the-fund approach, moreover,  is an accepted method of calculating

attorneys' fees in the Fourth Circuit.  In Goldenberg, 33 F. Supp. 2d at 437, the court observed

that:

> Courts have become increasingly critical of the lodestar method,
> which requires scrutiny of Class Counsel's billing practices -- a
> time consuming process -- whereas the percentage method is more
> akin to the common litigation practice of setting contingency fees
> based on a percentage of the recovery.

---

[2] The percentage method is also accepted because it "'more accurately reflects the economics of litigation practice,' and is 'less demanding of scarce judicial resources' since 'it is much easier to calculate a percentage-of-the-fund fee than to review hourly billing practices over a long, complex litigation.'"  Goldenberg, 33 F. Supp. 2d at 437 (quoting Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1271 (D.C. Cir. 1993); see also Strang v. JHM Mortgage Sec. Ltd. P'ship, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases.").

The percentage sought here is in line with percentages awarded by district courts in the Fourth Circuit in similar cases, including specifically this Court. *See* In re: Manugistics Group, Inc. Sec. Litig., Civil Action No. 98-CV-1881 (FNS), slip op. at 6, (D. Md. Oct.13, 2000) (30% of $2 million settlement fund, plus expenses); Asch, et al. v. MNC Financial, Inc., et al., C.A. No. JFM-91-1208; 90-3151; 91-684, slip op. at 8 (D. Md. Sept. 25, 1992) (30% of the $8.8 million settlement fund, plus expenses); In re Medimmune, Inc. Sec. Litig., Civil Action No. PJM 93-3980, slip op. at 3 (D. Md. May 6, 1996) (30% of $4.25 million settlement fund, plus expenses); *see also* In re Safety Kleen Stockholders Litigation, Civil Action No. 3:00-CV-736-17 (D.S.C. May 2, 2003)(awarding fees equal to 30% of the partial settlement, reimbursement of expenses, plus a proportionate share of the interest earned); In re Laidlaw Stockholder Litigation, Civil Action No. 3:00-CV-855-17 (D.S.C. June 10, 2003)(same); In re Policy Management Securities Litigation, Civil Action No. 00-CV-130 (D.S.C. March 13, 2002)(awarding $2,325,000 in fees equal to the settlement fund, reimbursement of expenses, plus a proportionate share of the interest earned); In re Policy Mgmt. Sys. Corp. Sec. Litig., Civil Action No. 3:93-0807-17, slip op. At 10-11 (D.S.C. May 26, 1995)(awarding $9.3 million in fees, equal to 30% of the $31 million settlement fund, reimbursement of expenses, plus a proportionate amount of the interest earned).

Courts in other Circuits have adopted the percentage-of-the-fund approach as well. *See* Novak v. Ann Taylor, Civ. No. 96 Civ. 3073, slip op. at 7 (S.D.N.Y. Dec. 14, 1999) (awarding fee of 33.3% plus interest and expenses); Lemmer v. Golden Books Family Entm't, Inc., No. 98 Civ. 5748, slip op. at 8 (S.D.N.Y. Oct. 12, 1999) (awarding fee of 33.3% plus interest and expenses); In re Shiva Corp. Sec. Litig., Master File No. 97-11159, slip op. at 6 (D. Mass. Oct. 27, 1999) (awarding fee of 33.3% plus expenses); In re Sirrom Capital Corp. Sec. Litig., C.A.

No. 3-98-0643, slip op. at 6 (M.D. Tenn. Feb. 4, 2000) (awarding fee of 33.3% plus interest and expenses).[3]

In non-class litigation, contingency fees of 30% or higher are common.  In their concurring opinion in Blum v. Stenson, Justices Brennan and Marshall observed that in tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.  465 U.S. 886, 904 (1984).  See also In re Prudential-Bache Energy Income P'ships Sec. Litig., 1994 U.S. Dist. LEXIS 6621, at * 4 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); Phemister v. Harcourt Brace Jovanovich, Inc., 1984 U.S. Dist.  LEXIS 23595, at *40 (N.D. Ill.  Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client.  The more the recovery, the more the fee.  The percentages agreed on vary, with one-third being particularly common."); Kirchoff, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting with approval a contract providing for one-third contingent fee if litigation settled prior to trial).

Although, as noted in Goldenberg, 33 F. Supp. 2d at 438, the Fourth Circuit has not directly decided whether percentage or lodestar calculation should be used to calculate attorneys' fees in common fund cases, at least seven Circuit Courts of Appeal have expressly approved of

---

[3] All unreported decisions are set forth in a separate compendium.

the percentage-of-the-fund method.[4]   The courts in those Circuits have concluded that the

percentage method is more efficient and less burdensome than the traditional lodestar method,

and it offers a more reasonable measure of compensation for common fund cases.  See Camden I

Condominium Ass'n, 946 F.2d at 773.  Based on these appellate courts' preference for the

percentage method, combined with the application of the percentage method by numerous Fourth

Circuit district courts and the recognition by Congress in the PSLRA that it is appropriate to

award plaintiffs' counsel a "reasonable percentage" of the recovery in securities class actions,

the percentage-of-the-fund method should apply in this case.

###    3.    A Cross-Check Using The Lodestar Method Confirms The Requested Fee is Fair, Reasonable and Consistent with Fee Awards in Comparable Cases.

As noted above, the requested fee award is consistent with awards made in similar cases.

The reasonableness of the requested fee in this case is also confirmed by a lodestar analysis,

which has been used by some courts as a cross-check to assure that percentage awarded, under

the facts of the case, does not create an unreasonable fee.  See,  e.g., In re Prudential Ins. Co. of

Am. Sales Practice Litig., 148 F.3d 283 (3d Cir. 1998) ("[w]e recognize the lodestar calculation

in this case was solely intended as a cross-check of the court's primary fee calculation using the

percentage-of-recovery methodology"); Strang, 890 F. Supp. at 503 nn. 5 & 6.  Here, the

$2,250,000 fee represents a multiplier of approximately 1.09 on Lead Counsel's lodestar from

July 2000 to date -- well within the range of lodestar multipliers awarded by courts throughout

---

[4] See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995) (finding appropriate the percentage-of-the-fund method to calculate attorneys' fees in common fund case); Swedish Hosp. Corp., 1 F.3d at 1269 (D.C. Cir. 1993); In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821-22 (3d Cir. 1995) (same), cert. denied, 516 U.S. 824 (1995); Florin v. Nationsbank, N.A., 34 F.3d 560, 564-65 (7th Cir. 1994) (same); Gottlieb v. Barry, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of discretion); Camden I Condominium Ass'n, 946 F.2d at 774 (percentage-of-the-fund method is preferable in common fund cases); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989) (fees may be awarded as a percentage of common funds).

the country in securities fraud and similar consumer class actions.  See, e.g., In re Xcel Energy Inc. Securities Litigation, Civil 02-2677 (DSD/FLN) MDL No. 1511 (D. Minn. April 8, 2005) (awarding fee that resulted in a multiplier of 4.7 times the hourly rate); Weiss v. Mercedes-Benz of N. Am., 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in a multiplier of 9 times hourly rate); aff'd, 66 F.3d 314 (3d Cir. 1995); In re Triangle Indus. Sec. Litig., [1991-1992 Transfer Binder] Fed. Sec.L. Rep. (CCH) ¶ 96,528 (Del. Ch. New Castle Co. Mar. 15, 1990) (6.6 multiple awarded); Lemmer v. Golden Books, 98 Civ. 5748 (AGS), slip op. (S.D.N.Y. Oct. 12, 1999) (5.4 multiplier); Roberts v. Texaco, Inc., 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier resulting in fee of $19.15 million); In re RJR Nabisco, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) at 94,267 (6 multiplier); Cosgrove v. Sullivan, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.7 based on $1 million fee against lodestar of $114,398); Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier).

      4.      **The Requested Fees Are Fair And Reasonable Under The Applicable Legal Standard.**

The reasonableness of the fee requested is also evident from an examination of specific factors identified by courts as being relevant to such a determination.  In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), the Fifth Circuit identified twelve factors relevant to the determination of reasonable attorneys' fees in representative shareholder actions.  Those factors were soon after adopted by the Fourth Circuit in Barber v. Kimbrell's, 577

F.2d 216, 226 n.28 (4th Cir. 1978), cert. denied, 439 U.S. 934 (1978).[5]  See also Allen v. United

States, 606 F.2d 432 (4th Cir. 1979); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983);

Unemployed Workers Org. Comm. v. Batterton, 477 F. Supp. 509, 515 (D. Md. 1979).

It is important to note, however, that these factors are meant only to instruct the Court's

review of a fee petition, not to act as a blueprint.  In fact, a court, in its discretion, may vary the

weight accorded to different factors depending upon which calculation method it employs.  See

Brown v. Phillips Petroleum Co., 838 F.2d 451, 456 (10th Cir. 1988), cert. denied, 488 U.S. 822

(1988) (pointing to the inherent differences between statutory fee and common fund cases as

justifying a trial court's decision to assign different relative weights to the Johnson factors); see

also Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983) (noting that all the Johnson factors are

rarely simultaneously applicable, particularly in the common fund case).

In this light, Counsel respectfully request that the Court consider the reasonableness of

the requested fee award with regard to the factors discussed below.

### 5.    Results Obtained.

Courts consistently have recognized that the result achieved is a major factor to be

considered in making a fee award.  See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) (stating

that the "most critical factor is the degree of success obtained"); Blum v. Stenson, 465 U.S. 886,

900 (1984) (noting that "results obtained" is one of several factors relevant to the calculation of

---

[5] The Court in Barber provided its own description of the twelve factors as follows: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases.

reasonable attorneys' fees); <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1403 n.18 (4th Cir. 1987) (citing

all twelve <u>Johnson</u> factors, including results achieved); <u>Vaughns v. Bd. of Educ.</u>, 598 F. Supp.

1262, 1268 (D. Md. 1984) (citing <u>Hensley</u> and <u>Blum</u>); <u>Behrens v. Wometco Enters., Inc.</u>, 118

F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before

trial is best measured by the benefit obtained."), <u>aff'd</u>, 899 F.2d 21 (11th Cir. 1990).

Lead Counsel tenaciously prosecuted this action against the Settling Defendants and

obtained an excellent Settlement of $7.5 million in cash.  This considerable sum was secured

despite the absence of defendants with substantial resources or "deep pockets."  The magnitude

of the Settlement is especially outstanding when weighed against the risks of continuing to

litigate.  In order to obtain a judgment, plaintiffs would have had to prevail on every single

contested issue of liability and damages in the case, an outcome that Counsel believes was

unlikely, particularly given the serious risks plaintiffs faced in proving liability and damages.

Moreover, given that there were complex, unresolved  issues concerning this Court's class

certification Order on appeal to the Fourth Circuit at the time of the Settlement, an appeal that,

should defendants have prevailed would have terminated this class action and thus, in all

likelihood the entire securities litigation against Setting Defendants, the payment of $7.5 million

in cash now is an outcome Lead Counsel believes far better serves the interests of the Class than

continuing the appellate litigation to an uncertain result, followed by summary judgment, trial,

and possibly years of appeals.  However, collecting on any judgment might have proved

impossible.

      **6.**      **The Risks of Accepting Representation on a Contingent Basis.**

As recognized by numerous courts, risk is another important factor in determining a fee

award.  <u>See</u>, <u>e.g.</u>, <u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 470 (2d Cir. 1974); <u>Lindy Bros.</u>

<u>Builders v. Am. Radiator & Standard Sanitary Corp.</u>, 540 F.2d 102, 117 (3d Cir. 1976); <u>In re</u>

<u>Montgomery County Real Estate Antitrust Litig.</u>, 83 F.R.D. 305, 322 (D. Md. 1979) (stating that

the risk factor justifies fee enhancement); <u>Phillips v. Crown Cent. Petroleum Corp.</u>, 426 F. Supp.

1156, 1170 (D. Md. 1977) (determining attorney fees on the basis of, *inter alia*, the "contingent

nature of success"); <u>Vaughns</u>, 598 F. Supp. at 1283-84 (suggesting that specifying the risks

associated with the action may justify enhancement of fee award).  Uncertainty that an ultimate

recovery would be obtained is highly relevant in determining risk.  <u>Lindy Bros.</u>, 540 F.2d at

113.

Counsel faced risks from the very outset of this litigation.  This case was brought under

the PSLRA, which heightened the standards for pleading securities fraud.  There was no way of

knowing at the outset of the case whether Plaintiffs would be able to meet the PSLRA's

heightened pleading standards.

As the litigation continued, Plaintiffs were faced with numerous additional risks.  All but

two defendants, (Rensin and Palmer), prevailed on their motions to dismiss.  In addition,

defendants  vigorously opposed class certification.   Had no class been certified by this Court, or

had defendants prevailed on their Rule 23(f) appeal  to the  Fourth Circuit, none of Plaintiffs'

individual losses were substantial enough to warrant incurring the expense of continuing

litigation.

Further, with respect to their Section 10(b) claims, Plaintiffs would have had to prove not

only that defendants violated Generally Accepted Accounting Principles ("GAAP"), but also that

those violations were made intentionally or with severe recklessness.  While Plaintiffs believe

that they would have been successful in this endeavor, they were well aware of the risks.

In addition to defenses on liability, defendants would have asserted substantial defenses regarding damages as well.  In this action, the amount of damages which plaintiffs could prove, after defendants presented a negative causation defense (i.e., attributing market losses to factors other than the alleged fraud), was a matter of serious dispute.

Moreover, even if Plaintiffs had prevailed on liability and damages, collection on any judgment would have been problematic.

Despite these risks, Counsel assumed the role of advocate for the Class and took the risk of potentially receiving no fee for their work.

>        7.        **The Diligent Prosecution of the Case.**

Counsel expended a considerable effort in the prosecution of this action.  As explained in more detail in the Collins Declaration, Lead Counsel have vigorously litigated this case through detailed investigations, successive pleadings, motions to dismiss, motions and appeals concerning class certification, and extensive  discovery.  Plaintiffs' Counsel spent more than 4, 500 hours prosecuting this case to its successful conclusion.

>        8.        **The Complexity of this Action's Factual and Legal Questions.**

Another consideration supporting the requested fee is the complexity of the litigation. "The complexity or novelty of the case, the quality of representation, and the results obtained are . . . factors which are generally subsumed within the factors used to calculate a reasonable fee . . . ." Almond v. Boyles, 792 F.2d 451, 457 (4th Cir. 1986) (citing Blum, 465 U.S. at 898); see also Advance Bus. Sys. & Supply Co. v. SCM Corp., 415 F.2d 55, 70 (4th Cir. 1969) (finding that district court did not abuse discretion by considering complexity in determination of fee).  Factual complexity, as manifested by a "complicated series of events and numerous

documents," <u>Burger v. CPC Int'l, Inc.</u>, 76 F.R.D. 183, 187 (S.D.N.Y. 1977), provides a solid basis for the fee requested here.

   As discussed in detail above, this litigation involved complex accounting and business issues as well as difficult legal issues relating to establishing liability and damages, all of which presented considerable risks to Plaintiffs' case.  Additionally, Settling Defendants' pending Appeal raised  complicated issues of first impression concerning the interplay of the filing of class certification motions and the statutes of limitations and repose.

   **9.      The Reaction of the Class.**

   In all, over 4,600 Notices were mailed to individual members of the Class and nominees for Class  members, such as brokerage firms, expressly stating that Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount up to thirty percent of the $7.5 million settlement and reimbursement of expenses up to $325,000, plus interest.  The deadline for filing objections to the request for fees and expenses was April 1, 2005.  No Class member has raised any objection to the fees sought by Counsel.  Counsel submit that the lack of objections is a further indication that the requested fee is appropriate.

   **10.      Public Policy Considerations**.

   The courts have repeatedly held that attorneys who bring class actions are acting as "private attorneys general" and are vital to the enforcement of the securities laws.  <u>See</u>, <u>e.g.</u>, <u>C.R.A. Realty Corp. v. Crotty</u>, 878 F.2d 562, 564 (2d Cir. 1989) (describing appellant as "an organization incorporated to act as a private attorney general to purchase stock and commence actions against corporate officials for violations of the federal securities laws").  <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Bullock v. Adm'r of Estate of Kirchner</u>, 84 F.R.D. 1, 12 (D.N.J. 1979) (quoting <u>Dolgow v. Anderson</u>, 43 F.R.D. 472, 494 (E.D.N.Y. 1968)):

> In some areas of the law, society is dependent on 'the initiative of lawyers . . . for the assertion of rights' . . . and the maintenance of desired standards of conduct. The prospect of a handsome compensation is held out as an inducement to encourage lawyers to bring such suits . . . . Quite obviously, a major incentive to forceful prosecution is the substantial counsel fee plaintiffs' attorney believes he may be awarded if he is successful.

See also Meshel v. Nutri/System, Inc. 102 F.R.D. 135, 139-40 (E.D. Pa. 1984) (also quoting Dolgow); Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985) ("private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [the Securities and Exchange] Commission action.'") (quoting J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964)); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (holding that petitioner should be fully compensated for requested attorneys' fees by assuming role of "private attorney general"); Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir. 1986) (describing meritorious civil rights plaintiffs as "private attorneys general" enforcing important Congressional directives).

Award of the requested fee recognizes the substantial benefits conferred on the Class, reflects the difficult circumstances under which this result was accomplished, and supports the public policy favoring prosecution of such actions. Thus, the fee award is fair to both Plaintiffs' Counsel and the Class.

**11.     Experience, Reputation and Ability of Attorneys.**

Under the leadership of Berger & Montague, which has served as Lead Counsel and Tydings & Rosenberg, Liaison Counsel, Plaintiffs' Counsel are among the premiere law firms specializing in representation of Plaintiffs in class action cases. *See* Firm Resumes, filed concurrently as exhibits to Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Attorneys'

Expenses, and Reimbursement of Plaintiffs' Expenses.   For this reason also,  Counsel's fee request should be granted.

### III.    PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR EXPENSES.

In addition to attorneys' fees for services rendered in prosecuting this litigation,  Counsel also request reimbursement in the amount of $246,881.11 for expenses necessarily incurred in connection with this litigation. The accompanying Fee Affidavits contain an itemization of the various categories of expenses for Lead Counsel and for each firm representing Plaintiffs in this Action.  These expenses were reasonable and necessary to prosecute the Action vigorously and to obtain the Settlement achieved.

The expenses incurred included $113.632.32 for several different experts, and $34,888.00 for computer research.  Without realizing these expenditures, Counsel could not have provided the level of representation required to achieve the result they obtained on behalf of the Class.

### IV.    THE LEAD AND REPRESENTATIVE PLAINTIFFS SHOULD BE REIMBURSED FOR COSTS DIRECTLY RELATED TO REPRESENTING THE CLASS.

The PSLRA specifically approves of compensating lead plaintiffs for their reasonable costs and expenses, including lost wages, directly relating to the representation of the Class.  See 15 U.S.C. 78u-4 § 21D(a)(4).  Courts have approved of awards designed to reimburse the expenses of named plaintiffs incurred in connection with advancing the interests of the Class, furthering the goals of class action litigation, and assisting in the enforcement of the federal securities laws.  In granting these awards, courts have been influenced by "the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves."  Bussie v. Allamerica Fin. Corp., No. 97-40204-NMG, 1999 WL 342042, at *3 (D. Mass. May 19, 1999); see also In re Summit Tech. Sec. Litig.,

C.A. No. 96-11589-JLT, slip op. at 2 (D. Mass. Apr. 25, 2001) (awarding $51,300, collectively, to six plaintiffs); <u>Gelfer v. Pegasystems, Inc.</u>, C.A. No. 98-CV-12527-JLT, slip op. at 7 (D. Mass. Dec. 19, 2000) (awarding $4,000 to each of the six named plaintiffs).

Lead Plaintiff Barry Kimmelman, Class Representative and Plaintiff Jonathan Mack, and Class Representative and Plaintiff Michael Endrizzi have provided crucial assistance to Counsel in the prosecuting of this Action, and each was instrumental in the achieving the Settlement.

Each consulted regularly with counsel, each oversaw and helped direct the Action, and each provided deposition testimony. Accordingly, Counsel respectfully request that the Court grant these three Plaintiffs an award of $10,570 collectively, as reimbursement for costs and expenses directly related to their representation of the Class. The amount requested represents reimbursement of costs incurred, applying reasonable hourly rates for Plaintiffs' services as described in the Declarations provided by each of the three Plaintiffs. *See* Plaintiffs' Declarations, exhibits to Motion for Award of Attorneys' Fees, Reimbursement of Attorney Expenses, and Reimbursement of Plaintiffs' Expenses filed concurrently.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully submit that the Court should grant their Petition for an award of attorneys' fees in the amount of $2,250,000 plus interest, representing thirty percent of the Settlement Amount, reimbursement of Counsel's expenses in the amount of $246,881.11 plus interest, and reimbursement of Plaintiffs' expenses in the amount of $10,570.

Dated: April 18, 2005                    Respectfully submitted,

                                         **BERGER & MONTAGUE, P.C.**


                                         By: _____/s/_____
                                             Todd Collins, Esq.
                                             Elizabeth Fox, Esq.
                                             Neil Mara, Esq.
                                             1622 Locust Street
                                             Philadelphia, PA 19103
                                             Tel: (215) 875-3000
                                             Fax: (215) 875-4604

                                         **Lead Counsel for Plaintiffs and the Class**



                                         **TYDINGS & ROSENBERG, LLP**

                                             Lawrence Quinn, Esq.
                                             100 East Pratt Street
                                             26th Floor
                                             Baltimore, Maryland 21202
                                             Telephone: (410) 752-9700
                                             Fax: (410) 727-5460

                                         **Liaison Counsel for Plaintiffs and the Class**

464721v1                                    24