# EXHIBIT

# A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

IN RE CREDITRUST CORPORATION  :
SECURITIES LITIGATION                     :          Civil Action No. MJG 00 CV 2174

**COMPENDIUM OF PLAINTIFFS' COUNSELS'**
**FEE AND EXPENSE AFFIDAVITS**
**IN SUPPORT OF JOINT FEE PETITION**

393359

**PLAINTIFFS' COUNSELS' FEE AND EXPENSE AFFIDAVITS**
**TABLE OF CONTENTS**

Tab 1      -      Berger & Montague, P.C. (Lead Counsel)

Tab 2      -      Allan & Vellone, P.C.

Tab 3      -      Abraham, Fruchter & Twersky, LLP

Tab 4      -      Keller Rohrback, LLP

Tab 5      -      Lerach Coughlin Stoia Geller Rudman & Robbins, LLP

Tab 6      -      Milberg Weiss Bershad & Schulman, LLP

Tab 7      -      The Olsen Law Firm

Tab 8      -      Law Offices of Charles Piven, P.A.

Tab 9      -      Tydings & Rosenberg, LLP (Liaison Counsel)

Tab 10     -      Schiffrin & Barroway, LLP

Tab 11     -      Wolf Haldenstein Adler Freeman & Herz, LLP

**Exhibit B      -      Declarations of Plaintiffs**

Tab 1      -      Declaration of Michael Endrizzi

Tab 2      -      Declaration of Barry Kimmelman

Tab 3      -      Declaration of Jonathan Mack

C:\LssWork\393539.wpd

## CREDITRUST CORPORATION SECURITIES LITIGATION

### COMPENDIUM OF PLAINTIFFS' COUNSELS' FEE AND EXPENSE AFFIDAVITS IN SUPPORT OF JOINT FEE PETITION

| FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|
| ALLEN & VELLONE, P.C. | 148.18 | $32,667.81 | $1,413.77 |
| BERGER & MONTAGUE, P.C. | 4,555.45 | $1,661,094.25 | $221,512.39 |
| FRUCHTER & TWERSKY | 24.00 | $11,880.00 | $912.50 |
| KELLER ROHRBACK LLP | 203.40 | $76,587.40 | $4,388.38 |
| LERACH COUGHLIN STOIA GELLER RUDMANN ROBBINS LLP | 161.40 | $58,750.00 | $840.69 |
| MILBERG WEISS BERSHAD & SCHULMAN LLP | 27.75 | $10,192.50 | $3,289.35 |
| KLAFTER & OLSEN, LLP | 82.50 | $40,837.50 | $0.00 |
| LAW OFFICES OF CHARLES PIVEN | 16.40 | $7,780.00 | $600.43 |
| TYDINGS & ROSENBERG LLP | 145.60 | $44,390.00 | $5,582.33 |
| SCHIFFRIN & BARROWAY LLP | 279.95 | $134,190.25 | $8,592.30 |
| WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP | 33.60 | $12,172.00 | $1,162.74 |
| **FIRM TOTALS:** | **5,530.05** | **$2,057,873.90** | **$246,881.11** |

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

—————————————————— :
In re Creditrust Corporation             :     Civil Action No. MJG 00 CV 2174
Securities Litigation                    :
—————————————————— x

AFFIDAVIT OF TODD COLLINS
IN SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF BERGER & MONTAGUE, P.C.

STATE OF PENNSYLVANIA         :
                                            : ss.
COUNTY OF PHILADELPHIA        :

I, Todd Collins, being duly sworn, depose and say:

1.    I am a shareholder of the firm of Berger & Montague, P.C.  I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.    The chart attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by the attorneys, law clerks and paralegals of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates.  The chart includes the name of each attorney and each paralegal who has worked on the matter, the current hourly billing rate, and a breakdown of the hours expended by each.   The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm which are available for submission to the Court at its request.  Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

1

3.    As lead counsel for Plaintiffs, my firm directed every phase of the litigation, including: (1) pre-Complaint investigation; (2) filing the Complaint; (3) investigating and filing the Consolidated Amended Class Action Complaint; (4) briefing and arguing motions to dismiss; (5) obtaining class certification; (6) conducting document discovery including the review of thousands of documents; (7) extensive consultation with experts; (8) briefing and preparing to argue before the Fourth Circuit the Fed. R. Civ. P 23(f) appeal of this Court's class certification Order; and (9) protracted settlement negotiations with Settling Defendants concerning this Settlement.

4.    With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.    The total number of hours spent on this litigation by my firm from the inception of the case through, April 15, 2005 is 4,555.45 hours. The total lodestar amount for attorney, law clerk and paralegal time based on the firm's current rates is $1,661,094.25[1].  The hourly rates set out in the

---

[1] Includes an estimate of 10 hours to be spent by Todd S. Collins, 10 hours to be spent by Neil F. Mara and 5 hours to be spent by Elizabeth W. Fox in preparation for and attendance at the settlement hearing scheduled for May 2, 2005.

chart as Exhibit A are the same rates which Berger & Montague, P.C. charges its hourly clients

paying for its services on a monthly basis.

    6.    My firm expended a total of $221,512.39[2] in unreimbursed expenses in connection with

the prosecution of this litigation, broken down as follows:

| Category | Amount |
|---|---|
| Telephone/Telecopier | 1,552.40 |
| Travel & Living | 13,047.90 |
| Photocopying | 16,680.05 |
| Commercial Copying | 27,899.91 |
| Computer Research | 34,888.87 |
| Delivery and Freight | 3,925.29 |
| Publication Fees | 673.10 |
| Service Fees | 319.00 |
| Overtime | 776.38 |
| Postage | 287.36 |
| Transcripts | 3,629.50 |
| Associate Counsel Costs | 45.86 |
| Settlement Administration Costs | 3,236.45 |
| Expert Fees | 113,632.32 |
| Filing Fees | 450.00 |
| **TOTAL** | **$221,512.39** |

    7.    The expert fees, as set forth in paragraph 6 above, totaling $113,632.32, are broken

down as follows:

        a.    Johnson Investigations: $170
        b.    Schechtman, Marks, Devor & Etskovitz: $10,046
        c.    Anthony Mark Manarangi, LLB: $3,364.83
        d.    Philadelphia Investment Banking Company: 92,314.49
        e.    Yale & Company: $7, 738

---

    [2] This figure includes estimated transportation expenses in the amount of $468.00 for travel to and attendance at the settlement hearing scheduled for May 2, 2005.

8.    The expenses incurred pertaining to this case are reflected on the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

_____

TODD S. COLLINS

SWORN TO AND SUBSCRIBED

before me this            day

of April, 2005.

_____

Notary Public

393114

4

8.    The expenses incurred pertaining to this case are reflected on the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

TODD S. COLLINS

SWORN TO AND SUBSCRIBED

before me this *18th* day

of April, 2005.

Notary Public

```
COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
  SUSAN D. PROTAS, Notary Public
  City of Philadelphia, Phila. County
My Commission Expires December 31, 2008
```

393114

4

CREDITRUST COPRORATION SECURITIES LITIGATION

FIRM NAME:  BERGER & MONTAGUE, P.C.

LODESTAR REPORTING PERIOD:  FROM INCEPTION OF CASE THROUGH APRIL 7, 2005**

| PROFESSIONAL (STATUS)* | HOURLY RATE | TOTAL HOURS | TOTAL LODESTAR |
|---|---|---|---|
| Todd S. Collins (P) | $530.00 | 517.30 | $274,169.00 |
| Gary E. Cantor (P) | $520.00 | 83.40 | $43,368.00 |
| Jay R. Stiefel (OC) | $480.00 | 0.30 | $144.00 |
| Lawrence Deutsch (P) | $445.00 | 6.40 | $2,848.00 |
| Robin B. Switzenbaum (P) | $475.00 | 0.50 | $237.50 |
| Jacob A. Goldberg (P) | $350.00 | 960.20 | $336,070.00 |
| Elizabeth W. Fox (A) | $440.00 | 859.50 | $378,180.00 |
| Douglas M. Risen (A) | $395.00 | 1.50 | $592.50 |
| Phyllis M. Parker (A) | $395.00 | 16.00 | $6,320.00 |
| Neil F. Mara (A) | $350.00 | 838.90 | $293,615.00 |
| Sheryl S. Levy (A) | $350.00 | 30.00 | $10,500.00 |
| Latonda R. Dunbar (A) | $235.00 | 111.40 | $26,179.00 |
| Jon Lambiras (A) | $235.00 | 4.30 | $1,010.50 |
| Sandra G. Smith (A) | $300.00 | 31.00 | $9,300.00 |
| Christopher L. Nelson (A) | $300.00 | 635.60 | $190,680.00 |
| Stacey Savett (A) | $200.00 | 8.00 | $1,600.00 |
| P. V. Telang (Sr.PL) | $195.00 | 23.60 | $4,602.00 |
| Mary Anne Rossi (Sr. PL) | $195.00 | 3.40 | $663.00 |
| Karen M. Markert (Sr. PL) | $195.00 | 238.25 | $46,458.75 |
| Kimberly A. Walker (Sr. PL) | $195.00 | 117.50 | $22,912.50 |
| Diane Werwinski (PL) | $180.00 | 0.80 | $144.00 |
| Patricia L. Fowler (PL) | $180.00 | 10.20 | $1,836.00 |
| Edna Del Valle (PL) | $160.00 | 13.20 | $2,112.00 |
| Mark R. Stein (PL) | $180.00 | 0.75 | $135.00 |
| Barbara McGuigan (PL) | $160.00 | 15.00 | $2,400.00 |
| Cindy D. Fonda (PL) | $150.00 | 3.45 | $617.50 |
| Stacey L. Fulton (PL) | $180.00 | 9.00 | $1,620.00 |
| Louise A. Foote (PL) | $180.00 | 16.00 | $2,880.00 |
| **TOTALS:** | | 4,555.45 | $1,661,094.25 |

*Partner (P), Associate (A), Of Counsel (OC), Paralegal (PL)

** Includes an estimate of 10 hours to be spent by Todd S. Collins, 10 hours to be spent by Neil F. Mara and 5 hours to be spent by Elizabeth Fox in preparation for and attendance at the settlement hearing scheduled for May 2, 2005.

EXHIBIT A

# BERGER & MONTAGUE, P.C.

## EXHIBIT B

# BERGER & MONTAGUE, P.C.

## THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for over 35 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, and civil and human rights. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell. Currently, the firm consists of more than 60 lawyers, 18 paralegals, professional investigators and an experienced support staff.

Berger & Montague was founded in 1970 by David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger pioneered the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record punitive damages award of $5 billion against Exxon. Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

2

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey and Louisiana, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the Melridge Securities Litigation in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained. Berger and Montague has served as lead counsel in numerous other major class action cases, including those against Waste Management (settlement for investors of $220 million) and Rite Aid (settlements totalling $334 million), to name only two of the most notable successes.

In addition to its distinction in securities litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including In re Corrugated Container Antitrust Litigation (recovery in excess of $366 million), the Infant Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of more than $700 million). More recently, the firm, through its membership on the litigation Executive Committee, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

The *National Law Journal* in July, 2004 selected Berger & Montague as one of the 20 top plaintiffs' litigation firms based on recent performance and a long track record of success.

# PROMINENT JUDGMENTS AND SETTLEMENTS

The success of Berger & Montague in prosecuting class actions and other complex litigation is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable judgments and settlements from the past few years:

## *Securities Litigation*

*In re Campbell Soup Co. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class.  (Civil Action No. 00 152 (JEI) (D.N.J.)).

*In re Premiere Technologies, Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D.Ga.)).

*In re: PSINet, Inc., Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D.Va.)).

*In re Safety Kleen Corp. Securities Litigation :*  The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors.  The final settlement was obtained 2 business days before the trial was to commence.  (C.A. No. 3:00-CV-736-17 (D.S.C.)).

*Emil Rossdeutscher and Dennis Kelly v. Viacom:*  The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class (C.A. No. 98C-03-091 (JEB) (Sup. Ct. Del.)).

*Silver v. UICI:*  The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex.)).

*In re Alcatel Alsthom Securities Litigation:* In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash.  (MDL Docket No. 1263 (PNB)).

*In re Rite Aid Corp.. Securities Litigation:*  The firm, as co-lead counsel, has obtained settlements

totalling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2001).

***In re Sunbeam Inc. Securities Litigation:*** As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (98 CV 8258 (S.D. Fla. 2001)).

***In re Waste Management, Inc. Securities Litigation:*** In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (97CV 7709 (N.D. Il. 2000)).

***In re IKON Office Solutions Inc. Securities Litigation:*** The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers in 2000. (MDL Dkt. No. 1318 (E.D. Pa. 2000)).

***In re Melridge Securities Litigation:*** The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million. (CV-87-1426FR (D. Or. 1998)).

***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a ponzi scheme. (Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995);168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

***In re The Drexel Burnham Lambert Group, Inc.:*** The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

5

*In re Michael Milken and Associates Securities Litigation:* As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D. N.Y.1993)).

*RJR Nabisco Securities Litigation:* In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D. N.Y. 1992)).

### *Antitrust Litigation*

*In re High Fructose Corn Syrup:* Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.

*In re Linerboard Antitrust Litigation:* Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom. At the close of discovery, the case was settled for more than $200 million.

*In re Relafen Antitrust Litigation:* Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY, D. Mass. 2003).

6

***State of Connecticut Tobacco Litigation:*** Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

***In re Graphite Electrodes Antitrust Litigation:*** Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $130 million.

***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y. 2003)).

***In re Cardizem CD Antitrust Litigation:*** Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich. 2002)).

***In re Brand Name Prescription Drugs Antitrust Litigation***: The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs. Following certification of the class by the district court, settlements exceeded $717 million. (No. 94 C 897 (M.D. Ill. 2000)).

7

**North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D. D.C. 2004))

**In re Catfish Antitrust Litig.:** The firm was co-trial counsel in this action (by Mr. Twersky) which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss. 1995)).

**In re Carbon Dioxide Antitrust Litigation:** The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla. 1995)).

**In re Infant Formula Antitrust Litigation:** The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla. 1992)).

**Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:** The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex. 1991)).

**In re Corrugated Container Antitrust Litigation:** The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex. 1981)).

**Bogosian v. Gulf Oil Corp.:** With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies lead to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa. 1977)).

***In re Master Key Antitrust Litigation:*** The firm served as co-lead counsel in antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn. 1977)).

## *Environmental/Mass Tort Litigation*

***In re Exxon Valdez Oil Spill Litigation:*** On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. David Berger was co-chair of the Plaintiffs' Discovery Committee (appointed by both the federal and state courts). H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) in the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Ala. 1996)).

***In re Ashland Oil Spill Litigation:*** The firm served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa. 1990)).

***In re School Asbestos Litigation:*** As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief. Pursuant to an approved settlement, the class received $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa. 1986)).

## *Health Care/ERISA Litigation*

***In re Unisys Corp. Retiree Medical Benefits:*** The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

***Local 56 U.F.C.W. v. Campbell Soup Co.:*** The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits.

9

A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D. N.J. 1984)).

### *Civil/Human Rights*

***In re Holocaust Victim Assets Litigation:*** Through Stephen A. Whinston's membership on the Executive Committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D. N.Y. 2000)).

***In re Nazi Era Cases Against German Defendants Litigation:*** Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D. N.J. 2000)).

10

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Securities Litigation*

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes.
>
> Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings. In short, it would be hard to equal the skill class counsel demonstrated here."

> Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett and partners Carole Broderick and Robin Switzenbaum *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603 (E.D. Pa. 2003)

From **Judge Clarence C. Newcomer**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary efficiency."

11

Praising the work of Sherrie R. Savett, Securities Department Chair, and Arthur Stock, *In Re: Unisys Corporation Securities Litigation*, Civil Action No. 99-5333 (E.D. Pa. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*. The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . . At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett, in achieving settlements of over $190 million in *In re Rite Aid Inc. Securities Litigation*, 146 F. Supp.2d 706 (E.D. Pa. June 8, 2001).

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins and Douglas M. Risen, on the partial settlement for $111 million approved May, 2000, *In Re: IKON Offices Solutions Securities Litigation*, Civil Action No. 98-4286 (E.D. Pa. 2000).

From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois:

"...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

12

Praising the work of Sherrie R. Savett and Carole A. Broderick, in *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . , and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, (E.D. Pa. 1994).

From **Judge Joseph F. Anderson, Jr.**, of the U.S. District Court for the District of South Carolina:

"I don't have a problem at all approving the settlement. In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an ideal case for settlement. It's the largest settlement I've been called upon to approve in my eight years as a judge."

Praising the work of Sherrie R. Savett, Securities Department Chair, in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation*, Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge Harry R. McCue**, of the U.S. District Court for the Southern District of California:

"There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested

13

their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market. . . . I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

Concerning the work of Berger & Montague in achieving a $33 million settlement in *In re Oak Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).


From **Judge John F. Keenan**, of the U.S. District Court for the Southern District of New York:

"The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.' The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett and Stephen A. Whinston, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985).


### *Antitrust Litigation*

From **Judge Charles P. Kocoras**, of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the

14

defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, *5-6 (N.D. Ill. February 9, 2000).

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

"The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Concerning the work of senior member, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624.

From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in *Bogosian v. Gulf Oil Corp*, 621 F. Supp. 27 (E.D. Pa. 1985).

15

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in *In re Master Key Antitrust Litigation*, 1977 U.S. Dist LEXIS 12948 (Nov. 4, 1977).

## *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them. . . . For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors. Among the lawyers specifically mentioned for special recognition were Stephen A. Whinston and Edward W. Millstein, both shareholders of the firm.

## *Customer/Broker Arbitrations*

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> ". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the

intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

## BIOGRAPHIES OF INDIVIDUAL ATTORNEYS

Set forth below are the biographies of the principal attorneys who worked on the Creditrust Corporation matter and who are individually listed on the chart attached to the accompanying affidavit.

### Todd S. Collins

Todd S. Collins is a graduate of the University of Pennsylvania (B.A. 1973) and the University of Pennsylvania Law School (J.D. 1978), where he won the 1978 Henry C. Laughlin Prize for Legal Ethics. He is a member of the Pennsylvania and Delaware Bars. Since joining Berger & Montague in 1982, following litigation and corporate experience in Wilmington, Delaware and Philadelphia, he has concentrated on complex class litigation, including cases on behalf of securities purchasers, shareholders, trust beneficiaries, and retirement plan participants and beneficiaries.

Mr. Collins has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of the Class. These cases include: *In re AMF Bowling Securities Litigation*, 99 Civ. 3023 (PKC) (S.D.N.Y.) ($20 million recovery, principally against investment banks, where defendants asserted that class suffered no damages); *Ashworth Securities Litigation*; Master File No. 99 CV 0121- L (JFS) (S.D. Cal.) ($15.25 million recovery, coupled with substantial corporate therapeutic relief); *In re Aero Systems, Inc. Securities Litigation*, Case No. 90-0083-CIV-PAINE (S.D. Fla.) (settlement equal to 90 percent or more of Class members' estimated damages); *Price v. Wilmington Trust Company,* Case No. 12476,  (Del. Chancery) (in litigation against bank trustee for breach of fiduciary duty, settlement equal to 70% of the losses of the Class of trust beneficiaries); *In re Telematics International, Inc. Securities Litigation*, Case No. 89-6015-CIV-PAINE (S.D. Fla.) (settlements achieved, after extensive litigation, following 11th Circuit reversal of dismissal below); *In re Ex-Cell-O Securities Litigation*, Case Nos. 86 CV 73442 DT and 86 CV 75335 DT (E.D. Mich.); *In re Sequoia Systems, Inc.* Case No. 92-11431-WD (D. Mass.)*; In re Sapiens International, Inc. Securities Litigation*, Case No. 94 Civ. 3315 (RPP) (S.D. N.Y.); *In re Datastream Securities Litigation*, Case No. 9-99-0088-13 (D.S.C.); *Copland v. Tolson (*Fischer & Porter Corporate Litigation), Case No. 93008366-09-5 (C.P. Bucks County, Pa.) (on eve of trial, in case against corporate principals for breach of fiduciary duty, settlement reached that represented 65% or more of claimants' losses, with settlement funded entirely from individual defendants'

personal funds); and *In re IKON Office Solutions, Inc. Securities Litigation,* Case No. 98-CV-5483 (E.D. Pa.). In *IKON,* where Mr. Collins was co-lead counsel as well as chief spokesman for plaintiffs and the Class before the Court, plaintiffs' counsel created a fund of $111 million for the benefit of the Class.

In addition, Mr. Collins has served as lead or co-lead counsel in several of the leading cases asserting the ERISA rights of 401(k) plan participants. Mr. Collins currently serves as co-lead counsel in *In re Lucent Technologies, Inc. ERISA Litigation,* No. 01-CV-3491 (D. N.J.); *In re Nortel Networks Corp. ERISA Litigation,* No. 03-MD-1537 (M.D. Tenn.); and *In re SPX Corporation ERISA Litigation,* Master File No. 04-CV-192 (W.D. N.C.). In *Lucent,* in the past year, Mr. Collins and his team achieved an excellent result, consisting of $69 million for the benefit of plan participants as well as substantial injunctive relieve with respect to the operation of the 401(k) plans.

Mr. Collins is at the forefront of litigation designed to achieve meaningful corporate governance reform. Recently, he brought to a successful conclusion two landmark cases in which corporate therapeutics are at the core of the relief obtained. In *Oorbeek v. FPL Group, Inc.* (S.D. Fla.), a corporate derivative action brought on behalf of the shareholders of FPL Group, plaintiffs challenged excessive "change of control" payments made to top executives. In settlement, plaintiffs recovered not only a substantial cash amount, but also a range of improvements in FPL's corporate governance structure intended to promote the independence of the outsider directors.

Similarly, in *Ashworth Securities Litigation* (S.D. Cal.), a Section 10(b) fraud case, in which Mr. Collins was co-lead counsel, plaintiffs again have been successful in recovering millions of dollars and also securing important governance changes. The goal is to compensate the victims of wrongdoing and also, where appropriate, to make those structural changes necessary to make sure that such wrongdoing will never recur.

## Gary E. Cantor

Gary E. Cantor is a graduate of Rutgers College (B.A. with high honors 1974) where he was a member of Phi Beta Kappa, and the University of Pennsylvania Law School (J.D. 1977), where he was a member of the Moot Court Board and the author of a law review comment on computer-generated evidence. He was admitted to the Pennsylvania bar in 1977. Since joining the

19

Berger firm in 1977, he has concentrated on complex litigation, particularly securities litigation and securities valuations. Among other cases, Mr. Cantor has served as co-lead counsel in *Steiner v. Phillips, et al.* (Southmark Securities), Consolidated C.A. No. 3-89-1387-X (N.D. Tex.), which resulted in several payments to the Settlement Fund of over $70 million, and *In re Kenbee Limited Partnerships Litigation*, Civil Action No. 91-2174 (GEB), a class action involving 119 separate limited partnerships resulting in cash settlement and debt restructuring (with as much as $100 million in wrap mortgage reductions). In addition, he played a major role in: *In re Marconi, Plc, Securities Litigation*, Civil Action No. 2:01-CV-1259 (W.D. Pa.)($7.1 million settlement approved January 16, 2004); *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (DLC) (S.D.N.Y.)($70 million class settlement); *In re Fidelity/Micron Securities Litigation*, Civil Action No. 95-12676-RGS (D. Mass.) ($10 million class settlement); *In re Tucson Electric Power Company Securities Litigation*, C.A. No. 89-1274 PHX (WPC C.D. Ariz.) ($30 million settlement of class and derivative actions). He was also actively involved in the *Waste Management Securities Litigation* (class settlement of $220 million).

Mr. Cantor has been active in numerous community service activities, including serving as treasurer, president and board chairman of a private school.

### Elizabeth W. Fox

Elizabeth Williams Fox is a graduate of Bryn Mawr College (B.A., *cum laude*, with honors in Anthropology 1963) and the University of Pennsylvania (M.S. in Education 1972; J.D. 1980). Before attending law school, Ms. Fox taught history and social studies at the Baldwin School where she became Head of the History Department. After law school, Ms. Fox joined Ballard, Spahr, Andrews & Ingersoll as an associate where she practiced employment law and general commercial litigation. In 1985, she joined Hoyle, Morris & Kerr where she specialized in toxic torts and insurance coverage litigation, first as an associate and later as a partner. She joined Berger & Montague in July 2001 where she concentrates in securities litigation.

### Sheryl Saltzberg Levy

Sheryl S. Levy has been an associate at the firm since March, 1988. She received a Bachelor of Arts degree (*cum laude*) from the University of Pennsylvania in 1984, and a Juris Doctorate degree at the

National Law Center of George Washington University in 1987 (*cum laude*).  While attending law school, Ms. Levy served as an editor of the *George Washington Journal of International Law and Economics*. Prior to joining Berger & Montague, Ms. Levy was associated with the Philadelphia firm of Pechner, Dorfman, Wolffe, Rounick & Cabot.  Ms. Levy has worked on a variety of complex litigation matters, primarily in the areas of commercial and mass tort litigation.  She is admitted to practice law in Pennsylvania.

### Neil F. Mara

Neil F. Mara is a graduate of the College of the Holy Cross (B.A. 1987) and the University of Connecticut (J.D. 1991) where he was a member of the executive board of the Moot Court Honor Society.  Mr. Mara was an Assistant District Attorney in Philadelphia, Pennsylvania, from 1991-1997.  He was also a Special Assistant United States Attorney for the Eastern District of Pennsylvania, 1996-1997, where he prosecuted large narcotics organizations.  Since joining the Berger firm, he has concentrated on environmental litigation and securities litigation.  Mr. Mara is admitted to practice law in Connecticut, Pennsylvania, and various federal courts.

### Phyllis Maza Parker

Phyllis Maza Parker is a graduate of Yeshiva University (B.A. *cum laude* 1969), Columbia University (M.A. French Literature 1971), Boston University, Brussels Belgium (M.S. in Management), and Temple University School of Law (J.D. *cum laude* 1995), where she was a member of the *Temple Law Review* and published a Note on the subject of the Federal Sentencing Guidelines. After her first year of law school, Ms. Parker interned with the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit.  Following graduation from law school, Ms. Parker served as law clerk to the Honorable Murray C. Goldman of the Court of Common Pleas in Philadelphia, Pennsylvania.  Since joining the Berger firm in September, 1996, Ms. Parker has been involved in various complex class action litigations, focusing primarily on securities class action litigation. She is admitted to practice in Pennsylvania and New Jersey as well as the Eastern District of Pennsylvania.

**Latonda Dunbar**

Latonda Dunbar graduated from DePaul University in 1994, with a Bachelor of Arts in Economics. Prior to law school, Ms. Dunbar worked in the insurance industry as a commercial lines underwriter and reinsurance consultant. She went on to study at the University of Pennsylvania Law School, where she represented University of Pennsylvania in the 2002 Jessup International Moot Court Competition. She graduated from the Law School in 2003.

Ms. Dunbar joined Berger & Montague in August 2003, and practices in the area of securities litigation.

**Jacob Goldberg**

Jacob A. Goldberg is a 1988 graduate of Columbia University (B.A., History) and a 1992 graduate (J.D. *cum laude*) of the Temple University School of Law. Mr. Goldberg is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit, and the United States District Courts for the Eastern District of Pennsylvania, the Central District of Illinois and the District of Colorado. Mr. Goldberg has served as a panelist on the changes in the Federal Rules of Civil Procedure before the Federal Bench Bar Conference for the United States District Court for the Eastern District of Pennsylvania. He is a member of the Philadelphia Bar Association.

Since his graduation from law school, Mr. Goldberg has concentrated his practice in prosecuting securities fraud cases under the Securities Act of 1933 and the Securities Exchange Act of 1934 and in seeking remedies derivatively on behalf of corporations for the malfeasance of their directors, officers and others. He has also litigated class actions under the federal ERISA and anti-trust laws and various consumer protection statutes.

Before joining the Berger firm in 1997, among many other cases in which he participated, Mr. Goldberg served as lead counsel in the *In re New America High Income Fund Securities Litigation*, Master File No. 90-CV-10782-MA (D. Mass.) in which he recovered over $4 million on behalf of persons who purchased shares in a high-yield bond fund. The fund was allegedly a construct of Michael Milken and the Drexel junk bond machine, allegedly founded to extend Mr. Milken's notorious "daisy chain" of investors in the high-yield bonds Drexel Burnham Lambert underwrote.

22

As co-lead counsel in *Rosenthal v. Dean Witter*, No. 91 CV 429, District Court of Douglas County, Colorado, Mr. Goldberg was instrumental in securing over $7 million on behalf of investors who purchased the bonds of a Colorado Municipal District.

Before leaving the Berger firm in 2003, Mr. Goldberg had served in important positions in many cases, including as co-lead counsel, with Todd Collins, in *In re IKON Office Solutions, Inc. Securities Litigation*, No. 98-CV-5483 (E.D. Pa.). The *IKON* case resulted in a $111 million recovery on behalf of purchasers of IKON Office Solutions, Inc. Securities. The case involved complex issues of accounting and the alleged manipulation of income statements and balance sheets throughout the class period. Mr. Goldberg also served as lead counsel in *In re Creditrust, Inc. Securities Litigation*, Civil Action No. MJG 00 CV 2174 (D. Md.), co-lead counsel in *Lawson v. Advanced Equities, Inc.*, Civil Action No. 3:00-CV-382 (S) (W.D. Ky.), and as an Executive Committee member in *In re AremisSoft Corp. Sec. Litig.*, Civ. Action No. 01-CV-2486 (JAP) (D.N.J.).

Mr. Goldberg serves on the Board of Directors and the Executive Committed of his synagogue.

### Sandra G. Smith

Sandra G. Smith graduated from St. Joseph's University (B.A. 1994) and from the Temple University School of Law (J.D. 1999). Ms. Smith was Editor-in-Chief (1997-1998) and Staff Editor (1996-1997) of the *Temple Environmental Law and Technology Journal*. She was admitted to practice in Pennsylvania in 1999. Ms. Smith joined the Berger firm in November, 1999 and practiced in the complex securities litigation area.

### Christopher Leigh Nelson

Christopher Nelson is a graduate of Duke University School of Law (J.D. 2000), where he was a member of the Blackstone Society, and Washington University, in St. Louis (B.S. Business, Economics, and the Law, 1997). Mr. Nelson joined Berger & Montague in May, 2000 and practiced in the complex securities class action litigation area. He is admitted to practice in Pennsylvania and the United States District Court for the Eastern District of Pennsylvania.

393154

23

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

---

IN RE CREDITRUST CORPORATION
SECURITIES LITIGATION

Civil Action No. MJG 00 CV 2174

---

## AFFIDAVIT OF PATRICK D. VELLONE
## IN SUPPORT OF JOINT PETITION FOR
## ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
## FILED ON BEHALF OF ALLEN & VELLONE, P.C.

State of Colorado   :
                     : ss.

County of Denver    :

I Patrick D. Vellone, being duly sworn, depose and say:

1.      I am a member of the firm of Allen & Vellone, P.C.  I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.      The chart attached hereto as Exhibit A is a detailed summary indicting the amount of time spent by the attorneys, law clerks and paralegals of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates.  The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate and a breakdown of the hours expended by each attorney.  The same information is provided for law clerks and paralegals on a collective basis.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm which are available for submission to the Court at its request.  Time spent in

preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

3.    As counsel for plaintiffs, the attorneys of my firm reviewed and revised the Complaint and drafted responses to the numerous motions to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and addressing a litany of arguments set forth by the Defendants in support of their motions to dismiss.

4.    With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.    The total number of ours spent on this litigation by my firm from the inception of the case through, April 5, 2005 is 148.18 hours. The total lodestar amount for attorney, law clerk and paralegal time based on the firm's current rates is $32,667.81.

6.    My firm expended a total of $1,413.77 in unreimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| Category | Amount |
|---|---|
| Long Distance Telephone | $3.53 |
| Deliver Charge | $10.00 |
| Federal Express Delivery | $27.09 |
| Postage | $14.97 |
| Westlaw On-line Database Search | $1060.73 |
| Photocopies | $297.45 |
| **TOTAL** | **$1,413.77** |

7.    The expenses incurred pertaining to this case are reflected on the books and records of this firm. Theses books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

_____

Patrick D. Vellone

SWORN TO AND SUBSCRIBED before me this 8th ___ day of April, 2005.

_____

Notary Public

My Commission Expires: _____

My Commission Expires
10/01/2006

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

## FEES AND EXPENSES FOR

Allen & Vellone, P.C.                                    IN

## IN RE CREDITRUST SECURITIES LITIGATION

| NAME OF LAWYER OR PARALEGAL | HOURS WORKED | *CURRENT LODESTAR |
|---|---|---|
| Patrick D. Vellone | 11.70 | $435.00 |
| Matthew M. Wolf | 76.60 | $340.00 |
| Elizabeth Bryans | 54.68 | $280.00 |
| Mark A. Larson | 1.10 | $300.00 |
| Jennifer Schlatter | 4.10 | $290.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTALS** | 148.18 | $32,667.81 |

**EXPENSES** $ 1,413.77

EXHIBIT

A

# FIRM PROFILE

In 1983, Allen & Vellone, P.C. began its focus in the representation of financial institutions. That focus has since expanded to the representation of national and international businesses in intellectual property litigation, lender liability defense, and class action securities litigation. The firm's practice emphasizes banking and bank regulatory matters, corporate and general business law, employment law, real estate, securities and antitrust, intellectual property law and complex commercial litigation.

## AREAS OF PRACTICE

Allen & Vellone, P.C. serves its clients in the following areas:

### Complex Civil Litigation

The Firm's litigation experience is extensive in numerous state and federal courts at the trial and appellate levels as well as in arbitration, administrative hearings and other proceedings. The litigation practice represents business and individuals clients and focuses on all areas of commercial and business law, including business torts, trade secret misappropriation, real estate, construction, antitrust, securities fraud, lender liability defense, bankruptcy creditor representation, regulatory investigations and employment law, as well as both prosecuting and defending litigation of all kinds for its banking clients.

### Business Law

The Firm possesses extensive experience in partnership, limited liability company and corporate representation, including formations, mergers, acquisitions, and various related legal issues. A myriad of related services also are provided, including employment and employee stock ownership plans.

### Employment Law

This practice includes the representation of clients in both state and federal courts with respect to claims arising out of the employer-employee relationship. In addition, the firm provides extensive consultation to employers regarding a broad spectrum of employment matters, including preparation of employee manuals and employee handbooks, and employer compliance with state and federal employment laws.

EXHIBIT

B

## Real Estate Law

The Firm has substantial experience in all aspects of real estate acquisitions, sales, project operational matters, and real estate lending, including representation of local governments, owners, and developers. The Firm's expertise encompasses leasing, title matters, commercial developments (including office buildings, shopping centers, and apartments complexes) and regulatory hearings involving zoning, rezoning and subdivision matters.

## Securities Law

The Firm provides transactional services involving a wide variety of matters arising under federal and state securities laws, including public and non-public offerings of debt and equity securities by corporations, partnerships and limited liability companies; periodic and other reporting requirements for public companies; stock market listing and maintenance requirements; real estate and other syndications; corporate reorganizations, recapitalizations, mergers, acquisitions and tender offers; and registration of securities broker-dealers and investment advisers.

## Intellectual Property

The Firm's practice includes all aspects of obtaining, protecting and enforcing intellectual property rights. Allen & Vellone's attorneys are experienced in handling patent and trademark matters at the United States Patent and Trademark Office, as well as patent, trademark, copyright, and trade secret litigation. The Firm also advises its clients in identifying and licensing intellectual property and related contract matters.

## ATTORNEY PROFILES

Allen & Vellone, P.C. is comprised of two partners and five associates, with two partners and four associates focusing primarily on litigation and one partner and one associate focusing on the firm's transactional practice.

### Kevin D. Allen

Mr. Allen received his undergraduate degree and law degree from the University of California at Los Angeles in 1975 and 1978, respectively. He has been admitted to practice before the United States District Court for the District of Colorado, the United States Court of Appeals for the Tenth Circuit and the United States Tax Court. He has also been admitted to practice before the United States Courts of Appeal for the Sixth and Ninth Circuits, as well as the United States Supreme Court. His practice emphasizes employment law and commercial litigation. Mr. Allen has also published articles on Colorado civil procedure and employment law issues. He is a member of the Denver and Colorado Bar Associations and is currently the employer co-chairperson of the Colorado Labor Law Forum, the Colorado Bar Association committee which is devoted to the study of labor and employment law issues.

### Patrick D. Vellone

Mr. Vellone received his undergraduate degree, *magna cum laude*, in Political Science from Northern Illinois University in 1982. He then went on to receive his Juris Doctorate from the University of Colorado School of Law where he was inducted into the Order of the Coif in 1985. He is a member of the National Panel of Arbitrators for the American Arbitration Association and the National Association of Securities Dealers. Mr. Vellone has spoken at the American Bar Association National Conference concerning lender liability law in the 1990's. He also co-authored the Uniformed Commercial Code Compliance Manual for Lenders (1994). Mr. Vellone's primary area of practice is complex commercial litigation with particular emphasis on lender liability defense, securities, contract and bankruptcy creditor representation. Mr. Vellone has been a member of the Colorado Bar since 1985, is a member of the Denver and American Bar Associations and is licensed to practice in Colorado, the United States District Court, District of Colorado, the United States Court of Appeals, Tenth Circuit and the United States Supreme Court. Mr. Vellone has been admitted to practice for particular cases in several federal and state courts throughout the United States.

## Michael A. Vellone

Mr. Vellone is a 1987 graduate of the University of Colorado School of Law. He is admitted to practice in all Colorado state courts, the United States District Court for the District of Colorado, and the United States Court of Appeals for the Tenth Circuit. His practice has been diverse and includes both civil litigation and transactional work in the areas of commercial law, business organization, contracts, creditors' rights, real estate, insurance defense, product liability, and general civil and appellate practice. Additionally, Mr. Vellone's professional experience prior to entering the practice of law involved substantial work with the courts for approximately ten years in connection with his positions with the Colorado State Judicial Department and the Department of Social Services. Mr. Vellone is a member of the Denver, Colorado, and American Bar Associations.

## Patrick J. Russell

Mr. Russell participated in several joint degree programs whereby he received, in 1971, a B.A. degree, with honors, from Claremont-McKenna College, a B.S. degree (industrial engineering) and an M.S. degree (industrial engineering) from Stanford University. He went on to receive a Juris Doctorate degree and a Masters of Business Administration degree from the University of Denver in 1971. In 1983, Mr. Russell received a Masters in Taxation from the University of Denver. Mr. Russell has been a transactional and business attorney in Denver, Colorado since 1974 with emphasis on federal and state securities law, taxation, corporate law, general business matters and commercial litigation. His securities law experience includes public and private offerings, acquisitions, mergers, venture capital financing transactions, SEC reporting requirements applicable to public companies and their affiliates, SEC enforcement actions and securities transfer matters. Mr. Russell has substantial experience with respect to corporations, limited liability companies, partnerships and limited partnerships, including choice of entity and preparation of formation documents; taxation issues; conduct of shareholders and director meetings; contract negotiation and preparation, secured and unsecured loan transactions, employee stock option and incentive plans; and shareholder agreements. In addition, Mr. Russell's practice includes commercial litigation matters, being admitted to practice in Colorado, the United States District Court, District of Colorado, and the United States Court of Appeals for the Tenth Circuit. In the mid-1980s, Mr. Russell was a part-time Instructor of Law at the College of Law, University of Denver.

### Jennifer E. Schlatter

Ms. Schlatter received her undergraduate degree in Theater and English from University of Colorado at Denver in 1994. She received her Juris Doctorate from the University of Denver in 1998. Upon graduation and admission to bar in 1999, Ms. Schlatter accepted a position with our firm in the practice areas of intellectual property and commercial litigation. Ms. Schlatter is licensed to practice law in the State of Colorado and the United States District Court for the District of Colorado.

### Mark A. Larson

Mr. Larson completed his undergraduate study at the University of Nebraska, receiving his Bachelor of Science degree in 1992. He then received his Juris Doctorate at the Thomas M. Cooley Law School in Lansing, Michigan where he was a member of the National First Amendment Moot Court Competition team. In 1999, he received a graduate degree in Taxation from the University of Denver. Mr. Larson's area of practice is Commercial Litigation. Mr. Larson is licensed to practice in Colorado and Oregon, and is a member of the Denver, Colorado, and Oregon Bar Associations. He is also admitted to the United States District Court, District of Colorado and the United States Supreme Court.

### Matthew M. Wolf

Mr. Wolf received his undergraduate degree from the University of Denison in 1997. He graduated cum laude from the State University of New York at Buffalo, School of Law, with a concentration in finance transactions. While at the University at Buffalo, Mr. Wolf was the Articles Editor of the Law Review and the Vice-President of the Moot Court Board. Upon graduation, he was inducted into the Order of the Barristers for exhibiting excellence in oral advocacy. His practice emphasizes commercial, employment and securities litigation. Mr. Wolf is licensed to practice in Colorado and New York, and is a member of the Colorado, Denver, New York and American Bar Associations.

### Bradley D. Chapman

Mr. Chapman received his Bachelor of Science degree from the University of Colorado in 1986, majoring in corporate finance. He then received his Juris Doctor from the University of Tulsa, College of Law in 1994. Mr. Chapman is a member of the Colorado and American Bar Associations as well as a member of the Association of Trial Lawyers of America. He practices in the areas of general civil and commercial litigation, insurance defense and real estate transactions. Mr. Chapman is admitted to practice before the State and Federal District Courts of Colorado.

### Leigh K. Freeman

Leigh K. Freeman received her undergraduate degree from the University of Colorado at Boulder in 2000, graduating with distinction. She went on to receive her Juris Doctorate from the University of Denver in 2003 where she was inducted into the Order of St. Ives. While at the University of Denver, Ms. Freeman was a Staff Editor for the University of Denver Law Review and won the Daniel S. Hoffman Trial Advocacy and Natural Resources Appellate Competitions. She is a member of the Denver and Colorado Bar Associations. Ms. Freeman's practice is comprised of commercial, employment and securities litigation.

3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MARYLAND

In Re Creditrust Corporation
Securities Litigation

Civil Action No. MJG 00 CV 2174

AFFIDAVIT OF JACK G. FRUCHTER
IN SUPPORT OF [JOINT] PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF ABRAHAM FRUCHTER & TWERSKY, LLP

STATE OF NEW YORK    :
                     :    ss.
COUNTY OF NEW YORK   :

I, Jack G. Fruchter, being duly sworn, depose and say:

1.    I am a member of the firm of Abraham Fruchter & Twersky LLP. I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.    The chart attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by the attorneys, law clerks and paralegals of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates. The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate and a breakdown of the hours expended by each attorney. The same information is provided for laws clerks and paralegals on a collective basis. The chart was prepared from contemporaneous, daily time

Court at its request.  Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

3.       As counsel for plaintiffs, the attorneys of my firm were involved in: interviewing our client; conducting an initial factual investigating into the circumstances which gave rise to this litigation; conducting an initial investigation into the legal issues involved; drafting a complaint for violations of the federal securities laws; monitoring ongoing litigation; and, communicating with client throughout pendency of action.

4.       With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.       The total number of hours spent on this litigation by my firm from the inception of the case through April 5, 2005 is 24 hours.  The total lodestar amount for attorney, law clerk and paralegal time based on the firm's current rates is $11,880.  The hourly rates set out in the chart as Exhibit A are the same rates which Abraham Fruchter & Twersky LLP charges its hourly clients paying for its services on a monthly basis.

6.       My firm expended a total of $912.50 in unreimbursed expenses from in connection with the prosecution of this ligation broken down as follows:

| Category | Amount |
|---|---|
| On-Line Research | $850.00 |
|  | $25.00 |
| Overnight Delivery | $ 37.50 |
| TOTAL | $912.50 |

7.    The expenses incurred to this case are reflected to the books and records of this firm. These books and records are prepared from expense vouchers and check records and are in accurate recordation of the expenses incurred.

_____
Jack G. Fruchter

SWORN TO AND SUBSCRIBED

before me this 13ᵗʰ day of April, 2005


_____
Notary Public

MITCHELL M. Z. TWERSKY
Notary Public, State of New York
No. 02TW4905054
Qualified in New York County
Commission Expires July 13, 2008

# EXHIBIT A

### In Re Creditrust Corporation Corporation Securities Litigation
### FIRM: Abraham Fruchter & Twersky LLP
### Lodestar Reporting Period: Inception of Case Through April 5, 2005

| Professional (status) | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|
| Jack G. Fruchter (Partner) | $495 | 24 Hours | $11,880 |

## EXHIBIT B

### Firm Resume

### ABRAHAM, FRUCHTER & TWERSKY, LLP

Abraham, Fruchter & Twersky LLP, which was formed in March 2004 through a combination of the firms of Abraham & Associates and Fruchter & Twersky LLP, is a boutique law firm specializing in securities and shareholder litigation and has been actively involved in the successful prosecution of such cases throughout the United States. The actions in which the predecessor firms of Abraham, Fruchter & Twersky have served as lead counsel or as a member of an executive committee of plaintiffs' counsel include:

- Levy v. Southbrook International Investments, Ltd., et al., 99 CV 1479 (JSM) (S.D.N.Y.), in which settlements totaling $20 million, the largest known cash recovery at the time for claims arising under Section 16(b) of the Securities and Exchange Act of 1934 ("Section 16(b)") since the statute was first enacted in 1934, were approved by Judge John S. Martin, Jr. In approving the settlement, Judge Martin, noted that "the shareholders of Illinois Semiconductor Company received a $20,000,000.00 benefit as the sole result of the diligence and sagacity of Plaintiff's counsel." Id. 2001 U.S. Dist. LEXIS 7097 at *20 (S.D.N.Y. May 31, 2001);

- Levy v. Office Depot, Inc., 01-8259-CIV (S.D. Fla.), was a Section 16(b) action settled for $9.4 million in cash following plaintiff's successful appeal to the United States District Court of Appeals for the Eleventh Circuit of the District Court's following the dismissal of the action on a summary judgment motion and the subsequent remand of the action to the District Court for trial;

- Lawrence v. Gouldd, et al., CV-S-99-969 JBR (RLH) (D. Nev.), was a class

- 1 -

P.07

APR-13-2005  11:10

action brought pursuant to Section 12 of the Securities Act of 1933 and the Nevada Deceptive

Business Practices Act for the alleged operation of a pyramid scheme. The case settled two

weeks into trial for proceeds, based upon the estimated liquidation value of defendants' assets, of

approximately $30 million;

- In re CFSBDirect Tracking Stock Shareholder Litigation, C.A. No. 18307 (Del.

Ch.), was a class action for breach of fiduciary duties which achieved a $36.4 million or 50%

increase in the price offered by a controlling shareholder in a tender offer;

- In re Bank of New York Corporate Derivative Litigation, Index No. 99/604465

(Sup Ct. N.Y. County), was a shareholder derivative action brought on behalf of the Bank of

New York with respect to damage allegedly caused to the company by the failure to implement

proper procedures to safeguard against unlawful money laundering, which was settled for $26.5

million in cash and substantial remedial measures designed to strengthen the Bank of New

York's internal controls and corporate governance procedures and prevent a future occurrence of

similar wrongful activities;

- Rosenberg v. Delta Air Lines, Inc., C.A. No. 00-461-JJF (D. Del.), was an action

brought against Delta Air Lines on behalf of Priceline.com for violating the insider trading

provisions of Section 16(b) and was settled for changes in contractual terms governing various

business relationships valued at more than $38 million;

- In re Ugly Duckling Corp. Shareholders' Derivative and Class Litigation, C.A.

No. 18746 (Del. Ch.), was a consolidated shareholder derivative and class action which settled

for a $9 million increase in the price of a proposed tender offer made by a controlling

shareholder;

P.08                                    APR-13-2005  11:10

- In re: Dreyfus Aggressive Growth Mutual Fund Litigation, 98 CV 4318 (HB)

(S.D.N.Y.), was a class action brought on behalf of purchasers of two mutual funds for damages

arising from misleading statements made in the offering prospectuses, which settled for $18.5

million in cash;

- Deegan, derivatively on behalf of Anadigics, Inc. v. Rosenzweig, et al., Civil

Action No. 98-CV-3640 (MLC) (D.N.J.), was a shareholder derivative action which was settled

for $2,000,000 in cash and corporate therapeutics designed to prevent a recurrence of the alleged

wrongdoing;

- Levy, derivatively on behalf of Marketing Services Group, Inc. v. General Electric

Capital Corp., 99 Civ. 10560 (AKH) (S.D.N.Y.), was an action arising under Section 16(b)

which was settled for $1,250,000, or more than 45% of recoverable damages;

- Rosenberg, derivatively on behalf of Art Technology Group, Inc. v. Tudor

Investment Corp., et al., C. A. No. 00-925 (JJF) (D. Del.), was a shareholder derivative action

arising under Section 16(b) which was settled for $1,450,000 in cash;

- Levy v. Clearwater Fund IV, Ltd, 2000 U.S. Dist LEXIS 1305 (D. Del. Feb. 2,

2000), was a shareholder derivative action arising under Section 16(b) which was settled for

$700,000 in cash, representing approximately two-thirds of total potential recoverable damages,

plus a release of certain potential breach of warranty and negligent misrepresentation claims

which the defendant had threatened to bring against the issuer on whose behalf the action had

been brought.

Many of the actions the firm litigates involve issues of first impression. On December

19, 2002, the United States Court of Appeals for the Third Circuit resolved certain issues of first

- 3 -

impression relating to the scope and interpretation of Rule 16b-3 and Rule 16b-7 of the Securities

Exchange Act of 1934 [17 C.F.R. §§240.16b-3 and 240.16b-7] promulgated by the Securities and

Exchange Commission ("SEC") consistent with the position advocated by Abraham &

Associates. See Levy v. Sterling Holding Company, et al., 314 F.3d 106 (3rd Cir. 2002). The

decision is especially noteworthy because on April 30, 2003, the Third Circuit denied

defendants' petition for rehearing *en banc* by a 7-3 vote despite the fact that the SEC joined

defendants as an *amicus* in their petition for rehearing.

In another action arising under Section 16(b), on August 7, 2000, the United States Court

of Appeals for the Second Circuit, held that for purposes of Section 16(b), a person can be the

beneficial owner of an issuer's stock owned by another publicly traded corporation. This

decision in Feder v. Frost, 220 F.3d 29 (2d Cir. 2000), effectively overruled more than ten years

of controlling case law previously articulated by the Second Circuit in Mayer v. Chesapeake

Insurance Co., 877 F.2d 1154 (2d Cir. 1989).

Similarly, on November 15, 1999, the New York State's Second Appellate Department,

in an issue of first impression, held that New York Real Property Law §274a prohibits

mortgagors from charging mortgagees (i.e., consumers) a fax fee in connection with providing

mortgage related documents and that mortgagees have an implied private right of action to

recover any such fees paid. The decision was "Decision of the Day" in the November 19, 1999,

edition of The New York Law Journal and is reported as Negrin v. Norwest Mortgage, Inc., 163

A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999).

Jeffrey S. Abraham is a 1987 graduate of the Columbia University School of Law and is

admitted to practice in the Courts of the State of New York as well as the United States District

Courts for the Southern District of New York, the Eastern District of New York and the District

of Colorado; and the United States Court of Appeals for the Second, Third, Fourth, Seventh,

Ninth, Tenth and Eleventh Circuits.

Jack G. Fruchter is a 1992 *cum laude* graduate of the Benjamin N. Cardozo School of

Law and was admitted to bar of New York State in 1993, New York and is admitted to practice

in the U.S. District Courts, Southern and Eastern District of New York and the Court of Appeals

for the Third Circuit. Prior to establishing his own practice, Mr. Fruchter was employed in the

enforcement division of the U.S. Securities and Exchange Commission and as an associate at a

large New York City law firm.

Mitchell M.Z. Twersky is a 1991 graduate of the Georgetown University School of Law.

Mr. Twersky was admitted ot the bar of New York State in 1992 and is also admitted to practice

before the U.S. District Courts, Southern and Eastern District of New York and the Courts of

Appeals for the Second, Third and Seventh Circuits; Supreme Court of the United States of

America. Prior to establishing his own practice, Mr. Twersky was associated with a medium

sized New York City law firm specializing in commercial litigation.

Lawrence D. Levit is a 1985 graduate of Brooklyn Law School where he was the Second

Circuit Editor for the Law Review. Prior to joining Abraham & Associates, Mr. Levit was a

partner at Wolf Popper LLP, a mid-size law firm specializing in securities and class action

litigation. Mr. Levit is a member of the New York and New Jersey bars and is admitted to

practice before the United States District Courts for the Southern District of New York, the

Eastern District of New York and the District of Colorado; and the United States Court of

Appeals for the Fourth Circuit.

Jorge Salva received his J.D. in 2001 from the University of Pennsylvania School of Law and his B.A. in economics from Columbia Collge. Prior to attending law school Mr. Salva was a financial reporting analyst for the Federal Reserve Board. Mr. Salva is admitted to practice in the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

David Weinberger is a 2003 graduate of the University of Miami School of Law where he served as Associate Editor of Inter-American Law Review. Mr. Weinberger is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

Ximena Skorvon is a 2003 graduate of the University of Miami School of Law where she served as Editor in Chief of the International and Comparative Law Review. Ms. Skorvon is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE CREDITRUST CORPORATION
SECURITIES LITIGATION,

                        Defendant.

)
)
)
)
)

CIVIL ACTION NO. MJG 00 CV 2174
CONSOLIDATED

AFFIDAVIT OF LYNN L. SARKO
IN SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF KELLER ROHRBACK L.L.P.

STATE OF WASHINGTON     :
                                  :
COUNTY OF KING            :

I, Lynn L. Sarko, being duly sworn, depose and say:

1.    I am a member of the firm of Keller Rohrback L.L.P. I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.    The chart attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by the attorneys, law clerks and paralegals of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates. The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate and a breakdown of the hours expended by each attorney. The same information is provided for laws clerks and paralegals on a collective basis. The chart was prepared from contemporaneous, daily

1

time records regularly prepared and maintained by my firm which are available for submission to the Court at its request. Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

3.    As counsel for plaintiffs, the attorneys of my firm conducted extensive investigation of the allegations in the complaint; communicated with clients and class members through phone, email, and maintenance of an informational website; conferred with lead counsel on case strategy; drafted pleadings, together with co-counsel, including responses to the motion to dismiss, class certification motions, and appellate briefs; participated in status conferences and court hearings; and assisted lead counsel with discovery matters.

4.    With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.    The total number of hours spent on this litigation by my firm from the inception of the case through, April 5, 2005, is 203.4 hours. The total lodestar amount for attorney, law clerk and paralegal time based on the firm's current rates is $76,587.40. The hourly rates set out in the chart as Exhibit A are the same rates which Keller Rohrback L.L.P. charges its hourly clients paying for its services on a monthly basis.

6.    My firm expended a total of $4,388.38 in unreimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| Category | Amount |
|---|---|
| Telephone/Facsimile | $    38.37 |
| Postage/Express Delivery | $   136.54 |
| Class Notice | $1,160.00 |
| Internal Copies | $1,230.20 |
| Court Fees | $   150.00 |
| Computer Research | $1,672.77 |
| **TOTAL** | $4,388.38 |

2

7.     The expenses incurred pertaining to this case are reflected on the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

_____
Lynn Lincoln Sarko, WSBA #16569
Attorneys for Plaintiff

SUBSCRIBED AND SWORN
before me this 11ᵗʰ day of April, 2005.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nina L. Fischer, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Apr. 2, 2009
Member, Pennsylvania Association of Notaries

3

A

IN RE CREDITRUST SECURITIES LITIGATION

KELLER ROHRBACK LLP - FEES

| NAME OF LAWYER OR PARALEGAL | HOURS | RATE | CURRENT LODESTAR |
|---|---|---|---|
| Juli Farris Desper | 11.40 | $ 525.00 | $ 5,985.00 |
| Scott Henderson | 0.30 | $ 315.00 | $ 94.50 |
| Beth Leland | 67.00 | $ 525.00 | $ 35,175.00 |
| Lorraine Lewis Phillips | 0.70 | $ 315.00 | $ 220.50 |
| Lynn Lincoln Sarko | 7.80 | $ 616.00 | $ 4,804.80 |
| Brian Schiewe | 7.90 | $ 184.00 | $ 1,453.60 |
| Linda Swan | 1.00 | $ 210.00 | $ 210.00 |
| Britt L Tinglum | 19.40 | $ 525.00 | $ 10,185.00 |
| Jennifer Tuato'o | 22.00 | $ 210.00 | $ 4,620.00 |
| Jen Veitengruber | 65.90 | $ 210.00 | $ 13,839.00 |
| | | | |
| TOTALS | 203.40 | | $ 76,587.40 |

**B**

# KELLER·ROHRBACK L.L.P.

Suite 3200
1201 Third Avenue
Seattle, Washington 98101-3052
(206) 623-1900
Fax (206) 623-3384
www.erisafraud.com
www.seattleclassaction.com

## COMPLEX LITIGATION GROUP

For more than 75 years, KELLER ROHRBACK L.L.P. has provided quality legal services to clients. One of the firm's dynamic practice areas is the Complex Litigation Group.

The Complex Litigation Group regularly pursues plaintiffs' securities and accounting fraud, breach of fiduciary duty, antitrust, product liability and environmental litigation on a nationwide basis. We understand the legal, strategic, and practical intricacies of direct and class action cases, and the added dimension that is presented in multiple-defendant and/or multiple-jurisdiction settings. This enables us to provide quality representation for our clients at every stage of litigation, including class certification, discovery, motion practice, settlement, trial and appeal.

Founded in 1919, today Keller Rohrback L.L.P. has 58 attorneys and 90 staff members that provide expert legal services to clients nationwide. We use cutting-edge technology and case management techniques in the preparation and trial of complex cases. Our excellent support staff includes in-house programming personnel and experienced paralegals who contribute significantly to our ability to effectively and efficiently litigate complex class action cases nationwide. The firm's Complex Litigation Group regularly calls on firm attorneys in other practice areas for expertise in bankruptcy, contracts, employment law, executive compensation, corporate transactions, financial institutions, insurance coverage, mergers and acquisitions, professional malpractice, and securities transactions. The firm's in-house access to these resources distinguishes Keller Rohrback from other plaintiffs' class action firms and also contributes to the firm's success.

Keller Rohrback L.L.P.'s Complex Litigation Group is headed by the firm's managing partner, Lynn Lincoln Sarko. Mr. Sarko is a former Assistant United States Attorney and for two decades, has been prosecuting a wide range of cases including mass torts, product liability, employment discrimination, and securities fraud. In addition to his law degree, Mr. Sarko holds an M.B.A. in Accounting and Finance which has enabled him to effectively litigate complex class actions involving breach of fiduciary duty and accounting fraud, including accounting and ERISA actions involving several of the nation's largest accounting and investment firms.

## Representative Securities Fraud Cases

IKON Securities Litigation, No. 98 CV-5483 (E.D. Pa.). Keller Rohrback L.L.P. served as co-lead counsel representing the City of Philadelphia and eight other lead plaintiffs. Class Counsel achieved the highest securities fraud settlement in the history of the Court by settling with defendant IKON Office Solutions, Inc. for $111 million.

Getty v. Harmon, et al., No. C98-0178 (W.D. Wash.). This securities class action was brought on behalf of all people who purchased unregistered securities from defendants. The suit was settled in favor of the plaintiffs in the amount of $7 million.

In re 2TheMart.Com Inc. Securities Litigation, No. 99-1127 DOC (ANx) (S.D. Cal.). Keller Rohrback L.L.P. was appointed co-lead counsel in this securities fraud class action and achieved a settlement of $2.7 million.

Lasky v. Brown (United Companies Securities Litigation), No. CV99-1035-B-M2 (M.D. La.). Keller Rohrback L.L.P. served as co-lead counsel in this securities fraud class action, and secured a $20.5 million settlement in this case.

In re WorldPort Communications, Inc., No. 1-99-CV-1817 (N.D. Ga.). Keller Rohrback L.L.P. played an active role in the prosecution of this securities fraud class action and secured settlements totaling $5,100,000.

In re Anicom Inc. Securities Litigation, No. 00 C 4391 (N.D. Ill.). Keller Rohrback L.L.P. was one of three counsel representing the State of Wisconsin Investment Board in this securities fraud class action. Counsel achieved settlements on behalf of the class and other parties in excess of $39 million.

In re Amedisys Securities Litigation, No. 01-703 (M.D. La.).

In re Boston Chicken, Inc. Securities Litigation, No. 97-WM-1308 (D. Colo.).

In re Scientific-Atlanta, Inc. Securities Litigation, No. 1:01-CV-1950-RWS (N.D. Ga.).

## Representative ERISA 401(k) Cases

Keller Rohrback L.L.P. pioneered the development of ERISA breach of fiduciary duty law and is the nationally recognized leader in this specialized area. From the first ever reported 401(k) company stock breach of fiduciary duty case, *Whetman v. IKON Office Solutions, Inc.*, No. MDL 1318 (E.D. Pa.), Keller Rohrback attorneys have successfully guided clients through the exceptionally complex ERISA field. Indeed, since *Whetman v. IKON Office Solutions, Inc.*, Keller Rohrback has continued to act as a trailblazer in this specialized area by serving as lead or co-lead counsel in numerous ERISA breach of fiduciary duty cases -- including the seminal cases listed below -- and first developing the claims now routinely alleged in other complaints including: (1) failure to prudently and loyally manage the plan and plan assets; (2) failure to provide complete and accurate information regarding company stock to Plan participants; and
(3) failure to prudently monitor Plan fiduciaries.

### *Sample Seminal Cases*

Whetman v. IKON Office Solutions, Inc., No. MDL 1318 (E.D. Pa.)(Also cited as "*In re IKON Office Solutions, Inc. Securities Litigation.*"). The current wave of 401(k) company stock cases began with *Whetman v. IKON Office Solutions, Inc.*, No. 2-98-CV-89 (D. Utah). This case was, to our knowledge, the first that asserted claims of breach of fiduciary duty under ERISA in connection with the investment of a 401(k) plan in company stock. We alleged, among other things, that company

stock was an imprudent investment for the plan, that the fiduciaries of the plan failed to provide complete and accurate information concerning company stock to the participants, and that they failed to address their conflicts of interest. The case was fully discovered and settled only when summary judgment motions were pending. This case resulted in ground-breaking opinions in the ERISA 401(k) area of law on motions to dismiss, *Whetman v. IKON Office Solutions, Inc.*, 86 F. Supp. 2d 481 (E.D. Pa. 2000); class certification, *Whetman v. IKON Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000); approval of securities settlements with a carve-out for ERISA claims, *In re IKON Office Solutions Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000); and approval of ERISA settlements, *Whetman v. IKON Office Solutions, Inc.*, 209 F.R.D. 94 (E.D. Pa. 2002).

In re Lucent Technologies, Inc. ERISA Litigation, No. 01-CV-3491 (D.N.J.). Keller Rohrback L.L.P. was appointed co-lead counsel in this class action – one of the first of its kind --brought on behalf of participants and beneficiaries of the Lucent defined contribution plans that invested in Lucent stock. The complaint alleged that the defendants withheld and concealed material information from participants, thereby encouraging participants and beneficiaries to continue to make and to maintain substantial investments in Company stock and the Plans. The Lucent ERISA Litigation settlement provided for, among other relief, the payment of $69 million in cash and stock to the Plan. Judge Joel Pisano approved the settlement on December 12, 2003.

In re Enron Corp. ERISA Litigation, No. H 01-CV-3913 (S.D. Tex.). Keller Rohrback L.L.P. serves as co-lead counsel in this class action filed in the Southern District of Texas on behalf of participants and beneficiaries of the Enron Corporation Savings Plan, a 401(k) plan and ESOP plan. On September 30, 2003, Judge Melinda Harmon denied defendants' numerous motions to dismiss in a landmark decision that, *inter alia*, included a *de facto* method of determining whether a person or entity is a fiduciary, addressed in detail defendants' obligations as ERISA fiduciaries, and upheld plaintiffs' core ERISA claims. *See Tittle v. Enron Corp.*, 284 F. Supp. 2d 511 (S.D. Tex 2003). Plaintiffs reached a partial settlement providing $85 million in cash to the Plan, which was preliminarily approved on May 31, 2004.

In re WorldCom, Inc. ERISA Litigation, No. 02 Civ. 4816 (DLC) (S.D.N.Y.). Keller Rohrback L.L.P. serves as lead counsel in this class action filed in the Southern District of New York on behalf of all persons who were participants in or beneficiaries of the WorldCom 401(k) Salary Savings Plan. On June 17, 2003, Judge Denise Cote denied in part defendants' motions to dismiss. *See In re WorldCom ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003). Plaintiffs recently obtained a partial settlement in the *WorldCom, Inc. ERISA Litigation* providing, among other relief, payment of $47.15 to the Plan. The court adopted and gave final approval to the Settlement Agreement on October 26, 2004.

*Successfully Resolved ERISA Cases*

In re Global Crossing, Ltd. ERISA Litigation, 02 Civ. 7453 (GEL) (S.D.N.Y.). The *Global Crossing ERISA Litigation* settlement provided for, among other relief, the payment of $79 million to the Plan. Judge Gerald Lynch preliminarily approved the settlement on March 19, 2003.

In re Providian ERISA Litigation, No. C-01-5027-CRB (N.D. Cal.). The Providian ERISA Litigation settlement provided for, among other relief, the payment of $8.6 million in cash to the Plan. The court approved the settlement on June 30, 2003.

In re Dynegy, Inc. ERISA Litigation, No. H-02-3076 (S.D. Tex.). On March 5, 2004, the court issued

an opinion denying, in part, defendants' motions to dismiss. *See In re Dynegy ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004). On October 29, 2004, Judge Sim Lake preliminarily approved a settlement of $30.75 million in cash to the Plan.

In re Household International, Inc., ERISA Litigation, No. 02 C 7921 (N.D. Ill.). On March 31, 2004, Judge Samuel Der-Yeghiayan issued an opinion denying, in part, defendants' motions to dismiss. *See Cokenour v. Household Int'l Inc.,* No. 02-7921, 2004 WL 725973 (N.D. Ill. Mar. 31, 2004). The case subsequently settled for $46.5 million in cash to the Plan. The court approved the settlement on November 22, 2004.

### *Pending ERISA Cases*

Zafarano, Jr., et al. v. Nortel Networks, No. 3:01-1593 (M.D. Tenn.).

In re Xerox ERISA Litigation, No. 02-CV-1138 (AWT) (D. Conn.).

In re Williams Companies ERISA Litigation, No. 02-CV-153-H (M) (N.D. Okla.). On July 14, 2003, Judge Sven Holmes issued an opinion denying, in part, defendants' motions to dismiss. *See In re Williams Companies ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003).

In re Electronic Data Systems Corp. Securities and "ERISA" Litigation, No. MDL-1512 (E.D. Tex.). Judge Leonard Davis issued an opinion on February 2, 2004, denying defendants' motions to dismiss. *See In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658 (E.D. Tex. 2004).

In re CMS Energy ERISA Litigation, No. 02-72834 (E.D. Mich.). Judge George Steeh issued an opinion on March 31, 2004, denying defendants' motions to dismiss. *See In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004).

In re BellSouth Corporation ERISA Litigation, No. 02CV2440 (N.D. Ga.). Judge Forrester issued an opinion on March 30, 2004, denying defendants' motion to dismiss. See *Hill v. BellSouth Corp.,* 313 F. Supp. 2d 1361.

In re CIGNA Corp. ERISA Litigation, No. 03-CV-714 (E.D. Pa.).

In re Syncor ERISA Litigation, No. 03 CV 2446 (LGB) (C.D. Cal.). On August 23, 2004, Judge Lourdes Baird issued an opinion denying, in part, defendants' motions to dismiss. *See In re Syncor ERISA Litig.*, No. 03 CV 2446 (LGB) (C.D. Cal. Aug. 23, 2004).

In re HealthSouth ERISA Litigation, No. CV-03-BE-1700-S (N.D. Ala.).

In re Goodyear Tire & Rubber Company ERISA Litigation, No. 5:03CV02180 (N.D. Ohio).

Marvin Overby, et al. v. Tyco International Ltd., et al., No. 02-CV-1357-B (D.N.H.).

In re Polaroid ERISA Litigation, No. 03-CV-8335 (S.D.N.Y.).

In re Mirant Corporation ERISA Litigation, No. 1:03-CV-1027 (N.D. Ga.).

**Other Representative Cases**

In re The Exxon Valdez, No. A89-095 (D. Alaska). Keller Rohrback L.L.P. represents fishermen, Alaska natives, municipalities, and other injured plaintiffs in this mass tort lawsuit arising out of the March 24, 1989, oil spill in Prince William Sound, Alaska. After a three-month jury trial, plaintiffs obtained $5 billion in punitive damages – the largest punitive damages verdict in U.S. history. Keller Rohrback L.L.P. played a leadership role during discovery and at trial, and was chosen to serve as Administrator of both the Alyeska and Exxon Qualified Settlement Funds. Litigation, including an appeal, continues.

In re Phillip Morris Securities Litigation, No. 94 Civ. 1494 (TCP) (E.D.N.Y.). This shareholder derivative class action alleged misrepresentations regarding various inventory and trade loading practices used to distort the timing of sales. The plaintiff class in this and a related case received in excess of $100 million in settlement.

In re Carpet Antitrust Litigation, No. 1:95-CV-1494 (N.D. Ga.). This antitrust class action alleged a nationwide price-fixing conspiracy among the manufacturers and sellers of polypropylene carpet and was brought on behalf of purchasers of such carpet. Plaintiffs negotiated a successful settlement.

In re Commercial Tissue Products Antitrust Litigation, MDL Docket No. 97 MDL 1189 (N.D. Fla.). This antitrust case involved allegations of a nationwide price-fixing conspiracy among the major manufacturers of facial tissue, toilet paper, paper towels, and related paper products used in "away from home" settings, such as office buildings, hotels, restaurants, and schools. Parties entered into a settlement agreement valued at $56.2 million in cash and coupons.

In re First USA Bank, No. C97-1482D 9 (W.D. Wash.). This class action was filed on behalf of owners of credit cards issued by First USA Bank who signed up for "introductory rate" credit cards that were subject to false and deceptive "repricing." A settlement in this class action resulted in an automatic depricing benefit of over $50 million, plus over $36 million in benefits from other settlement-related offers.

Salloway v. Malt-O-Meal Company, No. PI-98-008931 (State of Minnesota, Hennepin County District Court). This nationwide product liability class action wa6b b6 b6s brought on behalf of all people who consumed defendant's salmonella-contaminated cereal. Plaintiffs negotiated a successful settlement.

In Re Microsoft Corp. Antitrust Litigation, MDL 1332 (D. of Maryland). Keller Rohrback served on the Executive Committee of plaintiffs' counsel in this class action challenging Microsoft's monopolistic practices. A class of direct purchasers of operating system software achieved a settlement of $10.5 million in the United States District Court for the District of Maryland.

Ferko, et al v. NASCAR, No. 4:02-CV-50 (E.D. Tx). Keller Rohrback was counsel for plaintiff in a lawsuit that charged NASCAR with breach of contract and unlawful monopolization. The suit also claims that NASCAR and another defendant, International Speedway Corporation ("ISC"), have engaged in a conspiracy to restrain trade in violation of the antitrust laws. Keller Rohrback represented the shareholders of Speedway Motorsports, Inc. ("SMI"), a publicly traded company that owns six motorsports facilities, including Texas Motor Speedway ("TMS"). The plaintiffs allege that NASCAR breached a promise to award a second annual Nextel Cup race date to Texas Motor Speedway. They also allege that NASCAR unlawfully maintains a monopoly and has conspired with

ISC in the allocation of new Nextel Cup race dates to motorsports facilities. Specifically, NASCAR has awarded the last three new Nextel Cup dates to speedways in which ISC owns an interest, to the exclusion of superior non-ISC tracks. In May 2004, the parties announced that they had reached a settlement agreement, pursuant to which SMI would purchase North Carolina Speedway, located in Rockingham, North Carolina ("Rockingham"), from ISC for $100.4 million. NASCAR would then sanction the Nextel Cup Series race previously hosted by Rockingham at TMS in the 2005 season. Therefore, TMS would host two Nextel Cup Series races in 2005: on April 17, 2005 and again on November 6, 2005. The settlement was approved by the United States District Court for the Eastern District of Texas.

In Re Linerboard Antitrust Litigation, MDL Docket No. 1261 (E.D. Pa). The class actions in this litigation recently were resolved with the recovery of more than $202 million for the benefit of a class of businesses that purchased corrugated boxes and sheets. The combined settlements are the largest ever obtained in a price fixing class action in the Eastern District of Pennsylvania and among the largest obtained in such a case nationally.

Wholesale Vitamins Price Fixing, Case No. 00-631-CIV (S.D. Fla.). Keller Rohrback played an extensive role in trial preparation in this case, one of the largest and most successful antitrust cases in history. Chief Judge Thomas Hogan of the United States District Court for the District of Columbia certified two classes of businesses who directly purchased bulk vitamins were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Through settlement and verdict, recoveries were achieved, including four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion.

In Re Monosodium Glutamate Antitrust Litigation, MDL No. 00-1328 (D. Md.). Keller Rohrback represents the Plaintiff Class in this case pending in the United States District Court for the District of Minnesota. So far, $124 million has been recovered for the benefit of a class of businesses which purchased food flavor enhancers from suppliers in the U.S., Japan, Korea, and Taiwan. Businesses which participated in the recovery received nearly 200% of the amounts they were overcharged.

In Re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation, MDL 1203 (E.D. Pa.). These cases involve numerous plaintiffs in Washington and other states who seek medical monitoring and/or personal injury compensation in relation to their ingestion of the prescription diet drugs Pondimin and Phentermine (i.e. Fen-Phen) or Redux. Keller Rohrback L.L.P. serves as Class Counsel for a certified medical monitoring class of Washington patients who ingested these diet drugs. In addition, the federal court Judge in Philadelphia who supervised the national settlement and litigation appointed Lynn Lincoln Sarko, Keller Rohrback L.L.P.'s managing partner, to serve as a member of the MDL 1203 Plaintiffs' State Liaison Counsel Committee. Keller Rohrback L.L.P. has represented, and continues to represent numerous plaintiffs in pursuing individual personal injury claims through the American Home Products' Nationwide Class Action Diet Drug Settlement or through individual lawsuits brought in state or federal courts.

Erickson, et al. v. Bartell Drug Co., No. C00-1213L (W.D. Wash.). This landmark case, won on summary judgment, established that a private employer excluding prescription contraception services from an otherwise extensive health insurance plan commits discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

**Other Cases In Which Keller Rohrback L.L.P. Has Served In Leadership Positions**

In re Calozza Litigation, No. C94-1566Z (W.D. Wash.). This class action was brought on behalf of Sons of Norway members who were sold fraudulent securities by a Sons of Norway salesman. This case settled for an amount in excess of $4.2 million.

In re Commercial Explosives Antitrust Litigation, No. 2:96MD1093S (D. Utah). This antitrust class action alleged price fixing in the commercial explosives industry throughout the nation. A settlement in excess of $73 million has been reached.

In re Jack-In-The-Box E. coli Litigation, No. 93-2-05171-9 (State of Washington, King County Superior Court). This litigation involved class action and direct action cases on behalf of persons claiming injury as a proximate result of the consumption of food products sold by defendant which contained the E. coli 0157:H7 bacteria in five Western States. Damage claims included individuals with hemolytic uremic syndrome. Class counsel successfully negotiated a Medical Monitoring and Treatment Trust for the benefit of the class. In addition to the benefits of this Trust, total settlements achieved through this litigation amounted to over $13 million.

K-S Pharmacies v. American Home Products, Inc., No. 94 CV 2384 (State of Wisconsin, Dane County Circuit Court). This case was brought on behalf of over 500 independent pharmacies in the state of Wisconsin alleging price discrimination in the sale of brand-name prescription drugs. The case was settled for over $5 million.

In re Louisiana-Pacific, No. C95-5571FDB (W.D. Wash.). This case involved a series of direct actions brought against LP for siding that deteriorated shortly after installation in homes throughout the Pacific Northwest. Settlements for the plaintiffs have totaled over $25 million.

In re Rozema v. Marshfield Clinic, No. 96-C-592-C (W.D. Wis.). This consumer class action alleged illegal market divisions between medical clinics, hospitals and Health Maintenance Organizations (HMO's) in North Central Wisconsin. Plaintiffs' counsel achieved a settlement totaling $4,650,000.

## Biographical Profiles of Complex Litigation Lawyers
## at Keller Rohrback L.L.P.

### LYNN LINCOLN SARKO

Lynn Sarko is the Managing Partner of Keller Rohrback L.L.P. and the head of the firm's Complex Litigation Group. Mr. Sarko is a former Assistant U.S. Attorney and has been actively engaged in the prosecution of complex litigation for two decades. With a master's degree in accounting, Mr. Sarko's practice has focused on litigating complex class actions involving accounting fraud, including actions against several of the big five accounting firms in the United States. Mr. Sarko has also litigated breach of fiduciary duty cases under ERISA, and currently serves in leadership positions in several ERISA breach of fiduciary duty cases, including the Enron ERISA Litigation, WorldCom ERISA Litigation, and Global Crossing ERISA Litigation.

Mr. Sarko earned his M.B.A. in Accounting and Finance at the University of Wisconsin Graduate School of Business. He later graduated from the University of Wisconsin Law School where he served as Editor-in-chief of the *Wisconsin Law Review* and was a member of the Order of the Coif. Thereafter, he served as law clerk to the Honorable J. Jerome Farris of the United States Court of Appeals for the Ninth Circuit, as an associate with the Washington D.C. firm of Arnold & Porter, and later as an Assistant United States Attorney for the District of Columbia. While in government service, Mr. Sarko served as the lead trial attorney in numerous criminal trials. He has served in various leadership positions on committees of the District of Columbia, Washington State, and American Bar Associations and is a member of the Section of Labor & Employment Law and the Employee Benefits Committee as a Plaintiff Attorney. Mr. Sarko currently serves as Administrator of the Alyeska and Exxon Valdez Oil Spill Litigation settlement funds. Mr. Sarko has been identified as a Super Lawyer by Washington Law & Politics for the last six years, and was named Trial Lawyer of the Year by Trial Lawyers for Public Justice.

Mr. Sarko is a member of the Bar in Washington State, Wisconsin, and the District of Columbia. He is also admitted to practice in the United States Supreme Court, the United States Courts of Appeal for the First, Fourth, Fifth, Seventh, Ninth, Tenth, and the District of Columbia Circuits, and the United States District Courts for the Eastern and Western Districts of Washington and Wisconsin, the District of Columbia, and the District of Colorado.

### RON KILGARD

Ron Kilgard is of member of Keller Rohrback, P.L.C., based in Phoenix, Arizona. Mr. Kilgard is a Phoenix native. He received an undergraduate degree from Harvard College and a Master's degree from Harvard Divinity School, concentrating in Hebrew Bible and other ancient Near Eastern languages and literatures (Babylonian-Assyrian, Egyptian, etc.), before returning home to Arizona for law school. Mr. Kilgard graduated from Arizona State in 1979 as the editor-in-chief of the law review and was selected by faculty as the outstanding graduate of his class. Upon earning his law degree, Mr. Kilgard clerked for the Hon. Mary Schroeder on the Ninth Circuit Court of Appeals before entering private practice. In over twenty years of practice, Mr. Kilgard has litigated a broad array of commercial and personal injury/wrongful death cases for both plaintiffs and defendants, including construction cases for Bechtel Corporation, personal injury/wrongful death cases involving AIDS-tainted blood, insurance bad faith cases, and insurance receivership cases. Mr. Kilgard is asked by courts to serve as a special master in complex or contentious cases requiring individualized

management. In recent years he has been extensively involved in litigating ERISA breach of fiduciary duty class action cases, especially those involving issues of company stock. Mr. Kilgard is a frequent speaker at seminars, both for lawyers and judges.

Most notable among the many cases he has litigated is the <u>Whetman v. IKON Office Solutions, Inc. ERISA Litigation</u>, MDL No. 1318 (E.D. Pa.), in which Mr. Kilgard served as one of the lead attorneys. The <u>IKON ERISA Litigation</u> was one of the leading ERISA 401(k) breach of fiduciary duty class actions in the country, providing landmark published decisions on class certification and other central issues pertaining to ERISA 401(k) breach of fiduciary duty class action litigation. The ERISA issues in the <u>IKON Securities Litigation</u>, which were actively litigated for more than three years in the United States District Court for the Eastern District of Pennsylvania, were fundamentally the same as those presented in subsequent ERISA 401(k) litigation against IKON, involving the alleged imprudence of investments in employer securities in the same company's 401(k) plan and materially misleading communications with plan participants related thereto. Mr. Kilgard currently serves in leadership positions in the <u>Enron ERISA Litigation</u> and <u>BellSouth ERISA Litigation</u>. In addition to his ERISA 401(k) class action expertise, Mr. Kilgard has expertise in complex Chapter 11 bankruptcy litigation and issues, which has proved invaluable in ERISA cases in which defendants also are debtors in bankruptcy. Mr. Kilgard is of counsel at Keller Rohrback L.L.P.

<u>GARY GOTTO</u>

Gary Gotto is a member of Keller Rohrback, P.L.C., based in Phoenix, Arizona. Mr. Gotto earned his B.A. from the University of Pennsylvania *cum laude* and received his J.D. from Arizona State University *summa cum laude*, where he was a member of the Order of the Coif. and the Special Projects Editor of the *Arizona State Law Journal* from 1981-1982.

Mr. Gotto has practiced in Phoenix since 1982. He has a broad range of practice experience and interests, including all aspects of corporate and real estate transactional work, securities issuance and compliance, Chapter 11 bankruptcy and workout matters, and general commercial and ERISA litigation. He chaired the Arizona State Bar Subcommittee on Revising the Limited Partnership Act and co-authored *Arizona Legal Forms: Limited Liability Companies and Partnerships*. Mr. Gotto speaks and teaches regularly on a number of topics, including an annual real estate bankruptcy case study presented at Harvard Law School.

Mr. Gotto also occupied a leadership and management position in the litigation of ERISA claims in the <u>Whetman v. IKON Office Solutions, Inc.</u> securities and ERISA litigation. Mr. Gotto currently serves in leadership positions in the <u>Enron ERISA Litigation</u>, <u>CMS Energy Corp. ERISA Litigation</u>, <u>Dynegy ERISA Litigation</u>, <u>Global Crossing ERISA Litigation</u>, and the <u>WorldCom ERISA Litigation</u>. In addition to his ERISA 401(k) class action expertise, Mr. Gotto has expertise in complex Chapter 11 bankruptcy litigation and issues, which has proved invaluable in cases in which defendants in ERISA 401(k) litigation are also debtors in bankruptcy, including the <u>Enron ERISA Litigation</u>, <u>WorldCom ERISA Litigation</u>, and <u>Global Crossing, Ltd. ERISA Litigation</u>. Mr. Gotto is of counsel at Keller Rohrback L.L.P.

<u>BRITT L. TINGLUM</u>

Britt Tinglum is a partner at Keller Rohrback L.L.P. and received both her undergraduate and J.D. from the University of Wisconsin. She is actively engaged in the prosecution of complex class actions, including antitrust and consumer fraud, as well as ERISA breach of fiduciary duty litigation

and accounting fraud. Ms. Tinglum has held a leadership role in several nation-wide class actions, including In re Ikon Office Solutions, Inc. and Lucent Technologies, Inc. ERISA Litigation, in which her firm was appointed Co-Lead Counsel.

## LAURIE ASHTON

Ms. Ashton is a member of Keller Rohrback, P.L.C., based in Phoenix, Arizona. Ms. Ashton is originally from California and has lived in Phoenix for over 15 years. Ms. Ashton graduated from Arizona State University College of Law in 1990, where she has twice returned as an Adjunct Professor to teach semester courses in Lawyering Theory and Practice and Advanced Chapter 11. She served as law clerk for the Honorable Charles G. Case, U.S. Bankruptcy Court, for the District of Arizona for two years. Ms. Ashton's practice emphasizes bankruptcy, commercial, ERISA, and environmental litigation. She has been very active in the Arizona State Bar, having served on the Ethics Committee for six years, and frequently teaches and lectures on bankruptcy issues and other matters. She is the co-author of *Arizona Legal Forms: Limited Liability Companies and Partnerships*, 1996-2002. Ms. Ashton is admitted to practice in Arizona and Colorado. Ms. Ashton has taught semester courses in Advanced Chapter 11 Bankruptcy and Lawyering Theory and Practice at the ASU College of Law, and for several years running, has been a guest lecturer on Chapter 11 at Harvard Law School.

Ms. Ashton currently serves in a leadership positions in the Xerox Corporation ERISA Litigation, Household International, Inc. ERISA Litigation, and the Williams Companies ERISA Litigation. In addition to her ERISA 401(k) and ESOP class action expertise, Ms. Ashton has expertise in complex Chapter 11 bankruptcy cases and issues. As with Messrs. Kilgard, and Gotto, Ms. Ashton's bankruptcy expertise has proved invaluable in ERISA breach of fiduciary duty class actions in which some defendants are also debtors in bankruptcy, including the Enron ERISA Litigation. Ms. Ashton is of counsel at Keller Rohrback, L.L.P.

## JOHN H. BRIGHT

John Bright earned his B.A. and his L.L.B. degrees at the University of Washington, where he was a member of the *Washington Law Review*. He served as Counsel to the Governor of Washington State, the Honorable Daniel J. Evans from 1972-1973 and was Chief of the Consumer Protection and Antitrust Division of the Washington State Attorney General's Office from 1973-1977. At the Antitrust Division, he participated in many significant consumer and business cases. He is a member of the Washington State Bar and regularly represents governmental and private entities in complex civil actions.

## T. DAVID COPLEY

T. David Copley earned his B.A. at the University of Iowa in 1981, taking his degree with Distinction and Honors in political science and English and as a member of Phi Beta Kappa. He graduated from Northwestern University School of Law in 1984, where he served as an editor of the *Northwestern University Law Review*. Before joining Keller Rohrback L.L.P., Mr. Copley practiced law at the Phoenix firm of Brown & Bain. Mr. Copley is admitted to practice in the states of Washington and Arizona, in the United States District Courts of Western Washington, Eastern Washington, Arizona, the Northern District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

## JULI F. DESPER

Juli Desper received her B.A. in English and her J.D. from Stanford University, where she was a Note Editor of the *Stanford Law Review*. After receiving her J.D. in 1987, Ms. Desper completed a one-year clerkship with Judge E. Grady Jolly on the Fifth Circuit Court of Appeals in Jackson, Mississippi. Before joining Keller Rohrback L.L.P. in 1991, Ms. Desper practiced law at the Washington, D.C. office of Sidley & Austin. She is admitted to practice in the states of Washington and California and the District of Columbia. Ms. Desper's practice focuses on securities fraud, breach of fiduciary duty, and antitrust litigation in state and federal courts.

## MARK A. GRIFFIN

Mark Griffin earned his B.S. degree *magna cum laude* from Marquette University where he received the Economics Faculty Award. He is a member of Beta Gamma Sigma and Alpha Sigma Nu. He graduated from Gonzaga University as a Thomas More scholar where he received his law degree *magna cum laude*. Mr. Griffin completed a clerkship with United States Magistrate Philip K. Sweigert of the Western District of Washington. Mr. Griffin is admitted to practice in Washington State, the United States Supreme Court, the United States Court of Appeals for the Ninth Circuit, and the United States District Courts of Washington. He has served in leadership positions on committees of the Washington State and King County Bar Associations.

## MICHAEL D. WOERNER

Michael Woerner earned his B.S. from the University of Puget Sound and his J.D. from the University of Notre Dame, where he was a member of the *Journal of Legislation* Law Review. Mr. Woerner was a member of the litigation team that received the Trial Lawyers for Public Justice's 1995 Trial Lawyer of the Year Award for his work in the In re Exxon Valdez. He is admitted to practice in Washington State, the United States District Courts of Washington, and the United States Court of Appeals for the Ninth Circuit.

## MARGARET E. WETHERALD

Margie Wetherald is a partner of Keller Rohrback L.L.P. and serves on the firm's executive committee. She received her undergraduate degree from Mount Holyoke College *cum laude* in 1980 and as a member of Phi Bet Kappa. She graduated from Cornell Law School in 1983. Ms. Wetherald taught at the Columbus School of Law at Catholic University in Washington, D.C. from 1983 to 1985. She has practiced in Seattle since 1985 with two years in Washington, D.C. from 1992–1994. Throughout her practice, Margie has handled complex litigation in multiple state and federal jurisdictions with a concentration on commercial insurance coverage disputes. Margie has handled mass tort litigation involving transmission of AIDS to hemophiliacs through blood products, exposure to contaminated groundwater and hepatitis. She is admitted to practice in the United States Supreme Court, the United States Court of Appeals for the Ninth Circuit, the United States District Courts for Eastern and Western Washington and in the State Courts in Washington and Oregon.

## DEREK W. LOESER

Derek Loeser received his B.A. in American Literature from Middlebury College in 1989, graduating *summa cum laude*, with highest departmental honors, and as a member of Phi Beta Kappa. He earned his J.D. in 1994 with honors from the University of Washington School of Law. Following law school, Mr. Loeser was a trial attorney in the Employment Litigation Section of the Civil Rights

Division of the United States Department of Justice in Washington, D.C. He also clerked for the Hon. Michael R. Hogan, United States District Court, District of Oregon. Mr. Loeser is admitted to practice in Washington, the United States District Courts for the Western and Eastern Districts of Washington, the Ninth Circuit Court of Appeals, and is a member of American Bar Association's Section of Labor & Employment Law and the Employee Benefits Committee as a Plaintiff Attorney. Mr. Loeser practices in the firm's class action litigation group with an emphasis on ERISA and breach of fiduciary duty litigation. He is actively involved in, among other cases, the <u>Enron ERISA Litigation</u>, <u>WorldCom ERISA Litigation</u>, <u>Global Crossing ERISA Litigation</u>, and <u>CIGNA ERISA Litigation</u>, and has a leadership role in the <u>CMS Energy Corp. ERISA Litigation</u>, and the <u>HealthSouth Corp. ERISA Litigation</u>.

### ELIZABETH A. LELAND

Beth Leland earned her B.A. in Business Administration with concentrations in Finance and Business Economics from the University of Washington. She graduated *cum laude* from the University of Puget Sound School of Law in 1993. Before joining Keller Rohrback L.L.P. in 1998, Ms. Leland spent several years in general civil practice in the Seattle area. Her current practice focuses on ERISA, securities fraud, and antitrust litigation. She is actively involved in, among other cases, the <u>Dynegy, Inc. ERISA Litigation</u>, <u>Syncor ERISA Litigation</u>, <u>BellSouth Corporation ERISA Litigation</u>, <u>Electronic Data Systems Corp. ERISA Litigation</u> and the <u>CIGNA Corp. ERISA Litigation</u>. Admitted to practice in Washington State and Federal Courts, as well as the Ninth and other Circuits across the country, Ms. Leland is also an active member of the King County, Washington State, and American Bar Associations, including the American Bar Association's Section of Labor & Employment Law.

### ERIN M. RILEY

Erin Riley received her B.A. in French and History from Gonzaga University, where she graduated *cum laude* in 1992. Ms. Riley graduated *cum laude* from the University of Wisconsin School of Law in 2000, where she was a managing editor of the *Wisconsin Law Review*. Ms. Riley is licensed to practice in both Washington and Wisconsin, and is a member of the American Bar Association's Section of Labor & Employment Law and the Employee Benefits Committee as a Plaintiff Attorney. Her practice focuses on ERISA and breach of fiduciary duty litigation.

### GRETCHEN FREEMAN CAPPIO

Gretchen Freeman Cappio earned her B.A. degree *magna cum laude* from Dartmouth College, where she graduated with honors in Religion. She is a member of Phi Beta Kappa. Ms. Cappio graduated from the University of Washington School of Law in 1999 where she served as the Executive Comments Editor of *The Pacific Rim Law & Policy Journal*. Licensed to practice in Washington State, Ms. Cappio is an active member of the Washington State Bar Association. Her practice focuses on ERISA and breach of fiduciary duty litigation.

### AMY N. L. HANSON

Amy Hanson earned her B.A. in Economics and Political Science from the University of Minnesota and her J.D. from the University of Wisconsin. Ms. Hanson's practice emphasizes product liability, antitrust, and consumer litigation. Ms. Hanson is licensed to practice in the states of Washington and Wisconsin.

## RAYMOND J. FARROW

Ray Farrow earned his B.A. in Economics from the University of Manchester in the U.K. and M.A. degrees in Economics from the University of Essex (U.K.) and Princeton University. Mr. Farrow graduated with high honors from the University of Washington School of Law in 2001 where he was Articles Editor of the *Washington Law Review*. Prior to law school, Mr. Farrow was a member of the Economics faculty at Seattle University, the University of Washington, and Queen's University in Canada. Licensed to practice in Washington State, his practice focuses on complex litigation with an emphasis on antitrust, securities law, and employment law.

## LORRAINE LEWIS PHILLIPS

Lorraine Lewis Phillips earned her B.A. in Political Science, with an emphasis in Economics, from Pacific Lutheran University. Ms. Phillips graduated from the University of Washington School of Law in 2002. During law school, Ms. Phillips participated extensively in moot court competitions and received the Order of the Barristers award. Ms. Phillips is admitted to practice in Washington, and the United States District Courts for the Western and Eastern Districts of Washington. Prior to law school, Ms. Phillips was an Investigator with the Attorney General's Office - Consumer Protection and Antitrust Divisions. Ms. Phillips' practice focuses on complex litigation, with an emphasis on antitrust, consumer protection, and securities law.

## CARI CAMPEN LAUFENBERG

Cari Campen Laufenberg earned her B.A. in Art History from the University of California, San Diego, and spent her junior year abroad at the University of Vienna. She received her Masters of Public Administration from the University of Washington in 1998. In 2003, Ms. Laufenberg graduated from the University of Washington School of Law. Licensed to practice in Washington State, Ms. Laufenberg is a member of the King County Bar Association, the American Bar Association, Washington Women Lawyers, and is a member of the Board of Directors of King County Washington Women Lawyers. She practices in the firm's class action litigation group with an emphasis on ERISA, breach of fiduciary duty litigation, and consumer fraud litigation.

## TANA LIN

Tana Lin received her A.B. with Distinction in Government from Cornell University in 1988; she earned her J.D. from New York University School of Law in 1991, where she was a Root-Tilden-Snow Scholar. Ms Lin joined Keller Rohrback's class action and complex litigation group in 2004 after having practiced as a civil rights attorney and criminal defense lawyer. Ms. Lin began her legal career as a trial attorney with the Public Defender Service for the District of Columbia. She then joined and became a senior trial attorney with the Employment Litigation Section of the Civil Rights Division of the United States Department of Justice and, subsequently, the Chicago District Office of the United States Equal Employment Opportunity Commission. She has prosecuted employment discrimination cases against governmental entities such as the Louisiana State Police and private corporations such as Wal-Mart. Ms. Lin also was the litigation coordinator for the Michigan Poverty Law Program where she developed and implemented impact projects to address systemic problems affecting the poor on issues such as access to public benefits and appropriate educational services. Ms. Lin also served as a co-mediator for federal agency employee disputes through the Interagency Project

on Sharing Neutrals. Ms. Lin is admitted to practice in the District of Columbia, Illinois, Michigan, and Washington.

## TOBIAS J. KAMMER

Tobias Kammer earned a B.A. in Near Eastern Languages and Civilizations, with College Honors, and a B.A. in English, With College Honors, from the University of Washington in 1999. He graduated *cum laude* in both degrees and is a member of Phi Beta Kappa. Mr. Kammer received his J.D. from the University of Washington School of Law in 2003, where he served as the Executive Notes and Comments Editor of the *Washington Law Review* and was an active member of the Moot Court Honor Board. Before joining Keller Rohrback L.L.P. Mr. Kammer clerked for the Hon. Marlin J. Appelwick of Washington State Court of Appeals, Division One. His practice focuses on the firm's class action work with an emphasis on ERISA and breach of fiduciary duty litigation.

Additional
# KELLER ROHRBACK L.L.P.
**Attorneys Working with the
Complex Litigation Group**

| | | |
|---|---|---|
| KAREN E. BOXX | CHRISTOPHER GRAVER* | MARK D. SAMSON* |
| KATHLEEN KIM COGHLAN | IRENE M. HECHT | FREDERICK W. SCHOEPFLIN |
| CLAIRE CORDON | SCOTT C. HENDERSON | LEON B. SILVER |
| ROB J. CRICHTON | STEPHEN J. HENDERSON | WILLIAM C. SMART |
| JASON CHUKAS | BENJAMIN J. LANTZ | THOMAS A. STERKEN |
| MAUREEN M. FALECKI | DAVID R. MAJOR | BEN STONE |
| HAROLD FARDAL | JOHN MELLEN | LAURENCE R. WEATHERLY |
| DANIEL S. FRIEDBERG | DAVID J. RUSSELL | BENSON D. WONG |
| GLEN P. GARRISON | | |

*ADMITTED TO PRACTICE IN THE STATE
OF ARIZONA ONLY.

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------ :
                                           :
In re Creditrust Corporation              :      Civil Action No. MJG 00 CV 2174
Securities Litigation                     :
                                           :
------------------------------------------x

AFFIDAVIT OF PAUL J. GELLER
IN SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP

STATE OF FLORIDA              :
                              : ss.
COUNTY OF PALM BEACH          :

I, Paul J. Geller, Esq., being duly sworn, depose and say:

1.    I am a member of the firm of Lerach Coughlin Stoia Geller Rudman & Robbins,

LLP.[1]   I am submitting this Affidavit in support of my firm's application for an award of

attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement

of expenses incurred by my firm in the course of this litigation.

2.    The chart attached hereto as Exhibit A is a detailed summary indicating the amount

of time spent by the attorneys, law clerks and paralegals of my firm on this litigation, and the

lodestar calculation based on my firm's current billing rates.  The chart includes the name of each

attorney who has worked on the matter, the current hourly billing rate and a breakdown of the

hours expended by each attorney.   The same information is provided for laws clerks and

paralegals on a collective basis.  The chart was prepared from contemporaneous, daily time

---

[1] After a change in affiliation, the law firm of Cauley Geller Bowman & Coates, LLP became Cauley Geller
Bowman & Rudman. Subsequently, that law firm split into two firms, Cauley Bowman Carney & Williams, LLP
and Geller Rudman, PLLC. Geller Rudman, PLLC recently merged with Lerach Coughlin Stoia & Robbins, LLP,
which is now known as Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

1

records regularly prepared and maintained by my firm which are available for submission to the Court at its request.  Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

3.    As counsel for plaintiffs, the attorneys of my firm  assisted with the factual investigation, drafted and edited initial complaints, reviewed relevant pleadings and other papers, and communicated with legal counsel and company shareholders.

4.    With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.    The total number of hours spent on this litigation by my firm from the inception of the case through, April 5, 2005 is  161.40 hours.  The total lodestar amount for attorney, law clerk and paralegal time based on the firm's current rates is $58,750.00.  The hourly rates set out in the chart as Exhibit A are the same rates which Lerach Coughlin Stoia Geller Rudman & Robbins, LLP charges its hourly clients paying for its services on a monthly basis.

6.    My firm expended a total of $840.69 in unreimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| Category | Amount |
|---|---|
| Photocopying | 136.05 |
| Telephone and Telecopier | 142.16 |
| Messenger/Courier/Overnight | 31.57 |
| Postage | 9.14 |
| Computer Research/Bloomberg | 48.15 |
| Shareholders Notice | 373.62 |
| Miscellaneous | 100.00 |
| **TOTAL** | **$840.69** |

2

7.    The expenses incurred pertaining to this case are reflected on the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

SWORN TO AND SUBSCRIBED

before me this ___ day

of April, 2005

_____
            Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Elvira Wechter
Commission # DD392426
Expires: MAR. 16, 2009
Bonded Thru Atlantic Bonding Co., Inc.

3

## CREDITRUST SECURITIES LITIGATION
## LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
## LODESTAR
## INCEPTION THROUGH MARCH 31, 2005

| NAME AND STATUS | HOURLY RATE | HOURS | CURRENT LODESTAR |
|---|---|---|---|
| Steven E. Cauley (P) | $580.00 | 26.25 | $15,225.00 |
| Paul J. Geller (P) | $550.00 | 8.75 | $4,812.50 |
| Howard K. Coates, Jr. (P) | $475.00 | 18.00 | $8,550.00 |
| Scott E. Poynter (P) | $385.00 | 0.50 | $192.50 |
| Jack Reise (P) | $470.00 | 1.75 | $822.50 |
| Gina M. Cothern (A) | $390.00 | 1.00 | $390.00 |
| Brian Robbins (A) | $310.00 | 0.50 | $155.00 |
| Douglas Wilens (A) | $360.00 | 67.75 | $24,390.00 |
| Jackie Addison (PL) | $125.00 | 2.80 | $350.00 |
| Charles Gastineau (PL) | $100.00 | 1.75 | $175.00 |
| Sharon Jackson (PL) | $100.00 | 14.25 | $1,425.00 |
| Sue Null (PL) | $125.00 | 17.50 | $2,187.50 |
| Michelle Raggio (PL) | $125.00 | 0.60 | $75.00 |
| **TOTAL** | | 161.40 | $58,750.00 |


Exhibit A

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP ("Lerach Coughlin") is a 150-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $25 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. Lerach founded the West Coast operations of Lerach Coughlin's predecessor firm – Milberg Weiss – almost 30 years ago. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Lerach and the firm are involved in many of the largest and highest-profile securities suits in recent years, including *Enron, Dynegy, AOL-TimeWarner,* and *WorldCom.*

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Securities Litigation,* where he obtained a $100 million verdict. Prior to joining Lerach Coughlin, Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown,* as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman.* Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson, and Merisel. In addition, Coughlin spearheaded actions against the tobacco industry resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.,* MDL 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica


Exhibit B

Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Stoia's efforts, victimized policyholders have recovered over $7 billion. Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. American General Life Insurance and Accident Company*, the first major settlement involving discrimination claims ($234 million recovery). Stoia has since resolved other race-based insurance cases, including *Brown v. United Life Insurance Company*, *Morris v. Life Insurance Company of Georgia* and *Thompson v. Metropolitan Life*. In late summer 2004, Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry, and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as Lead or Co-Lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($8.5 million); *Prison Realty Trust*; total combined recovery of over $120 million); *Intermedia Corporation* ($38 million). Mr. Geller is currently one of the Court-appointed Lead Counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.) and *In Re Eaton Vance Securities Litigation*, Case No. C.A. No. 01-10911 (D. Mass.).

Mr. Geller has also successfully represented consumers in class-action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

In 1995, Mr. Rudman joined Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed an expertise in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar General Securities Litigation*, *In re Prison Realty Securities Litigation*, and *In re Hanover Compressor Securities Litigation*. Robbins currently represents numerous pension funds in state and federal courts across the country and specializes in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations. Robbins was recently recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his participation as lead counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of Board members and the mandatory rotation of the company's outside audit firm.

## PRACTICE AREAS AND CURRENT CASES

### Securities

As recent corporate scandals clearly demonstrate, it has become all-too-common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true values. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, Lerach Coughlin attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $25 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases including:

- Enron Securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems Securities class action
- Coke Securities class action
- Oracle Securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth Securities class action

One of the reasons for Lerach Coughlin's dominance stems from Lerach Coughlin's unparalleled dedication of resources towards investor recovery. For example, Lerach Coughlin has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on

behalf of hundreds of institutional investors. In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys. Lerach Coughlin's securities practice is also strengthened by the existence of a strong Appellate Department – whose collective work has resulted in numerous legal precedents. Lerach Coughlin's securities department also utilizes an extensive group of in-house experts, economic and damage analysts, investigators, and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**. Lerach Coughlin prevention efforts are focused on creating important changes in corporate governance either as part of the global settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Litigation*, No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Retirement System of Louisiana v. Occidental Petroleum Corp.*, CV No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee), and *Barry v. E*Trade Group, Inc.*, No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee). Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance expert Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Lerach Coughlin stands at the forefront in protecting the rights of defrauded individuals in the insurance and healthcare industries. Lerach Coughlin is focused on stopping fraudulent and improper sales practices and recouping losses for victimized policyowners.

Lerach Coughlin attorneys have spearheaded dozens of cases against the life insurance industry on behalf of policyowners with permanent life insurance policies (including universal life, whole life, and interest-sensitive whole life policies) and unfair and deceptive sales practices during the 1980s and 1990s. These cases are based upon insurance companies misrepresenting how policies will perform and whether premiums will "vanish." Purchasers were victims of a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new, less-valuable policy. Our lawyers are responsible for such groundbreaking decisions as *In re: The Prudential Insurance Company of America Sales Practices Litigation,* 962 F. Supp. 450 (D. N.J. 1997), *In re: Great Southern Life Insurance Company Sales Practices Litigation,* 192 F.R.D. 212 (N.D. Tex. 2000), and *Massachusetts Mutual Life Insurance Company v. The Superior Court of San Diego County,* 97 Cal. App. 4th 1282 (4th Dist. 2002). To date, Lerach Coughlin attorneys have recouped over $7 billion on behalf of victimized policyholders against the world's largest insurance companies, including Metropolitan Life, Prudential, Manulife, Principal Mutual, Pacific Life, Transamerica, Allianz, and many others.

Lerach Coughlin attorneys have been at the forefront of discrimination cases against life insurance companies for their alleged practice of intentionally charging African-Americans and other minorities more for life insurance. These lawsuits relate to the sale and administration of low face-amount life insurance policies commonly known as "industrial," "burial," "home service," or "debit" policies. African-Americans and other minorities were allegedly charged more for the same level of life insurance or were offered lower policy benefits than provided to Caucasians. Our attorneys have recovered over $400 million for African-American and other minority class members as redress for the civil rights abuses they were subjected to, including such landmark settlements as *McNeil v. American Gen. Life & Acc. Ins. Co.,* No. 3-99-1157 (M.D. Tenn. 2000), *Thompson v. Metropolitan Life Insurance Company,* 216 F.R.D. 55 (S.D. N.Y. 2003), and *Williams v. United Insurance Company of America,* Civil Action No. 01-920 (Jefferson Cty. Ala. 2002). Our lawyers are also responsible for important decisions in this area such as *In The Matter of: Monumental Life Insurance Company, Industrial Life Insurance Litigation,* 343 F.3d 331 (5th Cir. 2003), *Moore v. Liberty National Insurance Company,* 267 F.3d 1209 (11th Cir. 2001), and *Carnegie v. Mutual Savings Life Insurance Company,* No. CV-99-S-3292 NE, 2002 U.S. Dist. LEXIS 21396 (N.D. Ala. 2002).

Lerach Coughlin attorneys are actively involved in litigation against major, nationwide auto insurers for alleged abuses in their claims-handling procedures. These cases challenge an alleged practice of replacing certain damaged automobile crash parts with cheaper, allegedly inferior, non-original equipment manufacturer parts, known as imitation parts.

California Insurance Commissioner John Garamendi recently retained Lerach Coughlin to represent the citizens of the state of California to assist in breaking up a long-standing pattern of illicit deals and commissions paid by insurance companies to companies like Universal Life Resources ("ULR") and Marsh,

who advanced the insurance companies' products while pretending to perform objective brokerage services for employers who hired them to assemble and place employee benefits. ULR immediately entered into a consent decree, agreeing to stop the unlawful practices, fully disclose its income and commission arrangements, and to fully assist in the state of California's investigation into these wide-spread practices.

Given their familiarity with the fraudulent and unfair business practices employed in the insurance industry, our attorneys are experts at rooting out facially neutral, yet discriminatory business behaviors. Our redlining cases seek to curb abuses in the underwriting practices used in determining whether to issue and at what price to charge minorities for homeowner and automobile insurance policies.

**Antitrust**

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices, or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), serving as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three-and-one-half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- *Hall v. NCAA* (Restricted Earnings Coach Antitrust Litigation), No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the NCAA (National Collegiate Athletic Association) illegally fixed their compensation by instituting the "restricted earnings coach" rule. On

May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million. Trial counsel included Lerach Coughlin attorney Bonny E. Sweeney.

- *In re Disposable Contact Lens Antitrust Litigation*, MDL 1030 (M.D. Fl.). Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers. The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- *Microsoft I-V Cases*, J.C.C.P. No. 4106 (San Francisco Super. Ct.). Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement recently approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- *In re Currency Conversion Antitrust Litigation*, MDL 1409 (S.D.N.Y.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders. Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law. Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.* (the *Carbon Fiber Antitrust Litigation*), No. CV-99-7796 (C.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999. The trial court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the court's class certification order. Discovery is continuing.

- *In re Carbon Black Antitrust Litigation*, MDL 1543 (D. Mass.). Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks, and other products, from 1999 through the present. The parties are currently engaged in discovery.

- *In re DRAM Antitrust Litigation*, MDL 1486 (N.D. Ca.). Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price of DRAM from the fall of 2001 through at least the end of June 2002. Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied. The parties are engaged in discovery.

- *In re Medical Waste Services Antitrust Litigation*, MDL 1546 (D. Utah). Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases. In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states. In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California. Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- *In re Microsoft Antitrust Litigation.* Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets. Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases. Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury. In many states, the parties are currently in the process of finalizing settlements and/or achieving court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- *The California Wholesale Electricity Antitrust Litigation*, 02-CV-990 (S.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange ("PX") and California ISO ("ISO") manipulated markets during the period May 1, 2000 to June 19, 2001. The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001. The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers. Plaintiffs recently reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million dollars. The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

**Consumer**

The consumer attorneys at Lerach Coughlin represent plaintiffs nationwide in a variety of complex representative and consumer class actions. Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental and public health, and tobacco-related cases throughout the United States. Lerach Coughlin is also actively involved in numerous cases relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*, market timing violations in connection with the sale of mutual fund and variable annuities, and deceptive consumer-credit lending practices in violation of the Truth In Lending Act, 15 U.S.C. §1601 *et seq.*

Current cases include:

- *Cellphone Termination Fee Cases.* Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- *Tenet Healthcare Cases.* Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. Lerach Coughlin attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," that resulted in price gouging of the uninsured.

- *Ocwen Financial Corporation.* Lerach Coughlin attorneys represent plaintiffs alleging unfair business practices in Ocwen's servicing of residential mortgage loans. Plaintiffs claim that Ocwen has engaged in a scheme to charge vulnerable borrowers unwarranted and unlawful fees, including late penalty fees, fees associated with hazard insurance, attorneys' fees and fees associated with the unnecessary and wrongful preparation of default and foreclosure proceedings.

- *AT&T Wireless Coverage Maps.* Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless. Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region.

Prior cases include:

- *Schwartz v. Visa*. After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. In *Schwartz v. Visa Int'l, et al.*, No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- *In re Lifescan, Inc. Consumer Litigation*, No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to violation of human rights. These include:

- *Does I, et al. v. The Gap, Inc., et al.*, No. 01 0031 (D. Northern Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: *Does I, et al. v. Advance Textile Corp., et al.*, No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act – and *UNITE, et al. v. The Gap, Inc., et al.*, No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that any misconduct was protected by the First Amendment. The court found the heightened

constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- *The Cintas Litigation.* Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin also sometimes involves anti-union activities, including:

- *Southern Pacific/Overnite.* A shareholder action stemming from several hundred million dollars in loss of value in the Company due to systematic violations by Overnite of U.S. labor laws.

- *Massey Energy.* A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- *Crown Petroleum.* A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees. Currently, Lerach Coughlin attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

**Environment & Public Health**

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law. Lerach Coughlin attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center ("NEDLC") as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases including:

- *Public Citizen v. US DOT.* Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry, in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act and, further, that the Administration did not first complete a comprehensive environmental impact analysis as

required by the National Environmental Policy Act. The suit was dismissed at the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- *Sierra Club v. AK Steel.* Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- *MTBE Litigation.* Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- *Exxon Valdez.* Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- *Avilla Beach.* A citizens suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act, and state laws such as California Proposition 65, exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas; the general public in California; the cities of San Francisco, Los Angeles, and Birmingham; 14 counties in California; and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in *pro bono* cases and have been recently recognized for their demonstrated commitment to providing *pro bono* services to the poor and disenfranchised. In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney, and Amber Eck (from the San Diego office of the then Milberg Weiss) were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego.* The San Diego office received a commendation from the state bar president

for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities." In recommending the firm for the award, Carl Poirot, of the San Diego Volunteer Lawyer Program, praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel. The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program. Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing – and despite the fact that every individual is required to undergo an extensive application process with numerous verifications. Plaintiffs contend that these searches by law-enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%. Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims. Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there. Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

This San Diego office was also named as one of three finalists for the 1999 Pro Bono Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case. *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego. After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression. Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or longer, but individuals with mental disabilities receive benefits for only two years. We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes. Unfortunately, after three years of working on the case, the Ninth Circuit Court of Appeals issued an opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff. However, the Disability Rights Education & Defense Fund and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them. DREDF is enormously appreciative of [Lerach Coughlin attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys, working under the former Milberg Weiss mantel, have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

> In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

*See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). More recently, in *Stanley v. Safeskin Corp.*, No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In a November 9, 1998 order approving settlements totaling over $1.027 billion, the court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented about Lerach Coughlin attorneys including Len Simon that:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In *Transamerica*, Judge Danielson made it a point to comment on the professionalism of Lerach Coughlin attorneys:

> It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court. I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law. It is interesting to see law practiced honorably. And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

*See Gordon v. Transamerica Occidental Life Ins. Co.*, Hearing Transcript dated June 26, 1997, at 39:3-12.

Similarly, in *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.... Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

See *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998). Lerach Coughlin attorneys were co-lead counsel in this litigation. At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is *no doubt* that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys, acting under the Milberg Weiss firm name, were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel." In his opinion on class certification, Judge Chesler elaborated that:

> The firm of Milberg Weiss Bershad Hynes & Lerach LLP, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

See *Roy v. The Independent Order of Foresters*, Civ. No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

> [I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was really very high quality and ought to be recognized by an appropriately high percentage figure here.
>
> Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

See *Nappo v. Chipcom Corp.*, CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

NOTABLE CLIENTS

Public Fund Clients

- Alaska Permanent Fund Corporation.

- Alaska State Pension Investment Board.

- California Public Employees' Retirement System.

- California State Teachers' Retirement System.

- City of Birmingham Retirement and Relief System (Ala.).

- Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.

- Los Angeles County Employees Retirement Association (LACERA).

- Maine State Retirement System.

- The Maryland-National Capital Park & Planning Commission Employees' Retirement System.

- Milwaukee Employees' Retirement System.

- Minnesota State Board of Investment.

- New Hampshire Retirement System.

- Pompano Beach Police & Firefighters Retirement System.

- The Regents of the University of California.

- State Universities Retirement System of Illinois.

- State of Wisconsin Investment Board.

- Tennessee Consolidated Retirement System.

- Washington State Investment Board.

- Wayne County Employees' Retirement System.

- West Virginia Investment Management Board.

## Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia.**

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland.**

- **Carpenters Pension Fund of Illinois.**

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity.**

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California).**

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada.**

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund.**

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds.**

- **UNITE Family of Funds.**

- **1199 SEIU Greater New York Pension Fund.**

- **Massachusetts State Carpenters Pension Fund.**

- **Massachusetts State Guaranteed Annuity Fund.**

- **New England Health Care Employees Pension Fund.**

- **PACE Industry Union-Management Pension Fund.**

- **Rocky Mountain UFCW Unions & Employers Pension Plan.**

- **SEIU Staff Fund.**

- **Southern California Lathing Industry Pension Fund**

- **United Brotherhood of Carpenters Pension Fund**

## Additional Institutional Investors

- **The Dot.Com Fund.**

- **Northwestern Mutual Life Insurance Co.**

- **Standard Life Investments.**

## PROMINENT CASES

### PROMINENT CASES PROSECUTED BY LERACH COUGHLIN ATTORNEYS

- *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.). Lerach Coughlin attorneys served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

- *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL 834 (D. Ariz.). Lerach Coughlin attorneys served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

- *In re 3Com, Inc. Sec. Litig.*, No. C-97-21083-JW (N.D. Cal.). A hard-fought class action alleging violations of the federal securities law violations in which Lerach Coughlin attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 (Cal. Super. Ct., San Francisco County). In this case R.J. Reynolds admitted "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- *Cordova v. Liggett Group, Inc., et al.*, No. 651824 (Cal. Super. Ct., San Diego County), and *People v. Philip Morris, Inc., et al.*, No. 980864 (Cal. Super. Ct., San Francisco County). Lerach Coughlin attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the attorneys general global agreement with the tobacco industry bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- *Does I, et al. v. The Gap, Inc., et al.*, No. 01 0031 (D. Northern Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort

Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: *Does I, et al. v. Advance Textile Corp., et al.*, No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act– and *UNITE, et al. v. The Gap, Inc., et al.*, No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *In re Exxon Valdez*, No. A89 095 Civ. (D. Alaska), and *In re Exxon Valdez Oil Spill Litig.*, 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Lerach Coughlin attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- *In re Washington Public Power Supply Sys. Sec. Litig.*, MDL 551 (D. Ariz.). A massive litigation in which Lerach Coughlin attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- *Hall v. NCAA* (Restricted Earnings Coach Antitrust Litigation), No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $54.5 million.

- *Newman v. Stringfellow* (Stringfellow Dump Site Litigation), No. 165994 MF (Cal. Super. Ct., Riverside County). Lerach Coughlin attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn.). Lerach Coughlin attorneys served as lead counsel for the class obtaining a $105 million recovery.

- *City of San Jose v. PaineWebber*, No. C-84-20601(RFP) (N.D. Cal.). Lerach Coughlin attorneys filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms. In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest. The City also recovered an additional $12 million in settlements prior to and during the trial.

- *Hicks v. Nationwide*, No. 602469 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- *In re Nat'l Health Laboratories Sec. Litig.*, No. CV-92-1949-RBB (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a pretrial recovery of $64 million in this securities fraud class action.

- *In re Informix Corp. Sec. Litig.*, No. C-97-1289-CRB (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel for the class and obtained a recovery of $137.5 million.

- *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW (N.D. Cal.). Lerach Coughlin attorneys served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action. The $100 million jury verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- *In re Nat'l Medical Enterprises Sec. Litig.*, No. CV-91-5452-TJH (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- *In re Nucorp Energy Sec. Litig.*, MDL 514 (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this consolidated class action and recovered $55 million.

- *In re U.S. Financial Sec. Litig.*, MDL 161 (S.D. Cal.). Lerach Coughlin attorneys acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial recovery of over $50 million.

- *Barr v. United Methodist Church*, No. 404611 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt. After four years of intensive litigation – three trips to the U.S. Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefits to the class members. In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- *Grobow v. Dingman* (The Henley Group Litigation), No. 575076 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- *In re Itel Sec. Litig.*, No. C-79-2168A-RPA (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this securities class action that recovered $40 million.

- *In re Financial Corp. of America*, No. CV-84-6050-TJH(Bx) (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $41 million.

- *In re Oak Industries Sec. Litig.*, No. 83-0537-G(M) (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a recovery of $33 million.

- *In re Wickes Cos. Sec. Litig.*, MDL 513 (S.D. Cal.). Lerach Coughlin attorneys served as liaison counsel in this consolidated securities law class action that recovered $32 million.

- *Weinberger v. Shumway* (The Signal Companies, Inc.), No. 547586 (Cal. Super. Ct., San Diego County).  Lerach Coughlin attorneys served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a recovery of approximately $23 million.

- *In re Seafirst Sec. Litig.*, No. C-83-771-R (W.D. Wash.).  Lerach Coughlin attorneys served as co-lead counsel in this class action and obtained a pretrial recovery of $13.6 million.

- *In re Waste Management Sec. Litig.*, No. 83-C2167 (N.D. Ill.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $11.5 million.

- *In re IDB Communications Group, Inc. Sec. Litig.*, No. CV-94-3618 (C.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $75 million.

- *In re Boeing Sec. Litig.*, No. C97-1715Z (W.D. Wash.).  A securities class action in which Lerach Coughlin attorneys served as co-lead counsel for the class obtaining a recovery in the amount of $92.5 million.

- *Thurber v. Mattel, Inc., et al.*, No. CV-99-10368-MRP (C.D. Cal.).  Lerach Coughlin attorneys served as chair of the Executive Committee of Plaintiffs' Counsel and obtained a recovery of $122 million.

- *In re Dollar General Sec. Litig.*, No. 3:01-0388 (M.D. Tenn.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $172.5 million.

- *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, No. H-02-0410 (S.D. Tex.).  Lerach Coughlin attorneys served as lead counsel and obtained a recovery of $85 million.

- *In re Reliance Acceptance Group, Inc. Sec. Litig.*, MDL 1304 (D. Del.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $39 million.

- *Schwartz v. Visa Int'l, et al.*, No. 822404-4 (Cal. Super. Ct., Alameda County).  After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Lerach Coughlin attorneys represented California consumers who sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- *Morris v. Lifescan, Inc.*, No. CV-98-20321-JF (N.D. Cal.).  Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics.  The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

- *Thompson v. Metropolitan Life Insurance Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003). Lerach Coughlin attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- *In re: The Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 450 (D. N.J. 1997). In one of the first cases of its kind, Lerach Coughlin attorneys obtained a settlement of over $1.2 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

# PRECEDENT-SETTING DECISIONS

Lerach Coughlin attorneys are consistent leaders in developing favorable law for defrauded investors under state and federal securities laws. Lerach Coughlin attorneys have represented individual and institutional plaintiffs in over 500 securities class actions, including many under the Private Securities Litigation Reform Act of 1995. In most of those cases, Lerach Coughlin has been appointed as lead or co-lead counsel by the Court. Lerach Coughlin has also been at the forefront of shareholder rights in derivative and Mergers and Acquisitions litigation. Additionally, Lerach Coughlin attorneys are involved in complex litigation in such varied areas as abuses in the insurance industry, consumer protection and antitrust litigation, civil and human rights, and tobacco litigation. The firm's lawyers have been responsible for establishing many important precedents, including:

## Investor and Shareholder Rights

• *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920 (9th Cir. 2003). *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

• *Pirraglia v. Novell, Inc.,* 339 F.3d 1182 (10th Cir. 2003). In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent.

• *Broudo v. Dura Pharmaceuticals, Inc.,* 339 F.3d 933 (9th Cir. 2003). The Ninth Circuit upheld investors' securities-fraud claims, reaffirming Ninth Circuit law on loss causation, which holds that investors suffer a loss when they purchase securities at a price inflated by fraud.

• *In re Cavanaugh,* 306 F.3d 726 (9th Cir. 2002). In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

• *Lone Star Ladies Investment Club v. Schlotzsky's, Inc.,* 238 F.3d 363 (5th Cir. 2001). In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court order that had applied inappropriate pleading standards to dismiss the case.

• *Bryant v. Dupree,* 252 F.3d 1161 (11th Cir. 2001). The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court order.

• *Bryant v. Avado Brands,* 187 F.3d 1271 (11th Cir. 1999). Interpreting the Private Securities Litigation Reform Act of 1995, the Eleventh Circuit held that its provision requiring investors to plead facts raising a strong inference of scienter does not abrogate the principle that recklessness suffices to establish liability for violations of §10(b) of the Securities Exchange Act of 1934.

• *Berry v. Valence Tech., Inc.,* 175 F.3d 699 (9th Cir. 1999). The Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of

limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

- *Hertzberg v. Dignity Partners, Inc.,* 191 F.3d 1076 (9th Cir. 1999). The Ninth Circuit reversed dismissal of investors' claims that securities-offering documents were misleading, holding purchasers who bought shares in the aftermarket had standing to bring claims under the Securities Act of 1933 where a material fact is misstated or omitted from a registration statement.

- *StorMedia, Inc. v. Superior Court,* 20 Cal. 4th 449 (1999). Interpreting the anti-manipulation provisions of California's state securities laws, the California Supreme Court held that a corporation engages in the offer or sale of securities when it maintains an employee stock-option or stock-purchase plan, and thus may be liable under the statute for disseminating false or misleading public statements.

- *Diamond Multimedia Sys., Inc. v. Superior Court,* 19 Cal. 4th 1036 (1999). The California Supreme Court held that the California state securities laws' broad anti-manipulation provisions provide a remedy for out-of-state investors damaged by manipulative acts committed within the State of California.

- *Cooper v. Pickett,* 137 F.3d 616 (9th Cir. 1998). *Cooper* is the leading Ninth Circuit precedent on pleading accounting fraud with particularity. The court held that plaintiffs stated claims against a company, its independent auditors, and its underwriters, for engaging in a scheme to defraud involving improper revenue recognition.

- *McGann v. Ernst & Young,* 102 F.3d 390 (9th Cir. 1996). *McGann* is a leading federal appellate precedent interpreting Securities Exchange Act of 1934 §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security. The court rejected contentions that auditors could not be liable for a recklessly misleading audit opinion if they directly participated in no securities transactions. Rather, an accounting firm is subject to liability if it prepares a fraudulent audit report knowing that its client will include the report in an SEC filing.

- *Provenz v. Miller,* 102 F.3d 1478 (9th Cir. 1996). In *Provenz,* the Ninth Circuit reversed a district court's entry of summary judgment for defendants in an accounting-fraud case. The decision is a leading federal appellate precedent on the evidence required to prove fraudulent revenue recognition.

- *Knapp v. Ernst & Whinney,* 90 F.3d 1431 (9th Cir. 1996). The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

- *Warshaw v. Xoma Corp.,* 74 F.3d 955 (9th Cir. 1996). *Warshaw* is a leading federal appellate precedent on pleading falsity in securities class actions -- sustaining allegations that a pharmaceutical company misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval. The court also held that a company may be liable to investors if it misled securities analysts.

- *Gohler v. Wood,* 919 P.2d 561 (Utah 1996). The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements in order to recover under a state law prohibiting misleading statements in connection with the sale of a security.

- *Fecht v. Price Co.,* 70 F.3d 1078 (9th Cir. 1995). *Fecht* is another leading precedent on

pleading falsity with particularity. It sustained allegations that a retail chain's positive portrayal of its expansion program was misleading in light of undisclosed problems that caused the program to be curtailed. The Ninth Circuit held that investors may draw on contemporaneous conditions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading. It also clarified the narrow scope of the so-called "bespeaks caution" defense.

- *In re Software Toolworks Sec. Litig.,* 50 F.3d 615 (9th Cir. 1995). In *Software Toolworks,* the Ninth Circuit reversed the summary judgment entered for defendants, including a company and its top insiders, independent auditors, and underwriters. Among other things, the court held that auditors and underwriters could be liable for their role in drafting a misleading letter sent to the SEC on the corporate defendant's attorneys' letterhead.

- *In re Pacific Enterprises Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995). The Ninth Circuit approved shareholders' settlement of a derivative suit as fair, reasonable, and adequate.

- *Kaplan v. Rose,* 49 F.3d 1363 (9th Cir. 1994). The court reversed entry of summary judgment for defendants because investors presented sufficient evidence for a jury to conclude that a medical device did not work as well as defendants claimed.

- *In re Wells Fargo Sec. Litig.,* 12 F.3d 922 (9th Cir. 1993). *Wells Fargo* is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

- *Krangel v. General Dynamics Corp.,* 968 F.2d 914 (9th Cir. 1992). The Ninth Circuit

dismissed defendants' appeal from a district court's order upholding plaintiff investors' choice of forum by remanding the matter to the state court.

- *Colan v. Mesa Petroleum, Co.,* 951 F.2d 1512 (9th Cir. 1991). In a shareholder derivative action, the Ninth Circuit held that exchange of common stock for debt securities was a "sale" subject to the Securities Exchange Act of 1934's regulation of short-swing profits.

- *In re Apple Computer Sec. Litig.,* 886 F.2d 1109 (9th Cir. 1989). The Ninth Circuit reversed summary judgment for defendants, holding that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

- *Blake v. Dierdorff,* 856 F.2d 1365 (9th Cir. 1988). The Ninth Circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its lawyers.

- *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873 (9th Cir. 1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute-of-limitation rules for §10(b) suits that are favorable to investors.

### Insurance

- *Dehoyos v. Allstate Corp.,* 345 F.3d 290 (5th Cir. 2003), *cert. denied,* 2004 U.S. LEXIS 3088 (Apr. 26, 2004). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring, did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the appellate court affirmed the

district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims – under the Civil Rights Act of 1866 and the Fair Housing Act – for racially discriminatory business practices in the sale of automobile and homeowners insurance. The U.S. Supreme Court recently denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit-scoring system used in pricing of automobile and homeowners insurance policies.

- *In re Monumental Life Insurance Co., Industrial Life Insurance Litigation,* ___ F.3d ___, 2004 U.S. App. LEXIS 6392 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially-discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- *Moore v. Liberty Nat'l Life Insurance Co.,* 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common-law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil-rights claims under 42 U.S.C. §§1981 and 1982.

- *Massachusetts Mutual Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The court held common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

### Consumer Protection

- *Kasky v. Nike, Inc.,* 27 Cal. 4th 939 (2002), *cert. dismissed,* 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that such misconduct was protected by the First Amendment.

- *West Corp. v. Superior Court,* 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- *Spielholz v. Superior Court,* 86 Cal. App. 4th 1366 (1999). The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- *Day v. AT & T Corp.,* 63 Cal. App. 4th 325 (1998). The California Court of Appeal held that an action which seeks only to enjoin misleading or deceptive practices in the advertising of telephone rates does not implicate the federal filed-rate doctrine, and can proceed under Cal. Bus. & Prof. Code §§17200 and 17500. The court

also held that the claims were not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction did not compel dismissal or stay of the action, and that the plaintiffs were not required to exhaust their administrative remedies.

- *Mangini v. R.J. Reynolds Tobacco Co.,* 7 Cal. 4th 1057 (1994). The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising. It flatly rejected the manufacturer's contention that the action was preempted by federal cigarette labeling laws.

- *Jordan v. Department of Motor Vehicles,* 75 Cal. App. 4th 449 (1999). The California Court of Appeal invalidated a non-resident vehicle "smog impact" fee imposed on out-of-state autos being registered for the first time in California, finding that the fee violated the Interstate Commerce Clause of the U.S. Constitution.

- *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal. App. 3d 605 (1987). The California Court of Appeal reversed the trial court's decision refusing to apply California law to the claims of nonresident plaintiffs. In reversing the lower court's ruling, the court found that California law may constitutionally apply to the claims of proposed nationwide class members who are not residents of California, provided there are significant contacts to the claims asserted by each member.

- *Lazar v. Hertz Corp.,* 143 Cal. App. 3d 128 (1983). The California Court of Appeal ordered a consumer class certified, in an opinion that significantly broadens the right of injured consumers to bring class actions.

- *Barr v. United Methodist Church,* 90 Cal. App. 3d 259 (1979). The California Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract committed by religiously affiliated defendants.

## Antitrust

- *Law v. NCAA,* 134 F.3d 1010 (10th Cir. 1998). The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1(plaintiffs subsequently prevailed on a damages trial). It also upheld the district court's order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- *In re NASDAQ Market-Makers Antitrust Litig.,* 172 F.R.D. 119 (S.D.N.Y. 1997). In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to restrain or eliminate price competition, the district court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- *In re Disposable Contact Lens Antitrust Litig.,* 170 F.R.D. 524 (M.D. Fla. 1996). Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses. The district court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and

provided a colorable method of proving impact on the class at trial.

- *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003). In a case consolidating more than 20 putative class actions, plaintiff credit-card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged. The district court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

- *Pharmacare v. Caremark*, 965 F. Supp. 1411 (D. Haw. 1996). The district court denied defendant's motion to dismiss plaintiffs' Robinson-Patman Act claim in a case where the largest company in the alternate-site infusion therapy industry had pleaded guilty to mail fraud for making improper payments to physicians in exchange for their referrals of patients. Plaintiffs, defendant's competitors, alleged that they suffered injury as a result of defendant's agreements, which violated the anti-kickback provisions of the Clayton Act, §2(c) as amended by the Robinson-Patman Act, 15 U.S.C. §13(c).

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Lerach Coughlin attorneys has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

- *Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.*, CV No. BC185009 (Cal. Super. Ct.) (as part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee).

- *In re Sprint Shareholder Litigation*, No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis).

- *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings).

# THE FIRM'S PARTNERS

**WILLIAM S. LERACH** is widely recognized as one of the leading securities lawyers in the United States. He has headed the prosecution of hundreds of securities class and stockholder derivative actions resulting in recoveries for defrauded shareholders amounting to billions of dollars. Mr. Lerach has been the subject of considerable media attention and is a frequent commentator on securities and corporate law, as well as a frequent lecturer. He represents numerous public and multi-employer pension funds in corporate securities matters.

He is the author of *Plundering America: How American Investors Got Taken for Trillions by Corporate Insiders - The Rise of the New Corporate Kleptocracy*, 8 Stanford J. of Law, Bus. and Fin. 1 (2002); *Why Insiders Get Rich, and the Little Guy Loses*, L.A. Times, Jan. 20, 2002; *The Chickens Have Come Home to Roost: How Wall Street, the Big Accounting Firms and Corporate Interests Chloroformed Congress and Cost America's Investors Trillions; Achieving Corporate Governance Enhancements Through Litigation*, keynote address to Council of Institutional Investors spring meeting, Mar. 27, 2001; *The Private Securities Litigation Reform Act of 1995 - 27 Months Later: Securities Class Action Litigation Under The Private Securities Litigation Reform Act's Brave New World*, Washington U. L. Rev., Vol. 76, No. 2 (1998); *An Alarming Decline In the Quality of Financial Reporting* (unpublished paper presented to 7th Annual BusinessWeek CFO Forum (June 1998); co author of *Civil RICO in Shareholders Suits Involving Defense Contractors* in Civil RICO Practice: Causes of Action, published by John Wiley & Sons, Inc. (1991); *The Incorporation Trap: How Delaware Has Destroyed Corporate Governance* (unpublished paper presented to the Council of Institutional Investors (1990)); *Securities Class Actions and Derivative Litigations Involving Public Companies: A Plaintiff's Perspective*, ALI/ABI, Civil Practice and Litigation in Federal and State Courts (1985), ABA Fall Meeting (1985) and PLI Securities Litigation, Prosecution and Defense Strategies (1985); *Alternative Approaches for Awarding Attorneys' Fees in Federal Court Litigation: It's Time to Unload the Lodestar* (unpublished paper presented to the Ninth Circuit Judicial Conference (1984)); *Class Action and Derivative Suits in the Aftermath of Control Contests, Mergers and Acquisitions: Choice of Forum and Remedies; Attorney/Client Privilege in Class and Derivative Cases*, ABA 1984 Annual Meeting (1984); *Class Actions: Plaintiffs' Perspectives, Tactics and Problems*, ALI/ABA, Civil Practice and Litigation in Federal and State Courts (1984); *Life After Huddleston: Streamlining and Simplification of the Securities Class Action*, 7 Class Action Reports 318 (1982). He is also the author of *Termination of Class Actions: The Judicial Role*, McGough & Lerach, 33 U. Pitt L. Rev. 446 (1972); *Class and Derivative Actions Under the Federal Securities Laws* (1980 Regents of the University of California).

Mr. Lerach is chief counsel in many of the largest and highest profile securities class action and corporate derivative suits in recent years, including *Enron, Dynegy, Qwest* and *WorldCom*. He is listed in the "Best Lawyers in America" and is a Master of the American Inns of Court. Mr. Lerach has been the President of the National Association of Securities and Commercial Lawyers (NASCAT), a national group of attorneys specializing in commercial and securities litigation. Mr. Lerach is a member of the Editorial Board of Class Action Reports, and frequently lectures on class and derivative actions, accountants' liability, and attorneys' fees, and has been a guest lecturer at Stanford University, University of California at Los Angeles and San Diego, University of Pittsburgh,

San Diego State University and at the Council of Institutional Investors and the International Corporate Governance Network. He is also a member of the American Law Institute faculty on Federal and State Class Action Litigation.

Mr. Lerach received his Bachelor of Arts degree from the University of Pittsburgh in 1967 and his law degree in 1970 where he graduated second in his class, *magna cum laude*, and was a member of the Order of the Coif. Mr. Lerach was admitted to the Pennsylvania Bar in 1970 and to the California Bar in 1976. Mr. Lerach was a partner with Pittsburgh firm Reed Smith Shaw & McClay before opening the West Coast office of Milberg Weiss in 1976. Mr. Lerach served as Co-Chairman of Milberg Weiss and serves as Chairman of Lerach Coughlin. He is a member of the Pennsylvania and California Bar Associations and has been admitted to practice before numerous federal and state courts. He is a member of the ABA Litigation Section's Committee on Class Actions and Derivative Skills.

Mr. Lerach has testified before federal and state legislative committees concerning corporate governance and securities matters and is frequently quoted in the national media regarding corporate issues.

Mr. Lerach was honored by President Clinton who appointed him to be a member of the United States Holocaust Memorial Council.

PATRICK J. COUGHLIN has been lead counsel for several major securities matters including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW (N.D. Cal.). Formerly, Mr. Coughlin was an Assistant U.S. Attorney in Washington, D.C. and San Diego handling complex white collar fraud matters. During this time Mr.

Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown, et al.*, 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman, et al.*, 87-0676-K. Mr. Coughlin has instructed on the current state of securities class action litigation in light of U.S. Congressional action aimed at weakening U.S. securities laws.

While at Milberg Weiss, Mr. Coughlin handled a number of large securities cases involving such companies as IDB Communications Group ($75 million recovery); Unocal ($47.5 million recovery); Media Vision ($25 million recovery); Boeing ($92.5 million recovery); Sunrise Medical ($20 million recovery); Sybase ($28.5 million recovery); Conner Peripherals ($26 million recovery); 3Com ($259 million recovery). Mr. Coughlin also prosecuted a number of actions against the tobacco industry which resulted in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California. Mr. Coughlin's recent trials include a RICO case against the tobacco industry (March 1999) and securities cases which went to trial against Wells Fargo (October 1999) and California Amplifier (February 2000).

JOHN J. STOIA, JR. received his Bachelor of Science degree from the University of Tulsa in 1983. While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors. In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class.

In 1987, Mr. Stoia graduated from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation. Thereafter, Mr. Stoia served as an enforcement attorney with the U.S.

Securities and Exchange Commission, until joining Milberg Weiss. Mr. Stoia was a partner with Milberg Weiss until co-founding Lerach Coughlin.

Mr. Stoia worked on numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia was involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s. Mr. Stoia was actively involved in cases against, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. While at Milberg Weiss, Mr. Stoia was appointed lead counsel for plaintiffs and class members in all deceptive sales practices cases in which Milberg Weiss was involved.

Mr. Stoia was also involved in numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century. Mr. Stoia was lead counsel in *McNeil, et al. v. American General Life Insurance and Accident Insurance Company*, the first major settlement involving discrimination claims which resulted in a $234 million recovery for class members. Mr. Stoia resolved other race-based insurance cases, including *Brown v. United Life*

*Insurance Company* ($40 million), *Morris v. Life Insurance Company of Georgia* ($55 million) and *Thompson v. Metropolitan Life* ($145 million).

Mr. Stoia currently represents numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of the major financial scandals, including WorldCom and AOL-Time Warner.

Mr. Stoia is a frequent lecturer at ALI-ABA, Practicing Law Institute and American Trial Lawyers Association seminars and conferences.

PAUL J. GELLER received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program. Mr. Geller then earned his law degree, with Highest Honors, from Emory University School of Law. At Emory, Mr. Geller was an Editor of the Law Review, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller was a founding partner and head of the Boca Raton offices of the national class action boutiques Cauley Geller Bowman & Rudman, LLP and Geller Rudman, PLLC. In June 2004, through a merger of Lerach Coughlin and Geller Rudman, PLLC, Mr. Geller opened the Boca Raton, Florida office of the Firm.

In July 2002, Mr. Geller was named by the *National Law Journal* as one of the nation's "40 Under 40" – an honor bestowed upon 40 of the country's top young litigators. In July 2003, Mr. Geller was featured in *Florida Trend* magazine

and the *South Florida Business Journal* as one of Florida's top lawyers.

Mr. Geller is rated AV by Martindale Hubbell (the highest rating available) and has served as Lead or Co-Lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($8.5 million settlement), *Prison Realty Trust* (Co-Lead Derivative Counsel; total combined settlement of over $120 million), and *Intermedia Corporation* ($38 million settlement). Mr. Geller is currently one of the court-appointed Lead Counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.), *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.), and *In re Eaton Vance Securities Litigation*, Case No. C.A. No. 01-10911 (D. Mass.). Mr. Geller is also heavily involved in corporate governance litigation. For example, Mr. Geller recently represented a shareholder of Applica, Inc. who was concerned with allegedly reckless acquisitions made by the company. Mr. Geller and his partners secured a settlement that required Applica to establish a new independent acquisitions committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a special committee empaneled by Oracle Corp. to look into certain stock sales made by its Chairman and Chief Executive, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an order agreeing that the special committee was "fraught with conflicts," the *Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN's Headline News, CNN's Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including the *New York Times*, the *Wall Street Journal*, the *Washington Post*, and *Business Week*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

SAMUEL H. RUDMAN received his Bachelor of Arts degree in Political Science from Binghamton University in 1989 and earned his juris doctorate from Brooklyn Law School in 1992. While at Brooklyn Law School, Mr. Rudman was a Dean's Merit Scholar and a member of the Brooklyn Journal of International Law and the Moot Court Honor Society.

Upon graduation from law school, Mr. Rudman joined the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney. In his position as a staff attorney, Mr. Rudman was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

Shortly after the passage of the Private Securities Litigation Reform Act of 1995, Mr. Rudman joined the firm of Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed an expertise in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

DARREN J. ROBBINS received his Bachelor of Science and Master of Arts degrees in Economics from the University of Southern California. Mr. Robbins received his J.D. degree from Vanderbilt Law School, where he served as the Managing Editor of the *Vanderbilt Journal of Transnational Law*.

Mr. Robbins oversees Lerach Coughlin's merger and acquisition practice. Mr. Robbins has extensive experience in federal and state securities class action litigation. Mr. Robbins served as one of the lead counsel in the *In re Prison Realty Sec. Litig.* ($120+ million recovery), *In re Dollar General Sec. Litig.* ($172.5 million recovery) and *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.* ($85+ million recovery). Mr. Robbins currently represents institutional and individual investors in securities actions in state and federal courts across the country, including The Regents of the University of California in the *Enron* litigation and numerous public pension funds in the *WorldCom* bond litigation.

Mr. Robbins is a frequent speaker at conferences and seminars concerning securities matters and shareholder litigation across the country.

KEITH F. PARK graduated from the University of California at Santa Barbara in 1968 and from the Hastings College of Law of the University of California in 1972.

Mr. Park is responsible for the recoveries in more than 1,000 securities class actions, including actions involving: Dollar General ($162 million recovery); Mattel ($122 million recovery); Prison Realty ($105 million recovery); Honeywell (in addition to the $100 million recovery, obtained Honeywell's agreement to adopt significant corporate governance changes relating to compensation of senior executives and directors, stock trading by directors, executive officers and key employees, internal and external audit functions, and financial reporting and board independence); Sprint (in addition to $50 million recovery, obtained important governance enhancements, including creation of "Lead Independent Director" and expensing of stock options); Hanover Compressor (on top of $85 million recovery, obtained the following governance enhancements, among others: direct shareholder nomination of Board and mandatory rotation of audit firm); 3COM ($259 million recovery); Chiron ($43 million recovery); MedPartners ($56 million recovery); NME ($60.75 million recovery); and TCI ($26.5 million recovery).

He is admitted to practice in California and New York. He is admitted to practice in California and New York.

HELEN J. HODGES received her Bachelor of Science degree in accounting from Oklahoma State University in 1979. While attending Oklahoma State, Ms. Hodges obtained her private pilot's license and in 1980 was a member of Oklahoma State's flying team, which won top honors at the National Intercollegiate Flying Association competition. Ms. Hodges became a certified public accountant in 1982 and received her Juris Doctor degree from the University of Oklahoma in 1983, where she was the Managing Editor of the Law Review. She was admitted to the State Bars of Oklahoma in 1983 and California in 1987.

Before partnership with Lerach Coughlin, Ms. Hodges was a partner with Milberg Weiss. Formerly, she was staff accountant with Arthur Andersen & Co. and served as the law clerk for the *Penn Square* cases in the Western District of Oklahoma. Ms. Hodges has been involved in numerous securities class actions, including *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *National Health Labs*, which was settled for $64 million; and *Thurber v. Mattel*, which was settled for $122 million.

REED R. KATHREIN, prior to his partnership with Lerach Coughlin, was partner of the San Francisco office of Milberg Weiss, which he opened in 1994. For the past 15 years, he has focused his practice on complex and class action litigation, principally involving securities or consumer fraud. He was lead counsel in numerous state as well as federal court actions around the country, including co-lead counsel in the *In re 3Com Sec. Litig.* which settled for $259 million.

Mr. Kathrein publishes and lectures extensively in the fields of litigation, consumer and securities law, class actions, and international law. He annually co-chairs the Executive Enterprises program for corporate officers and counsel entitled, "Dealing With Analysts and the Press." He has spoken to the American Bar Association (ABA), the American Business Trial Lawyers Association (ABTLA), the Consumer Attorneys of California (CAOC), the Practicing Law Institute (PLI), the Securities Law Institute, the National

Investor Relations Institute (NIRI), state and local bar groups, private seminar organizations and corporations. He testified before the Senate Foreign Relations Committee on behalf of the American Bar Association in favor of advice and consent to ratification of treaties on international sales, arbitration, evidence and service of process. He testified before the California Assembly and Senate Committees on Y2K litigation, the unfair trade practice act and changes in the business judgment rule. He actively fought the passage of the Private Securities Litigation Reform Act of 1995 (PSLRA) and the Securities Litigation Uniform Standard Act of 1998. Most recently, he worked behind the scenes to shape the Sarbanes-Oxley Act of 2002 on corporate responsibility and accountability.

He served as chairman of the Private International Law Committee of the American Bar Association from 1984-1990, as a director and officer of the International Business Counsel Mid-America from 1983-1988, where he also chaired the policy committee. He acted as an advisor to the U.S. State Department's Advisory Committee on Private International Law from 1984-1990. He is a member of the executive committee of the National Association of Securities and Commercial Law Attorneys (NASCAT), and since 1998 has been a member of the Board of Governors of the Consumer Attorneys of California (CAOC).

Formerly, Mr. Kathrein was a partner in the Chicago law firm Arnstein & Lehr, where he represented national and international corporations in litigation involving antitrust, commercial, toxic tort, employment and product and public liability disputes. Mr. Kathrein graduated from the University of Miami (B.A. *cum laude*, 1974; J.D. 1977) where he served as Editor-in-Chief of the *International Law Journal*.

He is admitted to the Bar of the States of Illinois (1977), Florida (1978) and California (1989).

ERIC ALAN ISAACSON received his A.B. *summa cum laude* from Ohio University in 1982. He earned his J.D. with high honors from the Duke University School of Law in 1985 and was elected to the Order of the Coif. Mr. Isaacson served as a Note and Comment Editor for the *Duke Law Journal*, and in his third year of law school became a member of the moot court board. After graduation Mr. Isaacson clerked for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit.

In 1986, Mr. Isaacson joined the litigation department of O'Melveny & Myers, where his practice included cases involving allegations of trademark infringement, unfair business practices and securities fraud. He served as a member of the trial team that successfully prosecuted a major trademark-infringement action.

Prior to his partnership at Lerach Coughlin, Mr. Isaacson was a partner at Milberg Weiss, where he took part in prosecuting many securities-fraud class actions. He was a member of the plaintiffs' trial team in *In re Apple Computer Sec. Litig.*, No. C 84-20198(A)-JW (N.D. Cal.), for example.

Since the early 1990s, his practice has focused on appellate matters in cases before the California Courts of Appeal, the California Supreme Court, the United States Court of Appeals and the United States Supreme Court. *See, e.g., Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999); *Warshaw v Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996); *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995); *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994).

Mr. Isaacson's publications include: "Pleading Scienter Under Section 21D(b)(2) of the Securities

Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995" (co-authored with William S. Lerach), 33 San Diego Law Review 893 (1996); "Securities Class Actions in the United States" (co-authored with Patrick J. Coughlin), in William G. Horton & Gerhard Wegen, editors, *Litigation Issues in the Distribution of Securities: An International Perspective* 399 (Kluwer International/International Bar Association, 1997); "Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's *Chantal* Decision" (co-authored with Alan Schulman & Jennifer Wells), *Class Action & Derivative Suits*, Summer 1996, at 14; "Commencing Litigation Under the Private Securities Litigation Reform Act of 1995" (co-authored with Patrick J. Coughlin), in Jay B. Kasner & Bruce G. Vanyo, editors, *Securities Litigation 1996* 9-22 (Practising Law Institute 1996); "The Flag Burning Issue: A Legal Analysis and Comment," 23 Loyola of Los Angeles Law Review 535 (1990).

Mr. Isaacson has received recognition for his *pro bono* work from the California Star Bar and the San Diego Volunteer Lawyer Program. He has served as a member of the Board of Directors of the San Diego Foundation for Change since January of 2004.

Mr. Isaacson has been a member of the California Bar since 1985. He also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, and before all federal district courts in the State of California.

MARK SOLOMON is a partner at Lerach Coughlin. Prior to joining Lerach Coughlin, Mr. Solomon was a partner at Milberg Weiss Bershad Hynes & Lerach LLP. He earned his law degrees from Trinity College, Cambridge University, England (1985), Harvard Law School (1986) and the Inns of Court School of Law, England (1987). He is admitted to the bars of England and Wales (Barrister), Ohio and California, as well as to various U.S. Federal District and Appellate Courts.

Before attending Trinity College in England, Mr. Solomon served as a British police officer. After qualifying as a barrister, and prior to joining Milberg Weiss in September 1993, he practiced at the international firm Jones Day Reavis & Pogue in Cleveland, Ohio followed by practice at the Los Angeles office of New York's Stroock & Stroock & Lavan. At those firms Mr. Solomon's representations included the defense of securities fraud and other white-collar crimes, antitrust, copyright, commercial and real estate litigation and reinsurance arbitration. While practicing in Los Angeles, Mr. Solomon took to trial, and won, complex commercial contract and real estate actions in respectively, the Orange County and Los Angeles Superior Courts.

Since 1993, Mr. Solomon has spearheaded the prosecution of many significant cases. He has obtained substantial recoveries and judgments through settlement, summary adjudications and trial. He litigated, through trial, *In re Helionetics,* No. SACV-94-1069-AHS(EEx) (C.D. Cal.), where he and his trial partner, Paul Howes, won a unanimous $15.4 million jury verdict in November 2000. He has led the litigation of many other cases, among them *In re Informix Corp. Sec. Litig.,* No. C-97-1289-CRB (N.D. Cal.) ($142 million recovery); *Rosen, et al. v. Macromedia, Inc., et al,* No. 988526 (Cal. Super.Ct, County of San Francisco) ($48 million recovery); *In re Community Psychiatric Centers Sec. Litig.,* No. SACV-91-533-AHS(EEx) (C.D. Cal.) ($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.,* No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34

million recovery); *In re Tele-Communications, Inc. Sec. Litig.*, No. 97CV421 (Arapahoe Dist. Ct. Colo.) ($33 million recovery); *In re Home Theater Sec. Litig.*, No. SACV-95-858-GLT(EEx) (C.D. Cal.) ($22.5 million judgment); *In re Gupta Corporation Sec. Litig.*, No. C-94-1517-FMS (N.D. Cal.) ($15 million recovery); *In re Radius Sec. Litig.*, No. C-92-20597-RPA(EAI) (N.D. Cal.); *In re SuperMac Technology, Inc. Sec. Litig.*, No. C-94-20206-RPA(PVT) (N.D. Cal.) (combined recovery of $14 million); *Markus, et al. v. The North Face, et al.*, No. 99-2-473 (D.C. Colo.) ($12.5 million recovery); *In re Brothers Gourmet Coffees, Inc. Sec. Litig.*, No. 95-8584-CIV-Ryskamp (C.D. Fla.) ($9 million recovery); *Anderson, et al. v. EFTC, et al.*, No. 98-CV-962 (County of Weld District Ct., Colo.) ($9 million recovery); *Sharma v. Insignia*, No. CV757058 (Super. Ct., Santa Clara County) ($8 million recovery); *In re Medeva Sec. Litig.*, No. 93-4376-KN(AJWx) (C.D. Cal.) ($6.75 million recovery); *In re Flir Systems Inc. Sec. Litig.*, No. CV-00-360-HA (D. Or.) ($6 million recovery); *In re Nike, Inc. Sec. Litig.*, No. CV-01-332-KI (D. Or.) ($8.9 million recovery); *Hayley, et al. v. Parker, et al.*, No. CV-02-9721-RGK(PLAx) (D.C. Cal.) ($16.4 million recovery).

Mr. Solomon chaired the American Bar Association Directors and Officers Liability Sub-Committee and the Accountants Liability Sub-Committee between 1996 and 2001.

RANDI D. BANDMAN is a partner at Lerach Coughlin whose responsibilities include the management of the Los Angeles office and involvement in the firm's Institutional Investor Department. Ms. Bandman received her Juris Doctor degree from the University of Southern California in 1989 and her Bachelor of Arts in English from the University of California at Los Angeles in 1986. Having been associated with the Lerach Coughlin lawyers for more than 12 years, Ms. Bandman's practice has focused on securities

and consumer class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as aircraft manufacturing, battery technology, and computer software. These cases, which yielded significant recoveries for the plaintiffs, were against such companies as National Health Labs ($64 million); Sybase ($28.5 million); Unocal ($47.5 million); Sunrise Medical ($20 million); Valence ($20 million); and Coeur d'Alene ($13 million). Ms. Bandman was responsible for running one of the largest class actions in the country over a four-year period against the Boeing Company which settled for more than $90 million. Ms. Bandman was also an early member of the team that directed the prosecution of the cases against the tobacco companies.

Using her extensive experience in asserting claims for injured investors, Ms. Bandman lectures and advises union and public funds both domestically and internationally on their options for seeking redress for losses due to fraud sustained in their pension portfolios. Ms. Bandman is currently interfacing with numerous public and union funds including those workers for various States and Municipalities, and the Entertainment Industry, as well as trades such as Sheetmetal, Construction, Airconditioning, Food and Hospitality, Plumbers, and Teamsters. Ms. Bandman is also representing shareholders in a class action against Vivendi Universal for allegedly misrepresenting their financial crisis to investors while engaging in a multi-billion dollar acquisition spree.

Ms. Bandman has served as a lecturer on numerous matters concerning securities litigation to attorneys for continuing legal education, as well as a panelist for the Practicing Law Institute.

THEODORE J. PINTAR received his B.A. from the University of California at Berkeley in 1984 where

he studied Political Economies of Industrial Societies. Mr. Pintar received his J.D. from the University of Utah College of Law in 1987 where he was Note and Comment Editor of the *Journal of Contemporary Law* and the *Journal of Energy Law and Policy*. Formerly, Mr. Pintar was associated with the firm of McKenna, Conner & Cuneo in Los Angeles, California, where he specialized in commercial and government contracts defense litigation. Mr. Pintar is co-author of "Assuring Corporate Compliance with Federal Contract Laws and Regulations," Corporate Criminal Liability Reporter, Vol. 2 (Spring 1988).

Prior to partnership with Lerach Coughlin, Mr. Pintar was a partner with Milberg Weiss, where he worked for 14 years. Mr. Pintar participated in the successful prosecution of numerous securities fraud class actions and derivative actions, including participation on the trial team in *Knapp v. Gomez*, No. 87-0067-H(M) (S.D. Cal.), which resulted in a plaintiff's verdict. Mr. Pintar also participated in the successful prosecution of numerous consumer class actions, including (i) actions against major life insurance companies such as Manulife ($555 million settlement value) and Principal Life Insurance Company ($379 million settlement value), (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement), and (iii) actions against Columbia House ($55 million settlement value) and BMG ($10 million settlement value), a direct marketer of CDs and cassettes.

Mr. Pintar is a member of the State Bar of California and the San Diego County Bar Association.

JOY ANN BULL received her J.D., *magna cum laude*, from the University of San Diego in 1988. She was a member of the University of San Diego National Trial Competition Team and *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions. For nine years, Ms. Bull has specialized in negotiating and documenting complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole Shareholders' Litig.*, No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. American Express*, No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL 1030 (M.D. Fla.) (cash and benefits package over $90 million plus injunctive relief); *In re LifeScan, Inc. Consumer Litig.*, No. C98-20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v. NCAA*, No. 94-2392-KHV (D. Kan.) ($54.4 million cash recovery); *In re Glen Ivy Resorts, Inc.*, No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

BONNY E. SWEENEY received her Bachelor of Arts degree from Whittier College in 1981 and a Master of Arts degree from Cornell University in 1985. She graduated *summa cum laude* from Case Western Reserve University School of Law in 1988, where she served as an editor of the Law Review and was elected to the Order of the Coif.

Ms. Sweeney was with Milberg Weiss for eight years and was a partner prior to her partnership with Lerach Coughlin. Formerly, she practiced in the Litigation Department of the Boston law firm of Foley, Hoag & Eliot. Ms. Sweeney specializes in antitrust and unfair competition litigation. Ms. Sweeney participated in the prosecution of several antitrust and unfair competition cases

that have resulted in significant settlements, including *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.), which settled for $1.027 billion in 1997, the largest antitrust settlement ever; *In re Airline Ticket Comm'n Antitrust Litig.*, MDL 1058 (D. Minn.), which settled for more than $85 million in 1996; and *In re LifeScan, Inc. Consumer Litig.*, No. C-98-20321-JF(EAI) (N.D. Cal.), which settled just before trial for $45 million. Ms. Sweeney was also one of the trial counsel for a class of coaches in *Hall v. NCAA*, No. 94-2392-KHV (D. Kan.), an antitrust class action that resulted in a $67 million jury verdict in three consolidated cases after a three-week trial.

Ms. Sweeney has served on the Executive Committee of the Antitrust and Unfair Competition Law Section of the California State Bar since 2002, and is currently Vice Chair of Antitrust Programs. She also lectures on California's Unfair Competition Law and antitrust topics. In 2003, Ms. Sweeney was a recipient of the Wiley M. Manuel Pro Bono Services Award and the San Diego Volunteer Lawyer Program Distinguished Service Award.

Ms. Sweeney is admitted to practice in California and Massachusetts, and is a member of the Antitrust Section of the American Bar Association, the Antitrust and Unfair Competition Section of the California Bar Association and the San Diego County Bar Association.

TRAVIS E. DOWNS III received his B.A. in History, *cum laude*, from Whitworth College in 1985, and received his law degree from University of Washington School of Law in 1990. Mr. Downs specializes in securities class actions and shareholders' derivative actions. Formerly a partner with Milberg Weiss, he was responsible for the prosecution and recovery of significant

settlements in the following cases: *In re Informix Corp. Sec. Litig.*, No. C-97-1289-CRB (N.D. Cal.) ($137.5 million recovery); *In re MP3.com, Inc. Sec. Litig.*, No. 00-CV-1873-K(NLS) (S.D. Cal.) ($36 million recovery); *In re Conner Peripherals, Inc. Sec. Litig.*, No. C-95-2244-MHP (N.D. Cal.) ($26 million recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*, No. 97-4362-SI (N.D. Cal.) ($20.3 million recovery); *In re J.D. Edwards Sec. Litig.*, No. 99-N-1744 (D. Colo.) ($15 million recovery); *In re Sony Corporation Sec. Litig.*, No. CV-96-1326-JGD(JGx) (C.D. Cal.) ($12.5 million recovery); *In re Veterinary Centers of America, Inc. Sec. Litig.*, No. 97-4244-CBM(MCx) (C.D. Cal.) ($6.75 million recovery); *In re JDN Realty Corp. Derivative Litig.*, No. 00-CV-1853 (N.D. Ga.) (obtained extensive corporate governance enhancements); *In re Hollywood Entertainment Corp. Sec. Litig.*, No. 95-1926-MA (D. Or.) ($15 million recovery); *In re Legato Systems, Inc. Derivative Litig.*, No. 413050 (Cal. Super. Ct., San Mateo Cty.) (obtained extensive corporate governance enhancements); *In re Flagstar Companies, Inc. Derivative Litig.*, No. 736748-7 (Cal. Super. Ct., Alameda County) (obtained extensive corporate governance enhancements). Mr. Downs is a member of the Bar of the State of California and is also admitted to practice before the district courts of the Central, Northern and Southern Districts of California. He is also a member of the American Bar Association and the San Diego County Bar Association. Mr. Downs lectures and participates in professional education programs.

ALBERT H. MEYERHOFF has specialized for more than 30 years in labor, civil rights and environmental law. After graduating from Cornell Law School in 1972, he joined California Rural Legal Assistance representing farm workers and the rural poor. These efforts included the landmark case of *CAAP v. Regents of the University of California*, challenging the use of public research funds to promote agricultural

mechanization. He also litigated a host of state and federal civil rights cases involving racial discrimination in employment, voting and public education, including *Maria P. v. Riles*, invalidating a California statute excluding undocumented children from California schools. In 1981, Mr. Meyerhoff joined the Natural Resources Defense Council (NRDC), a national environmental organization, as Director of their Public Health Program. He specialized in litigation concerning toxic substances and occupational health and brought successful challenges to the continued use of cancer-causing pesticides (*Les v. Reilly*), the exclusion of women of "child-bearing age" from the workplace (*Love v. Thomas*) and the California Governor's failure to comply with Proposition 65, an anti-toxics law (*AFL-CIO v. Deukmejian*). During his 17 years with NRDC, Mr. Meyerhoff testified more than 50 times before the U.S. Senate and House of Representatives.

Mr. Meyerhoff has authored numerous articles for scholarly and general publications, including the *Stanford Law Review*, *EPA Journal*, *Environmental Law Quarterly*, *The New York Times*, *The Washington Post* and *Los Angeles Times*; has appeared regularly on such programs as CBS News 60 Minutes, ABC 20/20, NBC Dateline, Good Morning America, The Today Show and The NewsHour with Jim Lehrer; and has been an invited speaker at the Harvard Business School, the National Academy of Sciences, the American Academy of Sciences and the AFL-CIO.

Since 1998, Mr. Meyerhoff has been lead counsel in several labor and environmental cases, including *UNITE v. The Gap*, contesting the sale of garments manufactured under sweatshop conditions in the Commonwealth of the Mariana Islands, and *Public Citizen v. US DOT*, challenging cross border trucking from Mexico to conform to

NAFTA but in violation of U.S. environmental laws.

Mr. Meyerhoff recently was selected "Trial Lawyer of the Year" by Trial Lawyers for Public Justice and a lifetime achievement award from the ACLU.

G. PAUL HOWES, after Marine Corps Vietnam service, received his B.A. with distinction from the University of New Mexico, was elected to Phi Beta Kappa and Phi Kappa Phi, and was the tympanist for the New Mexico Symphony Orchestra. He received his J.D. and M.A. in Public Administration from the University of Virginia. He served as a Special Assistant to the Director of the FBI, Judge William H. Webster, and then as a law clerk to Judge Roger Robb, United States Circuit Court of Appeals for the District of Columbia Circuit. He was an ABC News correspondent for the Washington Bureau and then served for 11 years as an Assistant U.S. Attorney for the District of Columbia, primarily prosecuting complex drug-organization homicides. He is a member of the New Mexico, District of Columbia, and California bars.

SPENCER A. BURKHOLZ received his B.A. degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his law degree from University of Virginia School of Law in 1989. Mr. Burkholz specializes in securities class actions. A former partner of Milberg Weiss, he has recovered settlements in the following recent cases: *3Com* ($259 million); *Vesta Insurance* ($78 million); *Samsonite* ($24 million); *Emulex* ($39 million); *Mossimo* ($13 million); *Triteal* ($13.8 million); *Price Company* ($15 million); *Stratosphere Corp.* ($9 million); and *IMP* ($9.5 million). Mr. Burkholz was also on the trial team in *Long v. Wells Fargo*. Mr. Burkholz is currently representing large public and multi-employer pension funds

seeking to recover for their investments in WorldCom bonds. Mr. Burkholz is a member of the California bar and has been admitted to practice in numerous federal courts throughout the country.

**TIMOTHY G. BLOOD** graduated *cum laude* and with honors in economics from Hobart College in 1987 and the National Law Center of George Washington University in 1990. He was elected to Phi Beta Kappa, Omicron Delta Epsilon (economics) and the Moot Court Board (first year honors).

Prior to partnership with Lerach Coughlin, Mr. Blood was a partner with Milberg Weiss. Mr. Blood specializes in consumer fraud and unfair competition litigation with a sub-specialty in actions brought by policyholders against life and property and casualty insurers for deceptive sales practices, racial discrimination and systematic failures in claims adjustment. Mr. Blood has been involved in a number of cases that have resulted in significant settlements, including *McNeil v. American General Life & Accident Insurance Company* ($234 million), *Lee v. USLife Corporation* ($148 million), *Garst v. Franklin Life Insurance Company* ($90.1 million), *In re General American Sales Practices Litigation* ($67 million), *Williams v. United Insurance Company of America* ($51.4 million); and *Sternberg v. Apple Computer, Inc.* ($50 million).

Mr. Blood is admitted to practice in California and in the U.S. Courts of Appeals for the Fifth, Sixth, Eighth, Ninth and Eleventh Circuits and the U.S. District Courts for the Southern, Central, Eastern and Northern Districts of California. He is a member of the San Diego County and American Bar Associations, the State Bar of California, the Association of Business Trial Lawyers, the Association of Trial Lawyers of America and the Consumer Attorneys of California.

**ARTHUR C. LEAHY** graduated with a B.A. in Business from Point Loma College in 1987. In 1990, Mr. Leahy graduated *cum laude* and received a J.D. from the University of San Diego School of Law, where he served as Managing Editor of the Law Review. While in law school, Mr. Leahy authored an article published in the *San Diego Law Review* and other articles published in another Law Journal. In addition, he served as a judicial extern for the Honorable J. Clifford Wallace of the U.S. Court of Appeals for the Ninth Circuit. After law school, Mr. Leahy served as a judicial law clerk for the Honorable Alan C. Kay of the U.S. District Court for the District of Hawaii.

Prior to partnership with Lerach Coughlin, Mr. Leahy was a partner with Milberg Weiss where for eight years he worked on securities fraud and consumer class actions in which his clients recovered millions of dollars. Mr. Leahy is a member of the California Bar, and has been admitted in numerous federal courts throughout the country.

**FRANK J. JANECEK, JR.** received his Bachelor of Science degree in Psychology from the University of California at Davis in 1987, and his Juris Doctor degree from Loyola Law School in 1991. He is admitted to the bar of the State of California, the district courts for all districts California, and to the U.S. Court of Appeals for the Sixth, Ninth and Eleventh Circuits. Prior to joining Lerach Coughlin, Mr. Janecek was a partner with Milberg Weiss, where, for 11 years he practiced in the area of consumer, Proposition 65, taxpayer and tobacco litigation. He has participated as a panelist and a speaker in continuing legal education programs relating to California's Unfair Competition laws, public

enforcement tobacco litigation and challenging unconstitutional taxation schemes.

Mr. Janecek litigated several Proposition 65 actions, including *People ex. rel. Lungren v. Superior Court*, 14 Cal. 4th 294 (1996), which was jointly prosecuted with the Attorney General's office. These actions resulted in the recovery of more than $10 million in disgorgement and/or civil penalties and warnings to consumers of their exposure to cancer causing agents and reproductive toxins. Mr. Janecek chaired several of the litigation committees in California's tobacco litigation which resulted in the $25.5 billion recovery for California and its local entities.     Mr. Janecek also handled a constitutional challenge to the State of California's Smog Impact Fee, in the case *Ramos v. Department of Motor Vehicles*, No. 95AS00532 (Sacramento Super. Ct.). As a result of the *Ramos* litigation, more than a million California residents received full refunds, plus interest, totaling $665 million.

Mr. Janecek is the co-author with Patrick J. Coughlin of "A Review of R.J. Reynolds' Internal Documents Produced in *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 - The Case that Rid California and the American Landscape of 'Joe Camel'" (January 1998), which, along with more than 60,000 internal industry documents, was released to the public through Congressman Henry Waxman.  He is also the author of "California's Unfair Competition Act and Its Role in the Tobacco Wars" (Fall 1997). Mr. Janecek is a member of the American Bar Association, the California Bar Association, the San Diego County Bar Association and the Consumer Attorneys of California and San Diego.

DAVID J. GEORGE earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, Summa Cum Laude.  Mr. George then graduated at the top of his class at the University of Richmond School of Law.  At the University of Richmond, Mr. George was a member of Law Review, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of his three years there and outstanding graduate.

Before joining Lerach Couglin , he was a partner in the Boca Raton office of Geller Rudman, PLLC. While at Geller Rudman, Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including *In re Cryo Cell International, Inc. Securities Litigation* (M.D. Fla.), *In re Gilead Sciences Securities Litigation* (N.D. Cal.) and *Mobility Electronics Securities Litigation* (D. Ariz.). Mr. George has also acted as lead counsel in numerous consumer class actions. Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States.   During that time Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters, non-compete litigation, fraud claims, and real estate based litigation matters.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida.  He is currently or has been a member of the American Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

SANFORD SVETCOV is a partner with the Appellate Practice Group of Lerach Coughlin. He was formerly a partner with Milberg Weiss. He

has briefed and argued more than 300 appeals in state and federal court, including *Braxton v. Municipal Court*, 10 Cal. 3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1977) (civil rights); *Parker Plaza v. UNUM Insurance*, 941 F.2d 349 (5th Cir. 1991) (real estate); *Catellus v. U.S.*, 34 F.3d 748 (9th Cir. 1994) (CERCLA); *U.S. v. Hove*, 52 F.3d 233 (9th Cir. 1995) (criminal law); *Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1999) (employment law, same gender sexual harassment); *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (securities fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (civil rights); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (securities fraud).

Mr. Svetcov's professional appellate litigation experience includes securities fraud litigation, CERCLA, CEQA, commercial litigation, Clean Water Act, Civil Rights Act litigation, toxic torts, federal criminal law, California writ practice, employment law and ERISA.

Prior to joining Milberg Weiss in July 2000, Mr. Svetcov was a partner with the firm of Landels Ripley & Diamond, LLP, in San Francisco, from 1989 to 2000. His extensive legal experience includes service as: Chief, Appellate Section, U.S. Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco, 1981-1984; Chief Assistant U.S. Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, U.S. Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

Mr. Svetcov is certified as a Specialist in Appellate Practice by the State Bar of California Board of Legal Specialization. He was selected by the Attorney General for the Department of Justice's John Marshall Award for Excellence in Appellate Advocacy in 1986 and is a member and past President (1998) of the American Academy of Appellate Lawyers, and a member of the California Academy of Appellate Lawyers.

In 1999, Chief Justice Rehnquist appointed Mr. Svetcov to a three-year term on the Federal Appellate Rules Advisory Committee. He is also an ex-officio member of the Ninth Circuit Rules Advisory Committee on Rules and Internal Operating Procedures. His other memberships and service commitments to the legal profession include the California Academy of Appellate Lawyers; the Bar Association of San Francisco (Appellate Courts section); the American Bar Association (Appellate Judges Conference) Committee on Appellate Practice; Northern California Federal Bar Association, Board of Directors.

Mr. Svetcov earned his B.A., *cum laude*, from Brooklyn College in 1961 and his J.D. from the University of California, Berkeley, in 1964. He is a member of the Bars of the State of California; the U.S. Supreme Court; the Court of Appeals, Fifth, Eighth, Ninth and Eleventh Circuits; and the U.S. District Court, Northern District of California.

For two decades, he has been active as a teacher and lecturer at continuing legal education programs, including those of the ABA Appellate Practice Institutes (1990-2000); the Ninth Circuit Federal Bar Association Appellate Practice Seminar; and the N.I.T.A. Appellate Advocacy Seminar, and Fifth Circuit Bar Association Appellate Practice Seminars (1991-1999). He has served as an adjunct professor at Hastings College of Law and an instructor in Appellate Advocacy at the U.S. Attorney General's Advocacy Institute (1980-1989).

Sandy Svetcov is also active in community affairs. He has been a member of the San Francisco Jewish Community Relations Council since 1982, its president from 1991-1992, and during the years 1993-1995, he also served on the Northern California Hillel Council.

MICHAEL J. DOWD graduated from Fordham University, *magna cum laude,* in 1981 with a B.A. in History and Latin. While at Fordham, he was elected to Phi Beta Kappa. He earned his law degree in 1984 from the University of Michigan School of Law and entered private practice in New York that same year. He was admitted to practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant U.S. Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. He is a recipient of the Director's Award for Superior Performance as an Assistant U.S. Attorney. Mr. Dowd was formerly a partner with Milberg Weiss.

DAVID C. WALTON earned his B.A. in Accounting from the University of Utah and his J.D. from the University of Southern California Law Center in 1993. While there, he was a staff member of the *Southern California Law Review* and a member of the Hale Moot Court Honors Program.

Mr. Walton was formerly a partner with Milberg Weiss where he worked for ten years prior to joining Lerach Coughlin. He is a member of the Bar of California. Mr. Walton, a Certified Public Accountant (California 1992) and Certified Fraud Examiner, who is also fluent in Spanish, focuses on class actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, Informix, HealthSouth, Dynegy and Dollar General. In 2003-2004, Mr.

Walton served as a member of the California Board of Accountancy which is responsible for regulating the accounting profession in California.

RANDALL H. STEINMEYER earned his undergraduate degree from the University of Southern California (B.S., 1993) and his law degree from Hamline University School of Law (J.D., 1996 *cum laude*), where he was a member of the *Hamline Law Review*. He is the author of "The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings," 281 Practicing Law Institute (1998). Prior to joining Lerach Coughlin, Mr. Steinmeyer was with Milberg Weiss for five years. Formerly, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a member of the bar of Minnesota and the U.S. District Court for the District of Minnesota. Mr. Steinmeyer is a former securities broker and held a Series 7 license with the National Association of Securities Dealers.

In 2003, he was a guest lecturer at Oxford University (UK) on the impact of corporate and broker dealer fraud on the investment community. Prior to joining Lerach Coughlin, Mr. Steinmeyer was a partner with Milberg Weiss. He also sits on the Board of Directors of the Hedge Fund Association. He has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors. Prior to joining Milberg Weiss, Mr. Steinmeyer was appointed lead counsel in several large and complex class actions which resulted in the recovery of tens of millions of dollars for aggrieved investors. Mr. Steinmeyer's reported cases include: *Ganesh LLC v. Computer Learning Centers,* 1998 WL 892622

(E.D. Va. 1998); *Gart v. Electroscope*, 1998 WL 757970 (D. Minn. 1998); *Chill v. Green Tree Financial, Inc.*, 181 F.R.D. 398 (D. Minn. 1998); and *In re Transcript Int'l Sec. Litig.*, 1999 U.S. Dist. LEXIS 17540 (D. Neb. 1999).

**JEFFREY W. LAWRENCE** received his B.A. *magna cum laude* from Tufts University in 1976. In 1979, Mr. Lawrence graduated *magna cum laude* with a J.D. from Boston School of Law. He was a staff member of the *Boston University Law Review* from 1977-78, and its editor from 1978-79.

From September 1979 to September 1980, Mr. Lawrence served as law clerk to the Honorable Walter Jay Skinner, U.S. District Court, District of Massachusetts. He was admitted to the Massachusetts bar in 1979, and to the Bar of California in 1991. He is licensed to practice before the U.S. Court of Appeals, First and Ninth Circuits, the U.S. District Court, District of Massachusetts, and the Northern District of California.

From 1983 to 1994, Mr. Lawrence was an Assistant U.S. Attorney, Criminal Division, where he obtained extensive trial experience in white collar crimes, ranging from money-laundering to stock fraud. He was formerly a partner with Milberg Weiss, where he worked for eight years.

**HENRY ROSEN** obtained his B.A. in 1984 from the University of California, after attending American College in Paris. In 1988, Mr. Rosen received his J.D. from the University of Denver, where he was Editor-in-Chief for the *University of Denver Law Review*. Mr. Rosen served as Judicial Law Clerk to the Honorable Jim R. Carrigan, U.S. District Court, District of Colorado, from 1989 to 1990. He is a member of the firm's Hiring Committee and is also a member of the firm's Technology Committee which focuses on applications to digitally manage documents produced during litigation and internally generate research files.

Prior to joining Lerach Coughlin, Mr. Rosen had 13 years experience prosecuting securities fraud actions with Milberg Weiss on behalf of individual clients and investor classes. Major clients include Minebea Co., Ltd., a Japanese manufacturing company, represented in a securities fraud arbitration against a U.S. investment bank. Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions and has obtained hundreds of millions of dollars on behalf of defrauded investors. Prominent cases include: *In re Storagetek Sec. Litig.*, No. 92-B-750 (D. Colo.); *In re Access HealthNet Sec. Litig.*, Nos. SACV-96-1250-GLT(EEx) and No. SACV-97-191-GLT(EEx) (C.D. Cal.); *In re Valence Sec. Litig.*, No. C-95-20459-JW(EAI) (N.D. Cal.); *In re J.D. Edwards Sec. Litig.*, No. 99-N-1744 (D. Colo.); *In re Bergen Brunswig Sec. Litig.* and *Bergen Brunswig Capital Litig.*, No. SACV-99-1462-AHS(ANx) (C.D. Cal.); *In re Advanced Lighting Sec. Litig.*, No. 1:99CV8936 (N.D. Ohio); and *In re Safeskin Sec. Litig.*, No. 99cv454-BTM(LSP) (S.D. Cal.).

Mr. Rosen is admitted to the California bar (1991) and the Colorado bar (1988). He is a member of the State Bar of California, the American Bar Association (Litigation Section), the Association of Trial Lawyers of America, the California Trial Lawyers of America, California Trial Lawyers Association and the San Diego Trial Lawyers Association.

**RANDALL J. BARON** was born in Albuquerque, New Mexico in 1964. Mr. Baron received his B.A. from University of Colorado at Boulder in 1987 and his J.D. *cum laude* from University of San Diego School of Law in 1990. He was a member of the *San Diego Law Review* from 1988-1989. Mr. Baron was admitted to the California Bar in 1990

and the Colorado Bar in 1993. Since 1997, Mr. Baron is licensed to practice in Colorado State Court as well as the U.S. District Court for the Southern, Northern and Central Districts of California, as well as the District of Colorado. Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. From 1990-1994, Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office where he investigated and prosecuted public corruption cases. Mr. Baron was formerly a partner with Milberg Weiss, where he worked for seven years prior to joining Lerach Coughlin. He specializes in securities litigation and actions for breach of fiduciary duty.

**EDWARD P. DIETRICH**, born White Plains, New York, October 14, 1961; admitted to bar, 1987, New York; 1989, U.S. District Court, Southern and Eastern Districts of New York; 1994, U.S. District Court, Northern District of California; 1995, California and U.S. District Courts, Central District of California; 1997, U.S. District Court, Southern and Eastern Districts of California, U.S. District Court, District of Arizona and U.S. Court of Appeals, Ninth Circuit. Education: Skidmore College (B.A., 1983), Phi Beta Kappa; George Washington University (J.D., 1986). Member, Moot Court Board.

**JACK REISE** earned his Bachelor of Arts degree in History from Binghamton University. He graduated cum laude from University of Miami School of Law where he was an Associate Editor on the University of Miami Inter-American Law Review and was also the recipient of the American Jurisprudence Book Award in Contracts.

Since he began practicing law, Mr. Reise has been devoted to protecting the rights of those who have been harmed by corporate misconduct. Mr. Reise started his legal career representing individuals suffering the debilitating affects of asbestos exposure back in the 1950s and 1960s.

Mr. Reise has since concentrated his practice on class action litigation, including securities fraud, shareholder derivative actions, consumer protection, unfair and deceptive insurance practices and antitrust. Prior to joining the firm, Mr. Reise was a partner at the law firm of Cauley Geller. He was also an associate with Milberg Weiss from 1998-2000.

A substantial portion of Mr. Reise's practice is devoted to representing shareholders in actions brought under the federal securities laws. He is currently serving as Lead Counsel in more than a dozen cases nationwide including *Abrams v. Van Kampen Funds*, No. 01 C 7538 (N.D. Ill.) (case involving a mutual fund that is charged with improperly valuating its net asset value), and *In re NewPower Holdings Securities Litigation*, No. 02 Civ. 1550 (CLB) (S.D.N.Y.), which recently settled with several of the defendants for $26 million.

Mr. Reise has been admitted to the Florida Bar since 1995. He is also admitted to practice before United States Courts of Appeals for the First, Fourth and Eleventh Circuits, as well as the Southern and Middle District Courts of Florida.

**PAMELA M. PARKER** received her B.A. degree in Political Science and French, with a concentration in International Politics, from the State University of New York at Binghamton, and was elected to Phi Beta Kappa. Ms. Parker received a J.D. degree from Harvard Law School *cum laude* in 1982. While at Harvard, Ms. Parker was an Articles Editor of the *Civil Rights/Civil Liberties Law Review*. After graduation, she served as a

law clerk to the Honorable Frank J. Battisti, Chief Judge of the U.S. District Court, Northern District of Ohio. Upon leaving the clerkship, Ms. Parker worked as an associate with the New York firm of Paul, Weiss, Rifkind, Wharton & Garrison. In 1988, Ms. Parker became associated with the New York firm of Lankenau, Kovner & Bickford, specializing in representation of publications, libel defense and First Amendment law.

Ms. Parker was formerly with Milberg Weiss for 13 years. As a partner there, her practice included appellate matters and environmental, consumer fraud and securities fraud litigation. Ms. Parker participated in the successful prosecution of several important actions including *In re The Exxon Valdez*, No. A89-095 (D. Alaska), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v. Great Western Bank, et al.*, No. CV-95-2100-I(RNBx) (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and which resulted in a settlement of $17.2 million, and *Does I, et al. v. The Gap, Inc., et al.*, No. 01 0031 (D. Northern Mariana Islands), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories. In July 2003, Ms. Parker was named Trial Lawyer of the Year by the Trial Lawyers for Public Justice, in recognition of her work on the case in the Northern Mariana Island.

Ms. Parker is a member of the Appellate Practice Group of Lerach Coughlin. She has worked on a variety of appellate matters before numerous courts, including the U.S. Courts of Appeal for the Fifth, Sixth, Ninth and Tenth Circuits, and the appellate courts of California, Alabama, Ohio and Tennessee. She is a Lawyer Representative to the Ninth Circuit Judicial Conference.

Ms. Parker is admitted to practice in California and New York. She has been an active member of the Federal Bar Association, the San Diego County Bar Association and the Lawyers Club of San Diego, and also holds memberships with the American Bar Association and California Women Lawyers. She sits on the Board of Directors for the Legal Aid Society of San Diego.

STEVEN W. PEPICH received his B.S. in Economics from Utah State University in 1980 and his J.D. from De Paul University in 1983. Mr. Pepich is admitted to practice before the Courts of California and the District Court for the Southern, Central, Eastern and Northern Districts of California. Formerly a partner with Milberg Weiss, Mr. Pepich has been engaged in a wide variety of civil litigation, including consumer fraud, mass tort, royalty, civil rights, human rights, ERISA and employment law actions, as well as many securities and corporate litigations. He was part of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers, for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million. Mr. Pepich has also participated in the successful prosecution of numerous securities fraud class actions, including *Gohler v. Wood*, No. 92-C-181 ($17.2 million recovery); *In re Advanced Micro Devices Sec. Litig.*, No. C-93-20662-RPA(PVT) ($34 million recovery); *In re Catalyst Semiconductor Sec. Litig.*, No. C-93-2096 ($15 million recovery); *In re Gupta Corporation Sec. Litig.*, No. C-94-1517 ($6 million recovery); *In re Louisiana-Pacific Corporation Sec. Litig.*, No. C-95-707 ($65 million recovery); and *In re Boeing Sec. Litig.*, No. C-97-1715Z ($92 million recovery). Mr. Pepich is a member of the American Bar Association, the San Diego Bar

Association and the Association of Business Trial Lawyers of San Diego. Mr. Pepich co-authored with William S. Lerach "Personal Liability Considerations of Officers and Directors in the Takeover Context," CEB, Business Law Institute, April 1986, and "New Diligence Considerations in the Context of the Federal Securities Laws," CEB Fourth Annual Securities Institute, May 1986.

LAURA ANDRACCHIO, prior to joining Lerach Coughlin, was a partner with Milberg Weiss Bershad Hynes & Lerach LLP. Her practice focuses primarily on litigation under the federal securities laws. Ms. Andracchio has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors. Most recently, Ms. Andracchio was a lead member of the trial team in *In re AT&T Corp. Securities Litigation,* which was tried in district court in New Jersey, and which settled after two weeks of trial for $100 million. Prior to trial, Ms. Andracchio was responsible for managing and litigating the case, which was pending for four years.

Ms. Andracchio received her Bachelor of Arts degree from Bucknell University in 1986, and her Juris Doctor with honors from Duquesne University School of Law in 1989. While at Duquesne, Ms. Andracchio was elected to the Order of Barristers and represented the Law School in the National Samuel J. Polsky Appellate Moot Court competition, in which she placed as a finalist, and in the regional Gourley Cup Trial Moot Court competition.

JOHN K. GRANT was born in Provo, Utah in 1961. Mr. Grant received his B.A. from Brigham Young University in 1988 and his J.D. from the University of Texas at Austin in 1990. Mr. Grant was admitted to the California bar in 1994.

KATHLEEN A. HERKENHOFF received a Bachelor of Arts in English Literature from the University of California at Berkeley in 1989, and received a law degree from Pepperdine University School of Law in 1993. While at Pepperdine, she received American Jurisprudence Awards in Constitutional Law and Agency-Partnership Law. After graduation from Pepperdine, Ms. Herkenhoff was an enforcement attorney with the U.S. Securities and Exchange Commission. Prior to joining Lerach Coughlin, she was a partner with Milberg Weiss. Ms. Herkenhoff is a 1993 admittee to the State Bar of California and has been admitted to practice before the U.S. District Courts for the Northern, Central, Eastern and Southern Districts of California. Ms. Herkenhoff has successfully prosecuted several complex securities class actions, most recently obtaining a $122 million settlement against Mattel, Inc. and several of its former officers and directors.

KIMBERLY C. EPSTEIN graduated with a Bachelor of Science in Business Administration from California State University at Hayward in 1988. She attended University of San Francisco School of Law where she was a joint J.D./MBA degree candidate and obtained her Juris Doctor in 1993. Ms. Epstein clerked in the Law and Motion Department of the San Francisco Superior Court for the Honorable William J. Cahill (Ret.). She was admitted to the California bar in 1993 and predominantly practices in the area of securities litigation. Prior to partnership with Lerach Coughlin, Ms. Epstein was a partner with Milberg Weiss where she began her employment in 1994. She is licensed to practice in the state of California and before the U.S. District Courts in Northern and Central California, Arizona, and the U.S. Court of Appeals, Ninth Circuit.

MICHELLE M. CICCARELLI represents workers, consumers and shareholders in a broad range of complex class-action litigations for securities fraud, fraudulent business practices, human rights abuses, labor and employment violations, as well as derivative litigation for breaches of fiduciary duties by corporate officers and directors. She is the editor of Lerach Coughlin's Corporate Governance Bulletin and Taking Action - Fighting Corporate Corruption, and the author of Pension Power: How Union Pension Funds Are Recovering Stolen Assets and Changing the Way Public Companies Do Business and "Improving Corporate Governance through Litigation Settlements" (Corporate Governance Review, 2003). She is a frequent lecturer on securities fraud, corporate governance, and other issues of import to institutional investors.

Prior to partnership with Lerach Coughlin, she was a partner at Milberg Weiss, where she participated in the successful prosecution of several important actions, including Does I, et al. v. The Gap, Inc. et al., No. 01-0031 (D N. Mariana Islands), in which she was one of the lead litigators, spending several months on Saipan working with clients, investigating claims, and obtaining discovery. The case was successfully concluded with a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories.

Formerly, she practiced in Kentucky in the area of labor and employment law. She was the co-editor of the Kentucky Employment Law Letter (1998) and co-author of "Wage and Hour Update" (Lorman 1998). She was also a regular lecturer for the Kentucky Cabinet for Economic Development.

She was a law clerk to the Hon. Sara Walter Combs, Kentucky Court of Appeals (1994-95) after obtaining her J.D. (University of Kentucky 1993). She is a member of the California and Kentucky bars, and is admitted to practice before the U.S. District Courts for both jurisdictions as well as the Sixth Circuit Court of Appeals.

JAMES I. JACONETTE was born in San Diego, California in 1967. Mr. Jaconette is one of three partners responsible for the day-to-day prosecution of In re Enron Corp. Securities Litigation (S.D. Tex.) and In re Dynegy, Inc. Securities Litigation (S.D. Tex.), on behalf of Lead Plaintiff The Regents of the University of California, and the large classes of public investors represented in those actions. Mr. Jaconette has litigated securities class actions and corporate governance/merger & acquisition-related actions since 1995. To date, cases in which Mr. Jaconette executed a primary litigating role, including In re Informix Corp. Securities Litigation (N.D. Cal.), resulted in approximately $300 million in settlements, judgments, or common funds that benefited investors.

Mr. Jaconette attended San Diego State University, receiving his B.A. with honors and distinction in 1989 and his M.B.A. in 1992. In 1995, Mr. Jaconette received his J.D. cum laude from Hastings College of the Law, University of California, San Francisco. Mr. Jaconette was the Mortar Board Vice President from 1988-1989, a member of the Hastings Law Journal from 1993-1994, and Associate Articles Editor for same from 1994-1995. Mr. Jaconette authored "The Fraud-on-the-Market Theory in State Law Securities Fraud Suits," Hastings Law Journal, Volume 46, August, 1995. In 1993, Mr. Jaconette served as law clerk to the Honorable Barbara J. Gamer, and in 1994, as extern to the Honorable William H. Orrick, Jr., District Judge.

**Sean M. Handler**, an associate of the firm, received his law degree, *cum laude*, from Temple University School of Law. Mr. Handler received his undergraduate degree from Colby College, with distinction in American Studies. He is licensed to practice law in Pennsylvania, and has been admitted to practice before the Eastern District of Pennsylvania.

Prior to joining Schiffrin & Barroway, Mr. Handler practiced at Reed Smith, LLP in Philadelphia. Mr. Handler concentrates his practice in the area of securities litigation, and serves in the firm's lead plaintiff department, which involves working with clients, litigation strategy and lead plaintiff issues. In this role, Mr. Handler has assisted partner Stuart Berman in enabling various of the firm's institutional and individual clients to serve as lead plaintiffs in important cases, such as *In re Tenet Healthcare Corp. Securities Litigation*, No. CV-02-8462-RSWL (C.D. Ca. 2002), *In re Interpublic Securities Litigation*, No. 02 Civ. 6527 (S.D.N.Y. 2002)), *State of New Jersey and Its Division of Investment v. Sprint Corporation, et al.* No. 03-2071-JWL (D. Kan. 2003), *In re Ariba Inc. Securities Litigation*, Master File No. 03-00277 JF (N.D. Cal. 2003), *Richard Wagner v. Barrick Gold Corporation, et al.*, No. 1:03cv4302 (S.D.N.Y. 2003), *In re Vaxgen Inc. Securities Litigation*, No. C 03-01129 JSW (N.D. Cal. 2003), *In re American Business Financial Services, Inc.*, Civil Action No. 04-0265 (E.D. Pa. 2004), *Anne Brumbaugh, et al. v. Wave Systems Corporation, et al.*, No. 04-30022-MAP (D. Mass. 2004), and *In re Vaso Active Pharmaceuticals Securities Litigation*, No. 04-10708-RCL (D. Mass. 2004).

**John A. Kehoe**, an associate of the firm, received a B.A. from Depaul University in 1986, and a Master's degree in Public Administration from the University of Vermont in 1994. He received his J.D., *magna cum laude*, from Syracuse University College of Law in 1997, where he was an Associate Editor of the Syracuse Law Review, an Associate Member of the Moot Court Board, and an alternate member on the National Appellate Team. Mr. Kehoe islicensed to practice law in the State of New York, and has been admitted to practice before the United States District Court for the Southern District of New York.

Prior to joining Schiffrin & Barroway, Mr. Kehoe had extensive securities litigation experience as an associate at Bernstein, Litowitz, Berger & Grossman, LLP, and prior to that, at Clifford Chance US LLP. Before attending law school, Mr. Kehoe worked as a police officer in Burlington and Brattleboro, Vermont, and served as the lead investigator in numerous felony and misdemeanor complaints. Mr. Kehoe concentrates his practice in the area of securities litigation, and has worked extensively with partner David Kessler on *In re Initial Public Offering Securities Litigation*, Master File No. 21 MC 92 (S.D.N.Y. Dec. 12, 2002)(SAS), currently pending in the Southern District of New York..

**Hal J. Kleinman**, an associate of the firm, received his law degree from The John Marshall Law School, and his undergraduate degree from Ithaca College. Mr. Kleinman is licensed in Illinois and Pennsylvania, and has been admitted to practice before the Northern District of Illinois, the Eastern District of Pennsylvania, the Court of Appeals for the Seventh Circuit, the Court of Appeals for the Third Circuit, and the United States Court of Claims. Prior to joining Schiffrin & Barroway, Mr. Kleinman practiced law in Chicago, where his practice concentrated in the area of Complex Litigation, Mass Torts and Class Actions. Mr. Kleinman was a member of the law and briefing committee that successfully obtained class certification in *In re Hartmarx Securities Litigation*, United States District Court for the Northern District of Illinois, Case No. 01 C 7832. In addition, he was appointed to the Class Counsel Management Committee in *Cress, et al. v. Sara Lee Corporation*, Circuit Court of

Cook County, Illinois, Case no. 98 L 15072. For his work in this matter, Mr.Kleinman was asked to be a guest lecturer at the University of Chicago law School's Class Action Controversies Seminar and to discuss the Sara Lee litigation. He also was responsible for representing hundreds of clients in various Mass Torts including MDL-1431, *In re Baycol Products Liability Litigation*; MDL-1373, *In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liability Litigation*; MDL-1203, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*; and MDL-926, *In re Silicone Gell Breast Implants Product Liability Litigation*. Mr. Kleinman concentrates his practice in the area of Mass Torts.

**Eric Lechtzin**, an associate of the firm, received his law degree from the Temple University School of Law in 1991. Mr. Lechtzin received his undergraduate degree in Political Science and Economics, *magna cum laude*, from Temple University where he received Phi Beta Kappa honors. Mr. Lechtzin is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Courts for Eastern District of Pennsylvania and the District of New Jersey.

Prior to joining Schiffrin & Barroway, Mr. Lechtzin was an associate with the firm of Grant & Eisenhofer, P.A., where his practice was concentrated in federal securities class actions and corporate governance litigation. Mr. Lechtzin spent the first ten years of his career at two large Philadelphia firms where he represented corporate and public sector clients in a wide range of complex commercial litigation including toxic torts, labor and employment, insurance, and environmental law. Mr. Lechtzin has extensive trial experience and has argued appeals before the Supreme Court of Pennsylvania and other appellate courts.

Mr. Lechtzin concentrates his practice with Schiffrin & Barroway in the area of securities class action litigation.

**Richard A. Maniskas**, an associate of the firm, received his law degree from Widener University School of Law, and received his undergraduate degree from the University of Pittsburgh. While in law school, Mr. Maniskas served as Internal Editor of the *Widener Journal of Public Law*. He is licensed to practice law in Pennsylvania and the District of Columbia, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Maniskas works in the firm's case development department.

**Tobias L. Millrood**, an associate of the firm, co-manages the mass tort department at Schiffrin & Barroway along with David Kessler. Mr. Millrood has been actively involved in mass tort litigation involving Prempro (Hormone Therapy), Vioxx, Fen-Phen, Baycol, Meridia, Thimerosal, Ephedra and Zyprexa. Mr. Millrood currently serves as Liaison Counsel in *In Re Hormone Therapy Litigation*, Philadelphia Court of Common Pleas. Mr. Millrood also serves on the Plaintiffs' Steering Committee in *MDL 1507 - In Re Prempro Products Liability* and is Chair of the Association of Trial Lawyers of America (ATLA) Hormone Therapy Litigation Group. In Baycol, Mr. Millrood served as a Co-Chair of the Expert Committee in *In Re Baycol Litigation*, Philadelphia Court of Common Pleas. In Meridia, Mr. Millrood is Co-Chair of the ATLA Meridia Litigation Group. He also served on the Executive Committee of *MDL 1481, In re Meridia Products Liability*. In Thimerosal, Mr. Millrood serves on the Executive Committee of the Omnibus Autism Proceedings before the National Vaccine Injury Compensation Program. In August, 2003, Mr. Millrood's article on Hormone Therapy was published in *Trial* magazine. Mr. Millrood speaks frequently at various seminars, on the topics of Mass Tort Litigation, Hormone Therapy, Meridia, the Ethics of Settling Mass Tort Cases and Electronic Discovery. Mr. Millrood is a former member of the Pennsylvania Trial

Lawyers Board of Governors and the Executive Committee of the Philadelphia Bar Association Young Lawyers' Division.

In addition to his drug litigation achievements, Mr. Millrood has garnered several other notable achievements, including a $22 million medical malpractice verdict in *Wallace v. Fraider*, Phila. CCP, March 2001, one of the highest in state history. He also wrote and argued cases resulting in significant changes to Pennsylvania law: *Cullen v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n*, 760 A.2d 1198 (Pa. Commw. 2000) (Pennsylvania workers' compensation carrier could not assert a subrogated claim for benefits that its insured's employee was precluded from recovering in settlement of a related medical malpractice claim.); and *Estate of Magette v. Goodman*, 2001 WL 218981 (Pa. Super. 2001) (Failure to retain evidence of EKG strip during orthopedic surgery that resulted in death of patient required new trial where court failed to give jury adverse inference instruction.).

**Todd Mosser**, an associate of the firm, received his law degree, *cum laude*, from The University of Pittsburgh School of Law in 2001, where he was inducted into The Order of the Barristers. Mr. Mosser received his undergraduate degree in Criminal Justice from Shippensburg University in 1998, where he was inducted into *Who's Who in American Colleges and Universities*.

Prior to joining Schiffrin & Barroway, Mr. Mosser was an Assistant District Attorney in the Appeals Unit in the Philadelphia District Attorney's Office. He successfully briefed and argued a number of published cases, including: *Commonwealth v. Young*, 849 A.2d 1152 (Pa. 2004); *Commonwealth v. Dillon*, 2004 Pa. Super 457, (en banc); *Commonwealth v. Butler*, 856 A.2d 131 (Pa. Super. 2004); and *Commonwealth v. Jackson*, 849 A.2d 1254 (Pa. Super. 2004).

Mr. Mosser is also a First Lieutenant in the United States Army Reserves, JAG Corps. Mr. Mosser is licensed to practice law in Pennsylvania. He concentrates his practice at Schiffrin & Barroway in the areas of securities litigation.

**Christopher L. Nelson**, an associate of the firm, received his law degree from Duke University School of Law, and his undergraduate degree in Business, Economics, and the Law from Washington University in St. Louis. Prior to joining Schiffrin & Barroway, Mr. Nelson practiced with the Philadelphia law firm of Berger & Montague, P.C., where he was a securities litigator.

Mr. Nelson is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Fourth, Fifth and Ninth Circuits, and the United States District Court for the Eastern District of Pennsylvania.

Mr. Nelson concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in numerous pending nationwide class action securities cases.

**Michelle N. Peterson**, an associate of the firm, received her law degree from Widener University School of Law in 1999. Ms. Peterson received her undergraduate degree from Temple University. Ms. Peterson is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the Eastern District of Pennsylvania and District of New Jersey. Prior to joining Schiffrin & Barroway, Ms. Peterson was an associate with the law firm of Grant & Eisenhofer, P.A., where she practiced complex commercial

litigation, including the areas of securities litigation and consumer class actions.  Ms. Peterson concentrates her practice with Schiffrin & Barroway in the area of securities litigation.

**Nicholas S. Pullen**, an associate of the firm, received his law degree, *cum laude,* from the Georgetown University Law Center in 2000. Upon graduation, Mr. Pullen worked at two prominent Philadelphia law firms. In 2003, he joined the administration of Governor Edward G. Rendall, where he served as Chief Counsel to the Pennsylvania Commission on Crime and Delinquency. Most recently, Mr. Pullen served as campaign manager for the Jim Eisenhower for Attorney General Campaign. He is licensed to practice law in Pennsylvania, and has been admitted to practice in the United States District Court for the District of Colorado, Mr. Pullen serves in the firm's Institutional Relations department.

**Karen E. Reilly**, an associate of the firm, received her law degree from Pace University School of Law, where she was a member of the Moot Court Board and National Moot Court Team. Ms. Reilly received her undergraduate degree from the State University of New York College at Purchase. She is licensed to practice law in Pennsylvania, New Jersey, New York, Connecticut and Rhode Island, and has been admitted to practice before the Eastern District of Pennsylvania, District of New Jersey, Southern and Eastern Districts of New York, and the District of Connecticut.

Prior to joining Schiffrin & Barroway, Ms. Reilly practiced at Pelino & Lentz, P.C. in Philadelphia, where she litigated a broad range of complex commercial cases. Ms. Reilly concentrates her practice in the area of securities litigation.

**Steven D. Resnick**, an associate of the firm, received his law degree from The Dickinson School of Law of The Pennsylvania State University, and his undergraduate degree, *cum laude*, from West Chester University. Mr. Resnick is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, the United States District Court for the District of New Jersey and the United States District Court for the District of Nebraska. Prior to joining Schiffrin & Barroway, Mr. Resnick was an associate at the firm of German, Gallagher & Murtagh, where his practice concentrated in the defense of medical malpractice, products liability and premises liability. Mr. Resnick now concentrates his practice in the area of mass tort litigation.

**Lee D. Rudy**, an associate of the firm, received his law degree from Fordham University in 1996. He is licensed to practice law in Pennsylvania and New York. From 1996 to 2002, Mr. Rudy was an Assistant District Attorney in the Manhattan DA's Office, where he prosecuted dozens of felony jury trials to verdict, including robbery, rape, and murder cases. From 2003 to 2005, Mr. Rudy was an Assistant United States Attorney in the District of New Jersey, where he investigated and prosecuted numerous fraud and violent crime cases, and where he tried three major fraud cases to verdict in federal court. Mr. Rudy, along with Marc Topaz and Eric Zagar manages the firmsMergers and Acquisition and Shareholder Derivative litigation department.

**Manny Shachmurove**, an associate of the firm, received his law degree from The University of Michigan Law Scholl, where he was an Associate Editor of the Michigan Journal of Law Reform. Mr. Shachmurove received his Bathecior of Science of Economics, *cum laude*, from The Wharton School at the University of Pennsylvania, where he was a Joseph Wharton Scholar.

**Kay E. Sickles**, an associate of the firm, received her law degree from the University of Pennsylvania School of Law.  She received her undergraduate degree from Colgate University, graduating with Honors from the History department.  Prior to joining the firm, Ms. Sickles was an associate with Sandals & Langer, LLP, where she litigated complex class actions, arising out of violations of the ERISA and Antitrust statutes.  She is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey.

Ms. Sickles concentrates her practice in the area of securities litigation and specializes in settlement matters.

**Tamara Skvirsky**, an associate of the firm, received her law degree, with honors, from The George Washington University Law School.  Ms. Skvirsky received her undergraduate degree, *cum laude*, from the University of Pennsylvania.  Ms. Skvirsky is licensed to practice law in Pennsylvania and New Jersey, and concentrates her practice in the firm's case development department.

**Sandra G. Smith**, an associate of the firm, received her law degree from Temple University School of Law, where she was Editor-In-Chief of The Temple Environmental Law and Technology Journal. Ms. Smith is also a graduate of St. Joseph's University, where she received her B.A. in History. Prior to joining Schiffrin & Barroway, Ms. Smith practiced as a securities litigator with the Philadelphia law firm of Berger & Montague, P.C. Ms. Smith is licensed to practice in Pennsylvania and is admitted to practice before the United States District Court of the Eastern District of Pennsylvania. Ms. Smith concentrates her practice in the area of Mergers and Acquisition litigation.

**Benjamin J. Sweet**, an associate of the firm, received his juris doctor from the Dickinson School of Law, and his BA, *cum laude*, from the University Scholars Program of The Pennsylvania State University. While in law school, Mr. Sweet served as Articles Editor of the *Dickinson Law Review*, and was also awarded Best Oral Advocate in the ATLA Junior Mock Trial Competition. Prior to joining Schiffrin & Barroway, Mr. Sweet practiced in the Pittsburgh office of Reed Smith LLP, where he specialized in complex civil litigation. While at Reed Smith, Mr. Sweet co-authored *Assignability of Non-Compete Covenants*, 74 Pa. Bar. Q. 64 (April 2003).  Mr. Sweet is licensed to practice law in the Commonwealth of Pennsylvania, the U.S. District Court for the Western District of Pennsylvania and the United States Courts of Appeals for both the Second and Ninth Circuits.

Mr. Sweet concentrates his practice in the area of securities litigation and has helped obtain several multi-million dollar settlements on behalf of class members in several nationwide federal securities class actions, including *In re Flextronics Int'l Ltd. Secs. Litig.*, No. 03-cv-2102 (N.D. Cal. 2004), *In re Black Box Corp. Secs. Litig.*, No. 03-cv-412 (W.D. Pa. 2004) and *In re Zomax Inc. Secs. Litig.*, No. 04-cv-1155 (D. Minn. 2005).  Mr. Sweet is currently

Lead or Co-Lead Counsel in several pending nationwide class action securities cases.

**Heather Tashman**, an associate of the firm, received her law degree, *cum laude*, from Villanova University School of Law where she was an Associate Editor of Outside Articles for the Villanova Environmental Law Journal. She also received an MBA from Villanova University in 2003. Ms. Tashman received her undergraduate degrees, *cum laude*, in Art History and Psychology from Tulane University in 2000. Prior to joining Schiffrin & Barroway, Ms. Tashman was an associate at Drinker Biddle and Reath LLP, where she specialized in insurance litigation.

Ms. Tashman is admitted to practice law in Pennsylvania and New Jersey. She has also been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Ms. Tashman concentrates her practice at Schiffrin & Barroway in the areas of securities litigation.

**Gerald D. Wells, III,** an associate of the firm, received his law degree from Temple University School of Law, where he served on the editorial board of the Environment Law & Technology Journal, and was President of the Student Bar Association. Prior to joining the firm, Mr. Wells was an associate at Mager White & Goldstein, LLP, where he practiced in the areas of complex commercial litigation, antitrust and securities litigation. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the District Court of New Jersey. Mr. Wells concentrates his practice in the areas of antitrust, ERISA, and consumer protection.

**Robin Winchester**, an associate of the firm, received her law degree from Villanova University School of Law, and received her undergraduate degree in Finance from St. Joseph's University. Prior to joining Schiffrin & Barroway, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania. Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of securities litigation, and serves in the firm's lead plaintiff department which involves working with clients, litigation strategy and lead plaintiff issues.

Mr. Willner is Lead or Co-Lead counsel in several pending nationwide class action securities cases, including *In re Corning Sec. Litig.*, No. 01-CV-6580 (W.D.N.Y.); *Spagnola v. Kilrea et al.*, (HA-LO Industries, Inc.) No. 02 C 0270 (E.D. Ill.); *D.E. & J. Ltd. Partnership v. Conaway et al.*, (Kmart Corporation) No. 02-70684 (E.D. Mich.); and *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (S.D.N.Y.).

**Eric L. Zagar**, an associate of the firm, received his law degree from the University of Michigan Law School, *cum laude*, where he was an Associate Editor of the Michigan Law Review. He has practiced law in Pennsylvania since 1995, and previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court. He is admitted to practice law in Pennsylvania.

Mr. Zagar concentrates his practice in the area of shareholder derivative litigation. Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout

the nation, including *David v. Wolfen,* Case No. 01-CC-03930 (Orange County, CA) (Broadcom Corp. Derivative Action); *In re PolyMedica Corporation Shareholder Derivative Litigation,* Case No. 01-3446 (Middlesex County, MA); *In Re Dynacq Int'l. Shareholder Derivative Litigation,* Case No. 2002-07135 (Harris County, TX); and *Castillo v. Cavallaro, et al.,* Case No. A467663 (Clark County, NV) (Station Casinos, Inc. Class and Derivative Action).  Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees.  In addition, Mr. Zagar along with Marc Topaz and Eric Zagar manages the firms Mergers and Acquisition and Shareholder Derivative litigation department.

**Andrew L. Zivitz**, an associate of the firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree with distinction from the University of Michigan, Ann Arbor. Prior to joining Schiffrin & Barroway, Mr. Zivitz practiced with the Philadelphia law firms of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP and Drinker Biddle & Reath, LLP, where he litigated complex commercial and environmental matters.

Mr. Zivitz is admitted to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey.

Mr. Zivitz concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in several of the largest class action securities cases currently pending nationwide. In addition, Mr. Zivitz has been instrumental in recovering more than $100 million for aggrieved investors in numerous securities class action litigations including *In re Computer Associates,* No. 02-CV-1226 (E.D.N.Y.) and *In re Aon Corp.*, No. 02 CV 5631 (N.D.Ill).

**Kendall S. Zylstra**, an associate at the firm, received his law degree from Temple University School of Law, where he graduated with the Temple Law Alumni/ae Moot Court Award. Mr. Zylstra is licensed to practice law in Pennsylvania, and has been admitted to practice in the United States Court of Appeals for the Ninth Circuit, the United States District Court for the Eastern District of Pennsylvania, the District of Oregon, the Eastern District of Washington, the Western District of Washington, and the New Jersey Superior Court.

Prior to joining Schiffrin & Barroway, Mr. Zylstra practiced law at Berger & Montague, P.C., where he concentrated on antitrust and complex consumer protection litigation. He was an Assistant District Attorney in Philadelphia from 1991 to 1996, primarily prosecuting sexual assault and domestic violence cases. Mr. Zylstra also represented two classes of victims of human radiation experimentation conceived and conducted by the federal government in conjunction with state and private contractors as part of the U.S. atomic weapons research program during the Cold War. He was principally responsible for all areas of litigation on behalf of prisoner experimentation subjects, helping obtain settlements for over $4.7 million combined, and significantly contributed to a reversal by the Ninth Circuit Court of Appeals of a summary judgment dismissal of one of those cases on statute of limitations grounds. See Bibeau, et al. v. Pacific Northwest Research Foundation, et al., 188 F.3d 1 105 (9th Cir. 1999).  In addition, Mr. Zylstra made significant contributions in winning substantial recoveries in the Phen Fen litigation. Mr. Zylstra, along with David Kessler manages the firm's Antitrust department.

## CONSULTANTS

**Kevin P. Cauley** serves in the firm's Institutional Relations department. Mr. Cauley is a graduate of Temple University. Prior to joining the firm, Mr. Cauley was Director of Business Development for MBP Associates, one of the country's top multi-family offices in New York City. Mr. Cauley has experience in institutional fiduciary investment consulting, money manager selection, best trade executions, and asset allocation modeling. He has held the Series 7, 24, 63, and 65 licenses with the NASD. Mr. Cauley has also done political consulting in coordinating and directing various aspects of field operations for local, state, and national campaigns in Southeastern Pennsylvania.

**Roy Jones** serves in the firm's Institutional Relations Department. Mr. Jones was educated at Oxford and Cambridge Universities in the United Kingdom, and has a broad and deep understanding of the European pension world and its key players. Furthermore, Mr. Jones is an acknowledged expert on global corporate governance trends, where he has advised the Organization for Economic Cooperation and Development and the World Bank, among others. Mr. Jones works closely with many of the firm's European clients.

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

In re Creditrust Corporation
Securities Litigation

X
:
:
:
:
X

**Civil Action No. MJG 00 CV 2174**

---

**AFFIDAVIT OF FRED TAYLOR ISQUITH
IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

STATE OF NEW YORK       )
                        )  ss.:
COUNTY OF NEW YORK      )

FRED TAYLOR ISQUITH, being first duly sworn, deposes and says:

1.    I am a member of the law firm of Wolf Haldenstein Adler Freeman & Herz.  I submit this affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.    The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time, by category, spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates.  The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. The time entries in these records are categorized chronologically by activity for each attorney.    Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

3.      My firm acted as additional plaintiffs' counsel in this class action.  The tasks undertaken by my firm can be summarized as follows: My firm investigated, researched, and drafted on of the initial pleadings in this action. In addition, my firm participated in extensive discovery practice and was asked by lead counsel to participate in the review of the documents produced by defendants and third-parties. My firm also communicated with our client and other shareholders, keeping them apprised of the case's status. We reviewed and offered edits, when requested by lead counsel, of significant briefs and other documents produced during the course of the litigation, and assisted in compelling the production of documents from parties. Moreover, we reviewed this action's proposed settlement and conferred with lead counsel concerning issues with respect to the litigation surrounding the trustee in bankruptcy and the status of settlement negotiations.

4.      With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.      The total number of hours expended on this litigation by my firm is 33.6 hours. The total lodestar for my firm is $12,172.00, consisting of $11,108.00 for attorneys' time and $1,064.00 for professional support staff time. The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit A are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      My firm has incurred a total of $1,162.74 in un-reimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| Expenses | |
| --- | --- |
| Overtime | $140.38 |
| Computer Research | $734.48 |
| Postage/Fax/Telephone | $2.00 |
| Notice Costs | $285.88 |
| **Total Expenses** | **$1,162.74** |

8.      The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

FRED TAYLOR ISQUITH

Sworn to before me this
8th day of April, 2005

Notary Public

MICHAEL JAFFE
Notary Public, State of New York
No. 31-5017542
Qualified in New York County
Commission Expires January 24, 2006

/39831 lv2

# EXHIBIT
# A

**Credit Trust 10b-5**
Time & Expense Report Inception through April 7, 2005
**Wolf Haldenstein Adler Freeman & Herz LLP**

| Attorney | Rate | Time | Lodestar |
|---|---|---|---|
| Fred T. Isquith | $630.00 | 12.10 | $7,623.00 |
| Gustavo F. Bruckner | $300.00 | 0.50 | $150.00 |
| Michael J. Miske | $255.00 | 1.00 | $255.00 |
| George T. Peters | $220.00 | 14.00 | $3,080.00 |
| **Total Attorneys** | | **27.60** | **$11,108.00** |

| Paralegal | Rate | Time | Lodestar |
|---|---|---|---|
| Joseph Weiss | $200.00 | 2.00 | $400.00 |
| James Cirigliano | $200.00 | 1.20 | $240.00 |
| Gabriel A. Pell | $160.00 | 1.20 | $192.00 |
| Ashley E. Kelly | $145.00 | 1.60 | $232.00 |
| **Total Paralegal** | | **6.00** | **$1,064.00** |
| **Total Fees** | | **33.60** | **$12,172.00** |

**Expenses**

| | |
|---|---|
| Overtime | $140.38 |
| Computer Research | $734.48 |
| Postage/Fax/Telephone | $2.00 |
| Notice Costs | $285.88 |
| **Total Expenses** | **$1,162.74** |
| **Firm Total** | **$13,334.74** |

/398304

/389845

# EXHIBIT
# B

# WOLF

# HALDENSTEIN

# ADLER

# FREEMAN &

# HERZ LLP

## FIRM RESUME

*"The class action is one of the few legal remedies the small claimant has against those that command the status quo."*

Justice William O. Douglas,
United States Supreme Court

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

## The Firm

Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm with practice groups in corporate/tax, pension/benefits, real estate, trusts and estates, healthcare, bankruptcy, limited partnerships, and civil and commercial litigation, with a particular specialty in complex class and shareholder litigation under both federal and state law.

What distinguishes Wolf Haldenstein from other firms is our total-practice approach, supported by the mid-range size and structure of our firm. Our longstanding tradition of a close attorney/client relationship ensures that each one of our clients receives prompt, individual attention and does not become lost in an institutional bureaucracy. Our team approach is at the very heart of Wolf Haldenstein's practice. All of our lawyers are readily available to all of our clients and to each other. The result of this approach is that we provide our clients with an efficient legal team having the broad perspective, expertise and experience required for any matter at hand. We are thus able to provide our clients with cost effective and thorough counsel focused on our clients' overall goals.

The Firm has its principal office with lawyers in the various practice areas, at 270 Madison Avenue, New York, NY 10016. The firm's general telephone number in New York is (212) 545-4600. The fax number in New York is (212) 545-4653. The firm also has offices at Symphony Towers, 750 B Street, Suite 2770, San Diego, CA 92101, telephone: (619) 239-4599, fax: (619) 234-4599; 656 W. Randolph Street, Suite 500W, Chicago, IL 60661, telephone: (312) 466-9200, fax: (312) 466-9292; and 625 N. Flagler Drive, West Palm Beach, Florida 33401. The firm's web site is accessible at http://www.whafh.com.

[2]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

## The Wolf Haldenstein Class Action Litigation Group

Wolf Haldenstein's Class Action Litigation Group has been recognized by courts throughout the country as being highly experienced in complex litigation, particularly with respect to securities, consumer, ERISA, and antitrust class actions and shareholder rights litigation. The Class Action Litigation Group consists of 30 attorneys and 10 paraprofessional assistants. Brief resumes of each of the attorneys begin on page 10.

Also included are the resumes of some attorneys from other areas of the Firm's practice who routinely lend their expertise to the Firm's class action litigators in the areas of tax, bankruptcy, corporate, trusts, labor, and ERISA law. The ability to call upon the internal expertise of practitioners in such varied areas of the law greatly enhances the strength and efficiency of the Firm's representative litigation practice and, indeed, makes Wolf Haldenstein unique among national firms specializing in class action litigation.

The nature of the Firm's activities in representative litigation is extremely broad. In addition to a large case load of securities fraud and other investor class actions, Wolf Haldenstein has represented classes of corn farmers in connection with the devaluation of their crops; contact lens purchasers for contact lens manufacturers' violations of the antitrust laws; merchants compelled to accept certain types of debit cards; insurance policyholders for insurance companies' deceptive sales practices; victims of unlawful strip searches under the civil rights laws; and various cases involving violations of Internet users' on-line privacy rights.

The Firm's experience in class action securities litigation, and, in particular, public shareholder rights under state law and securities fraud claims arising under the federal securities laws and regulations, including the Private Securities Litigation Reform Act of 1995 ("PSLRA"), is particularly extensive. The Firm was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations.

Among its colleagues in the plaintiffs' securities bar, as well as among its adversaries in the defense bar, Wolf Haldenstein is known for the high ability of its attorneys, the exceptionally high quality of its written and oral advocacy on behalf of class action clients, and for its pioneering efforts in difficult or unusual areas of securities or investor protection laws, including: groundbreaking claims that have been successfully brought under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims under ERISA involving fiduciary duties of ERISA trustees who are also insiders in possession of

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

adverse information regarding their fund's primary stockholdings, the fiduciary duties of the directors of Delaware corporations in connection with change of control transactions, the early application of the fraud on the market theory to claims against public accounting firms in connection with their audits of publicly traded corporations, and the application of federal securities class certification standards to state law claims often thought to be beyond the reach of class action treatment.

Wolf Haldenstein's performance in representative litigation has repeatedly received favorable judicial recognition. The following representative judicial comments over two decades indicate the high regard in which the Firm is held:

- In In re MicroStrategy Securities Litigation, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001), where the Firm was a co-lead counsel, Judge Ellis commented "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."

- In the In Re Toys R Us Antitrust Litigation, 98 MDL 1211 (NG) 191 F.R.D. 347, 351, 356 (E.D.N.Y. 2000), where the Firm served as co-lead counsel and liaison counsel, Judge Gershon wrote: "Class counsel are highly skilled and experienced and can fairly and adequately represent the interests of the class . . . . Counsel for both the class plaintiffs and the States have well-earned the compensation that they request."

- In Yud v. Saf T Lok, No. 98-8507-Civ-Hurley (S.D. Fla. Dec. 15, 1999), where the firm was sole lead counsel, the court stated: "The attorneys have done an outstanding amount of work and fine legal work in a short period of time to bring this class action to resolution in a successful fashion."

- In Kurzweil v. Philip Morris Companies, 94 Civ. 2373, 94 Civ. 2546 (MBM) (S.D.N.Y. Nov. 13, 1998), where the Firm was sole lead counsel, now Chief Judge Mukasey, in approving a $116.5 million settlement stated: "In this case, this represents a lot of good, hard, serious work by a lot of talented lawyers and I appreciate it on both sides."

- In Paramount Communications v. QVC Network Inc.; In re Paramount Communications Inc. Shareholders' Litigation, 637 A.2d 34, 37 n.2 (Sup. Ct. Del. 1994), where the Firm was co-lead counsel for the Paramount shareholders, the Supreme Court of Delaware noted "its appreciation of . . . the professionalism of counsel in this matter in handling this expedited litigation with the expertise and skill which characterize Delaware proceedings of this nature." The Court further "commended the parties for their professionalism in conducting expedited discovery, assembling and organizing the record, and preparing and presenting very helpful briefs, a joint appendix, and oral argument."

- In In re Laser Arms Corp. Securities Litigation, 794 F. Supp. 475, 496 (S.D.N.Y. 1989), where the Firm was lead counsel, the Court stated "plaintiffs' counsel have

[4]

demonstrated their experience in securities litigation and the Court is confident that counsel will proceed vigorously on behalf of all class and subclass members."

- In In re Public Service Co. of Indiana Derivative Litigation, 125 F.R.D. 484, 486 (S.D. Ind. 1988), concerning the construction of the Marble Hill Nuclear Power Plant, where the Firm was lead counsel, the court said "[t]hroughout the life of this litigation, it has been both vigorously prosecuted and aggressively defended by thoroughly competent counsel on all sides."

- In In re Public Service Co. of New Hampshire Derivative Litigation, 84-220-D (D.N.H. 1986), involving the construction of the Seabrook Nuclear Power Plant, where the Firm was lead counsel, the court said of plaintiffs' counsel that "the skill required and employed was of the highest caliber."

- In In re Warner Communications Securities Litigation, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), where the Firm served as co-lead counsel, the court said: "'plaintiffs' counsel constitute the cream of the plaintiffs' bar.' The Court cannot find fault with that characterization."

- In Steiner v. Equimark Corp., No. 81-1988 (W.D. Pa. 1983), a case involving complex issues concerning banking practices in which the Firm was lead counsel, then District Judge Mannsman described, in part, the work the Firm performed:

> We look at the complexity of the issue, the novelty of it, the quality of work that, as the trial judge, I am able to perceive, and then, finally, the amount of recovery obtained: I think I have certainly said a lot in that regard. I think it's been an extraordinary case. I think it's an extraordinary settlement. Certainly defense counsel and plaintiffs' counsel as well are all experienced counsel with a tremendous amount of experience in these particular kinds of cases. And under those circumstances . . . I think it was, really, the strategy and ingenuity of counsel in dividing up the workload and strategizing the cases as to who was to do what and what ultimately should be done to bring about the settlement that was achieved.

**Current Cases:**

Wolf Haldenstein is a leader in the class action litigation field and is currently the Court-appointed lead counsel, co-lead counsel, or executive committee member in some of the largest and most significant class action lawsuits currently pending across the United States, including:

- In re Initial Public Offering Securities Litigation, 21 MC 92 (SAS) (S.D.N.Y.).

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re Initial Public Offering Antitrust Litigation, 01 CV 2014 (WHP) (S.D.N.Y.).

- In re Comdisco Securities Litigation, 01 C 2110 (N.D. Ill.).

- Spagnola v. Kilrea, et al. (HA-LO, Inc.) 02 C 0270 (N.D. Ill.).

- In re Globalstar Securities Litigation, Case No. 01-CV-1748 (SHS) (S.D.N.Y.).

- Camino v. UBS PaineWebber, Inc. (U.B.S. Goals Litigation), 04-CV-175 (E.D.N.Y.).

- In re Pre-Paid Securities Litigation, Civ.-02-182-C (W.D. Okla.).

- In re Profit Recovery Group International, Inc. Securities Litigation, No. 1:00-CV-1416-CC (N.D. Ga.).

- Johnson v. Aegon USA, Inc., 1-02-CV-2617-CAP (N.D. Ga.).

- Lewis v. Advanced Technical Products, Inc., 1:00-CV-1702-WBM (N.D. Ga.).

- Azzolini v. CorTS Trust II for Provident Fin. Trust I, et al., 1:03-CV-1003 (D. Tenn.)

- Sepracor Corp. Securities Litigation, Civ. No. 02-12238 (D. Mass.).

- In re CNL Hotels & Resorts, Inc. Securities Litigation, No. 6:04-cv-1231 (Orl-31).

- Iac/Interactive Corp. Securities Litigation, 04 Civ. 8802 (S.D.N.Y.).

- In re Luxottica Group S.p.A. Securities Litigation, No. CV 01-3285 (E.D.N.Y.).

- In re Clarus Corp. Securities Litigation, No. 1:00-CV-2841-CAP (N.D. Ga.).

- In re Acclaim Entertainment, Inc., Securities Litigation, C.A. No. 03-CV-1270 (E.D.N.Y.).

- In re ARM Financial Group, Inc., Securities Litigation., C.A. No. 23:99CV-539H (W.D. Ky.).

- In re Central Parking Corporation Securities Litigation, 03-CV-0546 (M.D. Tenn.).

- In re Concord EFS, Inc. Securities Litigation, 02-CV-2697-Ma. (W.D. Tenn.).

- In re Adelphia Communications Corp. Securities and Derivative Litigation (Adelphia Business Actions), 03-ML 1529, 03 CV 5755 (LMM) (S.D.N.Y.).

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re Iridium Securities Litigation, C.A. No. 99-1002 (D.D.C.).

- In re MCI Communications Corp. Securities Litig., 97-CV-1976 (RWR) (D.D.C.).

- In re PEC Solutions Securities Litigation, 03-331-A (E.D. Va.)

- In re PerkinElmer, Inc., et al., Civ. 02-C-11572-GAO (D. Mass.).

- In re Ventro Corporation Securities Litigation, Master File No. Civ. 01-1287 SBA (N.D. Cal.).

- In re Qwest Software, Inc. Securities Litigation, Master File No. SA-CV-03-1192 (S.D. Cal.).

- In re Emerson Radio Corp. Securities Litigation, Civil Action No. 03-CV-4201 (D. N.J.).

- In re BearingPoint, Inc. Securities Litigation, Civil Action No. 03-CV-1062-A (E.D. Va.).

- In re Elevators and Escalators Antitrust Litigation, 04-CV-1644 (S.D.N.Y.).

- In re Sulfuric Acid Antitrust Litigation, Master File No. 03 C 4576 (N.D. Ill.).

- In re Compact Disc. Minimum Advertising Price Antitrust Litigation, MDL No. 1361 (D. Me.).

- In re Carbon Black Antitrust Litigation, Master Docket No. 03 CV 10191 (D. Mass.).

- In re Dynamic Random Access Memory (DRAM) Antitrust Litigation, Master File No. M 02-1486 (N.D. Cal).

- In re New Motors Vehicles Canadian Export Antitrust Litigation, Master File No. 03 MD 1532 (D. Me.).

- In re Loral Space & Communications Shareholders' Securities Litigation, 03 Civ. 8262 (JES) (S.D.N.Y).

- In re Drugstore.Com, Inc. Securities Litigation, CV 4-1474 (RSM) (W.D. Wash.).

Beginning on page 18 is a representative listing of cases in which the Firm has been lead or a primary plaintiffs' counsel and the results achieved in those cases. In addition, a representative list of published decisions in cases in which Wolf Haldenstein has played a lead or other significant role begins on page 21.

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

Wolf Haldenstein is a leader in the derivative litigation field, and is currently leading counsel in some of the most significant derivative actions pending in the United States, including:

- In re Qwest Communications International Inc. Derivative Litigation, 19826-NC (Del. Chan.).

- In re Tyco International Ltd. Derivative Litigation, 02-352-B (D.N.H.).

- In re Mutual Fund Investment Litigation, MDL No. 1586 (D. Md.).

## PRIVATE ACTIONS FOR INSTITUTIONAL INVESTORS

In addition to its vast class action practice, the Firm also regularly represents institutional clients such as public funds, investment funds, limited partnerships and qualified institutional buyers. The firm has represented institutional clients in non-class federal and state actions concerning a variety of matters, including private placements, disputes with investment advisors, and disputes with corporate management. Examples of such cases include:

- Steed Finance LDC v. Laser Advisers, Inc., 99 Civ. 4222 (PKC)(SDNY), a fraud, negligence, breach of contract and breach of fiduciary duty action brought by a hub fund, a related feeder fund and individual investors in the feeder fund against the funds' former investment advisors for mispricing certain securities and derivative instruments in the funds' fixed-income securities portfolio.

- Diversified Asset Securitization Holdings I, L.P. v. Enterprise Mortgage Acceptance Co, LLC, et al, 02 Civ. 10228 (SWK) (SDNY), a federal and state securities fraud action brought by limited partnerships that pooled the investments of various insurance companies against the issuer and management and controlling shareholder of the issuer concerning misrepresentations made in connection with a private placement of certificates representing interests in a securitized pool of loans made to franchise operations of car care businesses, gas stations, convenience stores and quick service restaurants.

- Gramercy Park Investments v. Airfund International, No. 97-22734B (Super. Ct. Mass.); Gramercy Park Investments v. The Krupp Realty Fund, No. 97-1612 (Super. Ct. Mass.); Geodyne Resources v. Gramercy Park Investments, No. CJ-96-05548 (Dist. Ct. Okla.); Gramercy Park Investments v. Wells Real Estate Fund, No. 97-A-0241-3 (Super. Ct. Ga.); Gramercy Park Investments v. Swift Energy, No. 96-61729 (Dist. Ct. Tex.); and Lexington Family Investments v. Dean Witter, No. 15217-96 (Sup Ct. N.Y.); actions brought on behalf of

[8]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

institutional investors in state courts throughout the nation demanding inspection of investor lists and other corporate and partnership information.

- Madison Partnership Liquidity Investors v. American Cable TV Investors, 97 Civ. 4950 (JSM) (SDNY); and Madison Partnership Liquidity Investors v. PLM Equipment Growth Fund, 98 Civ. 4057 (JSM)(SDNY); actions brought on behalf of institutional investors against fund management for improper defensive actions taken in response to investors' acquisitions of large positions in funds.

The firm has also acted as special counsel to investors' committees in efforts to assert the investors' interests without resort to litigation. For example, the firm served as Counsel to the Courtyard by Marriott Limited Partners Committee for several years in its dealings with Host Marriott Corporation, and as Special Counsel to the Windsor Park Properties 7 and 8 limited partners to insure the fairness of their liquidation transactions.

## THE CLASS ACTION LITIGATION GROUP

The qualifications of the attorneys in the Wolf Haldenstein Litigation Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Litigation Group who contribute significantly to the class action practice from time to time.

## PARTNERS

**DANIEL W. KRASNER:** *admitted:* New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan. *Education:* Yeshiva College (B.A. 1962); Yale Law School (LL.B., 1965). Lecturer: Practicing Law Institute; Rutgers Graduate, School of Business. Member, the Association of the Bar of the City of New York; Rockland County, New York State and American Bar Associations; Federal Bar Council. Mr. Krasner has lectured frequently before bar groups and has educated groups on securities laws and investors rights. His qualifications have received favorable judicial recognition on many occasions. *See, e.g., Shapiro v. Consolidated Edison Co.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,364 at 93,252 (S.D.N.Y. 1978) (". . . the Court's opinion the reputation, skill and expertise of . . . [Mr.] Krasner, considerably enhanced the probability of obtaining as large a cash settlement as was obtained."); *Steiner v. BOC Financial Corp.,* [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 97,656, at 98,491.4, (S.D.N.Y. 1980) ("This Court has previously recognized the high quality of work of plaintiffs' lead counsel, Mr. Krasner"). *The New York Law Journal,*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

August 1, 1983, at p. 5 (referring to Mr. Krasner as one of the "top rank plaintiffs' counsel" in the securities and class action fields.).

**FRED TAYLOR ISQUITH**: *admitted:* New York; District of Columbia; Supreme Court of the United States; U.S. Courts of Appeals for the First, Second, Third, Fourth and Eighth Circuits; U.S. District Courts for the Southern, Eastern and Northern Districts of New York, District of Arizona, District of Colorado, Central District of Illinois, Western District of Michigan and District of Nebraska. *Education:* Brooklyn College of the City University of New York (B.A., 1968); Columbia University (J.D., 1971). Author, "Post Arbitration Remedies," for an Introduction to Securities Arbitration (NYSBA, 1994); "A Plaintiff's Lawyer Examines Limited Partnership Roll-ups" for Real Estate Exit Strategies" (American Conference Institute, 1994); Federal Civil Practice Supplement, "Representative Actions," (NYSBA, 2000). Columnist for weekly column "From the Courts," for *The Class Act*, National Association of Securities and Class Action Attorneys. Lecturer, IPO Tie In/Claims Seminar, Professional Liability Underwriter Society; Securities Arbitration New York State Bar Association; Real Estate Exit Strategies, American Conference Institute; Fundamental Strategies in Securities Litigation (NYSBA, CLE Program). Mediator for New York State Supreme Court, County of New York, Complex Litigation Panel. Member: The Association of the Bar of the City of New York (Committee on: Federal Courts); New York County Lawyers' Association (Former Chair: Business Tort/Consumer Fraud-Tort Law Section); Brooklyn (Member: Committee on Civil Practice Law and Rules, 1983-; Committees on Legislation and Federal Courts, 1984-), New York State (Member: Committee on Legislation, Trial Lawyers Section, 1981-; Committee on Securities, Commercial and Federal Litigation Section, 1989-) and American (Member, Sections on: Litigation; International Law; Individual Rights and Responsibilities) Bar Associations; The District of Columbia Bar. Mr. Isquith has been Chairman of the Business Tort/Consumer Fraud Committee of the Tort Law Section of the New York State Bar Association and is a member of that association's Committees on Securities Law and Legislation. Legislation and Civil Practice Law and Rules of the Brooklyn Bar Association. He is an arbitrator with the American Arbitration Association and with the Civil Court of the City of New York and a mediator for the ADR Program of the Supreme Court, County of New York. He has served as a judge for the Moot Court Competition of Columbia University Law School and Fordham University's National Competition. President-elect, National Association of Securities and Commercial Law Attorneys. The April 1987 issue of *Venture* magazine listed Mr. Isquith as among the nation's top securities class action attorneys.

**JEFFREY G. SMITH**: *admitted:* New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern and Central Districts of California and the Districts of Colorado and Nebraska. *Education:* Vassar College (A.B., *cum laude generali*, 1974); Woodrow Wilson School of Public and International Affairs, Princeton University, (M.P.A., 1977); Yale Law School (J.D., 1978). At Yale Law School, Mr. Smith was a

[10]

■■■■■■■■ **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP** ■■■■■■■■

teaching assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program. Member, The Association of the Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member, Litigation Section). Mr. Smith has frequently lectured on corporate governance issues to professional groups of Fund trustees and investment advisors as well as to graduate and undergraduate business student groups and regularly serves as a moot court judge for the A.B.A. and at New York University Law School. Mr. Smith has substantial experience in complex civil litigation, including class and derivative actions, tender offer, merger, and takeover litigation.

**FRANCIS M. GREGOREK**: *admitted*: New York; California; U.S. Court of Appeals for the District of Columbia and Ninth Circuit; U.S. District Courts for the Eastern and Southern Districts of New York, and Central, Southern and Northern Districts of California; *Education*: University of Virginia (B.A., with high distinction, 1975); New York University (J.D., 1978); Durham University, Durham, England. Phi Beta Kappa; Phi Alpha Theta. Member, State Bar of California; American Bar Association.

**MARY JANE FAIT**: *admitted*: New York; Illinois; U.S. District Courts for the Southern and Eastern Districts of New York, and Northern District of Illinois; U.S. Court of Appeals for the Seventh Circuit. *Education*: St. John's College and University of Illinois (B.A., Economics, 1976); Cornell Law School (J.D., 1979). Member, Chicago Bar Association; Illinois Bar Associations; Antitrust Division of the American Bar Association.

**PETER C. HARRAR**: *admitted*: New York; U.S. District Courts for the Southern, Eastern and Northern Districts of New York. *Education*: Princeton University (A.B., with high honors, 1980); Columbia University (J.D., 1984). Phi Beta Kappa. Mr. Harrar has extensive experience in complex securities and commercial litigation on behalf of individual and institutional clients.

**LAWRENCE P. KOLKER**: *admitted*: New York; U.S. Courts of Appeals for the Second and Eleventh Circuits; and U.S. District Courts for the Southern and Eastern Districts of New York, Western District of Michigan and the District of Colorado. *Education*: State University of New York at Binghamton (B.A., 1978); Brooklyn Law School (J.D., 1983). Editor, Brooklyn Law Review, 1982-1983. Panelist, Early Neutral Evaluator for the Eastern District of New York, 1992-1997. Lecturer, Brooklyn Law School, 1989. Assistant Corporation Counsel, City of New York, 1983-1987. Member, The Association of the Bar of the City of New York; New York State Bar Association. Mr. Kolker has spoken at numerous conferences of the Investment Program Association and the Strategic Research Institute concerning limited partnership tender offers and litigation strategies, and published articles entitled "Litigation Strategies for Limited Partnership Tender Offers" (February 1996) and "Limited Partnership Five Percent Tender Offers" (October 1997) in Standard & Poor's *Review of Securities and Commodities Regulation*. Mr. Kolker has acted as lead counsel in numerous class and derivative actions asserting the

[11]

■■■■■■■■■ **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP** ■■■■■■■

rights of investors since joining Wolf Haldenstein in 1989. Mr. Kolker also counsels investment management firms in transactional and securities matters and represents them in corporate and business litigation.

**MARK C. RIFKIN:** *admitted*: Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. *Education*: Princeton University (A.B., 1982); Villanova University School of Law (J.D. 1985). Contributor, PACKEL & POULIN, *Pennsylvania Evidence* (1987). Mr. Rifkin has extensive experience in complex class and derivative actions in securities, antitrust, intellectual property, and consumer protection litigation. Mr. Rifkin has lectured before diverse business and professional organizations in the areas of securities and complex litigation and corporate governance.

**MICHAEL JAFFE:** *admitted*: California; New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: University of California at Berkeley (B.S., with highest distinction, 1982); Hastings College of the Law, University of California (J.D., 1987). Judicial Extern to the Honorable Thelton E. Henderson, Northern District of California, 1986-1987. Member: The Association of the Bar of the City of New York. Languages: French.

**BETSY C. MANIFOLD**: *admitted*: Wisconsin; New York; California; U.S. District Courts for the Western District of Wisconsin, Eastern and Southern Districts of New York, and Northern, Central and Southern Districts of California. *Education*: Elmira College; Middlebury College (B.A., *cum laude*, 1980); Marquette University (J.D., 1986); New York University. Thomas More Scholar. Recipient, American Jurisprudence Award in Agency. Member: The Association of the Bar of the City of New York. Languages: French.

**GREGORY M. NESPOLE:** *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Bates College (B.A., 1989); Brooklyn Law School (J.D., 1993). Member, The Association of the Bar of the City of New York; New York State Bar Association. Mr. Nespole's experience includes complex civil and criminal litigation.

**DAVID L. WALES**: *admitted*: New York; District of Columbia; United States Court of Appeals for the Second and Fourth Circuits, the United States District Courts for the Southern, Eastern and Western Districts of New York, and the District of Columbia. *Education*: State University of New York, Albany (BA, *magna cum laude*, 1984); Georgetown University Law Center, (J.D., *cum laude*, 1987); Notes and Comments Editor, Georgetown Journal of Law and Technology. Mr. Wales was an Assistant United States Attorney for the Southern District of New York (1992-1998), where he specialized in investigating and prosecuting fraud and white collar criminal cases. Mr. Wales has extensive jury trial experience. Mr. Wales' recent trials include: (i) a jury verdict in May

[12]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

2004 for more than $11 million in a derivative action against the general partner of a hedge fund; and (ii) a multi-million dollar settlement with an accounting firm reached during trial of a class action in April 2003.

**FRANCIS A. BOTTINI, JR.**: *admitted*: California; Supreme Court of the United States; U.S. Court of Appeals for the Ninth Circuit; U.S. District Courts for the Southern, Central and Northern Districts of California. *Education*: St. Louis University (B.A., *magna cum laude*, 1990); University of San Diego (J.D., *cum laude*, 1994). Recipient, American Jurisprudence Award in Property. Lead Articles Editor, San Diego Law Review, 1993-1994. Licensed Real Estate Broker, California. Author, "An Examination of the Current Status of Rating Agencies and Proposals for Limited Oversight of Such Agencies," 30 San Diego Law Review 579, 1993; "People v. Wheeler: A Pyrrhic Victory For The Prosecution?," 27 Beverly Hills Bar Assoc. Journal 140, 1993. *The Federal Sentencing Guidelines For Organizations: Effects On Sentencing And Implications For Imposition Of Vicarious Liability*, 22 Academy of Legal Studies In Business National Proceedings 149 (1993), republished in part, *Los Angeles Daily Journal*, October 13, 1994; *Internal Corporate Investigations Under The Federal Sentencing Guidelines For Organizations: Suggestions For Their Conduction And Disclosure Duties Under The Federal Securities Laws*, 23 Academy of Legal Studies in Business National Proceedings (1994). Adjunct Professor, Business Law, University of San Diego, 1995-1997. Mr. Bottini is also an Adjunct Professor of Business Law at the University of San Diego. Languages: Spanish.

**DEMET BASAR**: *admitted*: New York; New Jersey; U.S. District Court for the District of New Jersey, and Southern District of New York. *Education*: Fairleigh Dickinson University (B.A., *summa cum laude*, 1984), Phi Omega Epsilon; Rutgers University School of Law (J.D., 1990). Recipient, West's Scholarship Award, Senior Notes and Comments Editor, Rutgers Law Review. Member, The Association of the Bar of the City of New York. Languages: Turkish.

**ADAM J. LEVITT**: *admitted:* Illinois; Supreme Court of the United States; U.S. Courts of Appeals for the First and Seventh Circuits; U.S. District Courts for the Northern and Southern Districts of Illinois, Northern District of Indiana, District of Nebraska, and the Northern and Eastern Districts of Texas. *Education*: Columbia College, Columbia University (A.B., *magna cum laude*, 1990); Northwestern University School of Law (J.D., 1993). Member, American Law Institute. Member, Chicago, Federal and American Bar Associations; Lawyers for the Creative Arts. Seventh Circuit Contributing Editor, *Class Actions & Derivative Suits* (ABA). Author, An Illinois Lawyer's Guide to Service of Process in Mexico," 82 *Illinois Bar Journal* 434 (1994). Mr. Levitt also regularly serves as a moot court judge in the Julius H. Miner Moot Court Competition, Northwestern University School of Law. In recognition of his achievements to date, Mr. Levitt was named one of the "40 Illinois Attorneys Under 40 Years Old to Watch" by the *Chicago Daily Law Bulletin* and the *Chicago Lawyer*. Mr. Levitt specializes in securities, consumer, technology, and agricultural litigation.

[13]

━━ **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP** ━━

---

## OF COUNSEL

**ROBERT ABRAMS**: *admitted*: New York; U.S. Court of Appeals for the Third Circuit; U.S. District Courts for the Southern and Eastern Districts of New York, Eastern District of Missouri, District of Maryland, and District of Delaware. *Education:* Haverford College (B.A. 1961); Columbia University (Ph.D., 1966), Brooklyn Law School (J.D., 1992). Woodrow Wilson Fellow; International Business Law Fellow. Adjunct Professor, Mediation Clinic, Brooklyn Law School, 1983-1984. Mr. Abrams was formerly a Professor of Political Science at Brooklyn College and the Graduate Center of the City University of New York. Member, New York State Bar Association. Mr. Abrams is the author of books on the theory of collective choice (Columbia University Press) and voting theory (Sage), as well as articles on Soviet politics, game theory and bargaining and negotiations. He has focused his practice on complex securities, ERISA and consumer actions.

**ROBERT B. WEINTRAUB**: *admitted*: New York; Supreme Court of the United States; U.S. Court of Appeals for the Federal and Second Circuits; District of Columbia; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Syracuse University (B.A., *cum laude*, 1972); Georgetown University Law Center (J.D., 1977). Member, 1975-1977, Articles Editor and Member, Executive Board, 1976-1977, Law and Policy in International Business, the Georgetown International Law Journal. Assistant Editor, Competition Working Group, "The OECD Guidelines for Multinational Enterprises: A Business Appraisal," 1977. Author, Law Backs Women Warriors, National Law Journal, June 7, 1993. Co-contributor: Chapter 7, "The Celler-Kefauver Act of 1950," 4 The Legislative History of the Federal Antitrust Laws and Related Statutes, edited by E. Kintner, Chelsea House Publishers, 1980. Mediator, U.S. District Court, Southern District of New York. Member, The Association of the Bar of the City of New York (Member, Committee on Securities Regulation; Council on International Affairs; Chair, 1991-1994 and Member, 1987-1990, Committee on Military Affairs and Justice; International Arms Control and Security Affairs, 1990-1991); American Bar Association. He has counseled corporations on contract negotiation and antitrust matters, and provided antitrust advice on mergers to the arbitrage department of a major brokerage house. He has served as an arbitrator for the NYSE, the NASD and the Municipal Securities Rulemaking Board and as a mediator for the federal District Court in New York. Mr. Weintraub also previously served as Senior Vice President and General Counsel of a broker-dealer investment bank which is a member of the NYSE, the NASD and other principal exchanges. Mr. Weintraub has particular experience in litigation involving investment firms and broker-dealers.

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

---

### ASSOCIATES

**RACHELE R. RICKERT**: *admitted*:  California; U.S. District Court for the Southern District of California.  *Education*:  Point Loma Nazarene College (B.A., 1994); University of California, Hastings College of the Law (J.D., 1997).  Member, State Bar of California.  Former Deputy Alternate Public Defender for the County of San Diego.

**THOMAS H. BURT**: *admitted*:  New York; U.S. District Courts for the Southern and Eastern Districts of New York.  *Education*: American University (B.A., 1993); New York University (J.D., 1997).  Articles Editor with New York University Review of Law and Social Change.

**SCOTT J. FARRELL**: *admitted*:  New York; New Jersey; Southern and Eastern Districts of New York; District of New Jersey. *Education*: Yeshiva University (B.A., *magna cum laude*, 1996), where he was a Max Stern Scholar and Gruss Scholar; New York University School of Law (J.D., 1999), where he was an Article and Note Editor of the *Journal of Legislation and Public Policy*. He is the co-author of "In re Gary Glass and Zoltan Guttman," CFTC Docket No. 93-4, Futures & Derivatives Law Report, July/August, 1998.

**KATE MCGUIRE**: *admitted*:  New York; U.S. District Courts for the Southern and Eastern Districts of New York.  *Education*: University of California at Santa Cruz (B.A. 1995), Georgetown University Law Center (J.D., 1998); Member, Georgetown Immigration Law Journal.

**GUSTAVO BRUCKNER**:  *admitted*:  New York; New Jersey; United States District Court for the Districts of New Jersey, Eastern District of New York and Southern District of New York and the United States Court of Appeals for the Second Circuit, and the United States Supreme Court. *Education*: New York University (B.S., 1988); New York University (M.B.A. 1989); Benjamin N. Cardozo School of Law, Yeshiva University (J.D., 1992).

**STACEY T. KELLY**: *admitted*:  New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York.  *Education*: New York University (B.A., 1997); Rutgers School of Law - Newark (J.D., 2000). Member, New York State Bar Association; New York County Lawyers Association

**PAULETTE S. FOX**: *admitted*:  New York, New Jersey, S.D.N.Y., E.D.N.Y.; Education: Benjamin N. Cardozo School of Law (J.D. 2001), Syracuse University (B.A. in Public Policy, summa cum laude, Phi Beta Kappa, 1998).

**CHRISTOPHER S. HINTON**: *admitted*:  New York. *Education*: Marquette University (B.A., *magna cum laude*, 1997), Phi Beta Kappa; University of Illinois College of Law at Champaign (J.D., *cum laude*, 2002).  Member, New York State Bar Association.

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

**TAMARA E. GROSS:** *admitted:* New York. *Education:* George Washington University (B.A., *summa cum laude,* 1999), Benjamin N. Cardozo School of Law, Yeshiva (J.D., 2002).

**MICHAEL J. MISKE:** *admitted:* New York. *Education:* St. John's University (B.A., *cum laude* (2000), New York Law School (J.D., 2000).

**AYA BOUCHEDID:** *admitted:* New York *Education:* McGill University School of Law, Bachelor of Laws (LL.B.) & Bachelor of Civil Laws (B.C.L) with Great Honors, June 2002; University of Montreal (B.A. Political Science, 1998).

**MATTHEW GUINEY:** *admitted:* New York. *Education:* Georgetown University Law Center (J.D. 2002). The College of William & Mary (B.A. in Govt. and Economics 1998).

**JESSICA HOFF**: *admitted:* Connecticut New York. *Education:* Denver University (B.A. 1999); University of Denver College of Law (J.D. 2003).

**JULIE E. FOX:** *admitted:* Texas; Illinois; U.S. District Court for the Northern District of Illinois, Eastern Division. *Education:* Indiana University (B.A., 1991); John Marshall Law School (J.D., 1994).

**Wolf Haldenstein partners who regularly provide their non-litigation expertise to class action litigation matters**

**CHARLES H. BALLER:** *admitted:* New York. *Education:* New York University (B.S., *magna cum laude*, 1954); Columbia University (LL.B., 1957); New York University (L.L.M., Taxation, 1962). Beta Gamma Sigma; Beta Alpha Psi. Harlan Fiske Stone Scholar. Co-Editor and Contributing Author, April, 1981, with 1986 Supplement, Business Acquisitions, Practicing Law Institute. Member: The Association of the Bar of the City of New York; New York State and American Bar Associations. He worked in the office of Chief Counsel, Internal Revenue Service (Interpretative Division). A lecturer and author for the Practicing Law Institute (co-editor of the reference work *Business Acquisitions: Planning and Practice*), Mr. Baller is a corporate and tax attorney with extensive expertise in mergers and acquisitions, in complex estate planning, particularly relating to corporate and business holdings, and in employee benefits and compensation, including ERISA.

**ERIC B. LEVINE:** *admitted:* New York; U.S. Courts of Appeals for the Second and Eleventh Circuits, U.S. District Courts for the Southern and Eastern Districts of New York, and Eastern District of Michigan; U.S. Tax Court. *Education:* State University of New York at Buffalo (B.A., *summa cum laude*, 1974); University of Pennsylvania (J.D., *cum laude*, 1977). Order of the Coif, Phi Beta Kappa. Associate Editor, University of Pennsylvania Law Review, 1976-1977. Member, The Association of the Bar of the City of New York; New York State Bar Association. Mr. Levine's practice focuses on

■ WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP ■

complex commercial and civil litigation, including in the area of bankruptcy and receivership litigation, creditors' rights, and lender liability.

**MARK C. SILVERSTEIN**: *admitted*: New York. *Education*: State University of New York at Binghamton (B.S., *summa cum laude*, 1980); New York University (J.D., *cum laude*, 1983). Order of the Coif. Editor, Journal of International Law and Politics, 1982-1983. Member, the Association of the Bar of the City of New York; New York State and American Bar Associations. Mr. Silverstein serves as general counsel to corporations and handles matters involving tax planning and mergers and acquisitions. He also provides counseling in the structure of complex settlements and the administration of complex claims administrations.

**ELI D. GREENBERG**: *admitted*: New York. *Education*: New York University (B.S., *magna cum laude*, 1981. New York University (J.D., 1984). Beta Gamma Sigma. Lecturer, New York University. Member, American Health Lawyers Association. Mr. Greenberg has extensive experience in pension, tax, benefits, and ERISA.

<div style="border:1px solid black">

**SUBSTANTIAL RECOVERIES OBTAINED IN REPRESENTATIVE PAST CLASS ACTION CASES IN WHICH A WOLF HALDENSTEIN ATTORNEY WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE**

</div>

- In re BankAmerica Corp. Securities Litigation, MDL Docket No. 1264 (JFN) (E.D. Mo.) (class recovered $490 million).

- In re MicroStrategy, Inc. Securities Litigation, Civ. No. 00-473-A (E.D. Va.) (class recovered $160 million in cash and securities).

- Kurzweil v. Philip Morris Cos., 94 Civ. 2373, 94 Civ. 2546 (S.D.N.Y.) (securities fraud) (class recovered $116.5 million in cash).

- In re Starlink Corn Products Liability Litigation, (N.D. Ill.) (class recovered $110 million).

- Computer Associates 2002 Class Action Litigation, 2:2002 CV 1226 (E.D.N.Y.) ($130 million settlement in this and two related actions).

- Berger v. Compaq Computer Corp., Docket No. 98-1148 (S.D. Tex.) (class recovered $29 million).

- In re Arakis Energy Corporation Securities Litigation, 95 CV 3431 (E.D.N.Y.) (class recovered $24 million in cash).

- In re E.W. Blanche Holdings, Inc. Securities Litigation, Civ. No. 01-258 (D. Minn.) (class recovered $20 million).

- In re Musicmaker.com Securities Litigation, CV-00-2018 (C.D. Cal.) (class recovered $13.75 million).

- In re Bausch & Lomb, Inc. Securities Litigation, 01 Civ. 6190 (CJS) (W.D.N.Y) (class recovered $12.5 million)

- In re Allaire Corp. Securities Litigation, 00-11972 (D. Mass.) (class recovered $12 million).

- Curative Health Services Securities Litigation, 99-2074 (E.D.N.Y.) (class recovered $10.5 million).

- City Partnership Co. v. Jones Intercable, 99 WM-1051 (D. Colo.) (class recovered $10.5 million).

- In re Tenfold Corporation Securities Litigation, 2:00-CV-652 (D. Utah) (class recovered $5.9 million).

- In re Industrial Gas Antitrust Litigation, 80 C 3479 and related cases (N.D. Ill.) (class recovered $50 million in cash and coupons).

- In re Chor-Alkalai and Caustic Soda Antitrust Litigation, 86-5428 and related cases (E.D. Pa.) (class recovered $55 million).

- In re Infant Formula Antitrust Litigation, M.D.L. 878 (N.D. Fla.) (class recovered $126 million).

- In re Brand Name Prescription Drug Antitrust Litigation, M.D.L. 940 (N.D. Ill.) (class recovered $715 million).

- Landon v. Freel, M.D.L. No. 592 (S.D. Tex.) (class recovered $12 million).

- Holloway v. Peat, Marwick, Mitchell & Co., No. 84 C 814 EU (N.D. Okla.) (class recovered $38 million).

- In re The Chubb Corp. Drought Insurance Litigation, C-1-88-644 (S.D. Ohio) (class recovered $100 million.).

- Wong v. Megafoods, Civ-94-1702 (D. Ariz.) (securities fraud) (class recovered $12.25 million).

- In re Del Val Financial Corp. Securities Litigation, 92 Civ 4854 (S.D.N.Y.) (class recovered $11.5 million).

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

- In re Home Shopping Network Shareholders Litigation, Consolidated Civil Action No. 12868, (Del. Ch. 1995) (class recovered $13 million).

- In re Paine Webber Limited Partnerships Litigation, 94 Civ 8547 (S.D.N.Y.) (class recovered $200 million).

- In re Bristol-Meyers Squibb Co. Securities Litigation, 92 Civ 4007 (S.D.N.Y.) (class recovered $19 million).

- In re Spectrum Information Technologies Securities Litigation, CV 93-2245 (E.D.N.Y.) (class recovered $13 million).

- In re Chase Manhattan Securities Litigation, 90 Civ. 6092 (LJF) (S.D.N.Y.) (class recovered $17.5 million).

- Prostic v. Xerox Corp., No. B-90-113 (EBB) (D. Conn.) (securities fraud) (class recovered $9 million).

- Steiner v. Hercules, Civil Action No. 90-442-RRM (D. Del.) (securities fraud) (class recovered $18 million).

- In re Ambase Securities Litigation, 90 Civ 2011 (S.D.N.Y.) (class recovered $14.6 million).

- Steiner v. Phillips (In re Southmark Securities Litigation), CA No. 3-89-1402-D (N.D. Tex. (class recovered $70 million).

- Steiner v. Ideal Basic Industries, Inc., No. 86-M 456 (D. Colo. 1989) (securities fraud) (class recovered $18 million).

- Tucson Electric Power Derivative Litigation, 2:89 Civ. 01274 TUC. ACM (shareholder derivative action) (corporation recovered $30 million).

- Alleco Stockholders Litigation, (Cir. Ct. Prince Georges County, Md.) (class recovered $16 million).

- In re Revlon Group, Inc. Shareholders Litigation, No. 8362 (Del. Ch.) (class recovered $30 million).

- In re Taft Broadcasting Company Shareholders Litigation, No. 8897 (Del. Ch.) (class recovered $20 million).

- In re Southland Corp. Securities Litigation, No. 87-8834-K (D. Tex.) (class recovered $20 million).

[19]

# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re Crocker Bank Securities Litigation, CA No. 7405 (Del. Ch.) (class recovered $30 million).

- In re Warner Communications Securities Litigation, No. 82 Civ. 8288 (JFK) (S.D.N.Y.) (class recovered $17.5 million).

- Joseph v. Shell Oil, CA No. 7450 (Del. Ch.) (securities fraud) (class recovered $200 million).

- In re Flight Transportation Corp. Securities Litigation, Master Docket No. 4-82-874, MDL No. 517 (D. Minn.) (class recovered $50 million.).

- In re Whittaker Corporation Securities Litigation, CA000817 (Cal. Super. Ct., Co. of Los Angeles) (class recovered $18 million).

- Naevus International, Inc. v. AT&T Corp., C.A. No. 602191/99 (N.Y. Sup. Ct.) (consumer fraud) (class recovered $40 million).

- Sewell v. Sprint PCS Limited Partnership, C.A. No. 97-188027/CC 3879 (Cir. Ct. for Baltimore City) (consumer fraud) (class recovered $45.2 million).

---

## REPRESENTATIVE REPORTED OPINIONS SINCE 1990 IN WHICH WOLF HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

---

### Federal Appeals Court Opinions

- Perlman v. Pharmatrak, Inc., 2003 U.S. App. LEXIS 8758 (1st Cir. May 9, 2003).

- Berger v. Compaq Computer Corp., 257 F.3d 475 (2001), clarified, 279 F.3d 313 (5th Cir. 2002).

- In re Bankamerica Corp. Securities Litigation, 263 F.3d 795 (8th Cir. 2001).

- Wright v. Ernst & Young LLP, 152 F.3d 169 (2d Cir. 1998).

- Romine v. Compuserve Corp., 160 F.3d 337 (6th Cir. 1998).

- Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998).

- Brown v. Radica Games (In re Radica Games Securities Litigation), No. 96-17274, 1997 U.S. App. LEXIS 32775 (9th Cir. Nov. 14, 1997).

[20]

═══ WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP ═══

- Robbins v. Koger Properties, 116 F.3d 1441 (11th Cir. 1997).

- In re Painewebber Inc. Limited Partnerships Litigation, 94 F.3d 49 (2d Cir. 1996).

- Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996).

- Alpern v. Utilicorp United, Inc., 84 F.3d 1525 (8th Cir. 1996).

- Shaw v. Digital Equipment Corp., 82 F.3d 1194 (1st Cir. 1996).

- Riley v. Simmons, 45 F.3d 764 (3d Cir. 1995).

- Stepak v. Addison, 20 F.3d 398 (11th Cir. 1994).

- County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir. 1990).

┌─────────────────────────────────────┐
│        **District Court Opinions**       │
└─────────────────────────────────────┘

- Johnson v. Aegon USA, Inc., 1:01-CV-2617 (N.D. Ga. Sept. 20, 2004).

- Freeland v. Iridium World Communications, LTD., 99-1002 (D.D.C. Aug. 31, 2004).

- In re Acclaim Entertainment, Inc. Securities Litigation, 03-CV-1270 (E.D.N.Y. June 22, 2004).

- In re Sepracor, Inc. Securities Litigation, 308 F. Supp. 2d 20 (D. Mass. 2004).

- In re Concord EFS, Inc. Securities Litigation, No. 02-2697 (W.D. Tenn. Jan. 7, 2004).

- In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig., 02-Civ. 10288 (SWK) (S.D.N.Y. Nov. 5, 2003).

- In re PerkinElmer, Inc. Securities Litigation, 286 F. Supp. 2d 46 (D. Mass. 2003).

- In re Initial Public Offering Securities Litigation, 241 F. Supp. 2d 281 (S.D.N.Y. 2003).

- In re Comdisco Securities Litigation, 2003 U.S. Dist. LEXIS 5097 (N.D. Ill. March 3, 2003).

- City Partnership Co. v. Cable TV Fund 14-B, 213 F.R.D. 576 (D. Colo. 2002).

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re Allaire Corporation Securities Litigation, Docket No. 00-11972 - WGY, 2002 U.S. Dist. LEXIS 18143 (D. Mass., Sept. 27, 2002).

- In re StarLink Corn Products Liability Litigation, 212 F. Supp. 2d 828 (N.D. Ill. 2002)

- In re Comdisco Securities Litigation, 166 F. Supp. 2d 1260 (N.D. Ill. 2001).

- In re Crossroads Systems, Inc. Securities Litigation, Master File No. A-00-CA-457 JN, 2001 U.S. Dist. LEXIS 14780 (W.D. Tx. Aug. 15, 2001).

- In re Microstrategy, Inc. Securities Litigation, 150 F. Supp. 2d 896 (E.D. Va. 2001).

- Lindelow v. Hill, No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301, Fed. Sec. L. Rep. (CCH) P91,483 (N.D. Ill. July 19, 2001).

- In re Microstrategy, Inc. Securities Litigation, 148 F. Supp. 2d 654 (E.D. Va. 2001).

- Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Electrical Industry, 172 F. Supp. 2d 389 (S.D.N.Y. 2001).

- Carney v. Cambridge Technology Partners, Inc., 135 F. Supp. 2d 235 (D. Mass. 2001).

- Weltz v. Lee, 199 F.R.D. 129 (S.D.N.Y. 2001).

- Schoers v. Pfizer, Inc., 00 Civ. 6121, 2001 U.S. Dist. LEXIS 511 (S.D.N.Y. Jan. 23, 2001).

- Kurzweil v. Philip Morris Cos., 94 Civ. 2373 (MBM), 2001 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 9, 2001).

- Goldberger v. Bear, Stearns & Co., 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714, Fed. Sec. L. Rep. (CCH) P91, 287 (S.D.N.Y. Dec. 28, 2000).

- In re Newell Rubbermaid, Inc., Securities Litigation, Case No. 99 C 6853, 2000 U.S. Dist. LEXIS 15190 (N.D. Ill. Oct. 2, 2000).

- Stanley v. Safeskin Corp., Case No. 99 CV 454 BTM (LSP), 2000 U.S. Dist. LEXIS 14100, Fed. Sec. L. Rep. (CCH) P91, 221 (S.D. Cal. Sept. 18, 2000).

- In re Microstrategy, Inc. Securities Litigation, 115 F. Supp. 2d 620 (E.D. Va. 2000).

# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re Allaire Corporation Securities Litigation, Docket No. 00-11972 - WGY, 2002 U.S. Dist. LEXIS 18143 (D. Mass., Sept. 27, 2002).

- In re StarLink Corn Products Liability Litigation, 212 F. Supp. 2d 828 (N.D. Ill. 2002)

- In re Comdisco Securities Litigation, 166 F. Supp. 2d 1260 (N.D. Ill. 2001).

- In re Crossroads Systems, Inc. Securities Litigation, Master File No. A-00-CA-457 JN, 2001 U.S. Dist. LEXIS 14780 (W.D. Tx. Aug. 15, 2001).

- In re Microstrategy, Inc. Securities Litigation, 150 F. Supp. 2d 896 (E.D. Va. 2001).

- Lindelow v. Hill, No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301, Fed. Sec. L. Rep. (CCH) P91,483 (N.D. Ill. July 19, 2001).

- In re Microstrategy, Inc. Securities Litigation, 148 F. Supp. 2d 654 (E.D. Va. 2001).

- Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Electrical Industry, 172 F. Supp. 2d 389 (S.D.N.Y. 2001).

- Carney v. Cambridge Technology Partners, Inc., 135 F. Supp. 2d 235 (D. Mass. 2001).

- Weltz v. Lee, 199 F.R.D. 129 (S.D.N.Y. 2001).

- Schoers v. Pfizer, Inc., 00 Civ. 6121, 2001 U.S. Dist. LEXIS 511 (S.D.N.Y. Jan. 23, 2001).

- Kurzweil v. Philip Morris Cos., 94 Civ. 2373 (MBM), 2001 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 9, 2001).

- Goldberger v. Bear, Stearns & Co., 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714, Fed. Sec. L. Rep. (CCH) P91, 287 (S.D.N.Y. Dec. 28, 2000).

- In re Newell Rubbermaid, Inc., Securities Litigation, Case No. 99 C 6853, 2000 U.S. Dist. LEXIS 15190 (N.D. Ill. Oct. 2, 2000).

- Stanley v. Safeskin Corp., Case No. 99 CV 454 BTM (LSP), 2000 U.S. Dist. LEXIS 14100, Fed. Sec. L. Rep. (CCH) P91, 221 (S.D. Cal. Sept. 18, 2000).

- In re Microstrategy, Inc. Securities Litigation, 115 F. Supp. 2d 620 (E.D. Va. 2000).

[22]

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re USA Talks.com, Inc. Securities Litigation, 2000 U.S. Dist. LEXIS 14823, Fed. Sec. L. Rep. (CCH) P91, 231 (S.D. Cal. Sept. 14, 2000).

- In re Sotheby's Holdings, Inc. Securities Litigation, 00 CIV. 1041 (DLC), 2000 U.S. Dist. LEXIS 12504, Fed. Sec. L. Rep. (CCH) P91, 059 (S.D.N.Y. Aug. 31, 2000).

- Dumont v. Charles Schwab & Co., Inc., Civil Action No. 99-2840 2000 U.S. Dist. LEXIS 10906 (E.D. La. July 21, 2000).

- Berger v. Compaq Computer Corp., Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21424 (S.D. Tex. July 17, 2000).

- In re BankAmerica Corp. Securities Litigation, 95 F. Supp. 2d 1044 (E.D. Mo. 2000).

- In re Carnegie International Corp. Securities Litigation, 107 F. Supp. 2d 676 (D. Md. 2000).

- Berger v. Compaq Computer Corp., Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21423 (S.D. Tex. Mar. 13, 2000).

- In re Imperial Credit Industries Securities Litigation, CV 98-8842 SVW, 2000 U.S. Dist. LEXIS 2340, Fed. Sec. L. Rep. (CCH) P90, 965 (C.D. Cal. Feb. 23, 2000).

- Sturm v. Marriott Marquis Corp., 85 F. Supp. 2d 1356 (N.D. Ga. 2000).

- In re Health Management Systems Securities Litigation, 82 F. Supp. 2d 227 (S.D.N.Y. 2000).

- Dumont v. Charles Schwab & Co., Inc., Civil Action No. 99-2840, 2000 U.S. Dist. LEXIS 619 (E.D. La. Jan. 19, 2000).

- In re Microstrategy, Inc. Securities Litigation, 110 F. Supp. 2d 427 (E.D. Va. 2000).

- In re BankAmerica Corp. Securities Litigation, 78 F. Supp. 2d 976 (E.D. Mo. 1999).

- Kurzweil v. Philip Morris Cos., 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24, 1999).

- In re Nanophase Technologies Corp. Litigation, 98 C 3450, 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 27, 1999).

[23]

- In re Clearly Canadian Securities Litigation, File No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273, Fed. Sec. L. Rep. (CCH) P90, 664 (N.D. Cal. Sept. 7, 1999).

- Yuan v. Bayard Drilling Technologies, Inc., 96 F. Supp. 2d 1259 (W.D. Okla. 1999).

- In re Spyglass, Inc. Securities Litigation, No. 99 C 512, 1999 U.S. Dist. LEXIS 11382, Fed. Sec. L. Rep. (CCH) P90, 607 (N.D. Ill. July 20, 1999).

- Carley Capital Group v. Deloitte & Touche, L.L.P., 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595 (N.D. Ga. June 30, 1999).

- Carley Capital Group v. Deloitte & Touche, L.L.P., 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11596 (N.D. Ga. June 30, 1999).

- Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 98 CV 3287, 1999 U.S. Dist. LEXIS 11363 (E.D.N.Y. June 1, 1999).

- Carley Capital Group v. Deloitte & Touche, L.L.P., 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 1368, Fed. Sec. L. Rep. (CCH) P90, 429 (N.D. Ga. Jan. 19, 1999).

- Longman v. Food Lion, Inc., 186 F.R.D. 331 (M.D.N.C. 1999).

- Walsingham v. Biocontrol Technology, Inc., 66 F. Supp. 2d 669 (W.D. Pa. 1998).

- Sturm v. Marriott Marquis Corp., 26 F. Supp. 2d 1358 (N.D. Ga. 1998).

- Carley Capital Group v. Deloitte & Touche, L.L.P., 27 F. Supp. 2d 1324 (N.D. Ga. 1998).

- In re MobilMedia Securities Litigation, 28 F. Supp. 2d 901 (D.N.J. 1998).

- Weikel v. Tower Semiconductor, Ltd., 183 F.R.D. 377 (D.N.J. 1998).

- In re Health Management Systems Securities Litigation, 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061, Fed. Sec. L. Rep. (CCH) P90, 235 (S.D.N.Y. May 27, 1998).

- In re Painewebber Ltd. Partnership Litigation, 999 F. Supp. 719 (S.D.N.Y. 1998).

- Carley Capital Group v. Deloitte & Touche, L.L.P., 1:97-cv-3183-TWT, 1998 U.S. Dist. LEXIS 23222 (N.D. Ga. Feb. 10, 1998).

[24]

- *In re TCW/DW North American Government Income Trust Securities Litigation*, 95 Civ. 0167 (PKL), 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. Nov. 20, 1997).

- *Wright v. Ernst & Young, LLP*, 97 Civ. 2189 (SAS), 1997 U.S. Dist. LEXIS 13630, Fed. Sec. L. Rep. (CCH) P99, 567 (S.D.N.Y. Sept. 9, 1997).

- *Felzen v. Andreas*, No. 95-2279, 1997 U.S. Dist. LEXIS 23646 (C.D. Ill. July 7, 1997).

- *Felzen v. Andreas*, No. 95-2279, 1997 U.S. Dist. LEXIS 23647 (C.D. Ill. July 7, 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 964 F. Supp. 147 (S.D.N.Y. 1997).

- *Kurzweil v. Philip Morris Companies.*, 94 Civ. 2373 (MBM), 1997 U.S. Dist. LEXIS 4451, Fed. Sec. L. Rep. (CCH) P99, 446 (S.D.N.Y. April 8, 1997).

- *Bobrow v. Mobilmedia, Inc.*, Civil Action No. 96-4715, 1997 U.S. Dist. LEXIS 23806 (D.N.J. March 31, 1997).

- *Kalodner v. Michaels Stores*, 172 F.R.D. 200 (N.D. Tex. 1997).

- *In re Painewebber Ltd. Partnerships Litigation*, 171 F.R.D. 104 (S.D.N.Y. 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 95 Civ. 8422 (LAK), 1997 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 7, 1997).

- *Dresner Co. Profit Sharing Plan v. First Fidelity Bank, N.A.*, 95 Civ. 1924 (MBM), 1996 U.S. Dist. LEXIS 17913 (S.D.N.Y. Dec. 3, 1996).

- *Simon v. American Power Conversion Corp.*, 945 F. Supp. 416 (D.R.I. 1996).

- *TII Industries, Inc.*, 96 Civ. 4412 (SAS), 1996 U.S. Dist. LEXIS 14466 (S.D.N.Y. Oct. 1, 1996).

- *In re TCW/DW North American Government Income Trust Securities Litigation*, 941 F. Supp. 326 (S.D.N.Y. Oct. 1, 1996).

- *In re Painewebber Ltd. Partnership Litigation*, 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 9195 (S.D.N.Y. June 28, 1996).

- *In re Tricord Systems, Inc., Securities Litigation*, Civil No. 3-94-746, 1996 U.S. Dist. LEXIS 20943 (D. Minn. April 5, 1996).

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

- In re Painewebber Limited Partnership Litigation, 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 1265 (S.D.N.Y. Feb. 6, 1996).

- Zitin v. Turley, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) P.& 96,123 (D. Ariz. June 20, 1994).

- In re Southeast Hotel Properties Limited Partnership Investor Litigation, 151 F.R.D. 597 (W.D.N.C. 1993).

<div style="border:1px solid black; text-align:center; font-weight:bold;">State Court Opinions</div>

- Naevus Int'l v. AT&T Corp., 283 A. D.2d 171, 724 N.Y.S. 2d 721 (2001).

- Paramount Communications, Inc. v. QVC Network, Inc., 637 A.2d 34 (Del. Supr. 1994).

- In re Western National Corp. Shareholders Litigation, Consolidated C.A. No. 15927, 2000 Del. Ch. LEXIS 82 (May 22, 2000).

- In re Cencom Cable Income Partners, L.P. Litigation, C.A. No. 14634, 2000 Del. Ch. LEXIS 90 (May 5, 2000).

- In re Cencom Cable Income Partners, L.P. Litigation, Consolidated C.A. No. 14634, 2000 Del. Ch. LEXIS 10 (Jan. 27, 2000).

- In re Marriott Hotels Properties II Limited Partnership Unitholders Litigation, Consolidated C.A. No. 14961, 2000 Del. Ch. LEXIS 17 (Jan. 24, 2000).

- Romig v. Jefferson-Pilot Life Insurance Company, 132 N.C. App. 682, 513 S.E.2d 598 (Ct. App. 1999), aff'd, 351 N.C. 349, 524 S.E.2d 804 (S. Ct. 2000).

- Wallace v. Wood, 752 A.2d 1175 (Del. Ch. 1999).

- Greenwald v. Batterson, C.A. No. 16475, 1999 Del. Ch. LEXIS 158 (July 26, 1999).

- Brown v. Perrette, Civil Action No. 13531, 1999 Del. Ch. LEXIS 92 (May 18, 1999).

- In re Cencom Cable Income Partners, L.P. Litigation, C.A. No. 14634, 1997 Del. Ch. LEXIS 146 (Oct. 15, 1997).

- In re Marriott Hotel Properties II Limited Partnership Unitholders Litigation, Consolidated C.A. No. 14961, 1997 Del. Ch. LEXIS 128 (Sept. 17, 1997).

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

- In re Cheyenne Software Shareholders Litigation, Consolidated C.A. No. 14941, 1996 Del. Ch. LEXIS 142 (Nov. 7, 1996).

- Seinfeld v. Robinson, 246 A.D.2d 291, 676 N.Y.S.2d 579 (N.Y. 1998).

- Werner v. Alexander, 130 N.C. App. 435, 502 S.E.2d 897 (N.C. Ct. App. 1998).

---

### NON-DISCRIMINATION POLICIES

---

Wolf Haldenstein does not discriminate or tolerate harassment against any employee or applicant because of race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, or alienage or citizenship status and designs its hiring practices to ensure that minority group members and women are afforded equal employment opportunities without discrimination. The Firm is in compliance with all applicable Federal, State, County, and City equal employment opportunity laws.

Wolf Haldenstein is proud of its long history of support for the rights of, and employment opportunities for, women, the disadvantaged, and minority group persons, including the participation in civil rights and voter registration activities in the South in the early 1960's by partners of the Firm; the part-time employment of disadvantaged youth through various public school programs; the varied *pro bono* activities performed by many of the Firm's lawyers; the employment of many women and minority group persons in various capacities at the Firm, including at the partner level; the hiring of ex-offenders in supported job training programs; and the use of minority and women-owned businesses to provide services and supplies to the Firm.

---

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 MADISON AVENUE
NEW YORK, NY 10016
Telephone: 212-545-4600
Telecopier: 212-545-4653
WWW.WHAFH.COM

| SYMPHONY TOWERS | 656 WEST RANDOLPH STREET |
| --- | --- |
| 750 B STREET, SUITE 2770 | SUITE 500W |
| SAN DIEGO, CA 92101 | CHICAGO, IL 60661 |
| Telephone: 619-239-4599 | Telephone: 312-466-9200 |
| Telecopier: 619-234-4599 | Telecopier: 312-466-9292 |

---

[27]

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

625 NORTH FLAGLER DRIVE
WEST PALM BEACH, FL 33401
Telephone: 561-833-1776

counsel for securities class action and derivative litigation. Milberg Weiss is currently representing the N.Y. State Common Retirement Fund in substantial securities fraud actions against Bayer AG, the Raytheon Corp. and Chubb.

• The State of New Jersey Pension Fund. Milberg Weiss was competitively selected by the Treasurer of the State of New Jersey to represent the state's $86 billion pension fund in its securities litigation against Sears Roebuck & Co. New Jersey was appointed lead plaintiff and Milberg Weiss lead counsel, after hard-fought motion practice.

• State of Ohio. In October 2003, the Firm was appointed special securities litigation counsel for the State of Ohio by the Attorney General. Currently, the Firm is representing the Ohio Tuition Trust Authority in the Putnam Mutual Fund litigation currently pending in the District of Maryland.

• Commonwealth of Pennsylvania. Milberg Weiss was competitively selected as panel counsel by the Commonwealth of Pennsylvania's State Employees' Retirement System, a $28 billion dollar fund.

• The Teachers' Retirement System of The State of Illinois. This $22 billion dollar pension fund appointed Milberg Weiss to serve as monitoring and securities litigation counsel.

• Ontario Public Service Employees Union Pension Trust Fund ("OPTrust"). Milberg Weiss is representing OPTrust as Lead Plaintiff in a securities fraud action against Nortel involving accounting fraud and other related misrepresentations.

• SEIU Local 144 Nursing Home Pension Fund and Hotel Front Insurance Fund. Milberg Weiss has represented these combined funds in several securities class actions, including actions against Procter & Gamble Company and Microstrategy, Inc., which settled for $48 million and $155 million, respectively.

• The Federal Deposit Insurance Corporation. Milberg Weiss represented the FDIC in claims arising out of the failure of the Butcher brothers' Tennessee banking empire. The case ultimately settled for $425 million after a full jury trial as part of a massive global settlement among the FDIC, RTC and Ernst & Whinney.

• The West Virginia Employer - Teamsters Joint Counsel No. 84 Pension Trust and Locals 175 and 505 Pension Trust. Milberg Weiss has recently represented these Taft-Hartley pension funds as Lead Plaintiff in the Lucent Technologies Corp. Securities Litigation, which settled for $600 million.

• The Firm represented IBM Corporation with Cravath, Swaine & Moore in class and derivative suits asserted against IBM in New York courts. The derivative litigation has been dismissed and the class litigation was defeated on a motion for summary judgment, thereafter sustained on appeal.

• In addition, the Firm has represented individuals, governmental entities and major corporations including CBS Corporation; T.V. Azteca, Mexico's second largest television network; Phar-Mor, Inc., formerly a nationwide discount pharmacy chain, and others in complex financial litigation.

# PROMINENT CASES

• *In re Lucent Technologies, Inc. Securities Litigation*, No. 00cv621 (AJL) (D.N.J.). This settlement provides compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

• *In re Raytheon Securities Litigation*, 99 CV 12142 (E.D. Mass.). This case concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor PricewaterhouseCoopers LLP settled for a total of $460 million.

• Milberg Weiss served as co-lead counsel in *In re Oxford Health Plans, Inc. Securities Litigation*, MDL Dkt. No. 1222 (CLB) (S.D.N.Y.), in which settlements totaling $300 million in cash were approved by the Court in June 2003. Plaintiffs alleged that Oxford Health Plans, Inc. issued fraudulent financial statements that misstated its premium revenues and medical claims expense. KPMG LLP, Oxford's outside auditor, was also named as a defendant and was alleged to have issued a materially false and misleading audit opinion on Oxford's financial statements for the year ended December 31, 1996.

• In *In re Rite Aid Securities Litigation*, Master File No. 99-1349 (E.D. Pa.), Judge Stewart Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million -- the second largest amount ever recovered from an accounting firm in a federal securities class action, and the largest ever against an auditor in a case where the securities claims were limited to claims under section 10(b), which requires proof of knowing or reckless

misconduct), and certain former executives of Rite Aid ($1.6 million).

• *In re Scheiner v. i2 Technologies, Inc.*, Civ. No. 3:01-CV-418-H (N.D. Tex.). May 2004 settlement of $84.85 million with i2 Technologies and certain individual defendants. Case alleged securities fraud against defendants relating to company's software product descriptions and alleged violations of Generally Accepted Accounting Principles.

• *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.). The Initial Public Offering Securities Litigation consists of 309 separate class actions involving more than 300 IPOs marketed between 1998 and 2000. The actions are coordinated for pre-trial purposes before U.S. District Court Judge Shira A. Scheindlin in the Southern District of New York. The defendants consist of the companies brought public, certain of their officers and directors and 55 of the investment banks that brought them public and underwrote various follow-on offerings. The lawsuits generally allege that the IPOs of these companies were manipulated by the investment banks to artificially inflate the market price of those securities and to conceal the amounts of compensation actually received by the underwriters and that these efforts were not disclosed to the investing public. A proposed settlement between the issuer defendants and their directors and officers and the plaintiffs has been preliminarily presented to the Court for review. The settlement would guarantee at least (or the first) $1 billion dollars to investors who are class members from the insurers of the issuers. The $1 billion guarantee is subject to reduction by potential recoveries from the 55 Underwriter Defendants against whom the cases will continue. A preliminary hearing has yet to be scheduled by the Court. Recently, Judge Scheindlin granted plaintiffs' motions for class certification in six class actions against the Underwriter Defendants, which were selected to serve as test cases.

• In *In re Mutual Funds*, Milberg Weiss has been appointed as the co-chair of the plaintiffs' counsel's steering committee, which is responsible for prosecuting this ground-breaking litigation involving timing and late trading allegations against (and on behalf of) more than 16 mutual fund families and affiliated entities. Pursuant to an order by the Panel for Multidistrict Litigation, these cases are proceeding before four judges in the District of Maryland. As co-chair, Milberg Weiss is responsible for overseeing a steering committee comprised of approximately 10 firms which are working together to prosecute this highly complex litigation.

• The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, Civ. No. 95-4707 (AMW) (D.N.J.), a landmark case which concerned securities claims as well as common law claims and which resulted in a recovery exceeding $4 billion for Prudential policyholders. The settlement was approved in a comprehensive decision handed down by the Third Circuit. Milberg Weiss has led the litigation of numerous other class actions involving alleged churning practices by other insurance companies and their agents, recovering billions of dollars in actions against major insurers, including MetLife, American Express/IDS, New York Life, ManuLife and John Hancock.

• In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), Milberg Weiss served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.

• *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.). A massive litigation in which Milberg Weiss served as co-lead counsel for a class that obtained settlements totaling $775 million after several months of trial.

• In *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, MDL 834 (D. Ariz.), Milberg Weiss served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now-infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

• *In re Exxon Valdez*, No. A89-095 Civ. (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Super. Ct. 3d Jud. Dist.). Milberg Weiss is a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

• In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare valued in excess of $500 million dollars was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the Court on

November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal court by physicians and medical associations currently pending against many of the nation's largest for-profit health insurers arising from conduct involving issues dating back to 1990. These settlements bring sweeping changes to the health care industry and involve improvements to physician-related business practices and provide for the establishment of an independent foundation dedicated to improving the quality of health care in America.

• *In re Baldwin United Annuity Litigation*, No. M-21-35 (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this consolidated proceeding on behalf of purchasers of annuities that was settled for over $160 million.

• *In re MicroStrategy, Inc. Securities Litigation*, No. 00-473-A (E.D. Va.). Milberg Weiss served as co-lead counsel in this action, which alleged securities fraud based on a massive restatement. Settlements with the defendants totaled in excess of $150 million.

• *In re Sunbeam Securities Litigation* (No. 98-8258) (S.D. Fla) Milberg Weiss acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The Court approved a combined settlement of over $140 million. The settlement amount included a $110 million settlement with Arthur Andersen, LLP, Sunbeam's auditor. The Andersen settlement is one of the largest amounts ever paid by a public accounting firm to settle claims brought under the federal securities laws. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

• In *In re Computer Associates Securities Litigation*, Nos. 98-CV-4839, 02-CV-1226 (TCP) (E.D.N.Y.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement valued at over $134 million in these securities fraud class actions.

• In *In re IKON Office Solutions, Inc. Securities Litigation*, MDL 1318, Docket No. 98-4286 (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $111 million in this securities fraud class action.

• In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air. Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg

Weiss acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The total of the two settlements, which consisted of both cash and stock, was approximately $1 billion.

• *In re Kruman v. Christie's International, PLC*, 284 No. 01-7309 (S.D.N.Y.), resulted in the first U.S. Court of Appeals holding that antitrust class actions on behalf of all purchasers injured worldwide can be brought in U.S. courts under U.S. law when an antitrust conspiracy has sufficient effects in the U.S. Decided in March 2002; led to successful settlement in 2003 of claims against Christie's and Sotheby's on behalf of purchasers and sellers at auctions outside the U.S.

• *In re Tyco International Ltd., Securities Litigation*, MDL Docket No. 02-1335-B (D.N.H.). Milberg Weiss is co-lead counsel in this litigation, which involves claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel and certain former directors that arise out of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Claims are also made under the 1933 and 1934 Acts against PricewaterhouseCoopers, LLP, which is alleged to have published false audit opinions on Tyco's financial statements during the Class Period and to have failed to audit Tyco properly, despite knowledge of the fraud. In October 2004, the Court sustained the vast majority of plaintiffs' claims against Tyco and its former senior officers (Dennis Kozlowski, Mark Swartz, Mark Belnick and Frank Walsh), with the exception of one director, as well as Tyco's auditor, PwC.

• *In re Nortel Networks Corp. Securities Litigation*, Civ. No. 01-CV-1855-RMB (S.D.N.Y.). This federal securities fraud class action was commenced in February 2001 against Nortel Networks Corp. and certain of its officers and directors. In February 2002, Milberg Weiss was appointed to serve as sole Lead Counsel for the Class and for the Court-appointed Lead Plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In January 2003, the Court sustained the Complaint in its entirety, denying defendants' motion to dismiss and, in September 2003, certified a Class. In certifying the Class, the Court

specifically rejected defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the Class. The Second Circuit denied defendants' attempted appeal.

• *In re Xerox Securities Litigation*, No. 3:99-CV-2374 (AWT) (D. Conn.) and *Carlson v. Xerox Corp.*, No. 3:00-CV-1621 (AWT) (D. Conn.). Milberg Weiss was appointed co-lead counsel in both of these cases. The first case was brought on behalf of a class of purchasers of Xerox common stock from October 22, 1998 (when Xerox first claimed that it was benefiting from a restructuring) through October 7, 1999 (when Xerox finally disclosed the massive problems with the restructuring that affected its operations and the impact of these problems on its revenues) and alleged misrepresentations regarding Xerox's restructuring. The second case was brought on behalf of a class of purchasers of Xerox common stock from February 17, 1998 through June 28, 2002 and alleged misrepresentations and failure to disclose massive accounting improprieties. As a result of these alleged accounting improprieties, on June 28, 2002 (the last day of the Class Period), Xerox issued a $6.4 billion restatement of equipment sales revenues booked over a five year period.

• *In re The Walt Disney Company Derivative Litigation*, C.A. No. 15452 (Del. Ch., New Castle County). Challenge to Employment Agreement which Board of Directors never reviewed or approved and to payment of severance package without Board oversight. This action is currently being tried in the Delaware Chancery Court.

• Milberg Weiss is prosecuting numerous class actions involving a major area of investment abuse: deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. In *Nelson v. Pacific Life Ins. Co.*, No. CV203-131 (S.D. Ga.) the district court denied defendants' motion to dismiss and discovery is underway. In *American United Life Insurance Co. v. Douglas*, No. 29A02-0304-CV-350 (Ind. Ct. App.), denial of defendant's summary judgment motion was sustained on interlocutory appeal. The SEC and NASD have begun regulatory programs to address these problems.

• Milberg Weiss is co-lead counsel in *In re Vivendi Universal, S.A. Securities Litigation*, 02 Civ. 5571 (RJH), a securities fraud class action on behalf of U.S. and foreign investors who purchased Vivendi ordinary shares or American Depository Shares. Plaintiffs allege that Vivendi embarked on a $77 billion acquisition spree in order to transform itself into a huge international conglomerate. Throughout the Class Period (October

30, 2000 through August 14, 2002), defendants (and in particular, Vivendi's former CEO and Chairman, Jean-Marie Messier, and Vivendi's former CFO, Guillaume Hannezo) reported strong revenue and earnings, and portrayed Vivendi as a company that was generating sufficient cash flow to satisfy its debt obligations on approximately $21 billion in debt that it had amassed in connection with financing its acquisition binge. However, plaintiffs allege that Vivendi's operations and financial condition were much weaker than what their public statements portrayed. Plaintiffs have already defeated defendants' motions to dismiss the complaint, and are in the midst of discovery that will take place in the U.S. and France (where French regulators are conducting their own formal investigations).

• *Rabi Abdullahi v. Pfizer, Inc.*, 01 Civ. 8118 (WHP), (S.D.N.Y.). This is a case in which the Firm has brought claims under the Alien Tort Claims act on behalf of Nigerian children and their families who were enrolled in a clinical trial of a drug by Pfizer without their knowledge. Plaintiff alleges that Pfizer's conduct violated the international prohibition on medical experimentation without informed consent when children suffering from meningitis, whose families had brought them to a local hospital for treatment, were secretly enrolled in a clinical trial of the Pfizer drug, Trovan. Plaintiff survived a motion to dismiss for failure to state a claim. The action was then dismissed on forum non-conveniens grounds but the Second Circuit vacated that decision. The case is now back before the trial court.

• In *In re General Instrument Corp. Securities Litigation*, No. 01-3051 (LR) (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $48 million in this securities fraud class action.

• *In re Triton Energy Limited Securities Litigation*, Civil Action No. 5-98-CV-256 (E.D. Tex. Texarkana Division), settled for $42 million. Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998.

• In *Andrews v. AT&T*, No. CV 191-175 (S.D. Ga.). The Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits; the class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

# PRECEDENT-SETTING DECISIONS

Milberg Weiss has consistently been a leader in developing the law for investors and consumers under the federal securities, antitrust and consumer protection laws. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg Weiss has served as lead or co-lead counsel for the class. The Firm has also been responsible for establishing many important precedents, including:

• *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. The court stated that class actions are necessary to protect the rights of defrauded purchasers of securities.

• *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the district court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

• *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). The First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The Court also accepted the argument made by Milberg Weiss that courts should consider the amount of discovery that has taken place in deciding a motion to dismiss and that the lack of discovery will result in a less stringent standard for pleading securities fraud claims with particularity.

• *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003). This important decision upheld plaintiffs' claim that loss causation was properly alleged because "[p]aying more for something than it is worth is damaging." In so ruling, the Eighth Circuit reaffirmed a split on the issue of loss causation between circuits that measure loss as the difference between purchase price and the stock's true value at the date of purchase, and circuits that require that the alleged fraud cause a subsequent decline in value of the original investment. The issue is currently the subject of a case pending before the Supreme Court.

• *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the Firm successfully argued that, under the PSLRA, the requisite scienter is pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. As urged by this Firm, the Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

• *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996). The court certified a class of millions of investors, who were harmed by an industry-wide conspiracy where NASDAQ market-makers set and maintained wide spreads, over defendants' strenuous objections.

• *In re Initial Public Offering Securities Litigation*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003). The Court sustained, in large part, the plaintiffs' complaints against more than 50 underwriters of high-tech stocks in one of the most comprehensive decisions issued under the securities laws. Milberg Weiss serves as the Chair of Plaintiffs' Executive Committee in this landmark litigation.

• *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the dismissal by the District Court, the Seventh Circuit resolved an important issue involving the PSLRA "safe harbor" for forward-looking statements in plaintiffs' favor. The Court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

• In *In re Vivendi Universal, S.A. Securities Litigation*, 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y. Nov. 3, 2003), Judge Harold Baer upheld plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, which alleged that Vivendi and two of its former executives (CEO Jean-Marie Messier and CFO

Guillaume Hannezo) did not disclose to investors that: (1) Vivendi's corporate acquisition programs had brought Vivendi to the brink of a potentially catastrophic liquidity crisis; (2) although it consolidated the financial results of several majority owned subsidiaries, Vivendi did not have access to the cash flows of these entities; (3) Vivendi failed to write down billions of dollars of impaired goodwill from prior acquisitions; and (4) one of Vivendi's U.S. subsidiaries improperly recognized revenue "up front" on the full value of long term contracts. The case is particularly notable because the court held that because of defendants' activities in New York promoting Vivendi stock, defendants' conduct was more than "merely prepatory" to the alleged fraudulent scheme, and thus the court had jurisdiction not only over purchasers of Vivendi ADRs on the NYSE, but also over the claims of foreign purchasers who purchased Vivendi ordinary shares on foreign exchanges.

• In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the district court's ruling, which denied plaintiffs a cause of action against defendants for failing to disclose that the Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the Court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

• In *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milberg Weiss' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

• *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the district court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in district court. Shortly thereafter, the case settled for $40 million, which is among the largest cash recoveries ever recorded in a derivative action.

• *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand.

• *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985). The Second Circuit reversed the district court's

dismissal of a securities fraud complaint, in an important opinion clarifying the "fraud" pleading requirements of Federal Rules of Civil Procedure, Rule 9(b).

• *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir.), cert. denied, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

• *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

• *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984). The Court of Appeals reversed the lower court's dismissal of the complaint. The Firm had sought the extraordinary remedy of the appointment of a receiver over the affairs of a public company due to the highly specific allegations of fraud, dishonesty and gross mismanagement by the corporation's controlling shareholders.

• *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), aff'd sub nom, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a derivative action to recover excessive advisory fees may be brought on behalf of an investment company without any prior demand on the board.

• *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a §10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

• *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969), aff'd, 428 F.2d 693 (7th Cir. 1970). The plaintiff obtained summary judgment for a violation of §16(b) of the Securities Exchange Act in which the transaction was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of §16(b).

• *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968), rev'g, 260 F. Supp. 598 (S.D.N.Y. 1966). The court held that liability under §10(b) of the Securities Exchange Act extends to defendants who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

• *In re Cox v. Microsoft*, No. 03-2922 (App. Div. 1st Dep't, June 2004). First appellate ruling in New York state courts that class actions may be pursued in the New York state courts for some antitrust violations on behalf of indirect purchasers under New York deceptive

practices laws as well as common law claims for unjust enrichment. May open the door to class action recovery of damages on behalf of New York purchasers of Microsoft software comparable to settlements reached in various other states such as California, where Microsoft settled for approximately $1 billion.

• *In re JLM Industries, Inc. v. Stolt-Nielsen SA*, No. 3:03CV348 (D. Conn. June 24, 2003). Milberg Weiss succeeded in establishing that arbitration of horizontal conspiracy claims, arising under Section 1 of the Sherman Act, cannot be compelled on grounds that such claims do not "arise from" the injured person's purchase contract. (Currently on appeal and awaiting decision from the Second Circuit.)

• In *Puckett v. Sony Music Entertainment*, No. 108802/98 (New York Co. 2002), Milberg Weiss achieved a precedent-setting decision in which a class

action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into at any time during the period of January 1, 1965 to the date of the filing of the complaint in 1998. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

Additionally, in the context of shareholder derivative actions, Milberg Weiss has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

• *In re Marketspan Corporate Shareholder Litigation*, CV No. 98-15884 (N.Y. Sup. Ct.) (settlement agreement required modifications of corporate governance structure, changes to the audit committee and changes in compensation awards and the nominating committee);

• *Abramsky v. Computer Sciences Corp.*, CV No. 98-00306-JBR (RLH) (D. Nev. 1998) (significant changes to the company's by-laws and governance procedures to enhance shareholder voting rights and the role of outside directors).

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | : | |
| In re Creditrust Corporation | : | Civil Action No. MJG 00 CV 2174 |
| Securities Litigation | : | |
| | : | |
| | x | |

AFFIDAVIT OF KURT B. OLSEN
IN SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF THE OLSEN LAW FIRM

| | |
|---|---|
| DISTRICT OF COLUMBIA | : |
| | : ss. |
| | : |

I, Kurt B. Olsen, being duly sworn, depose and say:

1.    I am a member of the firm of The Olsen Law Firm.  I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.    The chart attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by the attorneys, law clerks and paralegals of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates.  The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate and a breakdown of the hours expended by each attorney.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm which are available for submission to the Court at its request.  Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

1

4.    As counsel for plaintiffs, the attorneys of my firm assisted in investigating the claims; drafting the complaint; reviewing/analyzing internal company documents and filings in Creditrust's bankruptcy proceeding; and preparing motions.

5.    With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm.

6.    The total number of hours spent on this litigation by my firm from the inception of the case through April 5, 2005 is 82.5 hours.  The total lodestar amount for attorney, law clerk and paralegal time based on the firm's current rates is $40,837.50. The hourly rates set out in the chart as Exhibit A are the same rates which The Olsen Law Firm charges its hourly clients paying for its services on a monthly basis.

7.    My firm expended a total of $0 in unreimbursed expenses in connection with the prosecution of this litigation.

2

8.    The expenses incurred pertaining to this case are reflected on the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.


KURT B. OLSEN


State of MD.
County of Montgomery
SWORN TO AND SUBSCRIBED

before me this 11 day of April, 2005

Notary Public

MICHAEL J. DELOZIER
NOTARY PUBLIC STATE OF MARYLAND
MY COMMISSION EXPIRES MAY 1, 2008

3

**EXHIBIT A**

**IN RE CREDITRUST CORP. SECURITIES LITIGATION**

**THE OLSEN LAW FIRM**
**ATTORNEY TIME FROM INCEPTION THROUGH APRIL 7, 2005**

| Attorney | Hourly Rate | Total Hours | Total Lodestar |
|----------|-------------|-------------|----------------|
| Kurt B. Olsen | $495.00 | 82.5 | $40,837.50 |

**EXHIBIT B**

## THE OLSEN LAW FIRM

The Olsen Law Firm focuses on complex securities litigation, Title VII litigation, and commercial litigation. The Firm's founder, Kurt B. Olsen, is a graduate of the U.S. Naval Academy (B.S. *with Merit* 1984) and the National Law Center, George Washington University (J.D. *with Honors* 1992). Mr. Olsen is admitted to practice law in Maryland and the District of Columbia.

Upon graduation from law school in May 1992, Mr. Olsen joined the Washington D.C. office of Kirkland & Ellis where he represented General Motors Corp., Dow Corning Corp., and the Dow Chemical Co. in various products liability actions. He also served as co-lead trial counsel in *Scott v. Dow Corning, Inc.* – Dow Corning's only complete victory in Texas in the breast implant litigation. In July 1996, Mr. Olsen joined the law firm of Barger & Moss in Corpus Christi, TX. While there, Mr. Olsen continued to represent the Dow Chemical Co., and various automobile manufacturers.

Mr. Olsen founded The Olsen Law Firm in September 1997. He has been appointed a lead counsel in numerous federal securities class actions including: *Edwards v. Casino Data Systems, Inc. et al.* ($5 million settlement); *Broderick v. PHP Healthcare Corp. et al.* ($4.5 million partial settlement); *In re SmarTalk Teleservices Inc. Sec. Litig.* ($27.1 million settlement); and *In re Ashworth Sec. Litig.* ($15.25 million settlement). In addition, The Olsen Law Firm has or had a significant role in the following federal securities class actions: *In re FPA Medical Management, Inc. Sec. Litig.* ($9 million settlement); *In re Datastream Systems, Inc. Sec. Litig.* ($5 million settlement), and *Cox v. Software AG Systems, Inc.* ($3.5 million settlement).

Prior to law school, Mr. Olsen served as a Naval Special Warfare Officer assigned to SEAL Team Five in Coronado, California. During his career in the U.S. Navy, Mr. Olsen traveled extensively in the Middle East and the Far East – primarily as a special operations platoon commander.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

|  |  |  |
|---|---|---|
| In re Creditrust Corporation Securities Litigation | : : : : | Civil Action No. MJG 00 CV 2174 |

---

AFFIDAVIT OF CHARLES J. PIVEN
IN SUPPORT OF JOINT PETITION FOR ATTORNEYS FEES
AND REIMBURSEMENT OF EXPENSES FILED ON
BEHALF OF LAW OFFICES OF CHARLES J. PIVEN, P.A.

STATE OF MARYLAND      :
                       :      ss.
COUNTY OF BALTIMORE :

I, Charles J. Piven, being duly sworn, depose and say:

1.      I am the owner of the firm Law Offices Of Charles J. Piven, P.A.  I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.      The chart attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by the attorneys of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates.  The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate and a breakdown of the hours expended by each attorney.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm which are available for submission to the Court at its request.  Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

4.     As counsel for plaintiffs, the attorneys of my firm performed tasks including communications with class members and co-counsel, preparation and review of pleadings and review of correspondence and filings.

5.     With respect to standing of counsel in this case, attached hereto as Exhibit B is a brief biography of the principal attorneys of my firm who worked on this litigation.

6.     The total number of hours spent on this litigation by my firm from the inception of the case through April 5, 2005 is 16.4 hours. The total lodestar amount for attorney time based on the firm's current rates is $7,780.00. The hourly rates for the attorneys in my firm included in Exhibit A have been accepted and approved by courts in other securities or shareholder litigation.

7.     My firm expended a total of $600.43 in unreimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| CATEGORY | AMOUNT |
|---|---|
| Research | $178.75 |
| Photocopies | 83.50 |
| Telephone | .71 |
| Messenger | 26.68 |
| Court Costs | 300.00 |
| Postage | 8.79 |
| Facsimile | 2.00 |
| Total | $600.43 |

8.     The expenses incurred pertaining to this case are reflected on the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

Charles J. Piven

SWORN TO AND SUBSCRIBED
before me this 7th day of April, 2005

_Mary M. Hoffman_
Notary Public
My Commission Expires:  01/01/09

**EXHIBIT A**

**FEE CHART FOR**
**LAW OFFICES OF CHARLES J. PIVEN, P.A.**

*IN RE CREDITRUST SECURITIES LITIGATION*

| NAME OF LAWYER | HOURS WORKED | HOURLY RATE | CURRENT LODESTAR |
|---|---|---|---|
| Charles J. Piven | 14.8 | $490.00 | $7,252.00 |
| Marshall N. Perkins | 1.6 | 330.00 | 528.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | **16.4** | | **$7,780.00** |

EXHIBIT B

**FIRM RESUME**

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**

This firm operated as a sole proprietorship under the name Law Offices Of Charles J. Piven from May of 1990 through January of 1997. Effective February 1, 1997 the firm was incorporated and renamed Law Offices Of Charles J. Piven, P.A.

**Charles J. Piven** graduated from the University of Miami Law School and was admitted to both the Florida (though currently inactive) and Maryland bars in 1978. Since then, Mr. Piven has been involved in commercial litigation, medical and legal malpractice litigation, securities arbitrations and other complex business, tort and tax litigation (before state, federal and the United States Tax courts). Mr. Piven has participated in representing clients in consumer and securities class action cases and derivative cases since the mid-1980's, having represented clients in over 500 of such cases and having obtained, with co-counsel, recoveries valued in excess of $2 billion.

**Marshall N. Perkins** graduated *magna cum laude* from the University of Baltimore School of Law in 1997, where he was a staff editor for the *University of Baltimore Law Forum*. After receiving his law degree in May, 1997, Mr. Perkins served as law clerk to the Honorable Irma S. Raker of the Court of Appeals of Maryland. Mr. Perkins has practiced in the areas of consumer class action, professional negligence, securities litigation and other complex tort litigation. Mr. Perkins is a member of the Maryland bar, the bar of the United States District Court for the District of Maryland, and the United States Court of Appeals for the Fourth Circuit.

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| In re Creditrust Corporation | * | Civil Action No. MJG 00 CV 2174 | |
| Securities Litigation | * | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

AFFIDAVIT OF LAWRENCE J. QUINN
IN SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF TYDINGS & ROSENBERG LLP

STATE OF MARYLAND      :
                               : SS.
COUNTY OF BALTIMORE     :

I, Lawrence J. Quinn, being duly sworn, depose and say:

1. I am a member of the firm of Tydings & Rosenberg LLP. I am submitting this affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2. The chart attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by the attorneys, law clerks, and paralegals of my firm on this litigation, and the lodestar calculation based on my firm's current billing rates for similar matters. The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate, and a breakdown of the hours expended by each attorney. The same information is provided for law clerks and paralegals. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm which are available for submission to the Court at its request. Time spent in preparing

#463480v.1

this affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in his request.

3.  As counsel for plaintiffs, the attorneys of my firm participated in the drafting and filing of the complaints, discovery and review of documents, appeared at hearings as liaison counsel, reviewed and filed motions, assisted in service of process, and interviewed a witness.

4.  With respect to the standing of counsel in this case, attached hereto as Exhibit B is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm who worked on this litigation.

5.  The total number of hours spent on this litigation by my firm from the inception of the case, through April 5, 2005, is 145.6 hours.  The total lodestar amount for attorney, law clerk, and paralegal time based on the firm's current rates is $44,390. The hourly rates set out in the chart as Exhibit A are the same rates which Tydings & Rosenberg LLP charges its hourly clients paying for its services on similar matters on a monthly basis.

6.  My firm expensed a total of $5,582.33 in unreimbursed expenses in connection with the prosecution of this litigation, broken down as follows:

| Category | Amount |
| --- | --- |
| Photocopies | $3405.06 |
| Filing fees | $ 750.00 |
| Process Server | $ 690.00 |
| Federal Express | $ 349.49 |
| Travel | $ 203.00 |
| Meals | $ 59.50 |
| Court Reporter | $ 55.38 |
| Legal Research | $ 37.07 |
| Courier | $ 19.80 |
| Postage | $ 6.60 |

Long Distance Calls $ 6.53

**TOTAL** <u>**$5,582.33**</u>

7. The expenses incurred pertaining to this case are reflected on the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

Lawrence J. Quinn

Sworn to and Subscribed
before me this 8th day
of April, 2005.

My Commission expires: 10/20/05

# EXHIBIT A

## FEES AND EXPENSES FOR

## TYDINGS & ROSENBERG LLP IN

## IN RE CREDITRUST SECURITIES LITIGATION

| NAME OF LAWYER OR PARALEGAL | HOURS WORKED | CURRENT HOURLY RATE | CURRENT LODESTAR |
|---|---|---|---|
| Lawrence J. Quinn | 95.2 | $315 | $29,988.00 |
| Lee B. Rauch | .7 | $280 | $196.00 |
| Timothy A. Hodge | 35.5 | $325 | $11,537.50 |
| James O'Neill | 5.7 | $240 | $1,368.00 |
| Susan Broderick | 5.1 | $155 | $790.50 |
| Marc Glickstein | 1.2 | $150 | $180.00 |
| Cherita Martin | 2.2 | $150 | $330.00 |
| | | | |
| **TOTALS** | 145.6 | | $44,390.00 |

**EXPENSES:** $5,582.33

#455357v.2

.

## EXHIBIT B

## IN RE CREDITRUST CORPORATION SECURITIES LITIGATION

### BIOGRAPHY OF TYDINGS & ROSENBERG LLP

Tydings & Rosenberg LLP and its predecessor firms have practiced law in Baltimore for

seventy-five years. Millard E. Tydings, United States Senator from Maryland, was among its

founders. Currently, the firm has nearly fifty lawyers and is engaged in general civil practice.

More than half of the firm's practice consists of litigation, including antitrust, products liability,

securities, commercial, and ERISA litigation, at both trial and appellate levels. That litigation

has included the representation of parties in class actions. Among the concluded class actions

are:

> In Re Manugistics Group, Inc. Securities Litigation, United States District Court for the
> District of Maryland, Civil Action No. 98-CV-1881 (FNS), (liaison counsel for plaintiffs,
> securitis)

> Lipstein v. MCFN, Inc., Circuit for Frederick County, Maryland, Case No. 96-2079-CV
> (counsel for plaintiffs, fraud);

> Goldenberg v. Marriott PLP Corporation, United States District Court for the District of
> Maryland, Civil Action No. PJM-95-3461 (counsel for plaintiffs, real estate limited
> partnership);

> In Re: Cryomedical Sciences, Inc. Securities Litigation, United States District Court for
> the District of Maryland, Civil Action No. AW-94-873 (liaison counsel for plaintiffs,
> securities);

> In Re: Kirschner Medical Corporation Securities Litigation, United States District Court
> for the District of Maryland, Civil Action No. WN-90-858 (liaison counsel for plaintiffs,
> securities);

> In Re: USF&G Securities Litigation, United States District Court for the District of
> Maryland, Civil Action No. B-90-2992 (liaison counsel for plaintiffs, securities);

> United Apple Sales Incorporated Profit Sharing Trust U/A Dtd 8/1/71, et al. v. Marriott
> Corporation, et al., United States District Court for the District of Maryland, Civil Action
> No. H-92-2858 (liaison counsel for plaintiffs, securities);

#463547

In Re: Jiffy Lube Securities Litigation, United States District Court for the District of Maryland, Civil Action No. JHY-89-1939 (liaison counsel for plaintiffs, securities);

In Re: RAC Mortgage Investment Corporation Securities Litigation, United States District Court for the District of Maryland, Civil Action No. K-89-1796 (liaison counsel for plaintiffs, securities);

Becker v. James C. Marshall, et al., (Residential Resources) Circuit Court for Baltimore City, Case No. 89-107131 CL 91848 (plaintiffs, securities);

Rubin v. Louisiana Land, Circuit Court for Baltimore City, Case No. 84-202031 CL 23303 (plaintiffs, securities);

In Re: Alleco Shareholders' Litigation, Circuit Court for Prince George's County, Case No. 88-02940 (plaintiffs, securities);

Lepow Equities Corp. v. First Maryland Bank Corp., Circuit Court for Baltimore City, Case No. 88-260070 (liaison counsel for plaintiffs, securities);

CertainTeed/St. Gobain Stockholders' Litigation, Circuit Court for Baltimore City, Case No. 88-05064 CL 77969 (liaison counsel for plaintiffs, securities);

Butowsky v. Prince George's County Board of Realtors, United States District Court for the District of Maryland, Civil Action No. K-71-1068 (plaintiffs, antitrust);

In Re: Montgomery County Real Estate Antitrust Litigation, United States District Court for the District of Maryland, Civil Action No. B-77-513 (liaison counsel for plaintiffs, antitrust);

In Re: Independent Gasoline Antitrust Litigation, (MDL 267) (liaison counsel for plaintiffs, antitrust);

Caplan v. T. Rowe Price & Associates, United States District Court for the District of Maryland, Civil Action No. Y-79-1434 (liaison counsel for plaintiffs, securities);

Mutual Shares Corp. and E.A. Greenfield v. Amdisco Corp., et al., Circuit Court for Baltimore City, Case No. 122A 844 A-62522 (plaintiffs, securities);

Edward A. Taubman v. McCormick & Co., Inc. et al., United States District Court for the District of Maryland, Civil Action No. HM-82-01482 (liaison counsel for plaintiff, securities).

In re Homestead Village Shareholder Litigation, Circuit Court for Baltimore City, Case No. 24-C-00-001556 (plaintiffs, securities).

Lawrence J. Quinn is a partner at Tydings & Rosenberg LLP. He graduated from the Johns Hopkins University in 1985, and received a law degree from Fordham University in 1988. He was admitted to practice in Maryland in 1989. He has served as liaison counsel in various of the class actions listed above.

Timothy A. Hodge is a former partner of Tydings & Rosenberg LLP and is currently of counsel to the firm. He graduated from Duke University in 1987, and received a law degree from Washington & Lee University in 1990. He has assisted as liaison counsel in various class actions.

10

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| _____ | : |  |
| In re Creditrust Corporation | : | Civil Action No. MJG 00 CV 2174 |
| Securities Litigation | : |  |
| _____ | : |  |

**AFFIDAVIT OF ANDREW L. BARROWAY
IN SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
FILED ON BEHALF OF SCHIFFRIN & BARROWAY, LLP**

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |  |
|  | : | ss. |
| COUNTY OF DELAWARE | : |  |

I, ANDREW L. BARROWAY, being duly sworn, depose and say:

1.     I am a partner of the firm of Schiffrin & Barroway, LLP.  I am submitting this Affidavit in support of my firm's application for an award of attorneys' fees in connection with services rendered to the plaintiff class and the reimbursement of expenses incurred by my firm in the course of this litigation.

2.     The chart attached hereto as Exhibit "A" is a detailed summary indicating the amount of time spent by the attorneys and paralegals of my firm on this litigation, and the lodestar calculations based on my firm's current billing rates.  The chart includes the name of each attorney who has worked on the matter, the current hourly billing rate and a breakdown of the hours expended by each attorney.  The same information is provided for paralegals on a collective basis.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm which are available for submission to the Court at its request. Time spent in preparing this Affidavit in support of my firm's application for fees and reimbursement of expenses has not been included in this request.

3.    As counsel for plaintiffs, the attorneys of my firm undertook initial factual

investigation, including the review of public documents and press articles; drafted a complaint;

drafted a press release announcing the lawsuit; conferred and corresponded with various

shareholders, clients and co-counsel; calculated shareholder damages; prepared lead plaintiff

papers; participated in the drafting of the Amended Consolidated Class Action Complaint;

researched and prepared objections to bankruptcy plan; and reviewed all court pleadings.

4.    With respect to the standing of counsel in this case, attached hereto as Exhibit "B"

is a brief biography of my firm as well as brief biographies of the principal attorneys of my firm

who worked on this litigation.

5.    The total number of hours spent on this litigation by my firm from the inception of

the case through April 5, 2005, is 276.95 hours.  The total lodestar amount for attorneys and

paralegals based on the firm's current rates is $134,190.25.  The hourly rates set out in the chart

as Exhibit "A" are the same rates which Schiffrin & Barroway, LLP charges its hourly clients

paying for its services on a monthly basis.

6.    My firm expended a total of $8,592.30 in unreimbursed expenses in connection

with the prosecution of this litigation, broken down as follows:

| Description | Amount |
|---|---|
| Photocopying | $  4,139.51 |
| Telephone & Fax | 402.86 |
| Messenger, Courier & Federal Express | 927.77 |
| Postage | 234.82 |
| Lexis, Westlaw, Dow Jones, Bloomberg Research | 2,775.34 |
| Press Releases | 112.00 |
| TOTAL: | $ 8,592.30 |

7.    The expenses incurred pertaining to this case are reflected on the books and records of this firm.  These books and records are prepared from expense vouchers and check records and are an accurate recordation of the expenses incurred.

ANDREW L. BARROWAY

SWORN TO AND SUBSCRIBED
before me this 7th day of April, 2005


NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kathy L. VanderVeur, Notary Public
Radnor Twp., Delaware County
My Commission Expires Jan. 25, 2009
Member, Pennsylvania Association of Notaries

Exhibit "A"

TIME REPORT

Schiffrin & Barroway, LLP

| Name | Hours | Rate | Amount |
|------|-------|------|--------|
| Richard S. Schiffrin (P) | 3.9 | $595 | $ 2,320.50 |
| Andrew L. Barroway (P) | 16.6 | $550 | 9,130.00 |
| Marc A. Topaz (P) | 33.4 | $525 | 17,535.00 |
| David Kessler (P) | 79.5 | $525 | 41,737.50 |
| Stuart L. Berman (P) | 84.75 | $495 | 41,951.25 |
| Robert Weiser (A) | 19.8 | $395 | 7,821.00 |
| Marc Willner (A) | 29.5 | $395 | 11,652.50 |
| Christiane Chiappinelli (Para.) | 9.5 | $215 | 2,042.50 |
| | | | |
| | | | |
| TOTAL: | 276.95 | | $ 134,190.25 |

P = Partner
A = Associate
Para = Paralegal

Exhibit "B"

FIRM BIOGRAPHY

Schiffrin & Barroway, LLP



# Firm Biography

Schiffrin & Barroway, LLP, located just outside of Philadelphia, has specialized in complex class action litigation for nearly twenty years, representing shareholders and consumers in class action litigation in state and federal courts throughout the United States. During the firm's successful history, Schiffrin & Barroway has recovered billions of dollars for defrauded stockholders and aggrieved consumers. The firm, which has developed a nationwide reputation for excellence, is led by its senior partners, Richard S. Schiffrin and Andrew L. Barroway, with assistance from partners, Marc A. Topaz, David Kessler, Katharine M. Ryan, Stuart L. Berman, Gregory M. Castaldo, Michael K. Yarnoff, Joseph H. Meltzer, and numerous experienced associates and staff.

The firm focuses primarily on the prosecution of securities fraud litigation, derivative actions and transactional litigation brought against public companies, executives, auditors and investment banking firms. In addition, Schiffrin & Barroway represents consumers in drug and product litigation as well as employees in ERISA/401K litigation.

Schiffrin & Barroway has represented various public and Taft-Hartley pension funds, private institutional investors, and hundreds of individual investors as Lead or Co-Lead Counsel in class action litigation in state and federal courts throughout the United States. Currently, Schiffrin & Barroway is acting as Lead or Co-Lead Counsel in class action suits against such companies as Tyco, Tenet Healthcare, and Sprint. Schiffrin & Barroway is currently involved in several other high profile cases across the country. Of particular note, we are currently prosecuting the action *In re Initial Public Offering Securities Litigation*, Master File No. 21 MC 92 (S.D.N.Y. Dec. 12, 2002)(SAS), as one of only six law firms comprising Plaintiffs' Counsel's Executive Committee. Our firm was selected from over sixty law firms which had brought such actions. This litigation, which is pending in the

Southern District of New York, challenges the legality of the IPO allocation practices of virtually all of the major investment banking firms from 1998 through 2000 and encompasses over 300 coordinated actions. The litigation has produced a $1 billion settlement with the issuer defendants which was recently granted preliminary approval from the Court and continues against the underwriter banks. In addition, we are particularly proud of the results recently achieved as sole lead counsel before the Honorable Joel A. Pisano in *In re AremisSoft Corp. Sec. Litig.*, C.A. No. 01-CV-2486 (D.N.J. 2002). This case was extraordinarily complex as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company who are now fugitives. The settlement of the action against the Company allowed for the Company to be reorganized so it could continue operations while establishing a litigation trust to pursue claims against the Company's auditors, its counsel, as well as those individuals that looted the Company. The Settlement provides the class with a majority of the equity in the new company, Softbrands, as well as their pro rata share of all monies recovered by the litigation trust. The Court-appointed co-trustees of the litigation trust have retained Schiffrin & Barroway to continue prosecuting the actions on behalf of the litigation trust. In this capacity, we have filed an action in the Isle of Man successfully freezing more than $200 million of stolen funds and are in the process of attempting to recover the money. In addition, we are continuing to pursue the litigation trust's claims. The *AremiSoft* litigation is a perfect example of one area of the firm's expertise, which is to creatively structure settlements with financially troubled companies.

Indeed, Schiffrin & Barroway is often commended by courts throughout the country for its excellent work:

> "I know you know that I take this responsibility seriously and try to think hard about these issues. And I do want to compliment class counsel. I think that you behaved responsively here and gave very good service to the class. They were well served by you."

> - The Honorable Denise Cote of the United States District Court for the Southern District of New York approving the settlement of *In re Interpublic Securities Litigation*.

> "Now, this goes back to the original approval of the securities fraud settlement because I found in my opinion approving the settlement that

counsel for the class were to be commended because they cast their lot along with their clients. That is to say that counsel's fees were to be determined and paid in accordance with the way the class members were going to be paid; that this was, in my view, a creative and unique approach to the problem of paying fees to class counsel in a securities fraud case."

- The Honorable Joel A. Pisano of the United States District Court for the District of New Jersey approving the settlement in *In re AremisSoft Corporation Securities Litigation*.

For clients with large investments, Schiffrin& Barroway will monitor their securities holdings, calculate their losses and alert them when actions relating to their holdings have been filed and/or settled. We also offer advice regarding joining an action, seeking to be a lead plaintiff, opting out of an action, bringing an individual action, and/or filing proofs of claim in order to share in a recovery as a class member.

Further information regarding the firm, the services which we provide, and cases which we are currently litigating can be found on our web-site at http://www.sbclasslaw.com.

**Richard S. Schiffrin**, founding partner of the firm, is licensed to practice law in Illinois and Pennsylvania, and has been admitted to practice before numerous United States District Courts. In his seven years of practice with the Office of the Public Defender of Cook County, Illinois, Mr. Schiffrin represented hundreds of clients in both bench and jury trials, as well as appeals. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and has served as a faculty member at numerous legal seminars including the Annual Institute on Securities Regulation, NERA:Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC):Ethical Issues in the Practice of Securities Law. Most recently Mr. Schiffrin spoke at the MultiPensions 2004 conference in Amsterdam. Netherlands. Mr. Schiffrin oversees all aspects of litigation on behalf of the firm. Mr. Schiffrin has been recognized for his expertise in numerous cases including most prominently:

· *In re AremisSoft Corp. Sec. Litig., C.A. No. 01-CV-2486 (D.N.J. 2002)*

In settling this action, which involved the embezzlement of hundreds of millions of dollars by former officers of the Company who are now fugitives, Mr. Schiffrin assisted in reorganizing the Company to allow for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. Mr. Schiffrin, along with Schiffrin & Barroway partner Stuart Berman, crafted a settlement which calls for the class to receive the majority of the equity in the new company, as well as their pro rata share of any amounts recovered by the litigation trust. In addition, Court-appointed co-trustees of the litigation trust, Joseph P. LaSala, Esq. and Fred S. Zeidman, chose to retain Mr. Schiffrin and the firm to continue to prosecute the actions on behalf of the litigation trust. In this capacity, the firm filed an action in the Isle of Man and successfully froze more than $200 million of stolen funds and is in the process of attempting to recover the money on behalf of the litigation trust. In addition, Mr. Schiffrin and the firm continues to litigate the trust's claims.

· *Henry v. Sears, et al, Case No. 98 C 4110 (N.D. Ill. 1999)*

Schiffrin & Barroway served as Lead Counsel on behalf of the largest class of credit card holders in history. At stake was the right of Sears and its newly formed affiliate, Sears National Bank ("SNB"), to retroactively increase the interest rates on eleven million credit card accounts with outstanding balances resulting from purchases made prior to the accounts being transferred to SNB. Schiffrin & Barroway alleged that such conduct violated the Truth-in-Lending Act ("TILA"), the National Banking Act and state consumer fraud statutes. After extensively litigating various aspects of liability, an additional nine months were then spent determining damages. The extraordinary complexity of the damage calculations required Mr. Schiffrin and experts from both parties to develop, test and utilize a novel computer model to ascertain total damages for the class and individualized damages for each class member. Ultimately, Mr. Schiffrin and his partner, Mr. Kessler, were able to negotiate a $156 million settlement, which represented approximately 66% of total damages. In approving the settlement, District Court Judge Leinenwebber of the Northern District of Illinois stated:

. . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance.

The entire settlement fund of $156 million was distributed without the filing of a single proof of claim form by any class member.

· *Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999):*

Schiffrin & Barroway served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the corporation at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved and important corporate governance provisions were put in place to prevent future abuse. Mr. Schiffrin, in addition to achieving these desirable results, was able to personally effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

· *Jordan v. State Farm Insurance Company, Case No. 97 CH 11 (Circ. Ct., McLean County, Ill.1998)*

Schiffrin & Barroway brought a claim on behalf of multiple plaintiffs alleging that State Farm had engaged in fraudulent sales practices by "churning" policies and marketing and selling "vanishing premium" policies that never "vanished." After several years of discovery, motion practice and settlement negotiations, Mr. Schiffrin played a critical role in resolving the action for $225 million in cash, dividend enhancements and other monetary benefits for current and former State Farm policyholders. Schiffrin & Barroway also has achieved substantial settlements in 20 additional cases alleging fraudulent sales practices by various insurance companies.

Mr. Schiffrin also has represented defrauded shareholders and companies in complex class and derivative actions including the following:

· *Huscher v. Curley, et. al., No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (In re Sotheby's Holdings, Inc. Derivative Litigation):*

Schiffrin & Barroway served as Lead Counsel in a derivative action arising out of Sotheby's alleged antitrust price fixing conspiracy with auction house rival Christie's International PLC. A multi-million dollar settlement was negotiated by Mr. Schiffrin whereby Diana Brooks (Sotheby's President at the time of the alleged wrongdoing) agreed to relinquish all of her Sotheby's stock options and the Company's insurance carrier made a substantial monetary payment to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the litigation.

## Andrew L. Barroway, managing partner of the firm, received his law degree from the University of Pennsylvania Law School, where he was a member of the ABA Negotiation team. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Barroway frequently lectures on securities class action and lead plaintiff issues and recently spoke at the 2005 Institutional Investor Hedge Fund Workshop in New York City and the Public Funds Summit 2005 in Phoenix, Arizona. Mr. Barroway has been actively involved in all aspects of litigation on behalf of the firm, and co-manages the firm's securities department. Of his numerous successful representations of shareholders, the following stand out as exceptional:

· *In re: Digital Lightwave, Inc. Securities Litigation, Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):*

Schiffrin & Barroway served as Co-Lead Counsel in one of the nation's most successful securities class actions. After extensive litigation and negotiations, Mr. Barroway negotiated a settlement of over $180 million in cash and stock, a recovery in excess of two hundred percent (200%) of class members' losses. Schiffrin & Barroway believes that this settlement represents the largest percentage recovery for shareholders in securities class action history.

· *In re PaineWebber Short-Term U.S. Government Fund Securities Litigation, No. 94-3820 (S.D.N.Y. 1994):*

Schiffrin & Barroway served as Co-Lead Counsel on behalf of plaintiffs alleging violations of the federal securities laws based upon material misrepresentations concerning the Fund's investment objectives and the risks associated with the Fund. Pursuant to the settlement, defendants made payments and provided fee waivers totaling more than $36 million, $33 million of which was in cash. In addition, defendant PaineWebber repurchased ten mortgage-backed securities from the Fund for an aggregate price in excess of $50 million, thus removing the illiquid securities from the Fund.

Mr. Barroway, along with his partner, Mr. Kessler, has also recently negotiated substantial settlements of securities class actions in which Schiffrin & Barroway was Lead or Co-Lead Counsel against Pinnacle Holdings, Cell Pathways, Gateway, Mercator and NetSolve. Mr. Barroway currently represents numerous public and private investment funds, money management firms and individuals in securities fraud litigation as Lead Counsel in actions against Accelerated Networks, ATI Technologies, CompUSA, Livent, NX Networks, Penn Treaty, Performance Technologies, Republic New York, Steven Madden, Vari-L, Kindred Healthcare, The Interpublic Group of Companies, Tenet Healthcare Corporation, and various others.

**Marc A. Topaz**, a partner of the firm, received his law degree from Temple University School of Law, where he was an editor of the Temple Law Review and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law where he served as an editor of the New York University Tax Law Review. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Topaz manages the firm's derivative and transactional departments. In this regard, Mr. Topaz has been actively involved in litigating the following prominent cases:

· *In re MTC Electronic Shareholder Litigation, No. CV-93-0876 (E.D.N.Y. 1993):*

Schiffrin & Barroway served as co-counsel in a case involving securities fraud by MTC, its officers and directors, underwriters and accountants. The case presented novel issues of Chinese law and required the construction of a database of hundreds of thousands of documents utilized in numerous party and non-party depositions. A $72 million settlement was achieved on the eve of trial.

· *In re Oppenheimer Capital, L.P., Unitholders Litigation, Consolidated No. 16022NC (Del. Ch. Ct. 1997):*

Schiffrin & Barroway served as Co-Lead Counsel on behalf of plaintiffs alleging that a merger proposed by Pimco Advisors benefitted certain Pimco insiders by disproportionately allocating tax benefits achieved from the restructuring of a limited partnership and failing to provide adequate compensation to the Oppenheimer shareholders. Plaintiffs moved to enjoin the transaction and a settlement was reached whereby defendants agreed to pay a special dividend to Oppenheimer limited partners of approximately $16 million.

· *Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999):* **(description above)**

**David Kessler**, a partner of the firm, graduated with distinction from the Emory School of Law. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. He is also a Certified Public Accountant in Pennsylvania. Mr. Kessler co-manages the firm's nationally recognized securities department. In addition, Mr. Kessler often lectures on securities litigation and recently was a featured speaker on hot topics in securities litigation in a seminar entitled The Explosion and Evolution of Class Action Law in December, 2004 in Philadelphia, Pennsylvania and the Corporate Governance Summit on Corporate Accountability in July, 2003 in New York City.  Mr. Kessler has achieved the following outstanding results in federal securities cases:

· *In re Initial Public Offering Securities Litigation, Master File No. 21 MC 92 (S.D.N.Y. Dec. 12, 2002)(SAS):*

Mr. Kessler, along with Mr. Schiffrin, is presently heading up the firm's litigation efforts in its prominent position as an executive committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, Schiffrin & Barroway was one of only six selected to serve on the executive committee. The coordinated actions, which have been filed against 308 separate issuers of publicly traded securities, challenge the legality of the practices which accompany the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 308 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history.

· *In re Assisted Living Concepts, Inc. Securities Litigation, Lead Case No. 99-167-AA (D.Or. 1999):*

Schiffrin & Barroway served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's start-up losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

· *In re Twinlab Corporation Securities Litigation, Master File No. 98-CV-7425 (E.D.N.Y. 1998):*

Schiffrin & Barroway served as Co-Lead Counsel and successfully litigated the action and was able to negotiate a settlement in the amount of $26 million plus interest which was recently approved by the Court.

· *In re Cumulus Media Inc. Sec. Litig., Lead Case No. 00-C-391 (E.D. Wis. 2000):*

Schiffrin & Barroway served as Lead Counsel and successfully litigated the action and negotiated a settlement of $13 million in cash and 240,000 shares of freely tradable stock in Cumulus Media, which traded for approximately $19 per share, for a total settlement value of $17.5 million at the time the settlement was approved by the Court.

**Stuart L. Berman**, a partner of the firm, received his law degree from George Washington University National Law Center, and his undergraduate degree from Brandeis University. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Berman has specialized in the area of securities litigation for the past eight years and serves in the firm's case and client development department, which involves working with clients, analyzing cases and developing litigation strategy. In addition, Mr. Berman manages the firm's lead plaintiff department and has been instrumental in enabling various of the firm's institutional and individual clients to serve as lead plaintiffs in important cases, such as *In re Tenet Healthcare Corp. Securities Litigation,* No. CV-02-8462-RSWL (C.D. Ca. 2002), *In re Interpublic Securities Litigation,* No. 02 Civ. 6527 (S.D.N.Y. 2002)), *State of New Jersey and Its Division of Investment v. Sprint Corporation, et al.* No. 03-2071-JWL (D. Kan. 2003), *In re Ariba Inc. Securities Litigation,* Master File No. 03-00277 JF (N.D. Cal. 2003), *Richard Wagner v. Barrick Gold Corporation, et al.,* No. 1:03cv4302 (S.D.N.Y. 2003), *In re Vaxgen Inc. Securities Litigation,* No. C 03-01129 JSW (N.D. Cal. 2003), *In re American Business Financial Services, Inc.,* Civil Action No. 04-0265 (E.D. Pa. 2004), *Anne Brumbaugh, et al. v. Wave Systems Corporation, et al.,* No. 04-30022-MAP (D. Mass. 2004), and *In re Vaso Active Pharmaceuticals Securities Litigation,* No. 04-10708-RCL (D. Mass. 2004).

Mr. Berman, along with Richard Schiffrin, serve as lead counsel in *In re AremisSoft Corp. Sec. Litig.,* C.A. No. 01-CV-2486 (D.N.J. 2002) in which certain former officers of the Company are alleged to have stolen hundreds of millions of dollars. They negotiated a complex settlement with the Company, which provided for the successful reorganization of the Company and which provided the class with the majority of the equity in the new company. In addition, the settlement established a litigation trust in which all claims owned by the class as well those owned by the Company were assigned for purposes of recovering the substantial losses incurred by the shareholders. The firm and co-counsel are litigating in the Isle of Man where we were successful in freezing more than $200 million of funds stolen by insiders. In addition, Mr. Berman and the firm continue to litigate the trust's claims.

**Katharine M. Ryan**, a partner of the firm, graduated *cum laude* from Villanova University School of Law in May 1984. Ms. Ryan is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Third Circuit and the United States Supreme Court. Ms. Ryan recently participated as a speaker in a legal teleconference entitled "Is the PSLRA's Safe Harbor Provision Safe?" Ms. Ryan is actively involved in litigating several of the firms most prominent cases and was integral in the excellent results achieved in the following cases:

> · *In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):*

S&B served as sole lead counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock with expected distribution by early summer 2005. As of February, 2005 the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised S&B for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result. S&B actively litigated this case while at the same time engaging in mediation over the course of several months before arriving at this excellent result for the class.

> · *In re New Power Holdings, Inc. Sec. Litig.,* C.A. No. 02 Civ. 1550 (S.D.N.Y. 2002):

Schiffrin & Barroway served as Co-Lead Counsel and was instrumental in obtaining a recovery of $41 million in cash for class members against a bankrupt company, certain of its officers and directors and the underwriters of the Companies offering. Claims involved New Power, an offshoot of Enron, that was formed to re-enter the deregulated energy market and pursued an IPO with no viable plan to hedge against volatile energy prices. The case continues to be litigated against the underwriters of the Company's offering.

**Gregory M. Castaldo**, a partner of the firm, received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey. Mr. Castaldo has been actively involved in litigating the following cases:

> · *In re Unigraphics Solutions Inc. Shareholders Litigation, Cons. C.A. No. 18916,* Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $35 million for members of the class;

> · *In re Prodigy Communications Corp. Shareholders Litigation, Cons. C.A. No. 19113-NC,* Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $36 million for members of the class; and

> · *In re Sodexho Marriot Shareholders Litigation, Cons. C.A. No. 18640-NC,* Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $166 million for members of the class.

**Michael K. Yarnoff**, a partner in the firm's securities litigation department, has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following: *In re Conseco Inc. Securities Litigation*, C.A. No. IP00-C-00585 (S.D. In. 2000) ($120 million cash settlement); *In re Twinlab Corporation Securities Litigation*, Master File No. 98-CV-7425 (E.D.N.Y. 1998) ($26 million cash settlement); *In re Cumulus Media Inc. Sec. Litig.*, Lead Case No. 00-C-391 (E.D. Wis. 2000) ($13 million cash settlement plus stock); *In re Cell Pathways, Inc. Securities Litigation II*, Master File No. 01-CV-1189 (E.D. Pa. 2001) ($2 million cash settlement plus stock);and *In re Riverstone Networks, Inc. Securities Litigation*, C.A. No. CV-02-3581 (N.D. Cal. 2002) ($18.5 million cash settlement).

Mr. Yarnoff received his law degree from Widener University School of Law. He has been practicing law in Pennsylvania and New Jersey since 1991, and has been a member of the Delaware Bar since 1995. He is also admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

**Joseph H. Meltzer**, a partner of the firm, received his law degree, with honors, from Temple University School of Law. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit.

Mr. Meltzer concentrates his practice in the areas of ERISA and antitrust complex litigation, and manages the firm's ERISA Litigation Department, which has excelled in the highly specialized area of prosecuting claims on behalf of retirement savings plans.  Mr. Meltzer is Lead Counsel in several pending nationwide class actions brought under ERISA.

Mr. Meltzer has helped obtain several multi-million dollar settlements on behalf of class members, including the recent settlements in *In re Global Crossing ERISA Litigation*, 02 Civ. 7453 (S.D.N.Y.) ($79 million settlement) and *In re Augmentin Antitrust Litigation*, 02-442 (E.D. Va.) ($29 million settlement).  Mr. Meltzer also prosecutes claims on behalf of third-party payors and consumers and is currently serving as Lead Counsel in *In re Remeron Antitrust Litigation*, 02-CV-2007 (D.N.J.) and *In re Wellbutrin SR/Zyban Antitrust Litigation* (E.D. Pa.).

Prior to joining Schiffrin & Barroway, Mr. Meltzer practiced at Barrack, Rodos & Bacine in Philadelphia, where he had prominent roles in prosecuting several complex class actions to successful conclusions, including *In re Sorbates Direct Purchaser Antitrust Litigation*, C 98-4886 (N.D. Cal. 2001) ($92 million settlement) and also defended clients in antitrust and commercial litigation.

## ASSOCIATES

**Ian D. Berg**, an associate of the firm, received his law degree from Northwestern University School of Law, and his B.A. from Northwestern University. Prior to joining Schiffrin & Barroway, Mr. Berg practiced at Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLC, in Chicago, IL. He is licensed to practice law in Illinois and Pennsylvania.

**Robert W. Biela**, an associate of the firm, received his law degree from the Penn State Dickinson School of Law, where he served on the editorial board of the Environmental Law and Policy Journal. Mr. Biela received his undergraduate degree from West Chester

University. Prior to joining the firm, Mr. Biela was an associate at Mager White and Goldstein, LLP, where he practiced in the areas of complex commercial litigation and securities litigation. Mr. Biela is licensed to practice in Pennsylvania, and focuses his practice in the area of securities litigation.

**Katherine B. Bornstein**, an associate of the firm, received her law degree from Emory University School of Law. Ms. Bornstein received her undergraduate degree from the University of Maryland. She is licensed to practice law in Pennsylvania and Maryland. Prior to joining Schiffrin & Barroway, Ms. Bornstein was an associate at Provost & Umphrey Law Firm, LLP, where she worked on a number of complex litigation issues. Ms. Bornstein concentrates her practice at Schiffrin & Barroway in the areas of ERISA, antitrust and consumer protection.

**Trevan Borum**, an associate of the firm, received his B.A. from Wake Forest University in 1987, and his J.D. from Widener University Law School in 1992. Mr. Borum was the valedictorian of his law school class, and served as a Wolcott fellow with the Delaware Supreme Court.  He is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for The Eastern District of Pennsylvania.  Prior to joining Schiffrin & Barroway, Mr. Borum served as an Assistant District Attorney in Philadelphia for ten years.  Mr. Borum also practiced criminal defense after leaving the District Attorney's office.  At Schiffrin & Barroway, Mr. Borum concentrates his practice in securities litigation.

**Jonathan R. Cagan**, an associate of the firm, received his law degree from the Temple University School of Law.  Mr. Cagan received his undergraduate degree, *cum laude*, from Temple University.  Mr. Cagan is licensed to practice law in New Jersey, and is admitted to the Third Circuit Court of Appeals.  Mr. Cagan concentrates his practice in the area of securities litigation.

**Edward W. Chang**, an associate of the firm, received his law degree, *with honors*, from the George Washington University Law School.  During law school, Mr. Chang served as a staff member of the American Intellectual Property Law Association Quarterly Journal and published Bidding on Trespass: eBay v. Bidder's Edge and the Abuse of Trespass Theory in Cyberspace Law, 29 AIPLA Q.J. 445 (2001). Mr. Chang received his undergraduate degree in International Relations, *cum laude*, from the University of Pennsylvania.

Prior to joining Schiffrin & Barroway, Mr. Chang served as a law clerk to the Honorable Ann O'Regan Keary of the Superior Court of the District of Columbia. He is licensed to practice in New Jersey and Maryland, and has been admitted before the United States District Court for the District of Maryland. Mr. Chang concentrates his practice in the areas of antitrust, ERISA and consumer protection.

**Darren J. Check**, an associate of the firm, received his law degree from Temple University School of Law. He received his undergraduate degree in History, *with honors*, from Franklin & Marshall College. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, and the United States District Court for the District of Colorado.

Mr. Check concentrates his practice in the area of securities litigation, and has worked

extensively with partner David Kessler on *In re Initial Public Offering Securities Litigation*, Master File No. 21 MC 92 (S.D.N.Y. Dec. 12, 2002)(SAS) currently pending in the Southern District of New York. Mr. Check consults with institutional investors worldwide regarding serving as a lead plaintiff and recently spoke at the MultiPensions 2004 conference in Amsterdam, Netherlands and the European Pension Symposium in Florence, Italy.

Mr. Check serves in the firm's lead plaintiff department, which involves working with clients, litigation strategy and lead plaintiff issues. In addition, Mr. Check serves as the firm's Director of Institutional Relations and Business Development and works closely with the firm's domestic and foreign institutional clients.

**Edward W. Ciolko**, an associate of the firm, received his law degree from Georgetown University Law Center, and an MBA from the Yale School of Management. Prior to joining the firm, he served as an Attorney Advisor to Commissioner Sheila F. Anthony at the Federal Trade Commission. He is licensed to practice law in the State of New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey. Mr. Ciolko concentrates his practice in the areas of antitrust, ERISA, and consumer protection.

**Stephen E. Connolly**, an associate of the firm, received his law degree from Villanova University School of Law, and is a graduate of The Pennsylvania State University. Prior to joining Schiffrin & Barroway, Mr. Connolly was an associate at a Philadelphia firm where he practiced in the areas of complex litigation, securities and antitrust litigation. Mr. Connolly is licensed to practice law in Pennsylvania, and concentrates his practice in the area of antitrust litigation.

**Mark S. Danek,** an associate of the firm, received his undergraduate degree in Architecture from Temple University in 1996, and his law degree from Duquesne University School of Law in 1999. Prior to joining Schiffrin & Barroway, Mr. Danek was employed as in-house counsel of a real estate investment trust corporation that specialized in the collection of delinquent property tax receivables.

He is licensed to practice law in the Commonwealth of Pennsylvania and has been admitted to practice before the Courts of the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Supreme Court of the United States of America. Mr. Danek concentrates his practice in the area of securities litigation.

**Thomas W. Grammer**, an associate of the firm, received his law degree, *magna cum laude*, from Villanova Law School where he was a member of Order of the Coif. Mr. Grammer received his undergraduate degree from West Chester University. Before practicing at Schiffrin & Barroway, Mr. Grammer served as a clerk for Judge Richard B. Klein of the Pennsylvania Superior Court, and prior to that, as a clerk for Judge Patricia A. McInerney of the Court of Common Pleas of Philadelphia County. A member of the Pennsylvania bar, Mr. Grammer concentrates his practice in securities litigation and shareholder derivative actions.