UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: CREDITRUST CORPORATION : <br> SECURITIES LITIGATION : | CIVIL ACTION NO. <br> MJG 00 CV 2174 |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR AN ORDER TO
APPROVE DISTRIBUTION OF THE SETTLEMENT FUND

A.   INTRODUCTION

Plaintiffs seek to distribute the funds from the settlements in the above action. Plaintiffs brought suit pursuant to the federal security laws on behalf of a class of persons who bought Creditrust Corporation stock between July 28, 1998 and May 21, 2000, and suffered damage as result of their purchases.

Plaintiffs resolved the action in a settlement with individual defendants Joseph Rensin and Richard Palmer for $7,500,000.00 (the "Settlement"). The proceeds from the Settlement were placed in Citizens' Bank, where they have been earning interest (the "Settlement Fund").

Plaintiffs' counsel retained Heffler to coordinate the notice program and to process the proof of claim forms submitted by the Class members. Heffler has 32 years of experience in administering class and class action settlements in securities, antitrust, consumer and property damage cases. See the Declaration of Heffler, Radtitch & Saitta, L.L.P. taken by Edward J. Sincavage, (the "Heffler Declaration") ¶ 2, attached to the Motion as Exhibit I.

On May 2, 2005, following notice to the Class, this Court conducted a hearing on plaintiffs' motions for approval of the Settlement and approval of the application for awards to named plaintiffs and the petition of plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses.

On June 27, 2005, this Court issued an Order of Final Judgment for the Settlement, approving the Settlement and dismissing the action with prejudice. The Stipulation of Settlement contains the plan of allocation pursuant to which each Authorized Claimant's pro rata share of the Net Settlement Fund is to be determined. The Court retained jurisdiction to determine any matters relating to the administration of the Settlement.

Plaintiffs' counsel are now in a position to seek Court approval of a distribution of the Net Settlement Fund,[2] computed as set out in Exhibit D to the Heffler Declaration, to be paid on a pro rata basis to each of the Authorized Claimants.

### B. SUMMARY OF THE CLAIMANTS LISTING

Attached as Exhibit A to the Heffler Declaration is the Claimant Listing as of June 30, 2006 (the "Claimant Listing"), showing Payable and Non-Payable claims received, including the names of the claimants, the amount claimed, the amount disallowed and the amount allowed, and, if applicable, a coded comment denoting the reason for rejection of the claim.[3]

As of July 14, 2006, Heffler had received and processed 1,324 Proof of Claim forms in the Settlement in accordance with the terms of the Stipulation of Settlement and guidelines provided to Heffler by plaintiffs' counsel. ¶3 of the Heffler Declaration.

---

[2] As of June 30, 2006, the Net Settlement Fund (after payment of Court-approved fees and expenses, lead plaintiffs' awards, Settlement administrative expenses to date, estimated future Settlement administration expenses, and estimated taxes, and including estimated interest) had a value of approximately $5,128,550.14. Further interest will be earned until the date of distribution. See Exhibit D to the Heffler Declaration.

[3] In some instances where one of the codes is used but the "amount disallowed" shows $0.00, the claimant listed purchases and/or sales of Creditrust stock at a price or time such that the transaction did not fit the definition of "Recognized Claim."

2

Of the 1,324 claims received to date, Heffler has found the claims of 1,147 claimants to be valid. See ¶5 to the Heffler Declaration. The identity of each valid claimant and the amount of each claimant's approved recognized losses are listed in the Payable Claims portion of Exhibit A to the Heffler Declaration. The total amount of recognized losses for all of the valid claims is $66,543,569.67.

Heffler recommends rejection of the claims of 177 claimants for the following reasons (see Exhibit of Non-Payable claims in Exhibit A to the Heffler Declaration):

a. Claimant filed a blank Proof of Claim form;

b. Claimant did not provide supporting documentation to prove the claimed purchases of Creditrust Corporation common stock between July 28, 1998 and May 31, 2000, inclusive;

c. Claimant did not complete the Substitute Form W-9 or Form W-8;

d. Claimant's purchases during the Class Period minus sales during the Class Period does not tie in mathematically to the ending balance;

e. Claimant did not provide supporting documentation to prove the claimed sales of Creditrust Corporation common stock between July 28, 1998 and May 31, 2000 inclusive;

f. Claimant did not provide supporting documentation to prove the retention of Creditrust Corporation common stock on May 31, 2000;

g. Claimant claimed purchases that were outside the Class Period;

h. Claimant filed a duplicate Proof of Claim and Release;

3

i. Claimant did not incur a Recognized Loss as a result of the purchase and the subsequent sale of the Creditrust Corporation common stock;

j. Claimant's Recognized Loss is less than the $7.50 minimum distribution amount;

k. Claimant claimed shares that were received into their account and not purchased during the Class Period; and

l. Claimant claimed shares that were delivered out of their account and are no longer eligible to be claimed by this claimant.

Following initial processing of the proofs of claim, Heffler sent deficiency letters to claimants whose claims were in any way deficient, requesting that these claimants correct the deficiencies in their claims within 20 days. After the 20 days, Heffler sent final letters to those whose claims continued to be deficient. Likewise, Heffler sent letters to those whose claims were recommended for rejection, allowing 20 days for response. Heffler Declaration ¶ 8. At the end of this process, none of those whose claims were rejected is contesting the rejection of the claims. Heffler Declaration ¶ 8. Accordingly, plaintiffs request that the non-payable claims listed in the Non-Payable Claims portion of Exhibit A to the Heffler Declaration be deemed rejected.

## C. REQUEST FOR APPROVAL OF LATE CLAIMS

Of the proofs of claims received in the Settlement, 129 claims were postmarked after June 1, 2005, the deadline for filing claims. ¶ 9 to the Heffler Declaration. Of the 129 late-filed claims, Heffler deemed 100 were valid.

Counsel for plaintiffs believe that it would be fair, reasonable and in the interest of justice to allow the valid, but late claims to be eligible to share in the Settlement Fund. (Each late claim has been tentatively approved or rejected and listed in Exhibit A to the Heffler Declaration following the

same guidelines applied to the timely claims.) Plaintiffs request that the late claimants with valid claims be allowed to participate in the distribution of the Net Settlement Fund as if their claims had been timely filed.

### D. REQUEST FOR APPROVAL OF THE HEFFLER FIRM'S SUMMARY REPORT AND DISTRIBUTION TO AUTHORIZED CLAIMANTS

Plaintiffs' counsel request that the Court approve the disposition of each claim listed in the Claimants Listing. Each claim that Heffler has tentatively rejected should be rejected. Each claim that Heffler has tentatively accepted as valid should be accepted in the amount listed in the Payable Claims Section of Claimants Listing. As noted earlier, the total amount of Recognized Claims which plaintiffs' counsel recommend be approved, as set forth in the Claimants Listing, is $66,543,569.67.

Heffler has incurred $11,817.50 in unreimbursed fees and $1,657.64 in unreimbursed costs in connection with claims administration of these Settlements. See page 4 of Exhibit C to the Heffler Declaration. (Additional fees and costs in connection with the Settlement administration have already been paid from the Settlement Fund.) Heffler incurred, inter alia, fees for processing each claim, identifying deficient or rejected claims and notifying such claimants, communications with claimants and communications with brokerage houses and other nominees. Costs included postage, photocopies, telephone costs and supplies. Heffler also seeks $5,000 to pay their estimated additional fees for distribution and tax preparation and $2,318.00 in additional costs for distribution and post-distribution expenses, including postage, checks, envelopes, printing, binding and miscellaneous costs. Heffler's invoice and summary for presently owed fees and costs, and estimated future expenses is attached hereto as Exhibit B to the Heffler Declaration. The total of all of the fees and costs listed in this paragraph is $20,793.14. Exhibit C.

Heffler, under the direction of plaintiffs' counsel, intends to distribute the Net Settlement Fund promptly after the proposed Distribution Order becomes final. Heffler estimates that, with accrued interest and the payment of fees, taxes and expenses described in plaintiffs' Distribution Motion, the Settlement Fund had a net value of approximately $5,128,550.14, as of June 30, 2006. Exhibit D to the Heffler Declaration. Additional interest will continue to accrue until distribution is made.

Plaintiffs request the Court to find that 220 days after the initial distribution of the Net Settlement Fund to Authorized Claimants, after appropriate efforts to locate and distribute funds to the Authorized Claimants, and after payment of any additional administrative expenses, it will be appropriate to distribute any unclaimed monies remaining in the Net Settlement Fund to a non-profit, charitable organization. If this request is granted, any unclaimed monies remaining in the Net Settlement Fund 220 days after the initial distribution to the Authorized Claimants would be distributed to this organization by check.

### E.   REQUEST FOR DISPOSITION OF ADMINISTRATOR'S RECORDS

Plaintiffs also request the Court to find that, 365 days after the initial distribution of the Net Settlement Fund to Authorized Claimants, it will be appropriate for Heffler to destroy all claims forms and related correspondence. Heffler should also be ordered to retain all administrative records, including their copy of the Claimants Listings and their computer database used to create the Claimants Listings for a period of three years after the initial distribution of the Net Settlement fund to Authorized Claimants.

F.  **REQUEST FOR RELEASE AND DISCHARGE OF THOSE INVOLVED WITH CLAIMS PROCESSING**

Finally, plaintiffs request that the Court release and discharge all persons who have been involved with claims processing and payment, including Heffler, plaintiffs, plaintiffs' counsel, and anyone else with responsibility to process and make the claims payments. Plaintiffs request that the Court bar any claimant or Class member, whether or not he or she received a payment, from making any further claim against the Settlement Fund or any of the persons released above.

**WHEREFORE**, plaintiffs' counsel respectfully request that the Court enter the proposed Distribution Order to allow the costs and expenses of Settlement administration to be paid and/or reserved and then permit distribution of the Net Settlement Fund.

Dated: July 26, 2006

Respectfully submitted,

**TYDINGS & ROSENBERG, LLP**
Lawrence J. Quinn, Esq., Fed. Bar No. 07545
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
(410) 752-9700

**BERGER & MONTAGUE, P.C.**

_[signature]_
Todd S. Collins (TC-5914)
Elizabeth W. Fox
Neil F. Mara
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000

*Counsel for Plaintiffs and the Class*

7